

DEH/LJW/MJM: USAO2016R00493

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2019 SEP 18 PM 3:53

CLERK'S OFFICE
AT BALTIMORE

BY _____ DEPUTY

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. LO-19-0449 |
| | * | |
| v. | * | (RICO Conspiracy, 18 U.S.C. § 1962(d); Money Laundering Conspiracy, 18 U.S.C. § 1956(h); Narcotics Conspiracy, 21 U.S.C. § 846; Forfeiture, 21 U.S.C. § 853, 18 U.S.C. § 982(a)(1), 18 U.S.C. § 1963, and 28 U.S.C. § 2461(c)) |
| KENNETH WENDELL RAVENELL, | * | |
| Defendant. | * | |

\*\*\*\*\*\*\*

## INDICTMENT

### COUNT ONE
### (RICO Conspiracy)

The Grand Jury for the District of Maryland charges that at all times relevant to this Indictment:

#### THE ENTERPRISE

1. "The Law Firm" was a close corporation formed under the laws of the State of Maryland. The Law Firm operated principally as a law firm in Baltimore, Maryland. The Law Firm constituted an "enterprise," as defined in Title 18, United States Code, Section 1961(4). The Law Firm engaged in, and its activities affected, interstate and foreign commerce.

#### LAWFUL PURPOSES OF THE ENTERPRISE

2. The Law Firm was formed for the following legitimate and lawful purposes, among others: engaging in the practice of law, providing legal services deemed proper and valid, and carrying on any lawful business in connection with the practice of law and the provision of legal services.

## THE DEFENDANT

3. The Defendant, **KENNETH WENDELL RAVENELL ("RAVENELL")**, was a lawyer and a partner at The Law Firm. **RAVENELL** joined The Law Firm in or about 2007 and separated from The Law Firm on or before September 26, 2014.

4. R.B. operated a multi-state illegal drug trafficking organization and was an associate or client of Ravenell at all times relevant to this Indictment. R.B. became a client of The Law Firm on or about February 23, 2011.

## UNLAWFUL PURPOSES OF THE DEFENDANT

5. The purposes of **RAVENELL** included violating the legitimate purposes of The Law Firm in order to enrich himself and Individual 1 through illegal conduct, including by receiving monies from R.B. and his associates in exchange for:

   a. instructing R.B. and his associates about how they could evade law enforcement in order to continue their drug trafficking;

   b. laundering money for R.B. and his associates that had been generated from drug trafficking; and

   c. obstructing justice in order to protect R.B. and his associates.

## THE RACKETEERING CONSPIRACY

6. Beginning at least by August 31, 2009, and continuing through on or about September 26, 2014, in the District of Maryland and elsewhere, the defendant,

**KENNETH WENDELL RAVENELL,**

being a person employed by and associated with The Law Firm, an enterprise, which engaged in, and the activities of which affected, interstate and foreign commerce, together with co-conspirators R.B., J.B., J.C., K.R., D.W., L.H., J.B., H.B., R.B., D.M., M.L., A.B., D.L., N.S.,

A.G., S.G., and other persons known and unknown to the Grand Jury, did knowingly, intentionally, and unlawfully combine, conspire, confederate and agree to violate Section 1962(c) of Title 18, United States Code, that is, to conduct and participate, directly and indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity, consisting of multiple acts indictable under:

    a. 18 U.S.C. § 1512 (relating to tampering with a witness, victim, or an informant);

    b. 18 U.S.C. § 1952 (relating to racketeering);

    c. 18 U.S.C. § 1956 (relating to the laundering of monetary instruments);

    d. 18 U.S.C. § 1957 (engaging in monetary transactions in property derived from specified unlawful activity);

and multiple offenses involving drug trafficking in violation of:

    e. 21 U.S.C. § 841(a) (possession with intent to distribute and distribution of controlled dangerous substances); and

    f. 21 U.S.C. § 846 (conspiracy to possess with intent to distribute and distribute controlled dangerous substances).

