<pre>
 1                IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF MARYLAND
 2                         SOUTHERN DIVISION

 3
    UNITED STATES OF AMERICA        )
 4                                  )
              Plaintiff,            )
 5                                  ) CRIMINAL CASE NO. LO-19-0449
              vs.                   )
 6                                  )
    KENNETH WENDELL RAVENELL,       )
 7                                  )
              Defendant.            )
 8

 9          TRANSCRIPT OF PROCEEDINGS - ARRAIGNMENT
                BEFORE THE HONORABLE LIAM O'GRADY
10                 UNITED STATES DISTRICT JUDGE
            WEDNESDAY, OCTOBER 16, 2019; 11:00 A.M.
11                     GREENBELT, MARYLAND

12                    A P P E A R A N C E S

13
    FOR THE PLAINTIFF:
14
          OFFICE OF THE UNITED STATES ATTORNEY
15              BY:  DEREK E. HINES, ESQUIRE
                     LEO JOSEPH WISE, ESQUIRE
16                   MATTHEW JAMES MADDOX, ESQUIRE
                36 SOUTH CHARLES STREET, FOURTH FLOOR
17              BALTIMORE, MARYLAND 21201
                (410) 209-4800
18

19  ALSO PRESENT: Supervisory Special Agent Gary Shapley - IRS

20       ***Proceedings Recorded by Mechanical Stenography***
              Produced By Computer-Aided Transcription
21  _____

22          MARLENE MARTIN-KERR, RPR, RMR, CRR, FCRR
                 FEDERAL OFFICIAL COURT REPORTER
23                6500 CHERRYWOOD LANE, STE 200
                    GREENBELT, MARYLAND 20770
24                       (301)344-3499

25
</pre>

1                          A P P E A R A N C E S
                                (continued)
2
   FOR THE DEFENDANT:
3
         OUTLAW PLLC
4              BY:  LUCIUS OUTLAW, ESQUIRE
               1351 JUNIPER STREET, NW
5              WASHINGTON, DC 20012
               (202) 997-3452
6
         SCHULTE ROTH & ZABEL, LLP
7              BY:  AISLINN AFFINITO, ESQUIRE
                    McKENZIE E. HAYNES, ESQUIRE
8                   PETER HUGH WHITE, ESQUIRE
               901 15TH STREET, NW, SUITE 800
9              WASHINGTON, DC 20005
               (202) 729-7486
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                   P R O C E E D I N G S

 2        (Call to Order of the Court.)

 3             THE DEPUTY CLERK:  All rise.

 4        The United States District Court for the District of

 5   Maryland is now in session, the Honorable Liam O'Grady

 6   presiding.

 7             THE COURT:  Please be seated.

 8        Thank you all for making yourselves available here in

 9   Greenbelt.  We're here for arraignment this morning.  Are we

10   ready to proceed?

11             MR. WHITE:  Yes, Your Honor.

12             MR. HINES:  Yes, we are, Your Honor.

13             THE COURT:  Then let's proceed, please.

14             THE DEPUTY CLERK:  Please stand and raise your right

15   hand.

16        (The defendant complied.)

17             THE DEPUTY CLERK:  You do solemnly promise, declare,

18   and/or affirm under the penalties of perjury that the

19   information you're about to give to the Court in the matter now

20   pending before it shall be the truth, the whole truth, and

21   nothing but the truth?

