UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| United States of America | * | |
| | * | Case No.: 1:19-cr-00449 |
| v. | * | |
| | * | |
| Kenneth Ravenell | * | |
| | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**DEFENDANT'S MOTION TO COMPEL RULE 16 AND *BRADY* MATERIALS**

Defendant Kenneth Ravenell, by and through undersigned counsel, respectfully moves this Court pursuant to Federal Rule of Criminal Procedure 16 as well as *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny, for documents and information possessed by the government that are material and/or favorable to Mr. Ravenell's defense. Specifically, Mr. Ravenell seeks *Brady* material related to R.B.'s ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮ (the "§ 2255 Petition"). *See* Ex. A, § 2255 Petition, ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Mr. Ravenell also seeks *Brady* material related to cooperators, witnesses, and co-conspirators in connection with the government's investigations and prosecutions of both R.B. and Mr. Ravenell.

**BACKGROUND**

On September 18, 2019, the government charged Mr. Ravenell with RICO, money laundering, and drug distribution conspiracies. *See* Indictment, *United States v. Ravenell*, No. 1:19-cr-00449 (D. Md. Sept. 24, 2019), ECF No. 1. The government alleges that all three conspiracies began more than a decade ago and ended more than five years ago. *Id.* Count 1 ¶ 6, Count 2 ¶ 1, Count 3 ¶ 1. The alleged conduct involved numerous co-conspirators; the RICO conspiracy alone alleges at least sixteen unnamed co-conspirators, *see id.* Count 1 ¶ 6. The

1

government's investigation involved numerous cooperators, and there are currently thirty-nine individuals on the government's potential witness list.

R.B. is a central figure in the Indictment in this case. *See generally id.* The government alleges that Mr. Ravenell's legal counsel and role as R.B.'s attorney furthered R.B.'s alleged drug trafficking organization by "laundering money for R.B. and his associates" and "obstructing justice in order to protect R.B. and his associates." *Id.* Count 1 ¶¶ 5b-c. The government also alleges that Mr. Ravenell "instructed" and "coached" co-conspirators on methods of evading law enforcement, "arranged the legal representation" for co-conspirators, and "served as an intermediary" between arrested and unarrested members of the conspiracy. *Id*. Count 1 ¶¶ 5a, 7, 16b-c, 16h.

R.B. was indicted by federal prosecutors in Maryland on ▓▓▓▓▓, and charged with conspiracy to distribute and possession with intent to distribute cocaine and marijuana, and conspiracy to launder money. *See generally* Indictment, ▓▓▓▓▓; Second Superseding Indictment, ▓▓▓▓▓. R.B. pled guilty to both counts of the Second Superseding Indictment on ▓▓▓▓▓. *See* ▓▓▓▓▓ R.B. was sentenced to twenty-six years in prison on ▓▓▓▓▓. *See* Judgment, ▓▓▓▓▓. R.B. filed his § 2255 Petition on ▓▓▓▓▓. *See* Ex. A, § 2255 Petition, ▓▓▓▓▓. In his § 2255 Petition, R.B. alleges, among other things, that two of his prior attorneys – ▓▓▓▓▓ and M.L. − provided ineffective assistance, the latter in part due to M.L.'s alleged allegiance to Mr. Ravenell. *Id.* ▓▓▓▓▓ As to M.L., R.B. alleges that M.L. ▓▓▓▓▓

▓▓▓▓▓

▓▓▓▓▓

▓▓▓▓▓

2

████████████████████████████████████████████████

██████████████████████████████████ In his § 2255 Petition, therefore, R.B. put the government's investigation of Mr. Ravenell squarely at issue.

Mr. Ravenell seeks documents and information in the custody of the government that are exculpatory and/or impeachment evidence, material to preparing his defense, and relevant to evidence the government intends to introduce in its case-in-chief at trial. Because the government has refused to produce the requested materials, the Court should order it to do so.

