IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v.   ) | CRIMINAL NO.  LO-19-0449 |
| ) | |
| KENNETH RAVENELL, et al.   ) | |
| ) | |
| Defendants.   ) | |

**DEFENDANTS' REPLY TO UNITED STATES' OPPOSITION TO
MOTION TO MODIFY PROTECTIVE ORDER**

Following the original indictment in September 2019, the government's initial motion for a protective order argued that good cause was established based upon the grand jury's finding that Mr. Ravenell "provided information to his co-conspirators to protect them from prosecution," cooperating witnesses "would be in danger if discovery evidencing their cooperation was introduced, deliberately or accidentally, in the jails where they are housed," and witnesses "could be killed or harmed" if "the defendant were to provide copies of Jencks material" to "inmates at jail facilities where some witnesses are being held." Gov't Mot. Protective Order, ECF 20, at 2-3 & n.1-2. The protective order that applies to Mr. Ravenell authorizes his review of discovery through a discovery platform called Relativity.

In December 2020, the grand jury issued a superseding indictment that added two defendants, Sean Gordon and Joshua Treem, and distinct obstruction of justice charges that are different in kind from the charges in the initial indictment. In response to the Defendants' Motion to Modify the Protective Order, the government

argues that: (1) the defendants bear the burden to support a modification to the protective order; (2) the motion simply "rehashes defendant Ravenell's prior challenge to the obvious good cause;" (3) defendant Treem seeks an "end-run around reciprocal discovery obligations;" (4) the Court should require defendants Treem and Gordon—neither of whom are represented by a large law firm or possess an expensive discovery platform like Relativity—to use such a platform for remote sharing of discovery; and (5) the protective order should require the defendants to identify their trial exhibits before trial.[1] The Court should reject these arguments and enter the proposed protective order attached to the defendants' motion.

### A. The government continues to bear the burden of showing good cause for a protective order, and it fails to meet this burden.

Conceding that it bears the initial burden of showing good cause for a protective order, the government nonetheless maintains that, given the Court's issuance of a protective order after the issuance of the initial indictment, the defendants bear the burden of seeking a modification to the existing protective order in the wake of the superseding indictment. Gov't Resp. 6 (citing *United States v.*

---

[1] The government also asserts that "the defendants ask that defendants Treem and Gordon be added to the Order" that is currently in place. Opp. at 8. This is false. The defendants' motion is clear: the government cannot show good cause for any protective order, and given the new charges that have been brought and the issues they raise in this now multi-defendant case, the absence of good cause is true for defendant Ravenell as well as for the recently added defendants, Treem and Gordon. But mindful of the existing protective order that is applicable to Ravenell only, the defendants will consent to a single protective order with the language defendants jointly proposed, which provides more than adequate protection for any legitimate concern regarding the indiscriminate dissemination of discovery that the parties obtained from the government.

*Kumar*, No. 4:17-CR-5-FL-L, 2019 WL 6878491 (E.D.N.C. 2019) and *United States v. Walker*, 2019 WL 4412909 (E.D.N.C. 2019)). The government cannot evade its burden to justify a protective order under materially changed circumstances.

Rule 16(d)(1) provides that the Court is authorized to restrict discovery or "grant other appropriate relief," "[a]t any time." The Rule thereby expressly authorizes the Court to reevaluate the propriety of a protective order based upon changed circumstances. *See, e.g.*, *United States v. Lindh*, 198 F. Supp. 2d 739, 744 (E.D. Va. 2002). The superseding indictment has raised entirely distinct charges and included two additional defendants who are not charged with involvement in the alleged RICO, money laundering, or narcotics conspiracy, and who were not subject to the initial protective order. As such, Messrs. Treem and Gordon have never had an opportunity to be heard regarding the existence of good cause. Moreover, much of the government's initial rationale for a protective order has no relation to them.

The cases cited by the government with respect to modifications of protective orders are thus unlike this one. In *Kumar*, after receiving discovery material, the defendant expressed an intent to "use government discovery as he chooses, including disseminating it to third parties, irrespective of the court's directives." 2019 WL 6878491 at 1. The court declined to modify the protective order to permit him to do so. In *Walker*, the defendant was in custody (on armed robbery charges), subject to Special Administrative Measures as well as a protective order, and he was continuing to make repeated threats of physical harm to witnesses and their families. 2019 WL 4412909 at 1. Neither *Kumar* nor *Walker* bear any similarity to the facts of this case.

In this case, by contrast, the superseding indictment added four counts of obstruction of justice arising from the Treem and Gordon's documentation of a witness's exculpatory statements that the witness actually made on September 9, 2017. Superseding Indictment Count 4 ¶¶ 20, 25, 37. The newly added defendants are not alleged to be part of a drug trafficking organization or to have involvement with cooperating witnesses other than a single contact in September 2017 with the witness identified in the indictment as R.B., who is safely in the government's custody.

