## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | **Case No. 19-CR-449** |
| | ) | |
| **KENNETH W. RAVENELL, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### MOTION AND MEMORANDUM TO DISMISS COUNTS FOUR, FIVE, SIX, AND SEVEN BECAUSE DEFENDANTS ACTED LAWFULLY IN THE COURSE OF PROVIDING BONA FIDE LEGAL REPRESENTATION

### Table of Contents

Introduction ................................................................................................ 2

Facts Alleged in the Indictment .................................................................. 3

    A.    R.B. Made Exculpatory Statements about Mr. Ravenell ...................... 4

    B.    The Indictment Establishes that Mr. Treem Properly Ended the Interview when R.B. Proposed Unethical Conduct. ...................................... 6

    C.    The Gordon Declaration ......................................................................... 7

    D.    The Letter to a U.S. District Judge. ....................................................... 9

Argument ..................................................................................................... 11

I.    Failure to State An Offense Requires Dismissal ............................................ 11

II.    The Constitution Guarantees a Criminal Defendant the Right to Investigate and Adduce Exculpatory Evidence in Accordance with the Defendant's Right to the Presumption of Innocence. .......................................................................... 12

    A.    The Constitution Guarantees a Right to Independent Investigation and Equal Access to Witnesses ............................................................................. 12

    B.    Presentation of Exculpatory Statements to a Witness Is Consistent

With the Presumption of Innocence and the Jury's Exclusive Role In Determining Guilt or Innocence............................................................................................... 13

III.    Because Documentation of R.B.'s Exculpatory Statements, and the Failure to Record R.B.'s Adverse Statements, Constitute the Provision of Lawful, Bona Fide, Legal Services, Counts Four through Seven Fail to State an Offense. ..................... 17

      A.    Documentation of R.B.'s Exculpatory Statements Constitutes Lawful Conduct Because Such Statements Are Potentially Admissible Under the Federal Rules of Evidence............................................................................................... 18

      B.    Failure to Document R.B.'s Adverse Statements On September 10, 2017, Is Not Obstruction of Justice............................................................................ 21

      1.    The Government's Obligation to Disclose Favorable Information to the Defense Does Not Require It to Document Witness Interviews or Include Exculpatory Information in its Affidavits.......................................................................... 22

      2.    The Defense is Obligated to Maintain Confidentiality of Adverse Information About Past Crimes Obtained During the Defense's Investigation. ...... 23

IV.    Alternatively, the Obstruction Charges Must Be Dismissed For Failure to Allege that the Defendants Were Not Acting in the Course of Providing Lawful, Bona Fide Legal Representation Services....................................................................... 25

Conclusion ............................................................................................... 30

## INTRODUCTION

The prosecution of the defendants for obstruction of justice does violence to two fundamental premises of our adversarial system of criminal justice: the right to equal access to witnesses, and the presumption of innocence. The government's basic allegation—that a defense lawyer and investigator committed felony offenses by seeking to document exculpatory statements about their client *that a witness actually made*—is irreconcilable with our adversarial system, the right to equal access to witnesses, and the "undoubted law, axiomatic and elementary" that "there is a

2

presumption of innocence in favor of the accused." *Coffin v. United States*, 156 U.S. 432, 453 (1895). Defense lawyers and those acting at their direction have a constitutional right to interview witnesses and to seek to obtain exculpatory statements consistent with the presumption of innocence enjoyed by their clients. They do not have an obligation to record or disclose adverse statements. Such conduct on behalf of a criminal defendant is not only constitutionally protected, it also is not "prohibit[ed]" by the obstruction of justice statutes. 18 U.S.C. § 1515(c).

Congress directed that the government may not "prohibit or punish" the "providing [of] lawful, bona fide, legal representation services in connection with or anticipation of an official proceeding." 18 U.S.C. § 1515(c). Section 1515(c) was enacted in 1986 in response to "complaints of prosecutor[]s harassing members of the defense bar," 132 Cong. Rec. 32,805 (Oct. 17, 1986) (Rep. Berman), and to make clear that "[v]igorously and zealously representing a client…, is not a basis for charging an offense under the obstruction of justice chapter." *Id*. Because the defendants' conduct as alleged in Counts Four through Seven constitutes the lawful provision of legal representation, and because the indictment fails to allege non-compliance with § 1515(c), these charges must be dismissed.

## FACTS ALLEGED IN THE INDICTMENT

Taken as "true" for purposes of this Motion to Dismiss, *see United States v. Thomas*, 367 F.3d 194, 197 (4th Cir. 2004), the indictment alleges as follows: Kenneth W. Ravenell is a lawyer who has been a licensed member of the Maryland Bar since

1985, Count 4 ¶ 2, Joshua Treem is a lawyer admitted to the Maryland Bar in 1972, *id.* ¶ 3, and Sean F. Gordon is a defense investigator who did worked for Mr. Treem when Mr. Treem represented Mr. Ravenell, *id.* ¶¶ 5-6.

In January 2016, Mr. Treem was engaged to represent Mr. Ravenell "in connection with a federal criminal investigation conducted by the U.S. Department of Justice and an investigation by a federal grand jury sitting in Baltimore of Ravenell." *Id.* ¶7. Mr. Treem represented Mr. Ravenell until June 18, 2019, *id.*, so at all pertinent times, Mr. Treem was serving as a lawyer representing Mr. Ravenell.

