IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA  ) | |
| ) | |
| v.  ) | Case No. 19-CR-449 |
| ) | |
| KENNETH W. RAVENELL, et al.,  ) | |
| ) | |
| **Defendants.**  ) | |

**DEFENDANTS' MOTION AND MEMORANDUM FOR ENTRY OF ORDER
PURSUANT TO THE DUE PROCESS PROTECTIONS ACT
AND FEDERAL RULE OF CRIMINAL PROCEDURE 5(f)**

Defendants, by their undersigned counsel, move this Honorable Court for entry of the accompanying proposed order pursuant to the Due Process Protection Act and Fed. R. Crim. P. 5(f). In addition to the general terms required by the Due Process Protection Act, for the reasons set forth in the Memorandum, the proposed order specifically requires the government to produce all information relating to ███████████████████████████████████████████████, R.B., or his attorney.

## Introduction

This is an unusual, perhaps unique, criminal case. ████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████. And then, over the course of three hours during his initial meeting with Mr. Ravenell's lawyer, ██

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ provided numerous statements that directly exculpated Mr. Ravenell from any criminal conduct, not saying anything that was inconsistent with Mr. Ravenell's innocence.

The government was acutely aware of this directly exculpatory information, recorded on videotape, when it chose to indict Mr. Ravenell. Nonetheless, in response to Mr. Ravenell's request for any exculpatory information, the government stated that it was not aware of any exculpatory information but would provide it if they became aware of any such information. The ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ statements directly exonerating Mr. Ravenell, which the government videotaped over two years earlier, were not provided to Mr. Ravenell even though he had an upcoming trial date at the time. This calls into question whether the government is fully aware of their obligations to provide exculpatory information.

As discussed more fully below, the unusual facts here mean that all of the communications between ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, whether reflected in contemporaneous writings or not, constitute material immediately producible under *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny. And in light of the recently enacted Due Process Protections Act, Pub. L. No 116-182, 134 Stat. 894 (Oct. 21, 2020) ("DPPA"), the court should not accept the normal bland assurances that the prosecutors understand their *Brady* obligations and will of course

comply. Given the history in this case,[1] there is ample reason to doubt that the prosecutors do understand their *Brady* obligations.

## Factual Background

The facts are extensively laid out in other motions,[2] and those facts are incorporated by reference here. The facts pertinent to this motion are highlighted below.

At various times prior to September 2017, R.B. had stated that he had exculpatory information relating to his former attorney, Mr. Ravenell. For example, in an April 2015 letter, R.B. stated that he told an Assistant U.S. Attorney investigating Mr. Ravenell that "Ravenell did nothing illegal, period."[3] In approximately February 2017, R.B.'s former counsel also advised Mr. Treem that R.B. wanted to meet Mr. Treem to provide exculpatory information about Mr. Ravenell. And April 2017, after he had been sentenced, R.B. called Mr. Treem

---

[1] In a letter of November 19, 2019, counsel for Mr. Ravenell made an explicit request to the government to produce any exculpatory information that any witness, ███████████████████████, had provided about Mr. Ravenell. Although a trial date had been scheduled for the original indictment in this case, and in response to the November 19 letter, the government had assured Mr. Ravenell's counsel that any such *Brady* material would be produced if and when it was discovered. The government first produced the exculpatory information explicitly recorded on videotape only after the superseding indictment in December 2020.

[2] *See* Motion to Dismiss Superseding Indictment for Improper Recording of Defense Witness Interview, and Alternatively to Suppress the Recording as Evidence; and Motion to Dismiss Counts Four, Five, Six, And Seven Because Defendants Acted Lawfully in the Course of Providing Bona Fide Legal Representation.

[3] *See* Exhibit 2 (from JT legal file) at BGLHC-0033386, attached to Motion to Dismiss Superseding Indictment for Improper Recording of Defense Witness Interview, and Alternatively to Suppress the Recording as Evidence.

directly and left a voicemail for him advising him that he "needed to come see me [R.B.] immediately" and that "there's a lot of information that I have that is exculpatory to your client [Ravenell]."[4]

Mr. Treem was eventually able to arrange to meet R.B. on the weekend of September 9-10, 2017, in Arizona where R.B. was being held on state charges. Mr. Treem took with him a trained, professional investigator, Sean Gordon. In the meantime, ███████████████████████████████████████████████████████████████████████████████████████████████████████████████. Over the course of three hours on September 9, R.B. met with Messrs. Treem and Gordon and made numerous statements that were exculpatory as to Mr. Ravenell, just as Mr. Treem had expected. Among the many exculpatory statements that R.B. affirmed was that Mr. Ravenell was not aware that money provided by R.B. was derived from the sale of drugs and that R.B. deliberately tried to make sure Mr. Ravenell did not know. Indictment Count Four ¶ 25. When he came to the interview on September 9, R.B. brought with him notes that were not visible to Mr. Treem and Mr. Gordon. It is not clear whether these were notes he prepared himself, ███████████████████████████████████████████████████.

