IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. 19-CR-449-LO |
| ) | |
| KENNETH W. RAVENELL, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' MOTION AND MEMORANDUM FOR
<u>SEVERANCE OF COUNTS FOUR THROUGH SEVEN</u>**

Because the government violated Fed. R. Crim. P. 8 by joining Counts Four through Seven of the Superseding Indictment (ECF No. 139) with Counts One through Three, Defendants move to sever. Severance is also warranted pursuant to Fed. R. Crim. P. 14 due to the prejudice and confusion that will result if both groups of counts are tried together.

**<u>BACKGROUND</u>**

Counts One through Three of the Superseding Indictment name only Mr. Ravenell as a defendant and allege a wide-ranging RICO conspiracy beginning in 2009 and ending by September 2014, involving at least 15 unindicted co-conspirators. Count I ¶ 8. The alleged RICO enterprise is Mr. Ravenell's former law firm, which he left in 2014. Count I ¶ 2(e). The RICO Conspiracy was purportedly aimed at assisting a narcotics trafficking scheme by a variety of unlawful acts. Count I ¶ 7. Count Two describes a related money laundering conspiracy, and Count Three describes a related conspiracy to distribute a Schedule I controlled substance. Mr. Ravenell is the only named defendant in any of those three counts.

Counts Four through Seven address acts following an interview Mr. Treem and Mr. Gordon conducted in September 2017, long after the RICO conspiracy described in Count I

had ended. *See* Count I ¶ 8 (explaining the RICO conspiracy began "by August 31, 2009 and continu[ed] through in or about September 2014."). Mr. Treem began representing Mr. Ravenell in 2016, and Mr. Gordon was retained by Mr. Treem as an investigator to assist in his representation. Count IV ¶ 7. On September 9-10, 2017, Mr. Treem and Mr. Gordon met with an individual identified as "R.B." *Id.* ¶ 16-80. During that meeting, Mr. Treem presented R.B. with a series of statements prepared by Mr. Ravenell that support Mr. Ravenell's innocence as to the conduct later charged in Counts One through Three of the Superseding Indictment. *Id.* ¶ 19. The Government alleges that Mr. Gordon signed a declaration that contained an incomplete description of that interview. *Id.* ¶¶ 81-88. The Government also asserts that Mr. Treem sent a letter to a District Court Judge that allegedly mischaracterized that same interview. *Id.* ¶¶ 89-108.

Count Four charges all three defendants with conspiring to create false records and obstruct official proceedings based on that conduct, setting forth 95 paragraphs of overt acts relating to the interview of R.B.[1] *Id.* ¶ 8. Counts Five, Six and Seven are based entirely on the same September 2017 interview with R.B. Count Five charges all three Defendants with obstructing an official proceeding. Count Six similarly charges all three Defendants with falsification of a record based on alleged omissions from Mr. Gordon's unused affidavit. Finally, Count Seven charges Mr. Treem and Mr. Ravenell (though not Mr. Gordon) with falsification of a second record, a letter sent by Mr. Treem to a District Court Judge in 2018 that is alleged to be false in its description of the same September 2017 interview.

---

[1] The three additional overt acts in Count Four are cursorily alleged by incorporation from Count One. *See* Count IV ¶¶ 13-15. Those three paragraphs are improperly included in Count Four, as explained in Defendants' related motion to strike those paragraphs as surplusage, or in the alternative dismiss Count Four as duplicitous.

**ARGUMENT**

Rule 8(a) allows the Government to "charge a defendant in separate counts with 2 or more offenses if the offenses charged . . . are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). Although Rule 8(a) authorizes the government to join in a single indictment charges that "constitute parts of a common scheme," the Rule's reach is "not infinitely elastic." *United States v. Hawkins*, 776 F.3d 200, 206 (4th Cir. 2015) (quoting *United States v. Mackins*, 315 F.3d 399, 412 (4th Cir. 2003)).

Specifically, Rule 8(a) "cannot be stretched to cover offenses … which are discrete and dissimilar and which do not constitute parts of a common scheme or plan." *Mackins*, 315 F.3d at 412-13 (internal quotation marks omitted). Discrete charges distinct from the principal alleged scheme cannot be joined because the "joinder of unrelated charges 'create[s] the possibility that a defendant will be convicted based on considerations other than the facts of the charged offense.'" *Hawkins*, 776 F.3d at 206 (quoting *United States v. Cardwell*, 433 F.3d 378, 384-85 (4th Cir. 2005)). In other words, improper joinder under Rule 8 is inherently prejudicial. When charges are improperly joined together in a single indictment, severance is mandatory. *See United States v. Seidel*, 620 F.2d 1006, 1014-15 (4th Cir. 1980) ("[A] trial judge has no discretion to deny a motion for severance when counts are misjoined….").

