IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA, | * |
| v. | *   CRIMINAL NO.  LO-19-0449 |
| KENNETH RAVENELL, et al. | * |
| Defendants. | * |

*******

**DEFENDANTS' MOTION AND MEMORANDUM TO DISMISS COUNTS FOUR AND FIVE FOR FAILURE TO ALLEGE AN ADEQUATE NEXUS**

Defendants, by their undersigned counsel, move this Honorable Court to dismiss Counts Four and Five of the Superseding Indictment for failure to allege an adequate nexus.

## INTRODUCTION

Counts Four (conspiracy) and Five (corruptly obstructing a federal proceeding) of the indictment center on three documents–KWR's Combined Notes, Sean Gordon's declaration, and Joshua Treem's letter to a federal Judge concerning extortionate calls by R.B. Both counts explicitly allege that obstruction of a foreseeable federal proceeding was a merely possible, not a natural and probable, result of the creation of these documents. Because the existence of such a nexus is an essential element of 18 USC §1512, neither Counts Four nor Five sufficiently allege a violation of that statute.

Until the government executed a search warrant on Brown, Goldstein & Levy, LLP, the first two documents existed only in the file of attorney Joshua Treem.

Because possession of documents in a nongovernmental file not under subpoena cannot have the natural and probable consequence of obstructing a grand jury investigation or a "foreseeable criminal prosecution" of Mr. Ravenell, Section 1512(c)(2) does not reach those documents. Because the letter to the federal judge was never submitted by the defendants in connection with any pending proceeding and made no request for action by the federal judge, that document, too, lacks the necessary nexus to support a charge of obstruction. Finally, because there is no likely scenario under which either the Gordon declaration or the letter to the federal judge would be admitted as a "prior consistent statement" as alleged in Count Four (¶ 12) and Count Five, both of those documents lack the necessary nexus to support an obstruction charge.

## THE DOCUMENTS

**KWR's Combined Notes**[1]

According to the indictment, on September 9, 2017, Messrs. Treem and Gordon showed R.B. "KWR's Combined Notes," a document containing 53 typewritten statements exculpating Mr. Ravenell. R.B. read out loud 49 of the 53 statements and affirmed the truthfulness of each statement read. He did not deny or disavow any statement on the list. Count Four ¶¶ 19-20, 25, 37. The following day, Mr. Treem asked R.B. to sign it so that Mr. Ravenell would see that R.B. had reviewed it. Count Four ¶ 55.[2] Later, after R.B. in general terms contradicted the thrust of the individual

---

[1] Exhibit 5 to the Motion to Dismiss Based on Improper Recording of Defense Witness Interview.

[2] Count Five incorporates the paragraphs of Count Four describing the documents.

2

statements on the document, R.B. asked Mr. Gordon if Mr. Treem wanted him to sign it to show R.B. had seen it, and Mr. Gordon confirmed that he did. Count Four ¶78. By signing the document, R.B. authenticated the notes as the ones he had reviewed and largely adopted the previous day.

The indictment does not charge that in making this document, the defendants violated Section 1519 of Title 18 by knowingly concealing, covering up, falsifying, and making false entries. Except with the incidental inclusion of four items R.B. neglected to discuss, KWR's Combined Notes is a document that accurately reflects what R.B. said on September 9, 2017. Rather, the document is only included in Counts Four and Five, the conspiracy and substantive obstruction counts that rely on 18 U.S.C. § 1512(c)(2).

With respect to Mr. Treem's prospective use of KWR's Combined Notes, Count Four quotes liberally from the meeting with R.B. In so doing, the government does not identify any of the following statements as false. According to the indictment,

> R.B. asked Treem, "None of this is going to be turned over to the government?" to which Treem responded "I don't mean to laugh, but yeah, none of this is going to be turned over. This is between you, me and [Gordon] – you know, and that's where it is going to stay.

Count Four ¶ 30. Later, the indictment recounts that Mr. Treem

> also amended his earlier statement about where the information R.B. was sharing would go, telling R.B., "This isn't going anywhere except maybe, you know, I'm going to be talking to [Ravenell] later, so I'm going to talk to him about this.

Count Four ¶32.