### MEANS AND METHODS OF THE CONSPIRACY

Among the means and methods by which **RAVENELL** and others pursued their illegal purposes were the following:

7. **RAVENELL** knowingly protected and assisted co-conspirators in their drug trafficking by providing information to co-conspirators that he obtained while employed by The Law Firm including, for example:

    a. **RAVENELL** coached co-conspirators about law enforcement techniques so that co-conspirators could evade those techniques when they trafficked in narcotics;

b. **RAVENELL** emailed and faxed unindicted members of the conspiracy information about law enforcement techniques so that unindicted members of the conspiracy could evade those techniques when they trafficked in narcotics;

c. **RAVENELL** instructed members of the conspiracy to utilize certain drug couriers, to utilize specific modes of transportation, and to transport shipments of drugs and money at particular times of day, all for the purpose of evading law enforcement;

d. **RAVENELL** instructed co-conspirators to use payphones and in-person meetings when discussing drug trafficking in order to minimize the risk of being intercepted by law enforcement;

e. **RAVENELL** told members of the conspiracy to utilize multiple disposable and pre-paid telephones and to change phone numbers frequently in order to avoid law enforcement detection, and **RAVENELL** provided such new phone numbers to employees of the enterprise to facilitate money laundering; and

f. **RAVENELL** instructed members of the conspiracy to remove batteries from their cellular devices and leave their phones outside meetings held to discuss illegal activities in order to prevent such meetings, including meetings held within the offices of The Law Firm, from being recorded by law enforcement.

8. **RAVENELL** told members of the conspiracy to use The Law Firm to make travel arrangements for dozens of trips to conduct drug trafficking and money laundering in order to make it difficult for law enforcement to investigate **RAVENELL**'s co-conspirators.

9. Based on information he learned while employed by The Law Firm, **RAVENELL** instructed members of the conspiracy to utilize false and fictitious names in order to conceal their true identities and activities from law enforcement.

10. Based on information he learned while employed by The Law Firm, **RAVENELL** instructed members of the conspiracy to use false and fictitious names to conduct financial and cash transactions, including transactions that were utilized to make payments to **RAVENELL** and other conspirators.

11. Based on **RAVENELL**'s instructions, a bank account was created by R.B. in the fictitious name of Robert Smith in order to funnel payments to **RAVENELL**, and **RAVENELL** did issue and deposit a check drawn from this bank account to **RAVENELL**'s personal bank account as compensation for information about law enforcement tactics that **RAVENELL** provided to R.B. while **RAVENELL** was employed by The Law Firm.

12. **RAVENELL** and other members of the conspiracy used The Law Firm to launder money and protect the drug trafficking organization from law enforcement detection and prosecution, and did so through the following means, among others:

   a. **RAVENELL** used The Law Firm's bank accounts to receive drug proceeds and make payments to attorneys retained to represent other members of the conspiracy because those other attorneys would not accept drug proceeds;

   b. **RAVENELL** concealed and misrepresented the source of funds paid to those attorneys retained to represent members of the conspiracy;

   c. **RAVENELL** created and caused the creation of false and fictitious records, including a client file in the name of a person that The Law Firm did not represent, in order to conceal the source of funds used to pay other lawyers for their representations of members of the conspiracy;

   d. **RAVENELL** misrepresented to employees of The Law Firm the purpose of payments he directed them to make for or on behalf of members of the conspiracy;

  e. **RAVENELL** instructed members of the conspiracy to create and become involved in businesses that could be used to launder money to **RAVENELL** and other members of the conspiracy;

  f. **RAVENELL** concealed the financial interests of drug dealers in investments funded with drug proceeds laundered through The Law Firm;

  g. **RAVENELL** and other members of the conspiracy used The Law Firm's bank accounts to launder money and funnel hundreds of thousands of dollars to and from various businesses and individuals, including, but not limited to, LOC Marketing LLC, Ares Industrial, Repo Productions, Hospitality Compliance Group, and J.L.

  h. **RAVENELL** and other members of the conspiracy purchased and used financial instruments and transferred funds among accounts at multiple financial institutions, including accounts held by The Law Firm, in order to promote the distribution of drugs and conceal funds that were derived from drug proceeds; and

  i. **RAVENELL** directed employees of The Law Firm to mail money orders for members of the conspiracy from The Law Firm's office so that the mailings were less likely to be detected and intercepted by law enforcement.