22             THE DEFENDANT:  Yes.

23             THE DEPUTY CLERK:  You may lower your hand, sir.

24        Please state your full name and spell your full name for

25   the record.
```

1          THE DEFENDANT:  Kenneth Wendell Ravenell,

2    K-e-n-n-e-t-h, W-e-n-d-e-l-l, Ravenell, R-a-v, as in Victor,

3    e-n-e-l-l.

4          THE DEPUTY CLERK:  What is your age, sir?

5          THE DEFENDANT:  Sixty.

6          THE DEPUTY CLERK:  What is the year of your birth?

7          THE DEFENDANT:  Fifty-nine.

8          THE DEPUTY CLERK:  Have you been furnished with a

9    copy of the indictment by the United States Attorney?

10          THE DEFENDANT:  Yes, I have.

11          THE DEPUTY CLERK:  Have you read the indictment?

12          THE DEFENDANT:  I have.

13          THE DEPUTY CLERK:  Do you understand the charges

14   which have been placed against you?

15          THE DEFENDANT:  Yes, I do.

16          THE DEPUTY CLERK:  Mr. White, you represent the

17   defendant.  Are you satisfied that the defendant understands

18   what he is charged with?

19          MR. WHITE:  Yes, ma'am.

20          THE DEPUTY CLERK:  Mr. Ravenell, you have been

21   charged in Counts One, Two, and Three of the indictment.  What

22   is your plea?

23          THE DEFENDANT:  I am not guilty and I plead not

24   guilty.

25          THE DEPUTY CLERK:  The plea is not guilty to Counts

1   One, Two, and Three of the indictment.  Is that correct?

2              THE DEFENDANT:  That is correct.

3              THE DEPUTY CLERK:  Thank you, sir.  You may be

4   seated.

5              THE DEFENDANT:  Thank you.

6              THE COURT:  All right, let me -- the customs here are

7   a little different than in Alexandria, but let me have counsel

8   identify themselves just for the record this morning.  Let's

9   have the government go first.

10             MR. HINES:  Good morning, Your Honor.  My name is

11  Derek Hines.  I'm an Assistant U.S. Attorney in Baltimore.  At

12  counsel table with me are Assistant U.S. Attorneys Leo Wise and

13  Matthew Maddox.  And we also have Supervisory Special Agent

14  Gary Shapley from the IRS here as well.

15             AGENT SCHAPLEY:  Good morning.

16             THE COURT:  All right, good morning to each of you.

17       All right.  Mr. White, please introduce your team, sir.

18             MR. WHITE:  Good morning, Your Honor.  Peter White

19  from Schulte, Roth & Zabel, representing Mr. Ravenell.  To my

20  far left are Aislinn Affinito and McKenzie Haynes with my firm.

21  And to my immediate left is Lucius Outlaw who is a professor at

22  Howard and an alumni of the Federal Public Defender in

23  Baltimore.

24             THE COURT:  All right.  Good morning to each of you.

25  And good morning, Mr. Ravenell.

1          THE DEFENDANT:  Good morning, Your Honor.  It's a

2    pleasure to meet you, under different circumstances.

3          THE COURT:  Yes, sir.

4      Well, I'm not sure what you intended we would accomplish

5    this morning.  Normally we would talk about speedy trial.  We

6    would talk about discovery.  I know the parties have been

7    submitting their positions on discovery order and a protective

8    order.  I've read those and will be ordering that the surreply

9    be filed and also granting the government's motion to file

10   their affidavit under seal.

11     I've looked at the surreply, and Mr. White raises a number

12   of questions, including the fact that *Giglio*, *Jencks*, and

13   404(b) evidence he wishes to have sooner.  And given the little

14   bit that I know about the case, that seems to be appropriate.

15     Also, the restraint on the attorneys' ability to possess

16   confidential materials outside of the confines of their home or

17   office is a little restrictive.  So what I would like the

18   parties to work on is to continue to work to try and see if you

19   can reach agreement on those points.

20     I do believe that a protective order is necessary given

21   the information I received in the sealed ex-parte communication

22   and -- but I'll issue a formal order, but I want to see whether

23   the parties can get a little further.  And Mr. White, you

24   indicated that the government may have been assuming that you

25   didn't disagree with the remaining parts of the protective

1    order because you hadn't addressed them specifically, but why

2    don't we try and get together and work through the remaining

3    issues and get me your final positions, and then I'll issue a

4    protective order and discovery order.

5          MR. WHITE:  Your Honor, I'm optimistic we'll be able

6    to work that out.

7          I would ask the Court to consider one thing regarding the

8    protective order.  Obviously, the main point of disagreement on

9    this entire thing was the defendant's own access.  I understand

10   the Court has considered what we have to say about that.  As

11   written, it's very burdensome on our team to have someone from

12   our team sitting with Mr. Ravenell the entire time.  If that's

13   what the Court is inclined to order, I would ask for some form

14   of relief from that.  If he's not allowed to have it, he's not

15   allowed to have it, but having one of our team required to sit

16   with him through the entire process is really incredibly

17   burdensome, and we ask the Court to consider relief from that

18   aspect of it.

19         THE COURT:  I mean, as a practical matter, you're

20   talking about having him be able to sit in your offices and

21   look at documents when you or one of your people are not

22   present at all times?

23         MR. WHITE:  Exactly.  I mean, if that's what the

24   Court is inclined to order -- of course, our first position is

25   he should be allowed, and I understand the Court has considered