## DISCOVERY REQUESTS

In letters to the government dated November 5, 2019 (the "Second Request") and November 19, 2019 (the "Third Request"), Mr. Ravenell described, *inter alia*, two categories of documents, information, and materials sought under *Brady* and Rule 16. *See* Ex. B, Second Request; Ex. C, Third Request. The first category of discovery requests seeks materials related to R.B.'s claims in his § 2255 Petition, including those that are in the exclusive possession of the government, and communications between the government and R.B.'s § 2255 attorney(s). *See* Ex. B, Second Request at Nos. 5-8. More specifically, Mr. Ravenell seeks:

- All materials drafted by government attorneys and all written communications between the government and any of R.B.'s attorneys or between government attorneys concerning R.B.'s § 2255 Petition. *See* Ex. B, Second Request at Nos. 5-7; and

- All materials and written communications concerning any investigation of the claims raised in R.B.'s § 2255 Petition. *See* Ex. B, Second Request at No. 8.

The second category of discovery requests seeks certain witness and cooperator statements from the investigations of both R.B. and Mr. Ravenell. *See* Ex. B, Second Request at No. 9; Ex. C, Third Request at Nos. 1-3. More specifically, Mr. Ravenell seeks:

- All statements, memorialized witness interviews, and/or grand jury testimony of any cooperator, witness, target, or subject questioned by the government in connection with the investigation and prosecution of R.B. in ███████████████, where such

person: i) provided no information about Mr. Ravenell; ii) stated that he/she did not know Mr. Ravenell; or iii) provided exculpatory information about Mr. Ravenell. *See* Ex. B, Second Request at No. 9; Ex. C, Third Request at Nos. 1-2; and

- All statements, memorialized witness interviews, and/or grand jury testimony of any cooperator, witness, target, or subject in connection with the investigation and prosecution of Mr. Ravenell in this case, where such person: i) provided no information about Mr. Ravenell; ii) stated that he/she did not know Mr. Ravenell; or iii) provided exculpatory information about Mr. Ravenell. *See* Ex. C, Third Request at No. 3.

The government responded to both of Mr. Ravenell's letters on December 3, 2019 (the "USG Response"), declining to produce materials responsive to either category of requests. *See* Ex. D, USG Response. With respect to Mr. Ravenell's requests regarding R.B.'s § 2255 Petition, the government declines to provide responsive materials because it claims that the materials are prosecutors' work product and/or because "[t]here is no agreement with R.B. or his counsel [and the government] regarding the relief [R.B.] has requested in his motion" and "the United States intends to oppose his motion." *See* Ex. D, USG Response at 2. To date, the government has not opposed R.B.'s § 2255 Petition and, after receiving multiple extensions from the court, any opposition from the government is now not due until June 15, 2020 – which is well after the anticipated conclusion of Mr. Ravenell's trial. *See* Order, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Order, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮. With respect to Mr. Ravenell's requests regarding statements by witnesses and cooperators involved in the federal investigations and prosecutions of both R.B. and Mr. Ravenell in Maryland, the government refuses to produce responsive materials, asserting that such materials do not constitute *Brady* evidence because they consist of the "absence of information." *See* Ex. D, USG Response at 3. That is, the government claims it is not exculpatory if a cooperator or witness "'stated that he/she did not know Mr. Ravenell' or 'provided no information about Mr. Ravenell . . . .'" *See id*.

Under relevant case law, however, Mr. Ravenell seeks documents and information that are material to preparing his defense under Rule 16, and that constitute favorable and material evidence under *Brady*. The government must provide these materials to Mr. Ravenell. The government's reasons for denying Mr. Ravenell access to the responsive materials contravene *Brady* and its progeny, as well as the letter and spirit of Rule 16.

## ARGUMENT

The government must produce the two categories of requested documents and information because they are relevant to the evidence the government intends to introduce in its case-in-chief at trial, and they are material to preparing Mr. Ravenell's defense. Further, the requested documents and information are favorable evidence that are material to Mr. Ravenell's guilt or punishment.

Federal Rule of Criminal Procedure 16(a)(1)(E) requires the government to permit the defendant's inspection of documents "within the government's possession, custody or control" that are "material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E)(i); *see also United States v. Caro*, 597 F.3d 608, 621 (4th Cir. 2010). While it is the defendant's burden to show that the requested discovery is material, it "is not a heavy burden." *United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993); *see also United States v. George*, 786 F. Supp. 11, 13 (D.D.C. 1991) (noting that the materiality hurdle "is not a high one"). The burden is light because the "language and the spirit of the Rule are designed to provide to a criminal defendant, in the interest of fairness, the widest possible opportunity to inspect and receive such materials in the possession of the government as may aid him in presenting his side of the case." *United States v. Poindexter*, 727 F. Supp. 1470, 1473 (D.D.C. 1989). When the government fails to meet its Rule 16 discovery

obligations, the court may order the government "to permit the discovery or inspection" of the requested materials. Fed. R. Crim. P. 16(d)(2)(A).