Under these materially distinct circumstances, the government simply has not demonstrated any specific risk to "the safety of witnesses and others, a particular danger of perjury or witness intimidation, the protection of information vital to the national security, and the protection of business enterprises from economic reprisals." Rule 16, Notes of Advisory Committee on Rules—1966 Amendment. Moreover, the government can make no particularized or specific showing that the defendants pose a risk that warrants limiting their access to discovery. *See United States v. Wecht*, 484 F.3d 194, 211 (3rd Cir. 2007) ("'[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing'").[2]

---

[2] The cases cited by the government upholding protective orders are likewise inapposite. *See* Gov't Resp. 10-11 (citing *United States v. Navarro*, 770 F. App'x 64, 65 (4th Cir. 2019); *United States v. Galloway*, 749 F.3d 238, 242 (4th Cir. 2014); *United States v. Ajala*, 692 F. App'x 716, 717 (4th Cir. 2017)). In *Navarro*, the Fourth Circuit found no plain error when the defendant made no objection to a magistrate judge's finding that "without such restrictions, Navarro could disseminate sensitive discovery materials and jeopardize the safety of confidential informants and other cooperating witnesses." *Id.* at *65. No such finding is warranted in this case, particularly with respect to the charges added in the superseding indictment.

The government argues that the indictment alone establishes this good cause, and it points to an earlier *ex parte* declaration that the defendants have not been able to see. First, it is clear from Rule 16(d)(1) that the burden is on the government to do more than simply rely on allegations in the indictment, and this of course is in keeping with the most elementary of legal principles: the law presumes the defendants to be innocent of the charges in the indictment. Second, whatever is in the declaration of Special Agent Riha on which the government is relying, it could not possibly support the conclusion that the defendants would violate a judicial order and risk their release status by freely distributing discovery amongst prisons and jails.

The government's argument either glosses over or simply fails to take account of the reality of the additional charges and the new defendants, Messrs. Treem and Gordon, who are indicted in Counts Four through Seven only. Those counts are entirely based on a surreptitiously recorded interview of a witness on September 9 and 10, 2017, and the aftermath of that interview. Because the interview was recorded, witness testimony is largely superfluous. The government's case with respect to the obstruction counts, in other words, is dependent upon documents, and the important documents are liberally quoted in the indictment. The discovery the government has provided to Mr. Treem's counsel consists of the video of the interview and the accompanying transcript, and some inconsequential voicemails and emails exchanged with the cooperating witness's attorney. So relying entirely on the

---

*Galloway* and *Ajala* both involve restrictions on access to discovery in prisons by defendants representing themselves pro se, and thus have no bearing here. *See Galloway*, 749 F.3d at 242; *Ajala*, 692 F. App'x at 717.

5

allegations in the indictment that quotes liberally from the transcripts, the government's position is that there is a risk to witness safety if the defendants have possession of the entire transcript, notwithstanding that they and anyone else can have possession of a copy of the indictment that contains some 15 or more pages filled with what the government presumably views as the juiciest excerpts from the transcript. The government's argument plainly does not stand up to scrutiny. The government's argument for good cause is simply not plausible, and the government's requested protective order seems designed merely to make the job of the defense more difficult and more expensive.

### B. Good cause for a protective order cannot justify restricting the defendants' ability to exchange relevant information.

The government argues that "[t]here is no good cause to permit sharing of copies of protected information among defendants." Opp. at 12. The government has the burden backwards. Defendants do not have to show good cause for why they should be allowed to defend themselves and how they intend to do it. The government is frustrated that Mr. Treem has exercised his right to elect not to make a discovery demand that would trigger a reciprocal discovery obligation. It argues that Mr. Treem wants to have a cake and eat it too. Op. at 14. The government therefore seeks to enlist the Court to impose a protective order, not for the any reason that would properly justify a protective order, such as a genuine risk to witness safety, but for the purpose of sanctioning Mr. Treem for a choice he had every right to make. In other words, the government seeks to use the protective order to make an "end run" around

Mr. Treem's rightful decision not to make a discovery demand, not the other way around.

As noted, Counts Four through Seven relate to a discrete series of events that began in 2017 and that have nothing to do with the facts and allegations relating to the original indictment or Counts One through Three of the superseding indictment. The evidence relating to Counts Four through Seven is really quite limited, and the core evidence consists of the videotape from the September 9-10, 2017 interview, the accompanying transcript, and documents from Mr. Treem's client file.