"Ravenell, Treem, and Gordon knew R.B. had information about Ravenell's conduct," and "knew that R.B. could be a potential witness in the investigation of Ravenell being conducted by the U.S. Department of Justice and the grand jury and in a federal criminal prosecution of Ravenell." *Id.* ¶¶ 17-18. At the meeting with R.B. on September 9, 2017, Mr. Treem took with him a two-page type-written list of affirmative statements that had been prepared for him by his client, Mr. Ravenell. *Id.* ¶ 19. The indictment characterizes these statements as, "in effect, *false denials* about Ravenell's involvement in criminal conduct." *Id.* (emphasis added).[1]

## A.   R.B. Made Exculpatory Statements about Mr. Ravenell.

The indictment states that during the interview, "R.B. asked Treem, 'You want me to just read [the list of statements] man, and answer every question?' Treem

---

[1] In other words, the statements about Ravenell were exculpatory and consistent with the presumption of innocence.

agreed to that approach," and "R.B. proceeded to go through many but not all the items on the [list], reading a numbered statement and adopting it using, in almost all cases, a single word like 'yes,' 'no,' or 'correct.'" Count 4 ¶ 37. Having requested that R.B. review "every question," and as R.B. proceeded to "adopt" "many but not all the items," "[n]either Treem nor Gordon recorded [contemporaneously] which statements R.B. adopted" during the first meeting. *Id.*[2]

One of the first exculpatory statements on the list stated that "[R.B.] told [Mr. Ravenell] [R.B.] was no longer involved in narcotics activities after his February 2011 arrest." Count 4 ¶ 20. Mr. Treem and R.B. discussed this topic "at length," and in response to Mr. Treem's questions, "R.B. said Ravenell 'want[ed] to make sure that what I was doing was on the up and up and the way I was paying my bills was on the up and up." *Id.* The indictment also provides that "Treem [] asked R.B. if R.B. was 'deliberately trying to make sure,' that Ravenell *did not know* that money R.B. was giving Ravenell was drug money, to which R.B. responded, *Yeah.*" Count 4 ¶ 25 (emphasis added).

---

[2] The indictment lists four statements out of 53 that R.B. did not read out loud or adopt. Count 4 ¶ 84. As the video of the interview reflects, R.B. inadvertently skipped those four questions when he read from the sole copy of the list in the interview, and neither Mr. Treem nor Gordon could see from across the table that R.B had skipped the four statements. The skipped statements, moreover, are far less consequential than the reviewed and assented statement that "Ravenell did not know that money R.B. was giving Ravenell was drug money."

**B.      The Indictment Establishes that Mr. Treem Properly Ended the Interview when R.B. Proposed Unethical Conduct.**

Mr. Treem and Mr. Gordon returned the next day, September 10. Before getting into any substantive discussion, Mr. Treem brought out the list of exculpatory statements that had been reviewed in large measure the previous day. The list now had check marks next to each of the numbered items, including four items of the 53 that R.B. had not specifically read aloud. Count 4 ¶ 54. Mr. Treem said, "Okay. So we went over all this stuff yesterday. I'm not going to bother with that today. Can you sign this for me, just to show [Mr. Ravenell] that you went over it?" *Id.* ¶ 55.

R.B. did not immediately sign the list, and after further discussion, R.B. changed his story from the previous day:

> All right, so here's what I'm saying to you. And I want to go deep into this, okay, because I want you to clearly understand my position, all right? … My only position here is my money, that's it. [Mr. Ravenell] can get anything he want from me that's not a problem.… My concern is my money.

> Now, the information I gave you yesterday — is the information if called to testify I will testify to on the stand.
> ….
> Here's the real of the situation, all right. The real of the situation is this, [Mr. Ravenell] knew my whole business operation, period, from A to Z, from nuts [to bolts]. [Mr. Ravenell] knew that LOC was used to launder money. [Mr. Ravenell] knew I was still involved in narcotics. I paid [Mr. Ravenell] millions of dollars in cash. [Mr. Ravenell] shared all that money between [Attorney 1 and Attorney 2], now [Attorney 1 and Attorney 2] is riding off in the sunset and he got a headache and nobody is making sure I get my money.

*Id.* ¶¶ 59-60. In notes that Mr. Treem took during the interview, he wrote: "different from yesterday," and underlined this statement four times. *Id.* ¶ 64.

R.B. also stated that Ken Ravenell needed to destroy evidence:

> Now, [Mr. Ravenell] keeps a chart of all my investments, all the players that's involved, the how's and the where's. He needs to make sure all of that vanish off his laptop.

*Id.* ¶ 62. Mr. Treem responded in no uncertain terms that Mr. Ravenell could not destroy evidence:

> Well, he can't do that. I can't have him I can't advise him to delete stuff off his laptop. I can't do that. I told you [R.B.], yesterday there's a subpoena out for that stuff I can't delete that and he can't either.

*Id.* As to the list of exculpatory statements, R.B. said "I mean, this—I'm ready—this is for the [witness] stand, okay." *Id.* ¶ 67. Mr. Treem replied:

> I can't put you on the witness stand if you're going to lie, and if I know you're going to lie I can't do that….

*Id.* ¶ 68. In his notes, Mr. Treem wrote: "saying [] different from yesterday…. R.B. prepared to testify about [what] he [Mr. Ravenell] needs [him] to…. can't call [R.B.] if you are going to lie." *Id.* ¶ 70. Mr. Treem then stated that "they should stop the interview." *Id.* ¶ 69.

Before he left the interview room, however, Mr. Treem renewed his request for R.B. to sign the list of exculpatory statements that R.B. had largely adopted the previous day to show that R.B. "saw it." *Id.* ¶ 74. R.B. subsequently signed both pages of the list. *Id.* ¶ 78.

## C.    The Gordon Declaration

On September 14, 2017, Mr. Gordon signed a two-page declaration regarding the interview of R.B. In paragraphs four through eight, the declaration states as

7

follows:

> 4. At some point prior to the interview Mr. Treem had received a document entitled 'KWR's Combined Notes' which were hand written notes of Mr. Ravenell which for clarity and understanding had been typed by Mr. Treem's assistant.

> 5. On September 9, 2017, we met with [R.B.] at Towers Jail beginning at 10:30 a.m. local time. During the course of the interview, [R.B.] was given the document attached as Exhibit 1 to review.

> 6. [R.B.] read each of the entries, numbered 1-53, out loud and acknowledged the truthfulness and accuracy of each one separately and individually.

> 7. At no time did he express any hesitancy, disapproval or disagreement with the statements or make any changes.