---

[4] *See* Exhibits 1A (transcript) and 1B (recording), from JT legal file, attached as Exhibits 1A and 1B to Motion to Dismiss Superseding Indictment for Improper Recording of Defense Witness Interview, and Alternatively to Suppress the Recording as Evidence.

The next day, September 10, Messrs. Treem and Gordon returned to meet with R.B., ███████████████████████████████████████████████████. Despite what he said the day before, on September 10 R.B. said that the "real of the situation" was that Mr. Ravenell knew about R.B.'s illegal drug business. Indictment Count Four ¶ 60. During the interview session on September 10, R.B. said that "Ken can get anything he wants from me that's not a problem." Id. ¶ 59. But what he wanted was the money he claimed was owed to him. And after saying what the "real of the situation was" R.B. said, "what I'm saying is, I'm going to be a good soldier like I'm supposed to be, but I need Ken to put his nuts on the line for me and make sure I get my fucking money." Id. ¶ 61.

Neither Mr. Treem nor Mr. Gordon had any follow-up conversation with R.B. after September 10, 2017. Nevertheless, In January 2018, R.B. initiated contact with Mr. Gordon, leaving a series messages in which he threatened to go to the U.S. Attorney's office unless R.B. was paid the money he claimed he was owed. Exhibit 1.

On February 8, 2018, having learned of the voicemails that R.B. left for Mr. Gordon, Mr. Treem sent a letter to a federal judge reporting on what he deemed to be a criminal offense by R.B., to wit, extortion and blackmail. He quoted from the R.B. voicemails to Mr. Gordon from January. Sometime later, in the summer of 2018, the federal judge provided that letter to the government, and the government has relied on that letter in bringing the criminal charges in this case.

These facts raise perplexing questions.

First, what was the government thinking when it decided it was appropriate to ███████████████████████████████████████████ At the time, Mr. Treem had well over forty years in the practice of criminal law. He is widely respected in the bar and in this court. His record is unblemished. There was not a scintilla of evidence that Mr. Treem would do anything improper in an interview of a witness. Under these circumstances, if it is deemed to be okay ████████ ████████████ undermine the work that a defense lawyer is obliged to undertake on behalf of a client, then surely it will become normal and routine, part of the prosecutor's playbook. That cannot happen if we are to have a functioning and fair criminal justice system.

Second, why would a ████████████████████████████ ████████████████████████████████████████ ████████████████████████, make and affirm extensive exculpatory statements during the three-hour interview on September 9? The reasonable explanation—arguably the only reasonable explanation—is that ████████ ██████████████████████, and thus conveyed his true state of mind, to wit, that the truthful information he had was exculpatory. To paraphrase Mark Twain, the truth is always easier to remember. ████████████████████ ████████████████████████████████████████ are surely favorable to the defense.

Third, ████████████████████████████████ ████████████████████████████████████████

6

Obviously, with his exculpatory statements on September 9, R.B. had inflicted serious damage to the government's case against Mr. Ravenell, █████████████

█████████████████████████████████████████████████
█████████████████████████████████████████████████
█████████████████████████████████████████████████
█████████████████████████████████████████████████
█████████████████████████████████████████████████
█████████████████████████████████████████████████
█████████████████████████████████████████████████
████████████████████████

Fourth, ███████████████████████████████████
█████████████████████████████████████████████████
█████████████████████████████████████████████████
█████████████████████████████████████████████████
█████████████████████████████████████████████████
█████████████████████████████████████████████████

And if the latter, that raises another question.

What action did the government take, and what ████████
█████████████████████████████████████████████████
█████████████████████████████████████████████████
█████████████████████████████████████████████████



### The Court Should Enter the Attached Order Pursuant to the DPPA

The DPPA amended Rule 5 of the Federal Rule of Criminal Procedure to require "[i]n all criminal proceedings" that the Court "shall issue an oral and written order to prosecution and defense counsel that confirms the disclosure obligation of the prosecutor under *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny, and the possible consequences of violating such order under applicable law."