In *United States v. Oaks*, 285 F. Supp. 3d 876 (D. Md. 2018), this Court considered a joinder much like the one here and granted a motion to sever an obstruction of justice count that was added in a superseding indictment to previously charged bribery and fraud counts against a state legislator. *Id.* at 877. Because the two alleged schemes lacked temporal overlap or a shared objective, this Court found that joinder was improper and held that that

3

the obstruction count "must be severed." *Id.* at 880. The Superseding Indictment in this case likewise improperly joins two distinct sets of counts that are dissimilar in substance, time-period, participants, and purpose. The combination of such divergent counts in a single indictment pushes the elasticity of permissible joinder beyond the breaking point, making severance mandatory.

Moreover, most if not all of the evidence expected to be presented in support of Counts One through Three is not admissible against the Defendants with respect to Counts Four through Seven. This is particularly true with respect to Mr. Treem and Mr. Gordon who were entitled to provide a legal defense of Mr. Ravenell, regardless of the truth or falsity of the charges in Counts One through Three. When the evidence is not mutually admissible, joinder is generally improper. *See United States v. Foutz*, 540 F.2d 733, 738 (4th Cir. 1976); *Oaks,* 285 F. Supp. 3d at 879 (explaining "the cross-admissibility of evidence, a hallmark of Rule 8(a)").

Even if joinder were permissible under Rule 8, severance would be warranted pursuant to Rule 14 because the inclusion of both groups of counts at trial would severely prejudice the defendants and create unnecessary confusion. As addressed more fully below, to accord the Defendants the presumption of innocence with respect to Counts Four through Seven, the jury may not consider whether Mr. Ravenell is guilty of the offenses in Counts One through Three.

**I.     COUNTS FOUR THROUGH SEVEN ARE IMPROPERLY JOINED WITH COUNTS ONE THROUGH THREE.**

Because Counts Four through Seven of the Superseding Indictment involve different acts and transactions from Counts One through Three, and are not meaningfully similar nor linked by a common scheme or plan, they are impermissibly misjoined.

### A.     The Two Groups of Counts Do Not Concern the Same Act or Transaction.

Counts Four though Seven do not involve the same acts or transactions as Counts One through Three. Indeed, there is no temporal overlap at all between the two sets of counts (apart from the three paragraphs improperly grafted onto the start of Count Four, *see* n. 1, *supra*). Counts Four through Seven focus on a single act—Mr. Treem and Mr. Gordon's interview of R.B. on September 9-10, 2017—and the subsequent description of that interview in two documents. Count One, in contrast, allegedly begins in 2009 and ends in September 2014, three years before the interview that forms the basis for Counts Four through Seven. Counts Two and Three similarly allegedly begin in 2009, and allegedly continue through August 15, 2017—again ending before the interview at issue in Counts Four through Seven took place.[2] *See* Count II ¶ 2 & Count III ¶ 2. Joinder of the two sets of counts accordingly cannot be based on the presence of the same act or transaction in both sets of counts.

### B.     The Two Groups of Counts are Not Connected by a Common Scheme or Plan.

Nor do the two sets of counts involve a common scheme or plan. Counts One through Three involve an alleged conspiracy to distribute narcotics, and alleged efforts to launder money and obstruct justice in furtherance of that goal. Counts Four through Seven, arise from the interview of R.B. conducted in September 2017 in connection with Mr. Treem's

---

[2] It must be noted that the government initially claimed that the money laundering and narcotics conspiracies alleged in Count Two and Count Three ended in 2014. *See* Dkt. No. 1 at 8 (alleging money laundering conspiracy ended on September 26, 2014); *id.* at 11 (alleging narcotics conspiracy ended on September 26, 2014). To date, the government has not explained or provided discovery explaining why the Superseding Indictment alleges that both conspiracies ended in 2017 – three years after they initially claimed.

5

representation of Mr. Ravenell. Because the goals of the two sets of counts are different, they are not joined by any common scheme or plan.