On September 10, 2017, according to the Indictment,

> R.B. asked Treem, "I want to make sure everything I discuss with you is kept- " and understanding what R.B. meant without even letting him finish, Treem said, " It is…yeah, I mean, it's easy - I mean, not easy on me, it's easy to do that, but I have to do that." Treem told R.B., "This is my work product, this conversation ... The notes are my work product ... They are privileged. They're mine. No one is getting them."

Count 4 ¶ 56.

Indeed, no one did get them--until the government raided Mr. Treem's office and seized KWR's Combined Notes.

**<u>Gordon Declaration</u>**

Mr. Gordon signed a declaration on September 14, 2017. Count 4 ¶ 83.[3] The first seven paragraphs cover through the end of the first day of R.B.'s interview; the eighth, events that followed the first day's interview, but preceded the second day's interview; the ninth, the events of September 10, 2107 regarding the signing of the KWR Combined Notes. The only copy of the declaration was in Mr. Treem's file.

**<u>Letter to a federal judge</u>[4]**

In paragraphs 98-107, Count Four describes, in part, a letter dated February 9, 2018 from Mr. Treem to the United States District Court Judge who had presided over R.B.'s trial describing R.B.'s attempts to extort Mr. Treem and his client in the wake of Mr. Treem's and Mr. Gordon's interview of R.B.

---

[3] A copy of the Gordon Declaration is attached as Motion Exhibit 1.

[4] A copy of the letter to the federal judge is attached as Motion Exhibit 2.

## ARGUMENT

Facts are stubborn things.[5] The government's allegations as to the connections between the creation of these documents and foreseeable federal proceedings do not and cannot rise above the possible to the probable. As shown below, the government's own phrasing of "in the event," and "if," firmly establish that the various events—a grand jury subpoena to Mr. Treem, for example, or an indictment of Mr. Ravenell, for another, were mere possibilities outside of the control of the defendants and thus fail to state an offense under Counts Four and Five. Moreover, in the case of the Gordon declaration and the letter to the federal judge, there is no reasonable likelihood that the documents could have been used as the indictment alleges, to provide evidence of a prior consistent statement by either Mr. Gordon or Mr. Treem.

I.  **Section 1512(c)(2) of Title 18 requires proof that the defendants' conduct will have the natural and probable consequence of <u>obstructing justice.</u>**

The elements of Section 1512(c)(2) include the existence of a nexus between the allegedly obstructive act and a foreseeable federal proceeding.[6] *United States v. Sutherland,* 921 F.3d 421 (4th Cir. 2019); *United States v. Young*, 916 F.3d 368 (4th Cir. 2019). That nexus requires that the defendant intended that his act would have

---

[5] "Facts are stubborn things; and whatever may be our wishes, our inclinations, or the dictates of our passion, they cannot alter the state of facts and evidence." David McCullough, John Adams 68 (2001) (quoting John Adams at the Boston Massacre Trial).

[6] 18 U.S.C. §1512(c)(2) defines as criminal one who corruptly otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so.

the natural and probable effect of obstructing a federal proceeding. An act that the defendant knew "might or might not" have that effect is not a violation of that statute. *United States v. Aguilar*, 515 U.S. 593 (1995); *United States v. McDonnell*, 2014 WL 6772483 at *4 (E.D. Va. Dec. 1, 2014).

*Aguilar* held that 18 U.S.C. § 1503 requires a defendant to know of a nexus "in time, causation and logic" between his allegedly obstructive act and a judicial proceeding. 515 U.S. at 599. Thus, when the defendant lied to an FBI Agent who "might or might not testify before a grand jury," he had not violated § 1503, because the government could not show that the defendant *knew* his statement to the agent would be provided to the grand jury. *Id.* at 601.

The Court drew a clear line between one whose false statement or document *might* go to a grand jury and

> one who delivers false documents or testimony to the grand jury itself. Conduct of the latter sort all but assures that the grand jury will consider the material in its deliberations. But what use will be made of false testimony given to an investigating agent who has not been subpoenaed or otherwise directed to appear before the grand jury is far more speculative. We think it cannot be said to have the "natural and probable effect" of interfering with the due administration of justice.

*Id.* at 601. Similarly, undelivered documents in a lawyer's file, not under subpoena, cannot have the natural and probable consequence of interfering with the due administration of justice.