13. **RAVENELL** often received substantial cash payments derived from drug sales as compensation for laundering money and for protection he provided to his co-conspirators, and **RAVENELL** concealed these payments by routinely failing to create receipts or documentation of the payments he received.

14. **RAVENELL** arranged for cash investments of drug proceeds in various entities, including, but not limited to, a restaurant in Glen Burnie, Maryland, and **RAVENELL** used The

Law Firm's resources to create legal documentation to appear to legitimize such investments of drug proceeds.

15. **RAVENELL** and his co-conspirators paid lawyers and accountants for services rendered to co-conspirators with cash that had been derived from drug sales.

16. **RAVENELL** used his position as a lawyer with The Law Firm to protect co-conspirators and obstruct investigations and official proceedings, including, for example, by doing the following:

   a. **RAVENELL** lied to members of law enforcement in order to protect members of the conspiracy;

   b. When members of the conspiracy were arrested, **RAVENELL** arranged the legal representation of those persons for the purpose of discouraging cooperation with law enforcement and protecting his co-conspirators;

   c. **RAVENELL** sought to retain legal counsel for arrested members of the conspiracy that **RAVENELL** said he could control and who would provide him with access to information about their clients' cases so that **RAVENELL** could provide such information to his co-conspirators to protect their ongoing drug operations;

   d. **RAVENELL** arranged to retain legal counsel who refused to represent cooperating witnesses and required the client to sign a retainer agreement which allowed counsel to withdraw from the representation if the client attempted to cooperate against **RAVENELL** or his co-conspirators;

   e. **RAVENELL** and S.G. obtained information about arrested co-conspirators, including whether or not they were cooperating and the status of their cases, and

provided such information to other members of the conspiracy so that they could protect their ongoing drug trafficking operations;

   f. **RAVENELL** obtained access to incarcerated co-conspirators, whom he did not represent, so that **RAVENELL**, S.G., and others could attempt to improperly influence their testimony, attempt to cause them to execute false affidavits and witness statements which **RAVENELL** and S.G. knew to be false, and attempt to cause witnesses to withhold testimony from official proceedings, namely, a federal criminal case against R.B. in the District of Maryland;

   g. **RAVENELL** and S.G. did not obtain permission from counsel to conduct meetings with their clients in jail facilities, and **RAVENELL** encouraged such clients, whom he did not represent, to obtain and accept plea offers that did not include cooperation with the Government; and

   h. **RAVENELL** served as an intermediary between arrested members of the conspiracy and members of the conspiracy who were not yet arrested in order to facilitate the unlawful activities of his co-conspirators, including conveying information from arrested members about monies owed on the street from drug sales and the collection and retention of other assets of the co-conspirators, thus preventing such information from being intercepted or detected by law enforcement.

18 U.S.C. § 1962(d)

## COUNT TWO
### (Conspiracy to Commit Money Laundering)

The Grand Jury for the District of Maryland further charges that:

1. Beginning at least by August 31, 2009, and continuing through on or about September 26, 2014, in the District of Maryland and elsewhere, the defendant,

**KENNETH WENDELL RAVENELL,**

did knowingly, intentionally, and unlawfully, combine, conspire, confederate, and agree with one or more persons known and unknown to the Grand Jury to:

    a. conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, the felonious distribution of controlled substances punishable under Title 21, United States Code, Chapter 13, with the intent to promote the carrying on of such specified unlawful activity in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i);

    b. conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, the felonious distribution of controlled substances punishable under Title 21, United States Code, Chapter 13, knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity, and while conducting and attempting to conduct such financial transactions knew the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and

    c. engage, attempt to engage, and cause others to engage in monetary transactions, in and affecting interstate and foreign commerce, in criminally derived property that

was of a value greater than $10,000, and was derived from specified unlawful activity, that is, the felonious distribution of controlled substances punishable under Title 21, United States Code, Chapter 13, in violation of 18 U.S.C. § 1957(a).