1   our position on that.

2           THE COURT:  Yes.

3           MR. WHITE:  But if that is not the case, given that

4   he also has a business he has to run and doesn't live near our

5   office, it's going to be very difficult to coordinate,

6   especially with the added burden of us having to have someone

7   there with him.

8           THE COURT:  Well, you know, there has to be a system

9   in place to make sure that he doesn't take documents and put

10  them in his briefcase and leave with them, and so that's the

11  problem with that.  If you can suggest a mechanism to assure

12  that, then I'm inclined to grant your relief.

13          MR. WHITE:  I can.  What I would suggest is a member

14  of our team or one of our designees -- we may not be in the

15  office at the time that he's there.  One of our designees from

16  the office will check with him as he leaves to make sure that

17  there has been no copies of documents that are taken with him;

18  that any, you know, copies of documents that he has are

19  maintained in our office.

20          THE COURT:  Okay.

21      Mr. Hines, what's your position on that, sir?

22          MR. HINES:  Your Honor, our concern is just with

23  accountability here.  Some of the documents -- actually,

24  frankly, everything we intend to produce will be produced

25  electronically.  So we need to make sure that Mr. Ravenell does

1  not leave with electronic documents on a laptop, that he

2  doesn't take photos with his cell phone of these documents and

3  leave with them.  So there does need to be some measure where

4  he's supervised.

5      Granted, if there is -- we're happy to work with Defense.

6  If these four attorneys are too busy with their schedule and

7  they want to appoint a designee to supervise Mr. Ravenell and

8  be there in a room with him, we think that is an appropriate

9  limitation within the protective order to ensure that there is

10  accountability.

11      THE COURT:  All right.  Well, let's work on that as

12  well.  You seem to be communicating well, and let's continue on

13  that front because just to have an attorney who has, you know,

14  got lots of other work to do to sit, baby-sit, I don't think is

15  necessary if security issues can be addressed in another way.

16      MR. HINES:  We're happy to work on that, a paralegal

17  or legal assistant or something like that.

18      THE COURT:  So, Mr. White, are you requesting a jury

19  trial, sir?

20      MR. WHITE:  Yes, sir.  We're requesting a jury trial

21  and a speedy trial.

22      THE COURT:  All right.  You're asserting speedy trial

23  rights at this time?

24      MR. WHITE:  Asserting speedy trial rights, yes.

25      THE COURT:  Okay.

1          Is it customary for you to set a trial date at arraignment

2    as we do in Alexandria?  I understand, perhaps, that's not the

3    case.

4          MR. HINES:  Yes, Your Honor.

5          MR. WHITE:  That would be our preference.  Frankly,

6    I'm much more familiar with the process in your court than I am

7    in this one, Your Honor, as you probably know, and I'm fine

8    with whatever process the Court is most familiar with or most

9    comfortable.

10          THE COURT:  Mr. Hines, what is your position on

11    speedy trial, sir?

12          MR. HINES:  We think it does make sense to set a

13    trial date now.  We can proceed under a speedy trial if that's

14    what the defense wishes.

15       We have discovery.  We've outlined for Defense how

16    voluminous that discovery is, and so they understand that there

17    are literally thousands of documents that will be produced to

18    them in response to subpoena responses, financial records,

19    reports.  There are consensual recordings.  It is voluminous.

20          And with that in mind, if the defense is prepared to

21    assert their speedy trial right, we will be prepared as well.

22          THE COURT:  Okay.  Well, then let's -- when does

23    speedy trial run, absent any --

24          MR. WHITE:  I think Christmas day or just before it.

25          THE COURT:  Christmas day?

1          MR. WHITE:  I believe so.  It would be December 24th,

2     if my math is right.

3          THE COURT:  Well, I have a civil copyright case set

4     in early December with Mr. Buchanan, who I think you know, and

5     he would be delighted to do anything other than have a

6     three-week copyright case in December.

7          MR. WHITE:  I would be delighted to let him know.

8        And, Your Honor, to be clear, we haven't gotten any

9     discovery yet.  There could be motions.  There were searches of

10    law firms.  We don't yet know what that all looks like.  So

11    perhaps it's more along the lines of setting this as a date

12    maybe -- I want to set a trial date today, but I want to be

13    clear with the Court and the government; we don't know what we

14    don't know yet, and we'll come back to the Court if there is

15    need for additional time, and we will try to do that promptly.

16         THE COURT:  Okay.  Give me a Monday, the second week

17    in January.

18         MR. WHITE:  Your Honor, I apologize.  Unless we are

19    looking at a December date, Mr. Outlaw, who teaches, and other

20    schedules probably push us well into next year, unfortunately,

21    until probably late April given his teaching schedule and the

22    length of this trial is expected to be.  Our preference would

23    be, as I stated, to have a date in December.  That's not

24    practicable, I understand that.

25         THE COURT:  Well, we're not going to be able to get a

1  jury to start a trial in the last week in, you know, December,

2  so that is impractical.  And as I said, I've got this other