The government also has a due process obligation to provide the defendant with favorable evidence that is material to guilt or punishment. *See Brady*, 373 U.S. at 87. Evidence is favorable to the defendant if it is exculpatory or impeaching, and it is material if it undermines the government's case and the probability that the defendant will be convicted. *See United States v. Parker*, 790 F.3d 550, 558 (4th Cir. 2015) (quoting *United States v. Bartko*, 728 F.3d 327, 340 (4th Cir. 2013)) ("Evidence is material if there is a 'reasonable probability that its disclosure would have produced a different result.'"). This "reasonable probability" standard does not require a showing that the evidence would lead to an acquittal. Rather, disclosure is required when the evidence "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Cone v. Bell*, 556 U.S. 449, 470 (2009) (citations omitted); *see also United States v. Tavera,* 719 F.3d 705, 708 (6th Cir. 2013) (emphasis in original) ("So long as favorable evidence could very well affect the jury's decision, prosecutors *must* disclose it.").

Under *Brady* and Rule 16, the government must produce the documents, information, and materials that Mr. Ravenell seeks.

**I.     The Government Must Disclose Materials Related to R.B.'s § 2255 Petition Under *Brady* and Rule 16.**

Mr. Ravenell's discovery requests related to R.B.'s § 2255 Petition seek material impeachment evidence that the government must disclose under *Brady* and Rule 16. Information that calls into doubt the credibility of an important government witness constitutes *Brady* material. *See United States v. Bagley*, 473 U.S. 667, 676 (1985) (reiterating that impeachment evidence falls within the *Brady* rule); *see also Giglio v. United States*, 405 U.S. 150, 154 (1972) (internal quotation marks omitted) ("When the reliability of a given witness may well be determinative of

guilt or innocence, nondisclosure of evidence affecting credibility falls within th[e] general rule [of *Brady*]."); *United States v. Trevino*, 89 F.3d 187, 189 (4th Cir. 1996) (citations omitted) ("'Favorable' evidence [under *Brady*] includes not only that evidence tending to exculpate the accused, but also any evidence adversely affecting the credibility of the government's witnesses."); *United States v. Starusko*, 729 F.2d 256, 260 (3d Cir. 1984) (citations omitted) ("Exculpatory evidence includes material that goes to the heart of the defendant's guilt or innocence as well as that which might well alter the jury's judgment of the credibility of a crucial prosecution witness.").

R.B. is a key witness for the government – if not *the* key witness – who will likely play a central role in Mr. Ravenell's trial and who has already played a central role in the government's investigation. R.B.'s credibility will be a critical focal point of the trial. As evidenced in Mr. Ravenell's Indictment, which alleges Mr. Ravenell used his position as an attorney to unlawfully benefit and aid R.B. and his "multi-state illegal drug trafficking organization," Indictment, Count 1 ¶¶ 4-5, ECF No. 1, as well as the discovery produced by the government to date (which includes more than ten re-productions of discovery from R.B.'s 2014 criminal prosecution in Maryland), R.B. was an individual vital to the government's investigation of, and decision to ultimately charge, Mr. Ravenell. The government's case-in-chief, therefore, will largely depend on R.B.'s credibility.

Moreover, there is a direct link between the claims R.B. makes in his § 2255 Petition and many of the allegations against Mr. Ravenell in this case. Indeed, R.B. alleges that his former attorney M.L. was ineffective, in part, because of an allegiance to Mr. Ravenell that prevented M.L. from properly advising R.B. *See* Ex. A, § 2255 Petition, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

7

███████. As detailed herein, R.B. alleges that M.L. pressured him to accept a plea agreement to disrupt the investigation of Mr. Ravenell. *See supra* at 2-3.