If there are any other documents that the government would produce in discovery that have any relevance to the counts on which Mr. Treem is charged, they will be produced as part of a pile of what the government estimated might be as much as 1 TB of records, almost all of which would be irrelevant to the charges against Mr. Treem. None is likely to have significance to Counts Four through Seven, but any that might have even slight relevance will be found by counsel only at great expense and through a needless distraction from counsel's attention to more important matters.[3] That is ample reason why Mr. Treem would choose not to make a request for discovery of documents. But in addition, some documents Mr. Treem has that may relate to this case are privileged documents that have not been turned over to the

---

[3] Counsel for Mr. Treem inquired of one of the least expensive e-discovery vendors regarding the costs to host a platform for document review, and expected that at least $40,000-50,000 would be the out-of-pocket cost of hosting the platform for 1 TB of data for one year. That does not include the many billable hours of time reviewing documents to find the relatively few, if any (that Mr. Treem does not already have), that are relevant to the charges against Mr. Treem and his co-defendants in Counts Four through Seven.

government. Mr. Treem does not have the liberty to commit to turn over those documents in discovery. Mr. Treem has sound reasons for choosing not to make a request for documents under Rule 16(a)(1)(E).

But regardless of this rationale, whether the parties have reciprocal discovery obligations or not is irrelevant to the government's offered justification for a protective order under a distinct provision of Rule 16. In other words, the government's good cause for a protective order that would restrict Mr. Treem's access to discovery must be based on a legitimate and reasonable concern that such access would pose a risk to the "safety of witnesses and others, a particular danger o[f] perjury or witness intimidation," or disclosure of information "vital to the national security." But any such argument in this case is absurd.

A further problem is that the government's proposed restrictions place Mr. Treem and his counsel in a silo, albeit in a multi-defendant case where the co-defendants are the ones with most personal knowledge about the facts relevant to the defense. The restrictions the government seeks would inevitably lead to instances where counsel for one defendant would be barred by court order from getting information from another defendant who had personal information relevant to the case. The government is asking the court to issue an order that will have the same effect as declaring to a defendant, "you are barred from getting that information from that witness" or "you are barred from giving that information to that defendant." Compounding the prejudice to the defendants is that the conspiracy count (Count Four) means that any defendant can be convicted for the acts of a co-defendant even

if he knew nothing about it.[4] The defendants simply cannot mount an effective defense to the conspiracy charge if there are judicial or other constraints on what a defendant can learn from one of his alleged co-conspirators. The burden on the defendants and the prejudice to their defense should not be underestimated. And because of the punctilious attention that defense counsel and their clients will give to avoiding any accusation of impropriety, communications between and among the defense counsel will inevitably be chilled and burdened in a manner that is inconsistent with the Sixth Amendment's right to effective assistance of counsel.

In sum, the government's argument regarding "good cause" is without merit because it has nothing to do with witness safety or the other legitimate reasons for a protective order. And irrespective of that, when the court balances the understandable reasons why Mr. Treem and his counsel have not made a request for documents under Rule 16(a)(1)(E), which have nothing to do with cake, against the inappropriate burden that the government's proposed restrictions would have on all defendants, the defendants' interests must prevail and the government's proposed restrictions should be rejected.

---

[4] Implausibly, the conspiracy count includes allegations dating to 2013 and 2014, long before Mr. Treem ever represented Ravenell. Indictment, Count Four ¶¶ 13-15. While it appears that these allegations were artificially included for no purpose but to mask misjoinder, Mr. Treem must be prepared to respond to them. And that means he should be able to discuss freely with his co-defendants the facts regarding events in which he had no involvement.

### C. The standing discovery order is not relevant to the issuance of a protective order.

To avoid delay in the production of discovery, this court's Standing Discovery Order places temporary restrictions on discovery going to the defendant pending the parties seeking to reach agreement about discovery, or failing agreement, obtaining a decision from the court. It is simply a starting point, one designed to accelerate getting discovery to the defense. The government implies that the Standing Discovery Order stands apart from Rule 16 and provides its own authority for the restrictions that government seeks to impose. It does not. The Discovery Standing Order, issued under the authority of Rules 16 and 16.1, cannot properly be construed as modifying or dispensing with Rule 16(d)(1)'s requirement that the government demonstrate, with specifics for the case at hand, that there is good cause for a protective order. *Cf. U.S. ex rel. Davis v. Prince*, 753 F. Supp. 2d 561, 567 (E.D. Va. 2010) (noting that parties' agreement to protective order under Fed. R. Civ. P. 26(c) cannot "eras[e] the rule's requirement that there be a *judicial* determination of good cause" to warrant such an order) (emphasis in orig.).[5]

---

[5] This Court recently rejected the government's argument that the Standing Order required a defendant to request discovery (thereby subjecting the defendant to reciprocal discovery obligations) because the Standing Order states that a defendant "shall" serve discovery requests within 14 days of a Rule 16.1 conference. *United States v. Snyder*, 20-cr-337 (D. Md.). As the Court noted in its Order, it "agree[d] with the Defendant that his discovery obligations pursuant to Rule 16(b) are not triggered unless and until the Defendant requests disclosures pursuant to Rule 16(a)(E) and (G)." Dec. 21, 2020 Order, ECF No. 20. The Standing Order, in other words, does not alter the otherwise-applicable terms of Rule 16.