> 8. The "√" markings on the Exhibit were made by Mr. Treem subsequent to [R.B.] acknowledging the accuracy of the entries, to record that [R.B.] had read all the entries.   All of the other handwriting was made by Mr. Treem prior to [R.B.] reading and acknowledging the accuracy of entries 1 through 53.

Count 4 ¶¶ 83-86. Paragraphs 5-7 of Mr. Gordon's declaration refer to the meeting that took place on September 9, 2017, when R.B. unequivocally made exculpatory statements as to Mr. Ravenell.

The final paragraph states:

> 9. We met with [R.B.] again on September 10, 2017. During our visit we asked him to review Exhibit 1 and, if he had no changes to make, to sign and date the statement, which he did in my presence.

*Id.* ¶ 87. Never filed, the declaration "was thereafter maintained in Treem's files at [his] law firm." *Id.* ¶ 88. Nonetheless, the indictment alleges that this document constitutes a "false statement" because "R.B. acknowledged the accuracy of only some of the entries on the first day of the interview … but denied their accuracy on the

second day," R.B. was not told to "review Exhibit 1 and, if he had no changes to make, to sign and date the statement," and R.B. stated that "the statements in the [list] were untrue during an extended conversation that occurred before R.B. signed the document." *Id.* ¶¶ 86-87. The indictment acknowledges, however, that R.B. assented to "many" of the 53 statements on September 9, 2017, and lists only four that were not read out loud or acknowledged. *Id.* ¶¶ 37, 84.

### D.     The Letter to a U.S. District Judge

On February 9, 2018, Mr. Treem mailed an ex parte letter to a U.S. District Judge advising that R.B. made statements that appeared to constitute extortion of money in return for favorable testimony. Count 4 ¶¶ 99, 107. Specifically, the letter stated that Mr. Treem was writing "to bring to your attention recent actions by [R.B.] that [Mr. Treem] believed constitute[d] criminal conduct." *Id.* ¶ 99.[3]

In the course of the letter, Mr. Treem wrote that R.B. acknowledged the accuracy of the exculpatory statements on September 10, 2017, rather than September 9, 2017. *Id.* ¶ 106. The letter did not reflect R.B.'s statements on September 10, 2017, that were adverse to Ken Ravenell. *Id.*

According to the indictment, the defendants obtained R.B.'s signature on the

---

[3] *See United States v. Shaffer Equip. Co.*, 11 F.3d 450, 457-58 (4th Cir. 1993) (describing general duty "in connection with an attorney's role as an officer of the court" to disclose matters that may undermine integrity of judicial process); ABA Rules of Professional Responsibility 3.3-12 (requiring lawyer to take reasonable remedial measures when lawyer "knows that a person . . . is engaging or has engaged in criminal or fraudulent conduct related to the proceeding").

list of exculpatory statements, and created the Gordon declaration and the letter to a U.S. District Judge "to be used to undermine and impeach R.B.'s credibility if he were to be called in an official proceeding to give testimony against Ravenell, and to provide false evidence of a prior inconsistent statement by Gordon and Treem in the event either one of them were to be called to testify in an official proceeding." Counts 4 ¶ 12; 5.

In addition, the indictment alleges that a "means" of effecting the charged conspiracy to obstruct justice was that "Treem and Gordon, at Ravenell's direction, met with R.B., who they knew was a potential witness in a federal criminal investigation by the U.S. Department of Justice and a federal grand jury sitting in Baltimore of Ravenell and a foreseeable criminal prosecution of Ravenell in the United States District Court of Maryland, and presented R.B. with a document, prepared by Ravenell, containing false statements exculpating Ravenell." Count 4 ¶ 11.

The indictment does not allege that any defendant sought to bribe R.B. or any other witness. Nor does it allege that any defendant threatened or exerted any improper pressure on R.B. or any other witness. In sum, the superseding indictment fails to allege that the defendants' conduct was not done in the course of the lawful bona fide provision of legal services.

## ARGUMENT

### I.     Failure to State An Offense Requires Dismissal.

Dismissal is required if it is "demonstrate[d] that the allegations [in the indictment], even if true, would not state an offense." *United States v. Thomas*, 367 F.3d 194, 197 (4th Cir. 2004). In the absence of a specified time to file pretrial motions, a motion to dismiss an indictment for failure to properly allege an offense may be made at any time prior to the start of trial. Fed. R. Crim. P. 12(b)(3)(B) & 12(c)(1)**.**

An indictment "must include every essential element of an offense, or else the indictment is invalid; and mere reference to the applicable statute does not cure the defect." *United States v. Kingrea*, 573 F.3d 186, 191 (4th Cir. 2009) (citation omitted). This obligation includes the requirement to allege all elements of predicate offenses of a conspiracy, otherwise the indictment fails "to state an offense against the United States as the object of the conspiracy." *Id.* at 193.

"An essential element of a crime—one that affects a substantial right—is 'one whose specification ... is necessary to establish the very illegality of the behavior and thus the court's jurisdiction.'" *United States v. Hooker*, 841 F.2d 1225, 1231 (4th Cir. 1988) (citation omitted). In particular, "where guilt depends so crucially upon [] a specific identification of fact," the failure of an indictment to allege the fact is "fatally defective." *Russell v. United States*, 369 U.S. 749, 764 (1962).

The superseding indictment fails to allege obstruction of justice offenses in two ways. First, the conduct described in the indictment constitutes the lawful provision

of legal services and thus is not prohibited pursuant to 18 U.S.C. § 1515(c). Second, the indictment fails to allege that the defendants were not acting in accordance with the lawful provision of legal services as required to allege obstruction offenses against a lawyer and those acting at their direction.

## II. The Constitution Guarantees a Criminal Defendant the Right to Investigate and Adduce Exculpatory Evidence in Accordance with the Defendant's Right to the Presumption of Innocence.