In accordance with the DPPA, courts have issued orders that particularize "the disclosure obligation of the prosecutor" as directed by the Act. *See, e.g., United States v. Wong*, 2020 WL 6485000, at *1 (S.D.N.Y. Nov. 4, 2020). Such orders: (1) describe what is encompassed by the prosecutor's obligation to disclose information "favorable" to the accused; and (2) specify that the government must disclose such evidence "promptly after its existence becomes known to the Government." *Id.; see also United States v. Smith Grading & Paving, Inc.*, 760 F.2d 527, 532 (4th Cir.1985) (noting that Due Process Clause requires disclosure of Brady material "in time for its effective use

at trial"); *United States v. Le*, 306 F. Supp. 2d 589, 592 n.5 (E.D. Va. 2004) (noting that Brady disclosure "must be produced on a prompt, ongoing basis.").

Furthermore, according to Rule 704 of the District of Maryland Local Rules, this Court applies the Rules of Professional Conduct adopted by the Maryland Court of Appeals. Rule 19-303.8(d) requires a prosecutor in a criminal case to "make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense." *See also* ABA Model Rule 3.8(d) (same).

Accordingly, the Court should enter the attached Order to specify the government's "broad obligation to disclose exculpatory evidence," *Strickler v. Greene*, 527 U.S. 263, 281 (1999), as well as its affirmative duty to seek out information in the hands of law enforcement that is favorable to the defendant or undermines the prosecution's case. *Id.* at 280-81. The proposed order also makes clear that the government's obligation encompasses evidence that has "some weight" and a "tendency to be favorable" to the accused at trial, sentencing, and in pretrial hearings. *Long*, 972 F.3d at 461. And it specifies that favorable evidence should be turned over in a timely manner. *Smith Grading & Paving, Inc.*, 760 F.2d at 532.

Moreover, given the facts described above, which make this such an unusual case, ██████████████ █ ██████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ and make clear that failure to adhere to this order may result in significant consequences, up to and including vacating a conviction or disciplinary action against the prosecution.

>
> Respectfully submitted,
>
> SCHULTE ROTH & ZABEL LLP
> */s/ Peter H. White*
> Peter H. White (D.C. Bar: 468746) (VA Bar: 32310)
> Aislinn Affinito (D.C. Bar: 1033700) (CA Bar: 300265)
> McKenzie Haynes (N.Y. Bar: 5683859)
> Schulte Roth & Zabel
> 901 Fifteenth Street, NW, Suite 800
> Washington, DC 20005
> pete.white@srz.com
> aislinn.affinito@srz.com
> mckenzie.haynes@srz.com
>
> OUTLAW PLLC
> */s/ Lucius T. Outlaw*
> Lucius T. Outlaw III (#20677)
> Outlaw PLLC
> 1351 Juniper St. NW
> Washington, DC 20012
> (202) 997-3452
> loutlaw3@outlawpllc.com
>
> *Attorneys for Kenneth Ravenell*
>
>
> SCHERTLER ONORATO MEAD & SEARS, LLP
> */s/Robert P. Trout*
> Robert P. Trout, Bar No. 01669
> 901 New York Ave., NW, Suite 500
> Washington, DC 20006
> Telephone: (202) 675-4410
> Facsimile: (202) 628-4177
> rtrout@schertlerlaw.com

/s/ *Daniel F. Goldstein*
Daniel Goldstein, Bar No. 01036
131 Rte 9A
Spofford, NH 03462
Telephone: (410) 218-8537
dan@gold-stein.com

*Attorneys for Joshua Treem*


OFFICE OF THE FEDERAL PUBLIC DEFENDER
/s/ *Geremy C. Kamens*
Geremy C. Kamens
Admitted Pro Hac Vice
Office of the Federal Public Defender
1650 King St., Suite 500
Alexandria, Virginia 22314
Telephone: 703-600-0800
Facsimile: 703-600-0880
Geremy_Kamens@fd.org

LEGRAND LAW PLLC
/s/ *Rebecca S. LeGrand*
Rebecca S. LeGrand
Bar No. 18351
1100 H St. NW, Suite 1220
Washington, DC 20005
Telephone: 202-587-5725
Facsimile: 202-795-2838
rebecca@legrandpllc.com

*Attorneys for Sean Gordon*

CERTIFICATE OF SERVICE

     I hereby certify that on this 30th day of March, 2021, I caused a copy of Defendants' Motion and Memorandum for Entry of Order Pursuant to the Due Process Protections Act and Federal Rule of Criminal Procedure 5(f) to be served upon counsel for the United States of America via ECF and that true and correct copies of the filing are available to all parties through ECF and/or PACER.

                                            /s/ Robert P. Trout
                                            Robert P. Trout
                                            *Attorney for Joshua R. Treem*