Indeed, Mr. Treem is not mentioned anywhere in Counts One, Two, or Three, while Mr. Gordon is referenced only briefly in Count One.[3] Nor is it plausible that Mr. Gordon or Mr. Treem conducted the September 2017 interview of R.B. that underlies Counts Four through Seven as part of the same scheme described in the RICO conspiracy charged in Count One, which allegedly began in 2009 and ended in 2014 (Count I ¶ 8), three years before the interview at issue in Counts Four through Seven.

The goals of the two sets of alleged conspiracies are also dissimilar. Count One alleges that Mr. Ravenell participated in drug distribution and money laundering conspiracies involving his clients and sought to obstruct the Government's investigation of his clients. Counts Four through Seven, in contrast, involve Mr. Treem's representation of Mr. Ravenell, which began only in 2016. *See* Count IV ¶ 7. The Government alleges that Mr. Treem and Mr. Gordon conspired with Mr. Ravenell to mischaracterize the interview they conducted in September 2017, in an effort to obtain impeachment evidence that would assist Mr. Ravenell at trial. *See* Count IV ¶ 12; Count V ¶ 2 (alleging "the Defendants sought to undermine and impeach R.B.'s credibility if he were to be called in an official proceeding to give testimony against RAVENELL…"). That is not the same purpose of the conspiracy alleged in any of Counts One through Three, which instead focus on Mr. Ravenell's alleged efforts to conceal his clients' drug distribution conspiracy.

---

[3] Mr. Gordon is briefly mentioned in Count One in connection with two efforts to meet with "D.W." on August 5, 2013 & May 29, 2014. *See* Count I ¶¶ 34-35. There is no allegation that Mr. Gordon knowingly sought false statements from D.W., however, and Mr. Gordon is not charged in Count I. References to Count One should accordingly be stricken from Count Four, as explained in Defendants' related motion to dismiss or strike surplusage from Count Four.

As in *United States v. Oaks*, the allegations in Counts One through Three are separated from the obstruction allegations in Counts Four through Seven by a "temporal gap," focus on "different targets," and the one defendant prominently listed in both sets of Counts allegedly had "differing roles." *See* 285 F. Supp.3d at 879. Joinder of the two separate groups of counts cannot be based on the existence of a common scheme or plan given the disparate goals of the two sets of counts, and the absence of any suggestion that Mr. Treem and Mr. Gordon shared the goals of the conspiracies described in Counts One through Three. *See id.* at 881.

### C.     The Two Groups of Counts Are Dissimilar in Character.

Finally, joinder is not justified here because the two groups of offenses are not of the same or similar character. There is no "logical and intimate" connection between the two groups of charged offenses. *Hawkins*, 776 F.3d at 207. Counts One through Three allege drug distribution and money laundering conspiracies that do not involve Mr. Treem or Mr. Gordon. Counts Four through Seven, in contrast, are based on a single interview conducted by Mr. Treem and Mr. Gordon in September 2017.

The differences between the two groups of counts weigh heavily against any finding that the two groups of offenses are of the same or similar nature or character, and can therefore be properly joined. The timing, targets, and nature of the alleged criminal conduct of the two groups of counts are too just too dissimilar to hold that joinder is proper here. The only real commonality between the two groups is Mr. Ravenell—but that is insufficient for joinder purposes. *Mackins*, 315 F.3d at 412-413 (finding the district court's allowance of joinder was error where the "only connection" between the counts was the defendant); *see also Hawkins*, 776 F.3d at 209 (finding joinder of offense was improper under the same/similar character theory because "nothing ties [the offenses] together except the

defendant."); *Oaks*, 285 F. Supp. 3d at 880 ("The Fourth Circuit has consistently held that joinder is not proper when the only connection between the alleged schemes is the defendant.")

Moreover, most if not all of the Government's evidence in support of Counts One through Three is not relevant to, or admissible at trial on, Counts Four through Seven – a key hallmark for Rule 8(a) joinder that is absent here. *See Hawkins*, 776 F.3d at 206 (joinder of offenses based on same act or transaction "presents the opportunity to submit evidence of one offense that ordinarily would be admissible at a separate trial for the other."); *Oaks,* 285 F. Supp. 3d at 879 (explaining "the cross-admissibility of evidence, a hallmark of Rule 8(a)"); *see also United States v. Cole*, 857 F.2d 971, 974 (4th Cir. 1988) (prejudice to the defendant in a trial of joined crimes "is greatly diminished where . . . the evidence of the joined crimes would be mutually admissible for legitimate purposes in separate trials for each offense.") (quotation marks omitted).