The Court also applied this nexus requirement to 18 U.S.C. § 1512(b) in *Arthur Andersen LLP v. United States*, 544 U.S. 696 (2005). That defendant had been the accountant for Enron. After a newspaper article about Enron, the SEC opened an informal investigation and defendant formed an Enron "crisis-response" team and

6

hired outside counsel. An in-house counsel noted the "some SEC investigation" is "highly probable." 544 U.S. at 699. Two days later, a supervising partner of the defendant told 89 employees to shred documents in compliance with the firm's document retention policy. 544 U.S. at 700. Three weeks later, the SEC opened a formal investigation and requested accounting records from Enron. 544 U.S. at 701. Shredding continued unabated for nine more days, when the SEC served defendant with a subpoena for records. 544 U.S. at 702. Defendant was indicted for obstruction under Section 1512 for the shredding of records between the date the supervising partner instructed shredding and the date of the service of the subpoena.

Even though 18 U.S.C. § 1512(e)(1) states that a proceeding "need not be pending or about to be instituted at the time of the offense," the Court interpreted Section 1512(b) to require proof that the defendant's actions "are *likely* to affect the judicial proceeding." *Id.* at 708. (emphasis supplied). In so concluding, the Court exercised traditional restraint in determining the reach of a federal statute and the need for fair warning to conclude that Section 1512(b) requires that a defendant know that his actions "are *likely* to affect [a] judicial proceeding" to have the requisite intent to obstruct. *Id.* (emphasis supplied).

Section 1512(b), interpreted by *Andersen*, uses the language "knowingly corruptly" while Section 1512(c) only uses the term "corruptly." This difference, however, is not a distinguishing one: Section 1503, interpreted in *Aguilar* to the same effect as *Andersen*, only uses the term "corruptly." Moreover, after *Andersen*, the Supreme Court in *Marinello v. United States*, 138 S.Ct. 1101, 1110 (2018), held, with

7

respect to 26 U.S.C. § 7212—another obstruction statute requiring only that the act be done "corruptly"—that the same nexus requirement applied to obstructing tax administrative proceedings.[7]

In *Marinello*, the Court returned to the theme of reading the statue narrowly, noting that.

> to rely upon prosecutorial discretion to narrow the otherwise wide-ranging scope of a criminal statute's highly abstract general statutory language places great power in the hands of the prosecutor. Doing so risks allowing "policemen, prosecutors, and juries to pursue their personal predilections," *Smith v. Goguen,* 415 U.S. 566, 575, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974), which could result in the nonuniform execution of that power across time and geographic location. And insofar as the public fears arbitrary prosecution, it risks undermining necessary confidence in the criminal justice system. That is one reason why we have said that we "cannot construe a criminal statute on the assumption that the Government will 'use it responsibly.'" *McDonnell v. United States,* 579 U.S. ——, ——, 136 S.Ct. 2355, 2372–2373, 195 L.Ed.2d 639 (2016) (quoting *United States v. Stevens,* 559 U.S. 460, 480, 130 S.Ct. 1577, 176 L.Ed.2d 435 (2010)). And it is why "[w]e have traditionally exercised restraint in assessing the reach of a federal criminal statute." *Aguilar, supra,* at 600, 115 S.Ct. 2357.

*Id.* at 1108-09.

The Fourth Circuit has held that this nexus requirement applies to charges brought under 18 U.S.C. § 1512(c)(2), the charge alleged in Count Five. *United States v. Sutherland,* 921 F.3d 421, 427 (4th Cir. 2019). There the defendant, knowing of the grand jury investigation into his taxes, delivered false documents to the Assistant United States Attorney that he knew was "tasked with presenting to the grand jury."

---

[7] The Court noted that the tax statute at issue was "similarly worded" to 18 U.S.C. § 1503, except that it prohibited obstructing or impeding "the due administration of" the Internal Revenue Code rather than "the due administration of justice." *Marinello,* 138 S. Ct. at 1105.