18 U.S.C. § 1956(h)

## COUNT THREE
### (Narcotics Conspiracy)

The Grand Jury for the District of Maryland further charges that:

1.   Beginning at least by August 31, 2009, and continuing through on or about September 26, 2014, in the District of Maryland and elsewhere, the defendant,

**KENNETH WENDELL RAVENELL,**

did knowingly, willfully and unlawfully combine, conspire, confederate and agree with one or more persons known and unknown to the Grand Jury, to knowingly and intentionally distribute and possess with intent to distribute one thousand (1000) kilograms or more of a mixture or substance containing a detectable amount of marijuana, a Schedule I controlled substance, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(A)(vii).

21 U.S.C. § 846

## FORFEITURE

The Grand Jury for the District of Maryland further charges that:

1. Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given to the Defendant that the United States will seek forfeiture as part of any sentence in accordance with Title 18, United States Code, Section 1963 and Title 21, United States Code, Section 853, in the event of the Defendant's convictions under Counts One through Three of this Indictment.

### RICO Forfeiture

2. Pursuant to Title 18, United States Code, Section 1963(a)(1), (2), and (3), upon conviction of the offense alleged in Count One, the Defendant,

**KENNETH WENDELL RAVENELL,**

shall forfeit to the United States of America, (i) any interest the Defendant acquired or maintained as a result of the commission of the offense alleged in Count One of the Indictment; (ii) any interest in, security of, claim against, or property or contractual right of any kind affording a source of influence over, any enterprise which the defendant has established, operated, controlled, conducted, or participated in the conduct of, in committing the offense alleged in Count One of the Indictment; and (iii) any property, constituting or derived from, any proceeds which the Defendant obtained, directly and indirectly, from the racketeering activity alleged in Count One of this Indictment.

3. The property to be forfeited includes, but is not limited to, the following:

    a. any property constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of such violation; and

## Money Laundering Forfeiture

4. Pursuant to Title 18, United States Code, Section 982(a)(1), upon conviction of the offense alleged in Count Two, the Defendant,

**KENNETH WENDELL RAVENELL,**

shall forfeit to the United States of America, all property real or personal, involved in such offense, and all property traceable to such property, that each of them, respectively, obtained.

5. The property to be forfeited includes, but is not limited to, the following:

    a. a sum of money equal to the value of any property involved in the money laundering offense for which each Defendant is convicted;

    b. all property constituting the subject matter of the money laundering offense for which each Defendant has been convicted; and

    c. all property used to commit or facilitate the commission of the money laundering offense for which each Defendant has been convicted.

## Narcotics Forfeiture

6. Pursuant to Title 21, United States Code, Section 853(a), upon conviction of an offense in violation of the Controlled Substances Act, as alleged in Count Three, the Defendant,

**KENNETH WENDELL RAVENELL,**

shall forfeit to the United States of America, all property real or personal, involved in such offense, and all property traceable to such property, that each of them, respectively, obtained.

7. The property to be forfeited includes, but is not limited to, the following:

    d. any property constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of such violation; and

  e. any property used, or intended to be used, in any manner or part, to commit, or facilitate the commission of, such violation.

## Substitute Assets

8. Pursuant to Title 18, United States Code, Section 1963(m) and Title 21, United States Code, Section 853(p), if any of the property described above as being subject to forfeiture, as a result of any act or omission by the Defendant:

  a. cannot be located upon the exercise of due diligence;

  b. has been transferred or sold to, or deposited with, a third person;

  c. has been placed beyond the jurisdiction of the Court;

  d. has been substantially diminished in value; or

  e. has been comingled with other property which cannot be subdivided without difficulty,

it is the intent of the United States to seek forfeiture of any other property of the Defendant up to the value of the property charged with forfeiture in the paragraphs above.

21 U.S.C. § 853
18 U.S.C. § 982(a)(1)
18 U.S.C. § 1963
28 U.S.C. § 2461(c)

*Robert K. Hur*/DEH
Robert K. Hur
United States Attorney

A TRUE BILL:

**SIGNATURE REDACTED,**
Foreperson

Date: September 18, 2019