3  case -- unless you -- well, how long is it going to take the

4  government to put its case on?

5          MR. HINES:  We think three weeks, Your Honor.  In the

6  speedy trial form, we've indicated three to four weeks for the

7  full length of the trial.  That's our belief.

8          THE COURT:  Okay.  Well, then let's go to early

9  December for now until you get a chance to look at the

10  discovery.

11      Does that work, Mr. Outlaw?

12          MR. OUTLAW:  Yes, Your Honor.

13          THE COURT:  Okay.  Let's go to December 9 at 10

14  o'clock with a jury on your plea of not guilty on

15  Mr. Ravenell's behalf.

16          MR. WHITE:  Your Honor, for the convenience of the

17  Court, given where you're coming from, we are happy to have all

18  proceedings, including the trial, in this courthouse.

19          THE COURT:  Well, that was a question I had.  So

20  there is no objection to proceeding with trial in Greenbelt?

21          MR. WHITE:  Not at all, given where you need to come

22  from.

23          THE COURT:  Mr. Hines?

24          MR. HINES:  Your Honor, just so the Court is aware,

25  all three prosecutors here live and/or work in Baltimore.  The

1   case agents as well live and/or work in Baltimore.  The

2   majority of our witnesses are either in and around Baltimore or

3   represented by counsel who are in Baltimore.  The prosecutors

4   here, we have some -- there's two prosecutors that have some

5   childcare issues, including transportation, that would need to

6   be worked out.

7        It would be our request to have the trial take place in

8   Baltimore given that it is a Baltimore case.  Ancillary

9   proceedings, you know, motions hearing, things like that, it's

10  much easier for us to make accommodations.  We recognize that

11  that's a burden on Your Honor having to travel further to

12  Baltimore, but that is our request.

13       If Your Honor does wish to hold the trial down here, then

14  we would figure out a way to make accommodations, but we do ask

15  that it be in Baltimore.

16            MR. WHITE:  And, Your Honor, just so the record is

17  clear, all of us on our team are Washington, D.C. area

18  residents.  We have childcare issues as well.  Getting to

19  Baltimore from Washington is a lot more burdensome then getting

20  from Baltimore to Greenbelt.

21            THE COURT:  Well, these days, if you get on the

22  Beltway, you're taking your chances regardless of where you're

23  going.  All right.  Well, let's -- I'll think about that a

24  little bit.  The case was indicted in Baltimore and that has

25  some significance, but let me think about it.  But we'll do the

1  ancillary proceedings here.

2      I understand that -- well, let's do this.  Until we get a

3  discovery and protective order, let's begin producing discovery

4  immediately, notwithstanding that for attorneys' eyes only at

5  this stage, and let's not delay because if the case is going to

6  go to trial in December, then we're -- there's going to be a

7  lot of work to get done.

8          MR. HINES:  Your Honor, I would just note that we

9  are -- in light of that, that it's for attorneys' eyes only, we

10  are prepared to make a discovery production today.  We have a

11  flash drive that we will tender to defense counsel.  This

12  contains a substantial majority of the discovery that we

13  anticipate will be produced in this case.

14          THE COURT:  Okay.  How do you normally let the Court

15  know that you've got an issue you would like to address?  I

16  mean, do you do it in a pleading?  Do you do it in a letter?

17  As we just discussed, you know, I want a pleading on the

18  continuing negotiations for the protective order and discovery

19  order; but Mr. White, when you look at the discovery and see

20  the volume, if you want to address the trial or motions days,

21  then how do you customarily proceed?

22          MR. WHITE:  Customarily, Your Honor, it varies by

23  judge but, obviously, either through pleadings or oftentimes we

24  have telephone status conferences at the request of the parties

25  in the District of Maryland, which might be convenient for

1    everybody here, if there is a scheduling issue or a request for

2    a motions date or something like that.

3           THE COURT:  Right.  So the two issues are discovery

4    and how long it's going to take and whether the trial date is a

5    realistic date; and the second one is raising any discovery

6    disputes.  You know, we normally do it on any Friday in

7    Alexandria.  We're prepared to hear any discovery disputes, and

8    we don't want those disputes to wait.  If the parties are

9    unable to work out a way to move forward, then we want the

10   Court advised so that discovery doesn't sit and the parties

11   aren't proceeding forward.

12       So why don't we just agree that any Friday that you all

13   want to raise discovery issues, we can do it by conference call

14   in the afternoons.  Normally we get -- it seems to be a free

15   time for everybody.  And if you are going to raise a discovery

16   dispute, then agree amongst yourselves on a briefing schedule.

17   I don't need a lot of information, but I need to know what's

18   going on.  So why don't we just leave it with those directives

19   and see how that works.

20           MR. HINES:  Understood, Your Honor.

21           MR. WHITE:  That's perfectly acceptable, Your Honor.

22       And what I have envisioned -- and I'm sure Mr. Hines has

23   the same thing in mind -- is we'll try to work with each other

24   and figure out if we can come to an agreement.  If we can't, I

25   would like to be able to tee that up as quickly as possible

1   because I realize, although we're getting information today, my

2   client is very anxious to start helping us and assisting in his