Information undermining the veracity of R.B.'s claims against his former attorneys is directly relevant to R.B.'s credibility concerning Mr. Ravenell, who is himself one of R.B.'s former attorneys. Here, Mr. Ravenell seeks materials concerning the government's assessment of the claims in R.B.'s § 2255 Petition – an assessment that has already led the government to state that it "intends to oppose his [§ 2255 Petition]." *See* Ex. D, USG Response at 2; *see also* Order, ███████████████████████████. Such materials would adversely affect R.B.'s credibility and therefore constitute impeachment information that the government must disclose under *Brady*. *See Trevino*, 89 F.3d at 189. Despite R.B. filing his § 2255 Petition over six months ago, the government has now twice delayed disclosing the information it relied upon in deciding to oppose the § 2255 Petition. *See* Ex. A, § 2255 Petition; Order, ██████████████████████ Order, ██████████████████████. The last delay strategically and unfairly allows the government to withhold this critical information until after the anticipated conclusion of Mr. Ravenell's trial. *See* Order, ██████████████████████.

Communications between the government and R.B's § 2255 counsel likewise constitute impeachment material reached by *Brady*, particularly as they relate to the timing and/or substance of the government's response to R.B.'s § 2255 Petition. If the government and R.B.'s counsel negotiated to delay the government's response to R.B.'s § 2255 Petition until after Mr. Ravenell's trial, those communications and that agreement constitute a benefit to R.B. that undermines his credibility, as well as the government's credibility in relying on R.B. as a key witness. Given the critical role R.B. will likely play at Mr. Ravenell's trial and has played in the government's investigation, R.B.'s credibility "may well be determinative of guilt or innocence," and the

8

government's refusal to disclose evidence affecting R.B.'s credibility is a *Brady* violation. *See Giglio*, 405 U.S. at 154.

For the same reasons, the requested material related to R.B.'s § 2255 Petition is reached by Rule 16. Evidence that undermines the credibility of the government's key witness and demonstrates that the government is extending the witness a benefit (e.g., delayed opposition to R.B.'s § 2255 Petition), is certainly "material" evidence to Mr. Ravenell's defense. *See* Fed. R. Crim. P. 16(a)(1)(E)(i). In his § 2255 Petition, R.B. alleges that at the time he pled guilty and was sentenced, his attorney M.L. was operating under a conflict of interest because M.L. was beholden to Mr. Ravenell. *See* Ex. A, § 2255 Petition ▓▓▓. If false (as Mr. Ravenell asserts), such a material misrepresentation exposes R.B. as not only unreliable, but particularly untrustworthy in his representations about Mr. Ravenell.[1]

The government also asserts that certain requested materials constitute prosecutors' work product. *See* Ex. D, USG Response at 2. Even if that is true, the government must nevertheless produce the materials under *Brady*. The Supreme Court has not decided whether *Brady* requires a prosecutor to turn over his work product. *See Goldberg v. United States*, 425 U.S. 94, 98 n.3 (1976) (leaving open the question of whether *Brady* compels the prosecutor to produce notes not covered under the Jencks Act). Other courts to consider the issue, however, have ordered the disclosure of exculpatory work product, presuming that *Brady*'s constitutional protections override court-made procedural rules shielding work product from discovery. *See, e.g.*, *Fontenot v. Allbaugh*, 402 F. Supp. 3d 1110, 1184 n.28 (E.D. Okla. 2019) (citations omitted) ("The work

---

[1] For a more detailed explanation of the relevancy and materiality of R.B.'s § 2255 claims, see Mr. Ravenell's Memorandum in Opposition to ▓▓▓▓▓▓▓ Motion to Quash Rule 17 Subpoena to Produce Documents, Information, or Objects in a Criminal Case, filed under seal on February 10, 2020. ECF No. 65 (Under Seal), at 7-9.