### D. A pre-trial conference for disclosure of defense exhibits is not appropriate in a protective order.

Whatever the parties may ultimately decide to agree to in the nature of stipulations or identification of exhibits, that is not something that is needed, nor customarily included, in a protective order addressed to discovery. Such a provision is entirely unrelated to "the safety of witnesses and others, a particular danger of perjury or witness intimidation, the protection of information vital to the national security, and the protection of business enterprises from economic reprisals." In any event, Rule 16(b)(1)A(ii) is quite explicit that the only trigger for a defendant to be required to make pretrial production of the documents and objects under his possession or control that he intends to introduce in his case in chief is a request by the defendant for discovery of documents and objects under Rule 16(a)(1)(E). Because Mr. Treem has made no such request, there is no authority under Rule 16 or the law to impose any requirement on him that he make pretrial disclosure of the documents or objects he intends to introduce in his case in chief. Of course nothing prohibits the parties from coming to agreement about matters pertaining to the trial as the case proceeds.

*       *       *

Although the defendants have made clear in their motion, and here, that the government has made no good cause showing for a protective order, as an accommodation they are willing to consent to a protective order as previously proposed. It prohibits the indiscriminate dissemination of discovery received from the government. Anything broader or more burdensome fails to comply with the mandate

11

"not to impose a protective order that is 'broader than is necessary to accomplish [its] goals.'" *United States v. Concord Management & Consulting LLC*, 404 F.Supp.3d 67, 74 (D.D.C. 2019) (quoting *United States v. Lindh,* 198 F.Supp.2d 739, 742 (E.D. Va. 2002)).

    Respectfully submitted,

SCHERTLER ONORATO MEAD & SEARS, LLP
/s/*Robert P. Trout*
Robert P. Trout, Bar No. 01669
901 New York Ave., NW, Suite 500
Washington, DC 20006
Telephone: (202) 675-4410
Facsimile: (202) 628-4177
rtrout@schertlerlaw.com

/s/ *Daniel F. Goldstein*
Daniel Goldstein, Bar No. 01036
131 Rte 9A
Spofford, NH 03462
Telephone: (410) 218-8537
dan@gold-stein.com

Attorneys for Joshua Treem


OFFICE OF THE FEDERAL PUBLIC DEFENDER
/s/ *Geremy C. Kamens*
Geremy C. Kamens
Admitted Pro Hac Vice
Office of the Federal Public Defender
1650 King St., Suite 500
Alexandria, Virginia 22314
Telephone: 703-600-0800
Facsimile: 703-600-0880
Geremy_Kamens@fd.org

LEGRAND LAW PLLC
*/s/ Rebecca S. LeGrand*
Rebecca S. LeGrand
Bar No. 18351
1100 H St. NW, Suite 1220
Washington, DC 20005
Telephone: 202-587-5725
Facsimile: 202-795-2838
rebecca@legrandpllc.com

Attorneys for Sean Gordon


SCHULTE ROTH & ZABEL LLP
*/s/ Peter H. White*
Peter H. White (D.C. Bar: 468746) (VA Bar: 32310)
Aislinn Affinito (DC Bar: 1033700) (CA Bar: 300265)
McKenzie Haynes (N.Y. Bar: 5683859)
Schulte Roth & Zabel
901 Fifteenth Street, NW, Suite 800
Washington, DC 20005
pete.white@srz.com
aislinn.affinito@srz.com
mckenzie.haynes@srz.com

OUTLAW PLLC
*/s/ Lucius T. Outlaw*
Lucius T. Outlaw III (#20677)
Outlaw PLLC
1351 Juniper St. NW
Washington, DC 20012
(202) 997-3452
loutlaw3@outlawpllc.com

Attorneys for Kenneth Ravenell

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this 18th day of March, 2021, I caused a copy of Defendants' Reply to United States' Opposition to Motion to Modify Protective Order to be served upon counsel for the United States of America via ECF and that true and correct copies of the filing are available to all parties through ECF and/or PACER.

                                      /s/ Robert P. Trout
                                      Robert P. Trout
                                      Attorney for Joshua R. Treem