### A. The Constitution Guarantees a Right to Independent Investigation and Equal Access to Witnesses.

Our adversarial system of justice "is premised on the well-tested principle that truth – as well as fairness – is best discovered by powerful statements on both sides of the question, *Penson v. Ohio*, 488 U.S. 75, 84-85 (1988). To ensure that our adversarial system functions as designed, defense counsel "must be zealous and must resolve all doubts and ambiguous legal questions in favor of his or her client." *McCoy v. Ct. of Appeals*, 486 U.S. 429, 444 (1988).

One of a defense counsel's constitutional responsibilities is "a duty to make reasonable investigations," *Strickland v. Washington*, 466 U.S. 668, 691 (2000), and interview witnesses who may possess relevant information. *See Porter v. McCollum*, 558 U.S. 30, 39-40 (2009) (constitutional standard of competence requires counsel to interview witnesses). [4] "A witness is not the exclusive property of either the

---

[4] *See also* ABA Standards for Criminal Justice, Defense Function, 4–4.1(a) (4th ed. 2017) ("Defense counsel has a duty to investigate in all cases, and to determine whether there is a sufficient factual basis for criminal charges."). As such, "[t]he right to the assistance of counsel has [] been given a meaning that ensures to the defense

government or a defendant; a defendant is entitled to have access to any prospective witness, although in the end the witness may refuse to be interviewed." *United States v. Walton*, 602 F.2d 1176, 1179-80 (4th Cir. 1979).

### B. Presentation of Exculpatory Statements to a Witness Is Consistent With the Presumption of Innocence and the Jury's Exclusive Role In Determining Guilt or Innocence.

"[A] basic component of a fair trial under our system of criminal justice" is that a criminal defendant is afforded the presumption of innocence. *Estelle v. Williams*, 425 U.S. 501, 503 (1976). This presumption constitutes a "bedrock 'axiomatic and elementary' principle whose 'enforcement lies at the foundation of the administration of our criminal law.'" *In re Winship*, 397 U.S. 358, 363 (1970) (citation omitted). Accordingly, it is a "jury's constitutional responsibility," not the government's, to "draw the ultimate conclusion of guilt or innocence." *United States v. Gaudin*, 515 U.S. 506, 514 (1995). The indictment disregards these basic constitutional principles by seeking to criminalize the presentation of what it characterizes as "*false statements exculpating*" a client to a witness by a criminal defense team. Count 4 ¶¶ 10-11; *see also* Count 1 ¶¶ 34-35.

The defense is constitutionally entitled to present exculpatory statements to a witness and document their agreement with such statements. As U.S. District Judge Walter E. Hoffman wrote in a decision for the Eleventh Circuit, "[i]t is common

---

in a criminal trial the opportunity to participate fully and fairly in the adversary factfinding process." *Herring v. New York*, 422 U.S. 853, 856–58 (1975).

practice for attorneys, investigators, insurance adjusters, and law enforcement agents, both state and federal, to attempt to obtain signed statements of witnesses in criminal and civil cases." *United States v. Brand*, 775 F.2d 1460, 1468 (11th Cir. 1985) (decision for court by Walter E. Hoffman, E.D. Va. D.J., sitting by designation). The Eighth Circuit similarly explained over 100 years ago:

> *It is not an unlawful attempt to influence or impede a witness*, or the due administration of justice, *for one to seek to obtain from a witness a statement of the facts as he believes them to be*, without the exercise of undue influence, even though such a statement may conflict with prior testimony given by the one making the statement."

*Harrington v. United States*, 267 F. 97, 101 (8th Cir. 1920) (emphasis added). Such conduct cannot support a charge of obstruction of justice because "[i]f [such attorneys and investigators] are to be confronted (as they frequently are), with charges of persons claiming that a statement was false, thus resulting in an obstruction of justice charge even though the statement was never submitted to a prosecutor or to the court, a new wave of cases will be filed by federal or state authorities." *Brand*, 775 F.2d at 1468.

Defense counsel may also be obligated to engage in conduct that impedes the government's investigation. Counsel's advice to a client to remain silent in accordance with the Fifth Amendment, for example, or stating to a witness that she need not speak to law enforcement if she does not wish to, or legitimate efforts to quash a subpoena for information protected by the attorney-client privilege, may all impede a law enforcement investigation.

14

Such conduct falls squarely within that required of constitutionally competent defense counsel, and thus cannot constitute obstruction of justice. *See, e.g.*, *Arthur Andersen LLP v. United States*, 544 U.S. 696, 704 (2005) ("No one would suggest that an attorney who "persuade[d]" [a client to withhold documents covered by attorney-client privilege] acted wrongfully, even though he surely intended that his client keep those documents out of the [government's] hands."); *Fisher v. United States*, 425 U.S. 391, 402-05 (1976) (documents given to attorney for legal advice are "unobtainable by summons directed to the attorney by reason of the attorney-client privilege"); *Miranda v. Arizona*, 384 U.S. 436, 480-81 (1966) (noting that lawyer's advice to remain silent "is not cause for considering the attorney a menace to law enforcement"). Anything less would mean that "the process loses its character as a confrontation between adversaries, [and] the constitutional guarantee [to effective counsel] is violated." *United States v. Cronic*, 466 U.S. 648, 657 (1984); *accord Ferri v. Ackerman*, 444 U.S. 193, 204 (1979) ("[A]n indispensable element of the effective performance of [defense counsel's] responsibilities is the ability to act independently of the Government and to oppose it in adversary litigation.").

To be sure, defense counsel cannot introduce testimony under oath from a defendant or a witness that the lawyer knows is false. *See Nix v. Whiteside*, 475 U.S. 157, 173 (1986) ("The crime of perjury in this setting is indistinguishable in substance from the crime of threatening or tampering with a witness or a juror.... [T]he responsibility of an ethical lawyer ... is essentially the same whether the client

announces an intention to bribe or threaten witnesses or jurors or to commit or procure perjury."). But Counts Four through Seven of the indictment allege no such thing.