Mr. Ravenell is entitled to the presumption of innocence that is at the heart of our adversarial system of justice. *See*, *e.g.*, *In re Winship*, 397 U.S. 358, 363 (1970) (The presumption of innocence constitutes a "bedrock 'axiomatic and elementary' principle whose 'enforcement lies at the foundation of the administration of our criminal law.'"); *United States v. Gaudin*, 515 U.S. 506, 514 (1995) (It is a "jury's constitutional responsibility," not the government's, to "draw the ultimate conclusion of guilt or innocence."). Counts Four through Seven, however, improperly take it as a given that Mr. Ravenell is guilty. *See*, *e.g.*, Count V ¶ 2 (describing the document prepared by Mr. Ravenell as "a set of false exculpatory statements").

The Government will undoubtedly spend a great deal of time at trial presenting evidence to support the charges against Mr. Ravenell in Counts One through Three, but that evidence has no bearing on the allegations in Counts Four through Seven. As Mr. Ravenell's attorney at the time of the acts alleged in Counts Four through Seven, Mr. Treem was required to investigate the Government's allegations against Mr. Ravenell. Indeed, "[e]xcept in the rarest of cases, attorneys who adopt the role of the judge or jury to determine the facts pose a danger of depriving their clients of the zealous and loyal advocacy required by the Sixth Amendment." *United States v. Midgett*, 342 F.3d 321, 326-27 (4th Cir. 2003) (citing *Nix v. Whiteside*, 475 U.S. 157, 189 (1986) (Blackmun, J., concurring)). As defense counsel, Mr. Treem thus was charged with zealously representing his client's interests, "resolv[ing] all doubts and ambiguous legal questions in favor of his [] client," *Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 156 n.18 (4th Cir. 2002) (citation omitted), and thoroughly investigating any potentially exculpatory evidence he could find. *See*, *e.g.*, *Harrington v. United States*, 267 F. 97, 101 (8th Cir. 1920) ("[I]t was [the defense attorney's] privilege ... to believe the version of the facts told him by his client"). That is true regardless of whether a jury ultimately credits the Government's evidence against Mr. Ravenell in Counts One through Three.

Evidence of Mr. Ravenell's alleged guilt as to Counts One through Three therefore is not relevant to Counts Four through Seven, which instead focus on whether Mr. Treem and Mr. Gordon acted properly when investigating potentially exculpatory evidence in support of Mr. Ravenell's defense. Nor are the Government's allegations in Count Four—which presume Mr. Ravenell's guilt as a starting point—admissible against Mr. Ravenell in Counts One through Three. Indeed, because the evidence and witnesses for the two groups of

9

offenses are largely distinct and would not otherwise be cross-admissible in separate trials, "the only real convenience served by permitting joint trial of unrelated offenses against the wishes of the defendant may be the convenience of the prosecution in securing a conviction." *Foutz*, 540 F.2d at 738. Severance is accordingly mandated by Rule 8.

## II.     SEVERANCE IS WARRANTED UNDER RULE 14.

Even were the Court to find that the counts are properly joined pursuant to Rule 8, severance is warranted pursuant to Rule 14(a). Rule 14 provides the Court with the discretionary authority to order separate trials if the defendant is prejudiced by a joinder of offenses. Rule 14(a) provides that "[i]f the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts." Fed. R. Crim. P. 14(a). "This rule contemplates that joinder under Rule 8(a) can be proper and, at the same time, severance can be required." *United States v. Cardwell*, 433 F.3d 378, 387-88 (4th Cir. 2005). Severance in such situations is required where "there is a serious risk that a joint trial would . . . prevent the jury from making a reliable judgment about guilt or innocence." *Id.*

When the Government advocates joinder on the same or similar character theory, the Fourth Circuit has noted "three sources of prejudice" which justify the granting of severance under Rule 14:

> (1) the jury may confuse and cumulate the evidence, and convict the defendant of one or both crimes when it would not convict him of either if it could keep the evidence properly segregated;
>
> (2) the defendant may be confounded in presenting defenses, as where he desires to assert his privilege against self-incrimination with respect to one crime but not the other; or
>
> (3) the jury may conclude that the defendant is guilty of one crime and then find him guilty of the other because of his criminal disposition.

*Foutz*, 540 F.2d at 736. The potential sources of prejudice identified by the *Foutz* court threaten the Defendants' right to a fair trial here.