*Id.* at 428. In contrast to the FBI agent in *Aguilar*, the defendant sought to use the U.S. Attorney's Office "as a channel or conduit to the grand jury for the false evidence or testimony presented to it." *Id.*

The nexus requirement was recently applied in *United States v. McDonnell*, 2014 WL 6772483 at *4 (E.D. Va. Dec. 1, 2014). There the defendant created a false exculpatory document hoping the government would discover it and thus decide not to charge her for the underlying offense. The Court dismissed the charge on a Rule 29 motion, explaining that even if "Mrs. McDonnell may have hoped that the misleading document would be provided to the future grand jury, there was insufficient evidence to enable a rational trier of fact to conclude that Mrs. McDonnell *knew* this would happen." *Id.* at *5. (emphasis supplied).

These authorities establish that § 1512 requires proof that a defendant's conduct must have the natural, probable, and foreseeable consequence of obstructing, influencing, or impeding an official proceeding. The mere *possibility* that the defendant's conduct *might* have such a consequence is not enough to constitute the requisite nexus required by the statute. Here the indictment fails to allege how the defendants would know that the documents in question would *likely* be provided to a grand jury.

II. **The Indictment Fails to Allege an Adequate Nexus Between the Defendants' Conduct and an Official Proceeding.**

Counts Four and Five allege a highly contingent chain of events between the three subject documents, on one hand, and the alleged obstruction, on the other; a chain that falls far short of adequately alleging that the defendants *knew* that the

9

documents at issue would *likely* be used to attempt to obstruct justice. Count Four, paragraph 12, for example, states in pertinent part,

> These documents were fraudulently prepared to undermine and impeach R.B.'s credibility *in the event* he were called by the Government to testify in a criminal trial of Ravenell and to provide false evidence of a prior consistent statement by Gordon or Treem *in the event* either one were to be questioned as part of an investigation being conducted by the U.S. Department of Justice of Ravenell or called to testify in an official proceeding, including before the grand jury investigating Ravenell or a trial of Ravenell *if* he were indicted by a federal grand jury.

(emphasis supplied).[8] The language of the indictment is both clear and inadequate. By definition, neither "if" nor "in the event" are synonyms for "probable."[9] The same is true of the government's description of R.B. as someone Mr. Treem and Mr. Gordon knew to be a "potential," i.e., possible witness against Mr. Ravenell. Count Four, ¶¶ 11, 18. The dictionary definition also consigns "potential" to the realm of the merely possible."[10] As was true of Judge Aguilar's meeting with an FBI agent, the government cannot muster a description of Mr. Treem and Mr. Gordon as meeting with someone other than a "possible" grand jury witness.

---

[8] The language of Count Five differs slightly, terming the prosecution of Mr. Ravenell foreseeable, but saying that the documents could be used to impeach R.B. "*if* he were to be called in an official proceeding against Ravenell" and "to provide false evidence . . .*in the event*" Treem or Gordon were called to testify in an official proceeding. Of course, foreseeability and probability are not the same. It was certainly foreseeable that the FBI agent to whom Judge Aguilar lied might go before the grand jury, but it was not, the Court explained, probable.

[9] According to Merriam-Webster's Dictionary, "in the event," means "if (something) happens" https://www.merriam-webster.com/dictionary/in%20the%20event%20of. "If" suffers the same deficiency of falling short of "probable." https://www.merriam-webster.com/dictionary/if.

[10] https://www.merriam-webster.com/dictionary/potential.

10

Thus, paragraph 12 of the Indictment, quoted above, can, with no violence to its meaning, be restated as:

> These documents were fraudulently prepared to undermine and impeach R.B.'s credibility *who might or might not be* called by the Government to testify in a criminal trial of Ravenell and to provide false evidence of a prior consistent statement by Gordon or Treem *who might or might not* either be questioned as part of an investigation being conducted by the U.S. Department of Justice of Ravenell or called to testify in an official proceeding, including before the grand jury investigating Ravenell or a trial of Ravenell *who might or might not be* indicted by a federal grand jury.

(emphasis supplied.)

The government's phrasing is no accident, because it is simply not possible to construct a chain of "likely," or of "natural and probable" events tying these three documents to a probable obstructive use, any more than could be said of Mrs. McDonnell's false document. In fact, the indictment itself makes it clear that Mr. Treem viewed the KWR Combined Notes that R.B. had signed as attorney work product that would not be turned over to anyone. Count Four, ¶¶ 30 56. And they never were. The government has the KWR Combined Notes and the Gordon declaration only because it raided Mr. Treem's law firm.