3   defense.  So I would like to do that as quickly as possible and

4   get the Court's resolution.

5           MR. HINES:  In anticipating -- we read the defense

6   letter to us, their request very carefully.  They've asked for

7   a number of items, including electronically stored information

8   to be produced in a certain manner, and we have complied with

9   that wherever possible.  Where we have that ESI processed into

10  coding in a batch that would be more usable for them, we've

11  given them that coding; and we've also -- anticipating that

12  there will be a protective order issued, the full volume of

13  discovery that is produced in this initial batch is unredacted.

14  So we're hoping that that minimizes or prevents discovery

15  disputes.

16          THE COURT:  And it's searchable?  Is that what you

17  said?

18          MR. HINES:  That's correct.  The majority of the docs

19  -- anything that we have that is searchable has been produced

20  to the defense in that same format that it can be searchable as

21  well.

22          THE COURT:  All right, good.

23      All right, what else do you want to talk about this

24  morning?

25          MR. WHITE:  One moment, Your Honor.

1          THE COURT:  Yes, sir.

2      (Brief pause.)

3          MR. WHITE:  No, Your Honor.  Thank you.

4          MR. HINES:  Nothing from us either.  Thank you, Your

5  Honor.

6          THE COURT:  All right.  Well, again, I appreciate

7  your coming to Greenbelt, and we'll do our hearings here in

8  Greenbelt leading up to trial, and I'll get you out an order on

9  where trial will be located.

10      I'm ready to address the protective order whenever you all

11  can get together and, hopefully, maybe in the next couple of

12  days or beginning of next week can get that finalized so we can

13  move forward.

14          MR. WHITE:  I would hope that we could get -- we

15  could at least focus on what issues remain by Friday and then,

16  perhaps, we can get on the phone with the Court to advise the

17  Court of what those issues are and where we are if we're not

18  able to come to complete resolution.

19          THE COURT:  Okay.  All right, that's fine.

20      The other thing I guess was where the documents can be

21  taken, and we didn't specifically address that; but, you know,

22  if documents are necessary for witness preparation, et cetera,

23  your restrictions are I think a little bit narrower than

24  necessary.

25          MR. HINES:  Understood, Your Honor.  And if counsel

1    is going on vacation or wants to take the documents with them,

2    we can work on that language to make sure that they can do

3    that.

4              THE COURT:  Okay.

5        I may or may not be available Friday, but I'll be

6    available Monday if there's something we need to talk about.

7    Okay?

8              MR. WHITE:  We will look for that date then.

9              THE COURT:  All right.  Thank you, Counsel.

10             MR. WHITE:  Thank you, Your Honor.

11             MR. HINES:  Thank you.

12             THE DEPUTY CLERK:  All rise.  This Honorable Court

13   now stands adjourned.

14

15        (The proceedings were adjourned at 11:26 A.M.)

16

17        I, Marlene Martin-Kerr, FCRR, RPR, CRR, RMR, certify that

18   the foregoing is a correct transcript of the stenographic

19   record of proceedings in the above-entitled matter.

20

21                        Dated this 28th day of October, 2019.

22

23                             /s/
                         Marlene Martin-Kerr
                      Federal Official Court Reporter

24

25

**/**

**/s** [1] - 18:22

**1**

**10** [1] - 12:13
**11:00** [1] - 1:10
**11:26** [1] - 18:15
**1351** [1] - 2:4
**15TH** [1] - 2:8
**16** [1] - 1:10

**2**

**200** [1] - 1:23
**20005** [1] - 2:9
**20012** [1] - 2:5
**2019** [2] - 1:10, 18:21
**202** [2] - 2:5, 2:9
**20770** [1] - 1:23
**209-4800** [1] - 1:17
**21201** [1] - 1:17
**24th** [1] - 11:1
**28th** [1] - 18:21

**3**

**301)344-3499** [1] - 1:24
**36** [1] - 1:16

**4**

**404(b** [1] - 6:13
**410** [1] - 1:17

**6**

**6500** [1] - 1:23

**7**

**729-7486** [1] - 2:9

**8**

**800** [1] - 2:8

**9**

**9** [1] - 12:13
**901** [1] - 2:8
**997-3452** [1] - 2:5

**A**

**A.M** [2] - 1:10, 18:15
**ability** [1] - 6:15

**able** [5] - 7:5, 7:20, 11:25, 15:25, 17:18
**above-entitled** [1] - 18:19
**absent** [1] - 10:23
**acceptable** [1] - 15:21
**access** [1] - 7:9
**accommodations** [2] - 13:10, 13:14
**accomplish** [1] - 6:4
**accountability** [2] - 8:23, 9:10
**added** [1] - 8:6
**additional** [1] - 11:15
**address** [4] - 14:15, 14:20, 17:10, 17:21
**addressed** [2] - 7:1, 9:15
**adjourned** [2] - 18:13, 18:15
**advise** [1] - 17:16
**advised** [1] - 15:10
**affidavit** [1] - 6:10
**AFFINITO** [1] - 2:7
**Affinito** [1] - 5:20
**affirm** [1] - 3:18
**afternoons** [1] - 15:14
**age** [1] - 4:4
**Agent** [2] - 1:19, 5:13
**AGENT** [1] - 5:15
**agents** [1] - 13:1
**agree** [2] - 15:12, 15:16
**agreement** [2] - 6:19, 15:24
**Aided** [1] - 1:20
**Aislinn** [1] - 5:20
**AISLINN** [1] - 2:7
**Alexandria** [3] - 5:7, 10:2, 15:7
**allowed** [3] - 7:14, 7:15, 7:25
**ALSO** [1] - 1:19
**alumni** [1] - 5:22
**AMERICA** [1] - 1:3
**Ancillary** [1] - 13:8
**ancillary** [1] - 14:1
**anticipate** [1] - 14:13
**anticipating** [2] - 16:5, 16:11
**anxious** [1] - 16:2
**apologize** [1] - 11:18
**appoint** [1] - 9:7
**appreciate** [1] - 17:6
**appropriate** [2] - 6:14, 9:8
**April** [1] - 11:21
**area** [1] - 13:17
**ARRAIGNMENT** [1] -

1:9