product doctrine does not excuse a prosecutor's obligation to disclose *Brady* materials. While a prosecutor's thoughts and impressions are protected, if there is exculpatory or impeachment evidence, that must be disclosed to a defendant prior to trial."); *United States v. NYNEX Corp.*, 781 F. Supp. 19, 25 (D.D.C. 1991) (collecting cases) ("Cases on this question, albeit without much discussion, suggest that internal materials possibly constituting work product may not automatically be exempt from *Brady* requirements."); *United States v. Goldman*, 439 F. Supp. 337, 350 (S.D.N.Y. 1977) ("Of course, if [work product] material be of a *Brady* nature, then it must be produced."); *Castleberry v. Crisp*, 414 F. Supp. 945, 953 (N.D. Okla. 1976) ("[T]he 'work product' discovery rule cannot, of course, be applied in a manner which derogates a defendant's constitutional rights as propounded in *Brady*."); *see also United States v. Armstrong*, 517 U.S. 456, 474-75 (1996) (Breyer, J., concurring in part and concurring in the judgment) (presupposing *Brady* overrides work product doctrine); *United States v. Gupta*, 848 F. Supp. 2d 491, 495-97 (S.D.N.Y. 2012) (finding that substantial need for *Brady* material overcame work product protections over SEC notes and memoranda); *Franklin v. State*, 304 S.E.2d 501, 504 (Ga. App. 1983) (citation omitted) ("[W]ork product of the state [is] not subject to compelled discovery except to the extent that such letter may be exculpatory and subject to disclosure under [*Brady*]."); 2 Charles Alan Wright, *Federal Practice and Procedure* § 256 (4th ed. Aug. 2019 Update) ("Because *Brady* is based on the Constitution, it overrides court-made rules of procedure. Thus, Rule 16(a)(2) prohibits discovery of work product but it does not alter the prosecutor's duty to disclose material that comes within *Brady*.").

These cases rightly balance the important work product protection against the essential constitutional values protected by *Brady*. Work product protections must give way to the

constitutional rights pronounced in *Brady*, and the government must disclose exculpatory material otherwise covered by the work product doctrine.

## II. Witness and Cooperator Statements that Disavow Knowledge of Mr. Ravenell or Fail to Mention Him Constitute *Brady* Material, and the Government Must Produce Those Statements.

Mr. Ravenell requests that the government produce statements of cooperators, witnesses, targets, and subjects connected to the investigations and prosecutions of R.B. and Mr. Ravenell, who stated that they did not know Mr. Ravenell or provided no information regarding Mr. Ravenell. *See* Ex. B, Second Request at No. 9; Ex. C, Third Request at Nos. 1-3. The government has declined to provide the requested materials, asserting that "the absence of information" does not constitute *Brady* material. Ex. D, USG Response at 3. The government's position in this case – that it is "not exculpatory" if a cooperator or witness said he or she did not know Mr. Ravenell or provided no information about him, *id.* – is contradicted by relevant case law. Evidence of statements by witnesses and cooperators who do not mention Mr. Ravenell or deny knowing Mr. Ravenell – an individual whom the government has alleged was a central figure in R.B.'s drug trafficking organization – constitutes *Brady* information which the government must disclose.[2]

---

[2] It is well established under federal law that exculpatory information must be disclosed promptly under *Brady*, notwithstanding that it may also constitute information required to be produced under the Jencks Act. *See, e.g.*, *United States v. Rittweger*, 524 F.3d 171, 181 n.4 (2d Cir. 2008) (citation omitted) ("Complying with the Jencks Act, of course, does not shield the government from its independent obligation to timely produce exculpatory material under *Brady* – a constitutional requirement that trumps the statutory power of [the Jencks Act]"); *United States v. Presser*, 844 F.2d 1275, 1285 (6th Cir. 1988) (holding that *Brady* material that is also Jencks material must be produced ahead of trial); *United States v. Tarantino*, 846 F.2d 1384, 1414-15 n.11 (D.C. Cir. 1988) (noting that *Brady* obligation to disclose exculpatory material exceeds the limitations imposed by the Jencks Act).