Because defense counsel and those acting under their direction are not fact witnesses, they rarely have actual knowledge that testimony from a witness is false. In fact, defense counsel is obligated to honor a defendant's decision to testify at trial even if the attorney believes the testimony is "[f]arfetched" and "dramatically outweighed by other evidence." *United States v. Midgett*, 342 F.3d 321, 326-27 (4th Cir. 2003). Likewise, an attorney does not suborn perjury by adducing testimony from a witness that the attorney "believes" or has the "impression" will testify untruthfully based on its inconsistency with other evidence. *Hoke v. Netherland*, 92 F.3d 1350, 1360 (4th Cir. 1996) (holding that prosecutor's "beliefs" or "impressions" that government witness testified falsely does not establish that prosecutor "suborned perjury").[5]

In sum, however the statements presented by Mr. Treem and Mr. Gordon (and which R.B. agreed were true on September 9, 2017) are characterized, the presentation of such statements by defense counsel does not constitute obstruction of

---

[5] In other words, attorneys "suborned perjury only if they actually knew that [the witness] was testifying falsely about his subjective beliefs; absent such actual knowledge, the [attorneys] did not suborn perjury, even if they suspected or had reason to suspect that [the witness] was lying...." *United States v. Derrick*, 163 F.3d 799, 828 (4th Cir. 1998) (citing *Hoke*, 92 F.3d at 1360). Put differently, "doubts about the accuracy of certain [evidence] [] is quite different from having knowledge of falsity." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 261 (1988).

justice. It is simply a component of our adversarial system of justice, the embodiment

of a defendant's constitutional right to a defense investigation, and conduct consistent

with the presumption of innocence.

**III.  Because Documentation of R.B.'s Exculpatory Statements, and the Failure to Record R.B.'s Adverse Statements, Constitute the Provision of Lawful, Bona Fide, Legal Services, Counts Four through Seven Fail to State an Offense.**

The crux of the government's obstruction allegation is that the defendants

created "a set of false exculpatory statements titled 'KWR's Combined Notes,' which

Treem and Gordon encouraged R.B. to sign, a false affidavit dated September 14,

2017, signed by Gordon, and a letter to a United States District Court Judge in the

District of Maryland dated February 8, 2018, signed by Treem, [which] *were all*

*fraudulently prepared to be used to undermine and impeach R.B.'s credibility if he*

*were to be called in an official proceeding against Ravenell, and to provide false*

*evidence of a prior consistent statement by Gordon and Treem in the event either one*

*of them were to be called to testify in an official proceeding."* Superseding Indictment,

Count 5 (emphasis added). These allegations do "not state an offense cognizable in

law." *United States v. Carbone*, 327 U.S. 633, 636 (1946).

**A.  Documentation of R.B.'s Exculpatory Statements Constitutes Lawful Conduct Because Such Statements Are Potentially Admissible Under the Federal Rules of Evidence.**

The government's claim that documentation of R.B.'s exculpatory statements

on September 9, 2017, constitutes obstruction of justice is false because it is "a basic

rule of evidence [] that prior inconsistent statements may be used to impeach the

credibility of a witness." *United States v. Hale*, 422 U.S. 171, 176 (1975); *see also* Fed. R. Evid. 613 (authorizing impeachment of witness based upon prior inconsistent statement). To be admissible to impeach a witness's trial testimony, Rule 613 "requires that a prior statement be inconsistent." *United States v. Barile*, 286 F.3d 749, 755 (4th Cir. 2002) (citation omitted). To be "inconsistent," a prior statement need only "afford[] some indication that [a] fact was different from the testimony of the witness whom it sought to contradict." *United States v. Gravely*, 840 F.2d 1156, 1163 (4th Cir. 1988) (citation omitted). The purpose of such impeachment, after all is "to show the discrepancy[,] by extrinsic evidence if necessary—*not to demonstrate which of the two is true* but, rather, to show that the two do not jibe (thus calling the declarant's credibility into question)." *United States v. Winchenbach*, 197 F.3d 548, 558 (1st Cir. 1999) (emphasis added). As one treatise explains:

> The attack by prior inconsistent statement is not based on the theory that the present testimony is false and the former statement true. Rather, the theory is that talking one way on the stand and another way previously is blowing hot and cold, raising a doubt as to both statements.

McCormick Evid. § 34 (8th ed. 2020).

Accordingly, with respect to prior statements, what matters with respect to admissibility is simply whether it is inconsistent with trial testimony. There is no independent requirement that lawyers evaluate whether a prior statement was objectively "true" or "false." But even if there were, "[i]n searching for the strongest arguments available, the attorney must be zealous and must resolve all doubts and ambiguous legal questions in favor of his or her client." *Hunter v. Earthgrains Co.*

18

*Bakery*, 281 F.3d 144, 156 n.18 (4th Cir. 2002) (quoting *McCoy*, 486 U.S. at 444).

KWR's Combined Notes, the declaration by Sean Gordon, and the letter to a U.S. District Judge reflect that R.B. made exculpatory statements as to Mr. Ravenell, and specifically that R.B. denied on September 9, 2017, that Mr. Ravenell knowingly laundered R.B.'s drug proceeds. If R.B. testified to the contrary at a trial, the fact that R.B. made inconsistent statements on September 9, 2017, would be *admissible to impeach R.B* with evidence of his prior inconsistent statements. In other words, the government has prosecuted two experienced attorneys and an experienced defense investigator on the grounds that they created documents which establish that R.B. made exculpatory statements about Mr. Ravenell, *which the indictment establishes R.B. actually made on September 9, 2017.*

The government alleges that the defense "fraudulently prepared" documents designed to "*undermine and impeach R.B.'s credibility*," apparently because the documents fail to reflect adverse statements made by R.B. on September 10, 2017. That R.B. made statements on September 10, 2017, that were inconsistent with the statements he made on September 9, 2017, makes no difference. If R.B. were to testify at trial that Mr. Ravenell knew that the money he received from R.B. constituted drug proceeds, the "inconsistency in plain terms" with the statements R.B. made on September 9, 2017, would be "so palpable as to surpass the threshold for admissibility under Rule 613." *Barile*, 286 F.3d at 755. Such statements would unequivocally demonstrate that R.B. spoke "one way on the stand and another way previously,"

19

thereby "raising a doubt as to both statements." McCormick § 34, *supra*.