First, there is a substantial risk that "the jury may confuse and cumulate the evidence" and improperly convict as a result. *Id*. The evidence that the government intends to introduce in support of Counts One through Three will be voluminous, and potentially highly inflammatory. Evidence regarding the charged drug distribution and money laundering conspiracies, however, has no bearing on the charges against Mr. Gordon and Mr. Treem, and would be inadmissible in a case against them alone. *See*, *e.g.*, *United States v. Dinome*, 954 F.2d 839, 844-845 (2d Cir. 1992) (reversing the conviction of defendants who were denied a severance motion in part because at trial, the defendants "were swamped by [a] mass of irrelevant evidence"). Indeed, as noted at pp. 5-6, *supra*, Mr. Gordon has minimal involvement in the facts alleged in the first three counts of the Superseding Indictment, and Mr. Treem has no involvement at all. Because Mr. Treem and Mr. Gordon were entitled to credit the version of facts offered by their client, and in any event were not obliged to adopt the Government's version of facts as true, it would be improper to impute to them knowledge from whatever evidence is introduced in the first three counts. Failure to sever these counts would thus require the jury to perform the impossible task of ignoring evidence presented in connection with Counts One through Three when assessing Mr. Treem and Mr. Gordon's actions in Counts Four through Seven.

The risk of confusion is also particularly severe in this case because of the inclusion of multiple separate types of conspiracy charges in the Superseding Indictment. In particular, it will be exceedingly difficult for lay jurors to keep track of the distinctions between the RICO conspiracy charged in Count One, which names only Mr. Ravenell as a defendant, and the

conspiracy to commit offenses against the government that is charged in Count Four, which names all three Defendants, but is far narrower in scope.

There is also a serious danger that the jury will improperly use a finding of guilt concerning one group of counts and use that convict a Defendant of the other group based on an improper inference of criminal disposition. *See Foutz*, 540 F.2d at 736 ("One inevitable consequence of a joint trial is that the jury will be aware of evidence of one crime while considering the defendant's guilt or innocence of another."). The danger is that if the jury determines that the government has met its burden as to one group of counts, then the jury will view all of the Defendants as guilty by association with the other group, without strictly holding the government to its burden of proof. The only way to mitigate against this danger is to sever Counts Four through Seven. *See Oaks*, 285 F. Supp. 3d at 883 (severing obstruction count when evidence regarding earlier counts "would present a risk that the jury would unfairly rely upon a perceived criminal character when considering the obstruction charge").

## **CONCLUSION**

For the foregoing reasons, the Defendants respectfully request that the Court grant this motion and sever Counts Four through Seven of the Superseding Indictment from Counts One through Three.

    Respectfully submitted,

    KENNETH W. RAVENELL

By:    /s/ Peter H. White
       SCHULTE ROTH & ZABEL LLP
       Peter H. White
       Aislinn Affinito
       McKenzie Haynes
       Schulte Roth & Zabel LLP
       901 Fifteenth Street, NW, Suite 800
       Washington, DC 20005

        pete.white@srz.com
        aislinn.affinito@srz.com
        mckenzie.haynes@srz.com

        /s/ Lucius T. Outlaw
        OUTLAW PLLC
        Lucius T. Outlaw III, Bar No. 20677
        1351 Juniper St. NW
        Washington, DC 20012
        Telephone: (202) 997-3452
        loutlaw3@outlawpllc.com

        JOSHUA R. TREEM

By:    /s/ Robert P. Trout
        Robert P. Trout, Bar No. 01669
        SCHERTLER ONORATO MEAD
         & SEARS, LLP
        901 New York Ave., NW, Suite 500
        Washington, DC 20006
        Telephone: (202) 675-4410
        rtrout@schertlerlaw.com

        Daniel Goldstein, Bar No. 01036
        131 Rte 9A
        Spofford, NH 03462
        Telephone: (410) 218-8537
        dan@gold-stein.com

        SEAN F. GORDON

By:    /s/ Geremy C. Kamens
        Geremy C. Kamens, *Admitted Pro Hac Vice*
        Office of the Federal Public Defender
        1650 King St., Suite 500
        Alexandria, Virginia 22314
        Telephone: 703-600-0800
        Geremy_Kamens@fd.org

        /s/ Rebecca S. LeGrand
        Rebecca S. LeGrand, Bar No. 18351
        LeGrand Law PLLC
        1100 H St. NW, Suite 1220
        Washington, DC 20005
        Telephone: 202-587-5725
        rebecca@legrandpllc.com