A. <u>The KWR Combined Notes</u>

Paragraph 12 of Count Four offers a scenario that involves the following contingencies: (1) **if** Mr. Ravenell were to be indicted, as might or might not occur; and (2) **if** the government did not indict R.B. as a co-defendant, as might or might not happen; but instead (3) **if** the government offered a cooperation deal to R.B; (4) and **if** R.B. accepted it, as he might or might not do; and (5) **if** the government also concluded that R.B. was sufficiently credible to warrant putting on the stand; and (6)

11

**if** on cross examination R.B. lied and denied that on September 9, 2017, he had confirmed the accuracy of 49 out of 53 exculpatory statements; (8) **then** Mr. Treem could show R.B. his signature at the bottom of the page to authenticate that this was the document whose truth he had largely affirmed the previous day.

But even if all of this happened, it still would not be obstruction of justice for Mr. Treem to show the KWR Combined Notes to R.B. on the stand at trial and have him acknowledge from the signature and date that he previously saw the document and had affirmed the statements he had actually made. At a trial of Counts One through Three at which R.B. testified, Mr. Treem could properly use the KWR Combined Notes for impeachment and as extrinsic evidence of prior inconsistent statements under Federal. Rule of Evidence 613. Such conduct would be entirely lawful, and it therefore is not possible for the government to establish, as the Supreme Court has required, that Mr. Treem was "conscious" of "wrongdoing" with respect to conduct that is both lawful and fully in accordance with his ethical and constitutional responsibilities as a criminal defense lawyer. *Andersen*, 544 U.S. at 705-06.

B. The Gordon Declaration and the Letter to the Federal Judge

The indictment alleges that the Gordon declaration and the letter to the federal judge were prepared "to provide false evidence of a prior consistent statement by Gordon or Treem in the event either one were to be questioned as part of an investigation … or called to testify … before the grand jury investigating Ravenell or

a trial of Ravenell if he were indicted by a federal grand jury." This is more than unlikely, it borders on the far-fetched.

First, it is surely rare that the attorney for a target would agree to be questioned by investigators or would be summoned to the grand jury. Rarer still, probably unheard of, if the attorney is abiding by his ethical obligations, would be the attorney or investigator disclosing privileged attorney work-product to the grand jury.

Second, even if Mr. Ravenell was indicted, and even if R.B. had entered into a cooperation agreement with the government and testified at a trial, no likely circumstance could arise under which either the Gordon declaration or the letter to the federal judge would be admissible at trial as a prior consistent statement, as the indictment alleges. Only if R.B. denied making the statements on September 9 or otherwise disputed his signature on the KWR Combined Notes would it be appropriate for Mr. Gordon to be called as a witness to testify about the interview and to authenticate R.B.'s prior inconsistent statements that R.B. had denied making. But that does not mean that Mr. Gordon's declaration would be admitted in evidence at any trial, any more so than an actual FBI 302 is routinely placed in evidence in a criminal trial. The Gordon declaration would only be admissible as a prior consistent statement under an extremely unlikely circumstance: if the government in its cross-examination of Mr. Gordon expressly or impliedly accused Mr. Gordon of recently fabricating his statements about what happened on September 9-10, 2017, and the circumstances relating to R.B.'s review of the KWR

13

Combined Notes that bears R.B.'s signatures. Fed. R. Evid. 801(d)(1)(B). But the government would know that such an express or implied accusation of recent fabrication was flagrantly false. Surely the government will acknowledge that it would not make a false accusation that Mr. Gordon had recently fabricated his testimony about the interviews with R.B. In short, although the indictment alleges that the obstruction would arise from the use of the Gordon declaration as a prior consistent statement, there is no realistic circumstance which would permit the admission into evidence of the Gordon declaration.

Similarly, the letter that Mr. Treem wrote to a federal judge is plainly inadmissible in any criminal trial of Mr. Ravenell. At the time he wrote the letter, and for a year and a half thereafter, Mr. Treem was Mr. Ravenell's lawyer. He could not have been a witness at any trial of Mr. Ravenell. There is no allegation in the indictment that plausibly describes how Mr. Treem's letter to the federal judge could likely affect any proceedings. It can no more serve as a basis for an obstruction of justice charge than if Mr. Treem had written a similar letter to a distant cousin.