**arraignment** [2] - 3:9, 10:1
**aspect** [1] - 7:18
**assert** [1] - 10:21
**asserting** [2] - 9:22, 9:24
**Assistant** [2] - 5:11, 5:12
**assistant** [1] - 9:17
**assisting** [1] - 16:2
**assuming** [1] - 6:24
**assure** [1] - 8:11
**attorney** [1] - 9:13
**Attorney** [2] - 4:9, 5:11
**ATTORNEY** [1] - 1:14
**Attorneys** [1] - 5:12
**attorneys** [1] - 9:6
**attorneys'** [3] - 6:15, 14:4, 14:9
**available** [3] - 3:8, 18:5, 18:6
**aware** [1] - 12:24

**B**

**baby** [1] - 9:14
**baby-sit** [1] - 9:14
**BALTIMORE** [1] - 1:17
**Baltimore** [13] - 5:11, 5:23, 12:25, 13:1, 13:2, 13:3, 13:8, 13:12, 13:15, 13:19, 13:20, 13:24
**batch** [2] - 16:10, 16:13
**BEFORE** [1] - 1:9
**begin** [1] - 14:3
**beginning** [1] - 17:12
**behalf** [1] - 12:15
**belief** [1] - 12:7
**Beltway** [1] - 13:22
**birth** [1] - 4:6
**bit** [3] - 6:14, 13:24, 17:23
**Brief** [1] - 17:2
**briefcase** [1] - 8:10
**briefing** [1] - 15:16
**Buchanan** [1] - 11:4
**burden** [2] - 8:6, 13:11
**burdensome** [3] - 7:11, 7:17, 13:19
**business** [1] - 8:4
**busy** [1] - 9:6
**BY** [3] - 1:15, 2:4, 2:7

**C**

**carefully** [1] - 16:6
**case** [12] - 6:14, 8:3, 10:3, 11:3, 11:6, 12:3, 12:4, 13:1, 13:8, 13:24, 14:5, 14:13
**CASE** [1] - 1:5
**cell** [1] - 9:2
**certain** [1] - 16:8
**certify** [1] - 18:17
**cetera** [1] - 17:22
**chance** [1] - 12:9
**chances** [1] - 13:22
**charged** [2] - 4:18, 4:21
**charges** [1] - 4:13
**CHARLES** [1] - 1:16
**check** [1] - 8:16
**CHERRYWOOD** [1] - 1:23
**childcare** [2] - 13:5, 13:18
**Christmas** [2] - 10:24, 10:25
**circumstances** [1] - 6:2
**civil** [1] - 11:3
**clear** [3] - 11:8, 11:13, 13:17
**CLERK** [14] - 3:3, 3:14, 3:17, 3:23, 4:4, 4:6, 4:8, 4:11, 4:13, 4:16, 4:20, 4:25, 5:3, 18:12
**client** [1] - 16:2
**coding** [2] - 16:10, 16:11
**comfortable** [1] - 10:9
**coming** [2] - 12:17, 17:7
**communicating** [1] - 9:12
**communication** [1] - 6:21
**complete** [1] - 17:18
**complied** [2] - 3:16, 16:8
**Computer** [1] - 1:20
**Computer-Aided** [1] - 1:20
**concern** [1] - 8:22
**conference** [1] - 15:13
**conferences** [1] - 14:24
**confidential** [1] - 6:16
**confines** [1] - 6:16
**consensual** [1] -

10:19
**consider** [2] - 7:7, 7:17
**considered** [2] - 7:10, 7:25
**contains** [1] - 14:12
**continue** [2] - 6:18, 9:12
**continued** [1] - 2:1
**continuing** [1] - 14:18
**convenience** [1] - 12:16
**convenient** [1] - 14:25
**coordinate** [1] - 8:5
**copies** [2] - 8:17, 8:18
**copy** [1] - 4:9
**copyright** [2] - 11:3, 11:6
**correct** [4] - 5:1, 5:2, 16:18, 18:18
**Counsel** [1] - 18:9
**counsel** [5] - 5:7, 5:12, 13:3, 14:11, 17:25
**Counts** [2] - 4:21, 4:25
**couple** [1] - 17:11
**course** [1] - 7:24
**COURT** [36] - 1:1, 1:22, 3:7, 3:13, 5:6, 5:16, 5:24, 6:3, 7:19, 8:2, 8:8, 8:20, 9:11, 9:18, 9:22, 9:25, 10:10, 10:22, 10:25, 11:3, 11:16, 11:25, 12:8, 12:13, 12:19, 12:23, 13:21, 14:14, 15:3, 16:16, 16:22, 17:1, 17:6, 17:19, 18:4, 18:9
**court** [1] - 10:6
**Court** [20] - 3:2, 3:4, 3:19, 7:7, 7:10, 7:13, 7:17, 7:24, 7:25, 10:8, 11:13, 11:14, 12:17, 12:24, 14:14, 15:10, 17:16, 17:17, 18:12, 18:23
**Court's** [1] - 16:4
**courthouse** [1] - 12:18
**CRIMINAL** [1] - 1:5
**CRR** [2] - 1:22, 18:17
**customarily** [2] - 14:21, 14:22
**customary** [1] - 10:1
**customs** [1] - 5:6

**D**

**D.C** [1] - 13:17

**date** [10] - 10:1, 10:13, 11:11, 11:12, 11:19, 11:23, 15:2, 15:4, 15:5, 18:8
**Dated** [1] - 18:21
**days** [3] - 13:21, 14:20, 17:12
**DC** [2] - 2:5, 2:9
**December** [9] - 11:1, 11:4, 11:6, 11:19, 11:23, 12:1, 12:9, 12:13, 14:6
**declare** [1] - 3:17
**DEFENDANT** [12] - 2:2, 3:22, 4:1, 4:5, 4:7, 4:10, 4:12, 4:15, 4:23, 5:2, 5:5, 6:1
**defendant** [3] - 3:16, 4:17
**Defendant** [1] - 1:7
**defendant's** [1] - 7:9
**Defender** [1] - 5:22
**Defense** [2] - 9:5, 10:15
**defense** [6] - 10:14, 10:20, 14:11, 16:3, 16:5, 16:20
**delay** [1] - 14:5
**delighted** [2] - 11:5, 11:7
**DEPUTY** [14] - 3:3, 3:14, 3:17, 3:23, 4:4, 4:6, 4:8, 4:11, 4:13, 4:16, 4:20, 4:25, 5:3, 18:12
**Derek** [1] - 5:11
**DEREK** [1] - 1:15
**designee** [1] - 9:7
**designees** [2] - 8:14, 8:15
**different** [2] - 5:7, 6:2
**difficult** [1] - 8:5
**directives** [1] - 15:18
**disagree** [1] - 6:25
**disagreement** [1] - 7:8
**discovery** [21] - 6:6, 6:7, 7:4, 10:15, 10:16, 11:9, 12:10, 14:3, 14:10, 14:12, 14:18, 14:19, 15:3, 15:5, 15:7, 15:10, 15:13, 15:15, 16:13, 16:14
**discussed** [1] - 14:17
**dispute** [1] - 15:16
**disputes** [4] - 15:6, 15:7, 15:8, 16:15
**DISTRICT** [3] - 1:1, 1:1, 1:10
**District** [3] - 3:4, 14:25

**DIVISION** [1] - 1:2
**docs** [1] - 16:18
**documents** [11] - 7:21, 8:9, 8:17, 8:18, 8:23, 9:1, 9:2, 10:17, 17:20, 17:22, 18:1
**done** [1] - 14:7
**down** [1] - 13:13
**drive** [1] - 14:11

**E**

**e-n-e-l-l** [1] - 4:3
**early** [2] - 11:4, 12:8
**easier** [1] - 13:10
**either** [3] - 13:2, 14:23, 17:4
**electronic** [1] - 9:1
**electronically** [2] - 8:25, 16:7
**ensure** [1] - 9:9
**entire** [3] - 7:9, 7:12, 7:16
**entitled** [1] - 18:19
**envisioned** [1] - 15:22
**ESI** [1] - 16:9
**especially** [1] - 8:6
**ESQUIRE** [7] - 1:15, 1:15, 1:16, 2:4, 2:7, 2:7, 2:8
**et** [1] - 17:22
**evidence** [1] - 6:13
**ex** [1] - 6:21
**ex-parte** [1] - 6:21
**exactly** [1] - 7:23
**expected** [1] - 11:22
**eyes** [2] - 14:4, 14:9

**F**

**fact** [1] - 6:12
**familiar** [2] - 10:6, 10:8
**far** [1] - 5:20
**FCRR** [2] - 1:22, 18:17
**Federal** [2] - 5:22, 18:23
**FEDERAL** [1] - 1:22
**fifty** [1] - 4:7
**fifty-nine** [1] - 4:7
**figure** [2] - 13:14, 15:24
**file** [1] - 6:9
**filed** [1] - 6:9
**final** [1] - 7:3
**finalized** [1] - 17:12
**financial** [1] - 10:18
**fine** [2] - 10:7, 17:19
**firm** [1] - 5:20

**firms** [1] - 11:10
**first** [2] - 5:9, 7:24
**flash** [1] - 14:11
**FLOOR** [1] - 1:16
**focus** [1] - 17:15
**FOR** [3] - 1:1, 1:13, 2:2
**foregoing** [1] - 18:18
**form** [2] - 7:13, 12:6
**formal** [1] - 6:22
**format** [1] - 16:20
**forward** [3] - 15:9, 15:11, 17:13
**four** [2] - 9:6, 12:6
**FOURTH** [1] - 1:16
**frankly** [2] - 8:24, 10:5
**free** [1] - 15:14
**Friday** [4] - 15:6, 15:12, 17:15, 18:5
**front** [1] - 9:13
**full** [4] - 3:24, 12:7, 16:12
**furnished** [1] - 4:8

**G**

**Gary** [2] - 1:19, 5:14
**Giglio** [1] - 6:12
**given** [8] - 6:13, 6:20, 8:3, 11:21, 12:17, 12:21, 13:8, 16:11
**government** [4] - 5:9, 6:24, 11:13, 12:4
**government's** [1] - 6:9
**grant** [1] - 8:12
**granted** [1] - 9:5
**granting** [1] - 6:9
**Greenbelt** [5] - 3:9, 12:20, 13:20, 17:7, 17:8
**GREENBELT** [2] - 1:11, 1:23
**guess** [1] - 17:20
**guilty** [4] - 4:23, 4:24, 4:25, 12:14

**H**

**hand** [2] - 3:15, 3:23
**happy** [3] - 9:5, 9:16, 12:17
**HAYNES** [1] - 2:7
**Haynes** [1] - 5:20
**hear** [1] - 15:7
**hearing** [1] - 13:9
**hearings** [1] - 17:7
**helping** [1] - 16:2
**HINES** [16] - 1:15, 3:12, 5:10, 8:22,

9:16, 10:4, 10:12, 12:5, 12:24, 14:8, 15:20, 16:5, 16:18, 17:4, 17:25, 18:11