Courts have found that witness statements that reflect a lack of knowledge about the defendant – even by failing to mention the defendant – constitute *Brady* material. *See, e.g.*, *United States v. Barraza Cazares*, 465 F.3d 327, 333 (8th Cir. 2006) (holding that co-defendant's statement that he did not know defendant was exculpatory for *Brady*, but finding no *Brady* violation because the government did not suppress the statement); *United States v. Mansker*, 240 F. Supp. 2d 902, 911-12 (N.D. Iowa 2003) (affirming the court's own ruling at trial that interview notes in which cooperating witnesses failed to name defendant were exculpatory); *cf. United States v. Montoya*, 844 F.3d 63, 71 (1st Cir. 2016) (assuming but not finding that cooperating witness reports in which the witness identified more than thirty people connected to drug trafficking – but did not mention the defendant – were *Brady* material subject to disclosure before trial). In *Mansker*, the court found that interview notes in which witnesses failed to name the defendant – who was accused of conspiracy to distribute methamphetamine – when identifying their drug sources and customers, were "indeed exculpatory." 240 F. Supp. 2d at 912. The court explained that the government's argument to the contrary presented a "very truncated view of what constitutes exculpatory information." *Id.* The court found the omissions related to the defendant to be "particularly exculpatory" under the circumstances – circumstances which are present in Mr. Ravenell's case as well − because the defendant's theory was that the witnesses fabricated testimony after being sentenced in the hopes of receiving a reduced sentence under Rule 35. *Id.*

The decision in *United States v. Fagot-Maximo* is not to the contrary. *See* No. 1:15-cr-290, 2019 WL 2251703, slip op. (E.D. Va. May 23, 2019) (O'Grady, J.). In *Fagot-Maximo*, the defendant and five co-conspirators, who were allegedly part of a larger drug trafficking organization, were charged with conspiring to distribute cocaine. *Id.* at *1. Before trial, the defendant moved to compel the identities of cooperating witnesses on the basis that unattributed

investigative reports in the defendant's possession contained exculpatory information because the reports did not identify the defendant. *Id.* The court reviewed the investigate reports as well as an *ex parte* submission from the government that attributed the information to the unidentified sources. *Id.* The court determined that the reports did not contain exculpatory information and denied defendant's motion to compel the government to disclose the witnesses' identities. *Id.* At defendant's trial, nine cooperating witnesses testified and the defendant was convicted. *Id.* Thereafter, the defendant moved to set aside the verdict, arguing that post-trial disclosures by the government violated *Brady*. *Id.* The court disagreed and found that, "the mere fact that the confidential sources did not mention Defendant in their interviews does not raise Defendant's argument that they possess exculpatory information above mere speculation." *Id.* at *3.

Here, however, Mr. Ravenell seeks, among other information, interview reports themselves, which the government had disclosed to the defendant in *Fagot-Maximo*. *See id.* at *1. Further, the court's concern in *Fagot-Maximo* that, "the disclosure of the confidential sources' identities would put both them and their families at risk for their lives[,]" *id.*, was based on circumstances not present in this case. Most importantly, Mr. Ravenell's basis for seeking the witness statements is more than mere speculation, and his need for the requested material is substantial. The government alleges that Mr. Ravenell advised members of R.B.'s organization on how to evade law enforcement, arranged for legal representation for members of R.B.'s organization, and otherwise played a key role in a "multi-state illegal drug trafficking organization" that included at least sixteen co-conspirators. *See* Indictment, Count 1 ¶¶ 5-11, 12e, 16b-d, ECF No. 1. Evidence in the form of statements by witnesses and cooperators disavowing any knowledge of Mr. Ravenell or failing to mention his involvement when questioned about R.B.'s drug trafficking organization, directly undermines any allegation that Mr. Ravenell played

a central role in assisting the organization. Such information is certainly "favorable" to Mr. Ravenell and "could very well affect the jury's decision." *See Tavera,* 719 F.3d at 708. Further, while personal familiarity with each co-conspirator is not required to show a defendant's participation in a conspiracy, *see Barraza Cazares*, 465 F.3d at 333, statements by co-conspirators disclaiming knowledge of, or acquaintance with, a defendant "are clearly relevant to the issue of the defendant's role or participation in the conspiracy." *See id.* at 331, 333. These statements become exculpatory when they buttress a defendant's asserted defenses. *See id.* at 333. If members of R.B.'s drug trafficking organization did not mention – or said they did not know – Mr. Ravenell when speaking with the government, those statements are clearly relevant and plainly buttress his defense that he never, for example, "coached," "instructed," "emailed," or "told" supposed co-conspirators the various things alleged in the Indictment. *See, e.g.*, Indictment, Count 1 ¶¶ 7-10, ECF No. 1.