R.B.'s adverse statements on September 10, 2017, simply reinforce that R.B. "blow[s] hot and cold." *Id.* The evidentiary rules expressly contemplate such a circumstance, and authorize the proponent of witness testimony to introduce a prior statement that "is *consistent* with the declarant's [trial] testimony" that is offered to rebut the claim that trial testimony was recently fabricated. Fed. R. Evid. 801(d)(1)(B) (emphasis added). The government thus could seek to introduce prior *consistent* statements made by R.B. to rebut the claim that his trial testimony was recently fabricated.[6]

That R.B.'s statements on September 9, 2017, could be used to impeach inconsistent trial testimony regardless of his statements to the contrary on September 10, 2017, is fatal to the government's claim that the defendants' efforts to document the statements made on September 9, 2017, reflect "corrupt" intent for purposes of the obstruction statutes. *See Arthur Andersen*, 544 U.S. at 705-06 (stating

---

[6] Of course, a prior consistent statement is admissible under Federal Rule of Evidence 801(d)(1)(B) only if the statement was made *before the declarant had a motive to falsify*. *United States v. Henderson*, 717 F.2d 135, 138 (4th Cir. 1983); *accord Tome v. United States*, 513 U.S. 150, 167 (1995). Accordingly, a statement that was "not made *prior* to a bargain between [the witness] and the government as to [the witness's] testimony" is inadmissible as a prior consistent statement. *See United States v. Weil*, 561 F.2d 1109, 1111 n.2 (4th Cir. 1977) (emphasis added); *see also Henderson*, 717 F.2d at 139 (noting distinction for purposes of admissibility under Rule 801(d)(1)(B) between "statements made to police after arrest but before a bargain and statements made after an agreement [to cooperate] is reached"). If R.B. had agreed to cooperate with the government, therefore, his statements on September 10 would be inadmissible as prior consistent statements under Rule 801(d)(1)(B).

corrupt intent requires intentional wrongdoing, and excludes conduct that is lawful or innocent). Because documenting R.B.'s exculpatory statements on September 9, 2017, is entirely consistent with Federal Rule of Evidence 613 and basic legal practice, the government has alleged conduct that falls squarely within the safe-harbor provision set forth at 18 U.S.C. § 1515(c).

Prosecution of these defendants for obstruction of justice based upon the presentation of "false" exculpatory statements to a witness, and the documentation of the witness's initial agreement with those statements—even though the witness subsequently sought to retract his initial agreement—would violate the defendant's constitutional right to interview witnesses and obtain evidence in support of the defense and the presumption of innocence.

### B. Failure to Document R.B.'s Adverse Statements On September 10, 2017, Is Not Obstruction of Justice.

Any claim that the defendants' failure to include adverse statements made by R.B. in Mr. Gordon's declaration or in Mr. Treem's letter to a district judge is patently absurd given the absence of any corresponding obligation imposed on the government. Although the government remains obligated to provide "constitutionally guaranteed access to [certain] evidence," *California v. Trombetta*, 467 U.S. 479, 485 (1984), it need not document exculpatory evidence in witness interview notes, affidavits, or in its presentation to grand juries. The defense—which has no similar obligation to document or disclose evidence—thus has no obligation to document adverse information obtained in a witness interview.

21

1.    **The Government's Obligation to Disclose Favorable Information to the Defense Does Not Require It to Document Witness Interviews or Include Exculpatory Information in its Affidavits.**

The Constitution requires the government to turn over exculpatory evidence it uncovers in the course of its investigation, and prohibits it from misleading a defendant in response to a request for such evidence. *See United States v. Bagley*, 473 U.S. 667, 682 (1985). These obligations are the consequence of the "special role played by the American prosecutor in the search for truth in criminal trials." *Strickler v. Greene*, 527 U.S. 263, 281 (1999).[7]

That said, prosecutors and their agents have no duty to take down the words of a witness in a pretrial interview. *See, e.g., United States v. Rodriguez*, 496 F.3d 221, 225 (2d Cir. 2007) (rejecting argument that *Brady*, *Giglio*, the Confrontation Clause, or the Jencks Act impose upon "the Government [an] obligat[ion] to take notes of all interviews of potential witnesses"). Federal prosecutors and law enforcement agents often refuse to record witness interviews precisely because such written documentation may have to be disclosed to the defense. *See* Bennett L. Gershman, *Witness Coaching by Prosecutors*, 23 Cardozo L. Rev. 829, 852-53 (2002) ("Some

---

[7] In a letter dated December 3, 2019, in response to a *Brady* request made by Ravenell's counsel—more than two years after the interview of R.B. the government improperly recorded—the government stated that it would "produce *any Brady* material *if and when such material is discovered*," and that it was "not withholding any *Brady* material on the basis that it is also *Jencks* material." At that time, it did not disclose the video recording of R.B.'s exculpatory statements on September 9, 2017.

agents as a matter of policy do not take notes specifically to avoid creating contradicting evidence. Some prosecutors do not encourage note-taking, and occasionally even forbid government agents from taking notes."); John G. Douglass, *Confronting the Reluctant Accomplice*, 101 Colum. L. Rev. 1797, 1835-36 (2001) (observing that "few prosecutors even consider videotaping or tape recording their pretrial witness interviews"). Moreover, "[a]ffiants are not required to include every piece of exculpatory information in affidavits." *Evans v. Chalmers*, 703 F.3d 636, 651 (4th Cir. 2012) (citation omitted); *accord United States v. Colkley*, 899 F.2d 297, 302 (4th Cir. 1990).