The Rube Goldberg sequence of events manufactured by the government falls far short of the nexus required to allege an offense under the obstruction statutes.

Interpreting Sections 1512(c)(2) to reach documents in a private, indeed, privileged file that was not under subpoena poses tremendous problems of overreach. If a lawyer's "Memo to File" contains omissions or inaccuracies and the memorandum was created before there was a demand for production of the file, could the memorandum provide a basis for a prosecution under §1512? If a civil lawyer in

anticipation of litigation presents a potential witness with a statement that is partly inaccurate and the lawyer should have realized it contained an inaccuracy, has she committed a felony by having the document in her file? If an Assistant U.S. Attorney receives a 302 from an FBI agent of an interview and the agent contemporaneously tells him that she thinks the witness was lying, has he committed a felony by keeping the 302 in his file?

The government's attempt to increase the reach of these statutes poses grave risks for the everyday practice of law. The Supreme Court has been attentive to "the lack of fair warning and related kinds of unfairness that led this Court in *Aguilar* to `exercise' interpretive `restraint.'" *Marinello*, 138 S.Ct. at 1108. (citing *Aguilar*, *Yates*, and *Arthur Anderson*). The indictment in this case makes file keeping, especially for lawyers practicing federal criminal law, a perilous practice in which the lawyer must be careful that documents in the file contain no omissions and are accurate in all respects. Of course, only defense lawyers would be in actual peril.

## CONCLUSION

To state an offense in Counts Four and Five in violation of 18 U.S.C. § 1512, the government had to allege facts that would support that the defendants **knew** that these documents were likely to be seen by a grand or petit jury. They did not and they cannot, and the counts must be dismissed.

Respectfully submitted,

SCHULTE ROTH & ZABEL LLP
*/s/ Peter H. White*
Peter H. White (DC Bar: 468746) (VA Bar: 32310)
Aislinn Affinito (DC Bar: 1033700) (CA Bar: 300265)
McKenzie Haynes (NY Bar: 5683859)
Schulte Roth & Zabel
901 Fifteenth Street, NW, Suite 800
Washington, DC 20005
pete.white@srz.com
aislinn.affinito@srz.com
mckenzie.haynes@srz.com

OUTLAW PLLC
*/s/ Lucius T. Outlaw*
Lucius T. Outlaw III (#20677)
Outlaw PLLC
1351 Juniper St. NW
Washington, DC 20012
(202) 997-3452
loutlaw3@outlawpllc.com

*Attorneys for Kenneth Ravenell*

SCHERTLER ONORATO MEAD & SEARS, LLP
/s/*Robert P. Trout*
Robert P. Trout, Bar No. 01669
901 New York Ave., NW, Suite 500
Washington, DC 20006
Telephone: (202) 675-4410
Facsimile: (202) 628-4177
rtrout@schertlerlaw.com

/s/ *Daniel F. Goldstein*
Daniel Goldstein, Bar No. 01036
131 Rte 9A
Spofford, NH 03462
Telephone: (410) 218-8537
dan@gold-stein.com

*Attorneys for Joshua Treem*


OFFICE OF THE FEDERAL PUBLIC DEFENDER
/s/ *Geremy C. Kamens*
Geremy C. Kamens
Admitted Pro Hac Vice
Office of the Federal Public Defender
1650 King St., Suite 500
Alexandria, Virginia 22314
Telephone: 703-600-0800
Facsimile: 703-600-0880
Geremy_Kamens@fd.org


LEGRAND LAW PLLC
/s/ *Rebecca S. LeGrand*
Rebecca S. LeGrand
Bar No. 18351
1100 H St. NW, Suite 1220
Washington, DC 20005
Telephone: 202-587-5725
Facsimile: 202-795-2838
rebecca@legrandpllc.com

*Attorneys for Sean Gordon*

CERTIFICATE OF SERVICE

    I hereby certify that on this 30th day of March, 2021, I caused a copy of Defendants' Motion and Memorandum in Support of the Motion to Dismiss Counts Four and Five for Failure to Allege an Adequate Nexus to be served upon counsel for the United States of America via ECF and that true and correct copies of the filing are available to all parties through ECF and/or PACER.

                                        /s/ Robert P. Trout
                                        Robert P. Trout
                                        *Attorney for Joshua R. Treem*