**Hines** [5] - 5:11, 8:21, 10:10, 12:23, 15:22
**hold** [1] - 13:13
**home** [1] - 6:16
**Honor** [27] - 3:11, 3:12, 5:10, 5:18, 6:1, 7:5, 8:22, 10:4, 10:7, 11:8, 11:18, 12:5, 12:12, 12:16, 12:24, 13:11, 13:13, 13:16, 14:8, 14:22, 15:20, 15:21, 16:25, 17:3, 17:5, 17:25, 18:10
**HONORABLE** [1] - 1:9
**Honorable** [2] - 3:5, 18:12
**hope** [1] - 17:14
**hopefully** [1] - 17:11
**hoping** [1] - 16:14
**Howard** [1] - 5:22
**HUGH** [1] - 2:8

**I**

**identify** [1] - 5:8
**immediate** [1] - 5:21
**immediately** [1] - 14:4
**impractical** [1] - 12:2
**IN** [1] - 1:1
**inclined** [2] - 7:13, 7:24, 8:12
**including** [4] - 6:12, 12:18, 13:5, 16:7
**incredibly** [1] - 7:16
**indicated** [2] - 6:24, 12:6
**indicted** [1] - 13:24
**indictment** [4] - 4:9, 4:11, 4:21, 5:1
**information** [5] - 3:19, 6:21, 15:17, 16:1, 16:7
**initial** [1] - 16:13
**intend** [1] - 8:24
**intended** [1] - 6:4
**introduce** [1] - 5:17
**IRS** [2] - 1:19, 5:14
**issue** [4] - 6:22, 7:3, 14:15, 15:1
**issued** [1] - 16:12
**issues** [8] - 7:3, 9:15, 13:5, 13:18, 15:3, 15:13, 17:15, 17:17
**items** [1] - 16:7

**J**

**JAMES** [1] - 1:16
**January** [1] - 11:17
**Jencks** [1] - 6:12
**JOSEPH** [1] - 1:15
**judge** [1] - 14:23
**JUDGE** [1] - 1:10
**JUNIPER** [1] - 2:4
**jury** [4] - 9:18, 9:20, 12:1, 12:14

**K**

**Kenneth** [1] - 4:1
**KENNETH** [2] - 1:6, 4:2
**Kerr** [2] - 18:17, 18:23
**KERR** [1] - 1:22

**L**

**LANE** [1] - 1:23
**language** [1] - 18:2
**laptop** [1] - 9:1
**last** [1] - 12:1
**late** [1] - 11:21
**law** [1] - 11:10
**leading** [1] - 17:8
**least** [1] - 17:15
**leave** [4] - 8:10, 9:1, 9:3, 15:18
**leaves** [1] - 8:16
**left** [2] - 5:20, 5:21
**legal** [1] - 9:17
**length** [2] - 11:22, 12:7
**LEO** [1] - 1:15
**Leo** [1] - 5:12
**letter** [2] - 14:16, 16:6
**LIAM** [1] - 1:9
**Liam** [1] - 3:5
**light** [1] - 14:9
**limitation** [1] - 9:9
**lines** [1] - 11:11
**literally** [1] - 10:17
**live** [3] - 8:4, 12:25, 13:1
**LLP** [1] - 2:6
**LO-19-0449** [1] - 1:5
**located** [1] - 17:9
**look** [4] - 7:21, 12:9, 14:19, 18:8
**looked** [1] - 6:11
**looking** [1] - 11:19
**looks** [1] - 11:10
**lower** [1] - 3:23
**Lucius** [1] - 5:21
**LUCIUS** [1] - 2:4

## M

ma'am [1] - 4:19
MADDOX [1] - 1:16
Maddox [1] - 5:13
main [1] - 7:8
maintained [1] - 8:19
majority [3] - 13:2, 14:12, 16:18
manner [1] - 16:8
Marlene [2] - 18:17, 18:23
MARLENE [1] - 1:22
Martin [2] - 18:17, 18:23
MARTIN [1] - 1:22
Martin-Kerr [2] - 18:17, 18:23
MARTIN-KERR [1] - 1:22
Maryland [2] - 3:5, 14:25
MARYLAND [4] - 1:1, 1:11, 1:17, 1:23
materials [1] - 6:16
math [1] - 11:2
matter [3] - 3:19, 7:19, 18:19
Matthew [1] - 5:13
MATTHEW [1] - 1:16
McKenzie [2] - 2:7, 5:20
mean [3] - 7:19, 7:23, 14:16
measure [1] - 9:3
Mechanical [1] - 1:20
mechanism [1] - 8:11
meet [1] - 6:2
member [1] - 8:13
might [1] - 14:25
mind [2] - 10:20, 15:23
minimizes [1] - 16:14
moment [1] - 16:25
Monday [2] - 11:16, 18:6
morning [11] - 3:9, 5:8, 5:10, 5:15, 5:16, 5:18, 5:24, 5:25, 6:1, 6:5, 16:24
most [2] - 10:8
motion [1] - 6:9
motions [4] - 11:9, 13:9, 14:20, 15:2
move [2] - 15:9, 17:13
MR [40] - 3:11, 3:12, 4:19, 5:10, 5:18, 7:5, 7:23, 8:3, 8:13, 8:22, 9:16, 9:20, 9:24,

## N

name [3] - 3:24, 5:10
narrower [1] - 17:23
near [1] - 8:4
necessary [4] - 6:20, 9:15, 17:22, 17:24
need [8] - 8:25, 9:3, 11:15, 12:21, 13:5, 15:17, 18:6
negotiations [1] - 14:18
next [3] - 11:20, 17:11, 17:12
nine [1] - 4:7
NO [1] - 1:5
normally [4] - 6:5, 14:14, 15:6, 15:14
note [1] - 14:8
nothing [2] - 3:21, 17:4
notwithstanding [1] - 14:4
number [2] - 6:11, 16:7
NW [2] - 2:4, 2:8

## O

o'clock [1] - 12:14
O'GRADY [1] - 1:9
O'Grady [1] - 3:5
objection [1] - 12:20
obviously [2] - 7:8, 14:23
OCTOBER [1] - 1:10
October [1] - 18:21
OF [4] - 1:1, 1:3, 1:9, 1:14
office [5] - 6:17, 8:5, 8:15, 8:16, 8:19
OFFICE [1] - 1:14
offices [1] - 7:20
Official [1] - 18:23
OFFICIAL [1] - 1:22
oftentimes [1] - 14:23
One [2] - 4:21, 5:1
one [8] - 7:7, 7:15, 7:21, 8:14, 8:15, 10:7, 15:5, 16:25

optimistic [1] - 7:5
Order [1] - 3:2
order [6] - 6:7, 6:8, 6:20, 6:22, 7:1, 7:4, 7:8, 7:13, 7:24, 9:9, 14:3, 14:18, 14:19, 16:12, 17:8, 17:10
ordering [1] - 6:8
Outlaw [3] - 5:21, 11:19, 12:11
OUTLAW [3] - 2:3, 2:4, 12:12
outlined [1] - 10:15
outside [1] - 6:16
own [1] - 7:9

## P

paralegal [1] - 9:16
parte [1] - 6:21
parties [6] - 6:6, 6:18, 6:23, 14:24, 15:8, 15:10
parts [1] - 6:25
pause [1] - 17:2
penalties [1] - 3:18
pending [1] - 3:20
people [1] - 7:21
perfectly [1] - 15:21
perhaps [3] - 10:2, 11:11, 17:16
perjury [1] - 3:18
PETER [1] - 2:8
Peter [1] - 5:18
phone [2] - 9:2, 17:16
photos [1] - 9:2
place [2] - 8:9, 13:7
placed [1] - 4:14
Plaintiff [1] - 1:4
PLAINTIFF [1] - 1:13
plea [3] - 4:22, 4:25, 12:14
plead [1] - 4:23
pleading [2] - 14:16, 14:17
pleadings [1] - 14:23
pleasure [1] - 6:2
PLLC [1] - 2:3
point [1] - 7:8
points [1] - 6:19
position [4] - 7:24, 8:1, 8:21, 10:10
positions [2] - 6:7, 7:3
possess [1] - 6:15
possible [3] - 15:25, 16:3, 16:9
practicable [1] - 11:24
practical [1] - 7:19
preference [2] - 10:5,

11:22
preparation [1] - 17:22
prepared [4] - 10:20, 10:21, 14:10, 15:7
PRESENT [1] - 1:19
present [1] - 7:22
presiding [1] - 3:6
prevents [1] - 16:14
problem [1] - 8:11
proceed [4] - 3:10, 3:13, 10:13, 14:21
proceeding [2] - 12:20, 15:11
Proceedings [1] - 1:20