In addition, it is apparent from the government's preliminary witness list that it has attempted, and will attempt at trial, to link Mr. Ravenell to R.B.'s drug trafficking through convicted co-conspirators of R.B. who are currently serving lengthy prison sentences. R.B. himself is six years into a twenty-six year sentence. *See* Judgement, ████████████ ████████ As the Sixth Circuit recognized in *Tavera*, testimony of established drug dealers with a personal incentive to help the government is "problematic proof to say the least." 719 F.3d at 713. The government's potential witnesses in this case have serious credibility issues given their admitted criminal conduct and their incentive (i.e., reduced prison sentences) to help the prosecution convict Mr. Ravenell. Any prior statements by these individuals in which Mr. Ravenell is not mentioned are therefore "particularly exculpatory." *See Mansker*, 240 F. Supp. 2d at 912. Witnesses who were part of R.B.'s drug organization but are not seeking a sentencing

reduction or similar benefit from the government, and who told the government that they had no interaction with Mr. Ravenell and did not know of Mr. Ravenell, would "bolster" Mr. Ravenell's defense and add "a significant amount of weight to his side of the scale." *See Tavera*, 719 F.3d at 713. Therefore, the requested cooperator and witness statements constitute *Brady* material.[3]

For the same reasons, the requested materials are subject to disclosure under Rule 16. Statements from other members and supporters of R.B's drug trafficking organization indicating – even by omission – that Mr. Ravenell was not involved with R.B.'s drug activities are certainly "material" to Mr. Ravenell's defense. *See* Fed. R. Crim. P. 16(a)(1)(E)(i). Such witnesses would undermine the credibility of the Government's cooperating witnesses and add persuasive weight to Mr. Ravenell's defense at trial.

## **CONCLUSION**

The government's stonewalling in this case reconfirms that "nondisclosure of *Brady* material is still a perennial problem . . . ." *See Tavera*, 719 F.3d at 708 (citations omitted). This Court should not condone the government's contraventions of Mr. Ravenell's rights under *Brady*, or the government's failure to fulfill its own obligations under Rule 16.

For the reasons stated above, Mr. Ravenell respectfully requests that the Court grant this Motion and order the government to produce the materials sought by Mr. Ravenell's discovery requests under *United States v. Brady* and Rule 16.

---

[3] The government *has* produced certain witness interviews in which Mr. Ravenell is not named or mentioned that strike defense counsel as relevant only because those witnesses might be able to testify regarding the drug quantities needed to establish a violation of 21 U.S.C. § 841(b)(1)(A)(vii), as charged in Count Three of the Indictment. *See* Indictment, Count 3 ¶ 1, ECF No. 1. It is fundamentally unfair for the government to have it both ways – i.e., using witnesses who have no knowledge of Mr. Ravenell to attempt to prove its case as to Count Three, but denying Mr. Ravenell similar statements of those more closely and intricately involved with R.B.'s drug trafficking conspiracy, as set forth in Count One.

February 17, 2020	Respectfully submitted,

SCHULTE ROTH & ZABEL LLP

*/s/ Aislinn Affinito*
_____
Peter H. White (D.C. Bar: 468746) (VA Bar: 32310)
Aislinn Affinito (D.C. Bar: 1033700) (CA Bar: 300265)
McKenzie Haynes (N.Y. bar: 5683859)
Schulte Roth & Zabel
901 Fifteenth Street, NW, Suite 800
Washington, DC 20005
pete.white@srz.com
aislinn.affinito@srz.com
mckenzie.haynes@srz.com
*Attorneys for Kenneth Ravenell*


Outlaw PLLC

*/s/ Lucius Outlaw*
_____
Lucius T. Outlaw III (#20677)
Outlaw PLLC
1351 Juniper St. NW
Washington, DC 20012
(202) 997-3452
loutlaw3@outlawpllc.com
*Attorney for Kenneth Ravenell*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 17th day of February, 2020, I caused a copy of Defendant's Motion to Compel Rule 16 and *Brady* Materials to be served upon counsel for the United States of America via ECF, and true and correct copies of the filing are available to all parties through ECF or Pacer.

                                                */s/ Aislinn Affinito*
                                                _____
                                                Aislinn Affinito
                                                *Attorney for Kenneth Ravenell*