In this very case, for example, the government failed to include all of the exculpatory statements made by R.B. on September 9, 2017, in its search warrants or in the indictment. Such information undoubtedly would have been helpful to the grand jury in deciding whether to issue an indictment or to a U.S. Magistrate Judge deciding whether to authorize searches of legal files for legal documents that constitute lawful extrinsic evidence of prior inconsistent statements admissible under the Federal Rules of Evidence. But the government was not required to include such information in its affidavits or in the evidence presented to the grand jury.

### 2. The Defense is Obligated to Maintain Confidentiality of Adverse Information About Past Crimes Obtained During the Defense's Investigation.

Defense counsel and their investigators need not document everything or anything that is said in a witness interview. As an initial matter, the Constitution

23

imposes no corresponding obligation on the defense to record, much less turn over, adverse information helpful to the prosecution. *Cf.* Md. Rule Prof. Resp. 19-303.8 (Special Responsibilities of a Prosecutor). Lawyers are bound "to comply with the law and standards of professional conduct," *Nix*, 475 U.S. at 168, and defense counsel owe a basic duty of confidentiality with respect to inculpatory information obtained in the course of an investigation. *See* Md. Rule Prof. Resp. 19-301.6 (Confidentiality of Information); *see also Newman v. Maryland*, 384 Md. 285, 863 A.2d 321, 331–32 (2004) ("Whereas the attorney-client privilege addresses compelled disclosure of client secrets during judicial proceedings, client confidentiality under Rule 1.6 of the Professional Code relates to the attorney's general duty to maintain the confidentiality of all aspects of a client's representation.").[8]

Moreover, "as to oral statements made by witnesses to [counsel], whether presently in the form of his mental impressions or memoranda," there is generally no "showing of necessity [that] can be made" to warrant disclosure to opposing counsel. *Hickman v. Taylor*, 329 U.S. 495, 512 (1947). In the absence of a waiver, therefore, information obtained during the defense investigation from witnesses remains subject to the work-product privilege. *See United States v. Nobles*, 422 U.S. 225, 238-40 (1975) (holding that work-product privilege protected defense investigator's witness statements from disclosure, but calling investigator as a witness effected a

---

[8] Pursuant to Local Rule 704, practice in the District of Maryland is governed by the Rules of Professional Conduct adopted by the Maryland Court of Appeals. U.S. Dist. Ct. D. Md. Local Rule 704 (Dec. 1, 2018).

waiver); *see also* Federal Rule of Crim. P. 16(b)(2); Defendants' Motion to Dismiss Based Upon Violation of Equal Access to Witnesses (filed separately). Accordingly, the defendants' failure to document R.B.'s adverse statements on September 10, 2017, did not constitute obstruction of justice. In keeping with his duty of confidentiality, Mr. Treem had every right *not* to include in his letter to a U.S. District Judge that R.B. had made adverse statements about Mr. Ravenell on September 10, 2017.

Mr. Ravenell's defense team had no duty to record or disclose R.B.'s adverse statements made on September 10, 2017, and remained duty bound to maintain the confidentiality of such statements unless and until asked about it on the witness stand. Based on the allegations in the indictment, Counts Four though Seven must be dismissed because the defendants' conduct was entirely consistent with the Federal Rules of Evidence, their ethical responsibilities, and 18 U.S.C. § 1515(c).

## IV.   Alternatively, the Obstruction Charges Must Be Dismissed For Failure to Allege that the Defendants Were Not Acting in the Course of Providing Lawful, Bona Fide Legal Representation Services.

The indictment does not allege that the defendants were not acting to provide "lawful, bona fide, legal representation services in connection with or anticipation of an official proceeding." 18 U.S.C. § 1515(c). Because "the government must expressly allege as an element of the offense in the indictment that the defendants in engaging in the conduct alleged were not 'providing lawful, bona fide, legal representation services in connection with or anticipation of an official proceeding,'" *United States v.*

*Jackson*, 926 F. Supp. 2d 691, 716-17 (E.D.N.C. 2013), the obstruction charges in the indictment must be dismissed. *See Russell*, 369 U.S. at 764.

Certain criminal offenses apply only if a defendant acts outside of the course of their employment. The distribution of controlled substances in violation of 21 U.S.C. § 841, for example, broadly prohibits the distribution of controlled substances. But "to convict a doctor for violating § 841, the government must prove … that the defendant's actions were not for legitimate medical purposes in the usual course of his professional medical practice or were beyond the bounds of medical practice." *United States v. Hurwitz*, 459 F.3d 463, 475 (4th Cir. 2006) (citations omitted). That is because a separate statutory provision, 21 U.S.C. § 822(b), "authorizes distribution and dispensation by registrants" such as medical doctors "'to the extent authorized by their registration and in conformity with the other provisions of this subchapter.'" *United States v. Daniel*, 3 F.3d 775, 778 (1993) (quoting 21 U.S.C. § 822(b)).

In alleging criminal charges against such defendants, therefore, it "is impossible to frame the actual statutory charge … without an allegation showing that the accused was not within the exception contained in the subsequent clause, section, or statute." *United States v. Cook*, 84 U.S. 168, 175 (1872). Indeed, because the text of 18 U.S.C. § 1515(c) provides that "[t]his chapter does not *prohibit or punish* the providing of lawful, bona fide legal representation services in connection with or anticipation of an official proceeding," proof that a defendant employed in the legal field was not acting to provide "lawful, bona fide legal representation" is "necessary

to establish the very illegality of the behavior." *Hooker*, 841 F.2d at 1231; *see also United States v. Laroque*, 2015 WL 306977, at *2 (E.D.N.C. Jan. 21, 2015) (noting that "the government would not be required to allege [in the indictment] the inapplicability of the [§ 1515(c)] exception in every case. Instead, it would only be required to do so if the defendant were a lawyer or agent of the lawyer.").