proceedings [5] - 12:18, 13:9, 14:1, 18:15, 18:19
PROCEEDINGS [1] - 1:9
process [3] - 7:16, 10:6, 10:8
processed [1] - 16:9
produce [1] - 8:24
Produced [1] - 1:20
produced [6] - 8:24, 10:17, 14:13, 16:8, 16:13, 16:19
producing [1] - 14:3
production [1] - 14:10
professor [1] - 5:21
promise [1] - 3:17
promptly [1] - 11:15
prosecutors [3] - 12:25, 13:3, 13:4
protective [10] - 6:7, 6:20, 6:25, 7:4, 7:8, 9:9, 14:3, 14:18, 16:12, 17:10
Public [1] - 5:22
push [1] - 11:20
put [2] - 8:9, 12:4

## Q

questions [1] - 6:12
quickly [2] - 15:25, 16:3

## R

raise [3] - 3:14, 15:13, 15:15
raises [1] - 6:11
raising [1] - 15:5
RAV [1] - 4:2
RAVENELL [1] - 1:6
Ravenell [8] - 4:1, 4:2,

4:20, 5:19, 5:25, 7:12, 8:25, 9:7
Ravenell's [1] - 12:15
reach [1] - 6:19
read [3] - 4:11, 6:8, 16:5
ready [2] - 3:10, 17:10
realistic [1] - 15:5
realize [1] - 16:1
really [1] - 7:16
received [1] - 6:21
recognize [1] - 13:10
record [4] - 3:25, 5:8, 13:16, 18:19
Recorded [1] - 1:20
recordings [1] - 10:19
records [1] - 10:18
regarding [1] - 7:7
regardless [1] - 13:22
relief [3] - 7:14, 7:17, 8:12
remain [1] - 17:15
remaining [2] - 6:25, 7:2
REPORTER [1] - 1:22
Reporter [1] - 18:23
reports [1] - 10:19
represent [1] - 4:16
represented [1] - 13:3
representing [1] - 5:19
request [3] - 13:7, 13:12, 14:24, 15:1, 16:6
requesting [2] - 9:18, 9:20
required [1] - 7:15
residents [1] - 13:18
resolution [2] - 16:4, 17:18
response [1] - 10:18
responses [1] - 10:18
restraint [1] - 6:15
restrictions [1] - 17:23
restrictive [1] - 6:17
rights [2] - 9:23, 9:24
rise [2] - 3:3, 18:12
RMR [2] - 1:22, 18:17
room [1] - 9:8
ROTH [1] - 2:6
Roth [1] - 5:19
RPR [2] - 1:22, 18:17
run [2] - 8:4, 10:23

## S

satisfied [1] - 4:17
SCHAPLEY [1] - 5:15
schedule [3] - 9:6,

11:21, 15:16
**schedules** [1] - 11:20
**scheduling** [1] - 15:1
**Schulte** [1] - 5:19
**SCHULTE** [1] - 2:6
**seal** [1] - 6:10
**sealed** [1] - 6:21
**searchable** [3] -
  16:16, 16:19, 16:20
**searches** [1] - 11:9
**seated** [2] - 3:7, 5:4
**second** [2] - 11:16,
  15:5
**security** [1] - 9:15
**see** [4] - 6:18, 6:22,
  14:19, 15:19
**seem** [1] - 9:12
**sense** [1] - 10:12
**session** [1] - 3:5
**set** [4] - 10:1, 10:12,
  11:3, 11:12
**setting** [1] - 11:11
**shall** [1] - 3:20
**Shapley** [2] - 1:19,
  5:14
**significance** [1] -
  13:25
**sit** [5] - 7:15, 7:20,
  9:14, 15:10
**sitting** [1] - 7:12
**sixty** [1] - 4:5
**solemnly** [1] - 3:17
**someone** [2] - 7:11,
  8:6
**sooner** [1] - 6:13
**SOUTH** [1] - 1:16
**SOUTHERN** [1] - 1:2
**Special** [2] - 1:19,
  5:13
**specifically** [2] - 7:1,
  17:21
**speedy** [9] - 6:5, 9:21,
  9:22, 9:24, 10:11,
  10:13, 10:21, 10:23,
  12:6
**spell** [1] - 3:24
**stage** [1] - 14:5
**stand** [1] - 3:14
**stands** [1] - 18:13
**start** [2] - 12:1, 16:2
**state** [1] - 3:24
**STATES** [4] - 1:1, 1:3,
  1:10, 1:14
**States** [2] - 3:4, 4:9
**status** [1] - 14:24
**STE** [1] - 1:23
**stenographic** [1] -
  18:18
**Stenography** [1] -

1:20
**stored** [1] - 16:7
**STREET** [3] - 1:16,
  2:4, 2:8
**submitting** [1] - 6:7
**subpoena** [1] - 10:18
**substantial** [1] - 14:12
**suggest** [2] - 8:11,
  8:13
**SUITE** [1] - 2:8
**supervise** [1] - 9:7
**supervised** [1] - 9:4
**Supervisory** [2] -
  1:19, 5:13
**surreply** [2] - 6:8, 6:11
**system** [1] - 8:8

## T

**table** [1] - 5:12
**teaches** [1] - 11:19
**teaching** [1] - 11:21
**team** [6] - 5:17, 7:11,
  7:12, 7:15, 8:14,
  13:17
**tee** [1] - 15:25
**telephone** [1] - 14:24
**tender** [1] - 14:11
**THE** [65] - 1:1, 1:1,
  1:9, 1:13, 1:14, 2:2,
  3:3, 3:7, 3:13, 3:14,
  3:17, 3:22, 3:23, 4:1,
  4:4, 4:5, 4:6, 4:7,
  4:8, 4:10, 4:11, 4:12,
  4:13, 4:15, 4:16,
  4:20, 4:23, 4:25, 5:2,
  5:3, 5:5, 5:6, 5:16,
  5:24, 6:1, 6:3, 7:19,
  8:2, 8:8, 8:20, 9:11,
  9:18, 9:22, 9:25,
  10:10, 10:22, 10:25,
  11:3, 11:16, 11:25,
  12:8, 12:13, 12:19,
  12:23, 13:21, 14:14,
  15:3, 16:16, 16:22,
  17:1, 17:6, 17:19,
  18:4, 18:9, 18:12
**themselves** [1] - 5:8
**they've** [1] - 16:6
**thousands** [1] - 10:17
**Three** [2] - 4:21, 5:1
**three** [4] - 11:6, 12:5,
  12:6, 12:25
**three-week** [1] - 11:6
**today** [3] - 11:12,
  14:10, 16:1
**together** [2] - 7:2,
  17:11
**transcript** [1] - 18:18
**TRANSCRIPT** [1] - 1:9

**Transcription** [1] -
  1:20
**transportation** [1] -
  13:5
**travel** [1] - 13:11
**trial** [26] - 6:5, 9:19,
  9:20, 9:21, 9:22,
  9:24, 10:1, 10:11,
  10:13, 10:21, 10:23,
  11:12, 11:22, 12:1,
  12:6, 12:7, 12:18,
  12:20, 13:7, 13:13,
  14:6, 14:20, 15:4,
  17:8, 17:9
**truth** [3] - 3:20, 3:21
**try** [4] - 6:18, 7:2,
  11:15, 15:23
**two** [2] - 13:4, 15:3
**Two** [2] - 4:21, 5:1

## U

**U.S** [2] - 5:11, 5:12
**unable** [1] - 15:9
**under** [4] - 3:18, 6:2,
  6:10, 10:13
**understood** [2] -
  15:20, 17:25
**unfortunately** [1] -
  11:20
**UNITED** [4] - 1:1, 1:3,
  1:10, 1:14
**United** [2] - 3:4, 4:9
**unless** [2] - 11:18,
  12:3
**unredacted** [1] - 16:13
**up** [2] - 15:25, 17:8
**usable** [1] - 16:10

## V

**vacation** [1] - 18:1
**varies** [1] - 14:22
**Victor** [1] - 4:2
**volume** [2] - 14:20,
  16:12
**voluminous** [2] -
  10:16, 10:19
**vs** [1] - 1:5

## W

**wait** [1] - 15:8
**wants** [1] - 18:1
**Washington** [2] -
  13:17, 13:19
**WASHINGTON** [2] -
  2:5, 2:9
**WEDNESDAY** [1] -
  1:10

**week** [4] - 11:6, 11:16,
  12:1, 17:12
**weeks** [2] - 12:5, 12:6
**Wendell** [1] - 4:1
**WENDELL** [2] - 1:6,
  4:2
**WHITE** [25] - 2:8, 3:11,
  4:19, 5:18, 7:5, 7:23,
  8:3, 8:13, 9:20, 9:24,
  10:5, 10:24, 11:1,
  11:7, 11:18, 12:16,
  12:21, 13:16, 14:22,
  15:21, 16:25, 17:3,
  17:14, 18:8, 18:10
**white** [6] - 4:16, 5:17,
  6:11, 6:23, 9:18,
  14:19
**White** [1] - 5:18
**WISE** [1] - 1:15
**Wise** [1] - 5:12
**wish** [1] - 13:13
**wishes** [2] - 6:13,
  10:14
**witness** [1] - 17:22
**witnesses** [1] - 13:2
**works** [1] - 15:19
**written** [1] - 7:11

## Y

**year** [2] - 4:6, 11:20
**yourselves** [2] - 3:8,
  15:16

## Z

**ZABEL** [1] - 2:6
**Zabel** [1] - 5:19