In *United States v. Edlind*, 887 F.3d 166 (4th Cir. 2018), for example, the defendant—a layperson—was convicted of obstruction based upon statements to a witness that could "be seen as attempts to confuse [the witness] … [and thus] undermine his ability to testify persuasively," even though the defendant told the witness to tell the truth. *Id.* at 176. Laypersons have no duty to conduct an investigation or talk to fact witnesses about a criminal investigation, and thus face the risk of obstructing justice when they do. Defense lawyers and those under their direction, by contrast, are required to conduct an investigation and talk to witnesses. That is why in seeking to prosecute lawyers and those acting at their direction, the government must allege and prove beyond a reasonable doubt that the alleged conduct was inconsistent with the lawful bona fide provision of legal services.

To be sure, in *United States v. Kloess*, 251 F.3d 941, 943-46 (11th Cir. 2001), the Eleventh Circuit held that 18 U.S.C. § 1515(c) constitutes an affirmative defense that must be raised by the defendant at trial. But the Eleventh Circuit defines elements and affirmative defenses differently than the Fourth Circuit. Contrary to the law in the Fourth Circuit, for example, "an indictment of a practitioner for

unlawfully dispensing drugs need not aver that it was done outside the course of professional practice." *United States v. Steele*, 147 F.3d 1316, 1317 (11th Cir. 1998).

In the Fourth Circuit, by contrast, the distinction between an element and an affirmative defense is based upon whether the fact is "necessary to establish the very illegality of the behavior," *Hooker*, 841 F.2d at 1231, in which case the fact constitutes an element of the offense. If, on the other hand, the fact "excuses punishment for a crime the elements of which have been established and admitted," it constitutes an affirmative defense. *United States v. Thompson*, 554 F.3d 450, 452 n.2 (4th Cir. 2009) (citation omitted); *see also Smith v. United States*, 568 U.S. 106, 110 (2013) (stating that if defense "'excuse[s] conduct that would otherwise be punishable,' but "does not controvert any of the elements of the offense itself," the Government has no constitutional duty to overcome the defense beyond a reasonable doubt.") (citation omitted). Section 1515(c) does not merely excuse punishment; it directs that the obstruction statutes do not "prohibit" the lawful provision of legal services.

Congress also knows how to draft affirmative defenses with respect to obstruction offenses. Indeed, Congress expressly enacted such a defense in 18 U.S.C. § 1512(e), which provides that "it is an affirmative defense, as to which the defendant has the burden of proof by a preponderance of the evidence, that the conduct consisted solely of lawful conduct and that the defendant's sole intention was to encourage, induce, or cause the other person to testify truthfully." § 1512(e). Section 1515(c) is drafted very differently, and states categorically that the obstruction of justice

28

chapter "does not prohibit or punish" the provision of lawful legal services.

Finally, if the Court were to permit the government to prosecute criminal defense attorneys and investigators based merely on the claim that the defense sought to obtain statements from witnesses that the government believes were false, it would upend the adversarial system of justice. *See Harrington*, 267 F. at 101; *Brand*, 775 F.2d at 1468. It would also give prosecutors an extraordinary license to – as in this case – brazenly violate the privacy and privilege afforded to the defense's work product in any case where a prosecutor alleges that the defense failed to accurately record a witness statement it secretly taped. *See Hickman*, 329 U.S. at 512; *Nobles*, 422 U.S. at 238; *see also* Motion to Dismiss for Violation of Equal Access to Witnesses (filed separately).

Proof beyond a reasonable doubt that the defendants were not "providing … lawful, bona fide, legal representation services in connection with or anticipation of an official proceeding" is therefore central to the "very illegality" of the charged obstruction offenses, because neither 18 U.S.C. § 1512(c)(2) nor 18 U.S.C. § 1519 "prohibit or punish" such conduct. 18 U.S.C. § 1515(c). Accordingly, Counts Four, Five, Six, and Seven "must be dismissed because they fail to plead an essential element of the offenses." *United States v. Jackson*, 926 F. Supp. 2d 691, 717 (E.D.N.C. 2013) (dismissing obstruction charges against legal representatives because of failure to allege inapplicability of 18 U.S.C. § 1515(c)).

29

## **CONCLUSION**

For all of the foregoing reasons, Mr. Ravenell, Mr. Treem, and Mr. Gordon respectfully request that the Court dismiss the pending obstruction charges against them because the indictment alleges conduct that squarely constitutes "the provi[sion] of lawful, bona fide legal representation services in connection with or anticipation of an official proceeding," and otherwise fails to allege that their conduct was not done in accordance with such lawful services.

Respectfully submitted,

KENNETH RAVENELL

/s/ Peter H. White
Peter H. White
Aislinn Affinito
McKenzie Haynes
Admitted Pro Hac Vice
SCHULTE ROTH & ZABEL LLP
901 Fifteenth Street, NW, Suite 800
Washington, DC 20005
pete.white@srz.com
aislinn.affinito@srz.com
mckenzie.haynes@srz.com

/s/ Lucius T. Outlaw
Lucius T. Outlaw III, Bar No. 20677
Outlaw PLLC
1351 Juniper St. NW
Washington, DC 20012
(202) 997-3452
loutlaw3@outlawpllc.com

JOSHUA R. TREEM

/s/ Robert P. Trout

30

Robert P. Trout, Bar No. 01669
Schertler Onorato Mead & Sears, LLP
901 New York Ave., N.W., Suite 500
Washington, D.C. 20001
Tel.: (202) 675-4410
Facsimile: (202) 628-4177
rtrout@schertlerlaw.com

Daniel Goldstein, Bar No. 01036
131 Rte 9A
Spofford, NH 03462
Telephone: (410) 218-8537
dan@gold-stein.com

SEAN F. GORDON

/s/ Geremy C. Kamens
Geremy C. Kamens
Admitted Pro Hac Vice
Office of the Federal Public Defender
1650 King St., Suite 500
Alexandria, Virginia 22314
Telephone: 703-600-0800
Facsimile: 703-600-0880
Geremy_Kamens@fd.org

/s/ Rebecca S. LeGrand
Rebecca S. LeGrand
Bar No. 18351
LeGrand Law PLLC
1100 H St. NW, Suite 1220
Washington, DC 20005
Telephone: 202-587-5725
Facsimile: 202-795-2838
rebecca@legrandpllc.com