**UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | CRIMINAL NO. LO-19-0449 |
| v. | * | |
| | * | |
| KENNETH WENDELL RAVENELL, | * | |
| JOSHUA REINHARDT TREEM, and | * | |
| SEAN FRANCIS GORDON, | * | |
| | * | |
| Defendants. | * | |
| | * | |

**DEFENDANTS' MOTION FOR AND MEMORANDUM IN SUPPORT OF
DISCLOSURE OF JUROR LISTS AND QUALIFICATION QUESTIONNAIRES**

Kenneth Ravenell, Joshua Treem, and Sean Gordon (collectively, "Defendants"), by and through undersigned counsel, respectfully move this Court to issue an Order directing the Clerk of Court to provide Defendants with certain juror information, which they are statutorily entitled to receive under the Juror Selection and Service Act of 1968, in order to investigate whether the grand jury that indicted them was fairly selected.

**I.   Introduction**

Mr. Ravenell was initially indicted on September 18, 2019, by a grand jury convened before the coronavirus pandemic. Mr. Ravenell was charged with one count of RICO Conspiracy (18 U.S.C. § 1962(d)), one count of money laundering conspiracy (18 U.S.C. § 1956(h), and one count of narcotics conspiracy (21 U.S.C. § 846). Subsequently, on December 17, 2020, Mr. Ravenell, Mr. Treem, and Mr. Gordon were all indicted in a superseding indictment, presumably by a grand jury convened amid the coronavirus pandemic, although defense counsel do not know whether the grand jury that returned the superseding indictment was the same one that issued the original indictment. Mr. Ravenell was charged again with one count of RICO Conspiracy (18 U.S.C. § 1962(d)), one count of money laundering conspiracy (18 U.S.C. § 1956(h), and one count

of narcotics conspiracy (21 U.S.C. § 846). All three defendants were charged with one count each of conspiracy to commit offenses against the United States (18 U.S.C. § 371), obstructing an official proceeding (18 U.S.C. § 1512(c)(2); 18 U.S.C. § 2), and falsification of record (18 U.S.C. § 1519; 18 U.S.C. § 2). Messrs. Ravenell and Treem were also charged with a second count of falsification of record (18 U.S.C. § 1519; 18 U.S.C. § 2).

The coronavirus pandemic has disproportionately afflicted minority populations, especially Black/African-American and Hispanic people. The CDC has advised that "[t]here is increasing evidence that some racial and ethnic minority groups are being disproportionately affected by COVID-19."[1] Indeed, "data from CDC shows that the death rates among Black and Hispanic/Latino people are much higher than for white people, in all age categories."[2] The pandemic has also affected men at a disproportionately higher rate than women. Data from around the world show that COVID-19 is "much more fatal for men" than for women.[3] The skewed demographic impacts of COVID-19 call into question whether the grand jury that indicted the Defendants in December 2020 reflects a fair cross-section of the community. The materials requested by this motion are necessary to examine that issue.

---

[1] CDC, *COVID-19 in Racial and Ethnic Minority Groups*, *available at*: https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/racial-ethnic-minorities.html.

[2] Tiffany Ford et al., *Race Gaps in COVID-19 Deaths Are Even Bigger Than They Appear*, Brookings (June 16, 2020), *available at*: https://www.brookings.edu/blog/up-front/2020/06/16/race-gaps-in-covid-19-deaths-are-even-bigger-than-they-appear.

[3] Richard Reeves & Tiffany Ford, *COVID-19 Much More Fatal for Men, Especially Taking Age into Account*, Brookings (May 15, 2020), *available at*: https://www.brookings.edu/blog/up- front/2020/05/15/covid-19-much-more-fatal-for-men-especially-taking-age-into-account ("men face a higher risk of death than women, across the U.S. and indeed across the globe").

## II.     Legal Background

The Jury Selection and Service Act of 1968 (JSSA) declares it to be the "policy of the United States" that: (1) "all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes," and (2) "all citizens shall have the opportunity to be considered for service on grand and petit juries in the district courts of the United States." 28 U.S.C. § 1861.  Specifically, the JSSA provides that "[n]o citizen shall be excluded from service as a grand or petit juror in the district courts of the United States . . . on account of race, color, religion, sex, national origin, or economic status." *Id.* § 1862.  The statute "codifies the Sixth Amendment right to have a jury selected from a fair cross section of the community." *United States v. Jones*, 533 F. App'x 291, 299 (4th Cir. 2013) (unpublished).

The JSSA instructs each federal district court to "devise and place into operation a written plan for random selection of grand and petit jurors that shall be designed to achieve the objectives of sections 1861 and 1862." 28 U.S.C. § 1863(a).  Pursuant to the statute, this Court has promulgated the Plan of the United States District Court for the District of Maryland for the Random Selection of Grand and Petit Jurors (the "Plan").  The Plan provides that at least once every four years, the Clerk randomly selects names from the voter registration lists "of the political subdivisions making up each division" (Baltimore and Greenbelt) and places them in separate Master Jury Wheels for each division.  Plan § V.  The Clerk, "[f]rom time-to-time as directed by the Court," randomly draws names from the Master Jury Wheels and places them on a Prospective Juror List.  *Id.* § VI.  The Clerk then mails Juror Qualification Questionnaires to people on the list. *Id.* § VII.

Based on the answers provided on those questionnaires, the Clerk screens out any prospective jurors who are not "qualified" because, for example, they are not U.S. citizens, do not speak English, or have felony convictions. *Id.* § XI. The Clerk also identifies prospective jurors who are "excused" (e.g., because they are over 70 years of age or have served as jurors within the past two years) or "exempt" (e.g., because they are police officers or active-duty military). *Id.* §§ IX, X. Any qualified prospective juror who does not fall into one of these two categories is placed in the Qualified Jury Wheel for his or her respective division. *Id*. § XII. Whenever the court needs a grand or petit jury panel, the Clerk randomly draws names from the Qualified Jury Wheel and issues summons to those people. *Id*. §§ XIV, XV.

The JSSA permits a criminal defendant to "move to dismiss the indictment or stay the proceedings against him on the ground of substantial failure to comply with the provisions of [the statute] in selecting the grand or petit jury." 28 U.S.C. § 1867(a). To make this right meaningful, the statute entitles a defendant to access any "records or papers" relating to the jury-selection process of the district in which the defendant is being prosecuted:

> The contents of records or papers used by the jury commission or clerk in connection with the jury selection process shall not be disclosed, except pursuant to the district court plan or as may be necessary in the preparation or presentation of a motion under subsection (a), (b), or (c) of this section, until after the master jury wheel has been emptied and refilled pursuant to section 1863(b)(4) of this title and all persons selected to serve as jurors before the master wheel was emptied have completed such service. The parties in a case shall be allowed to inspect, reproduce, and copy such records or papers at all reasonable times during the preparation and pendency of such a motion.

*Id*. § 1867(f).

This provision, the Supreme Court has held, "makes clear that a litigant has essentially an unqualified right to inspect jury lists." *Test v. United States*, 420 U.S. 28, 30 (1975) (per curiam). "Indeed, without inspection, a party almost invariably would be unable to determine whether he

4

has a potentially meritorious jury challenge." *Id*. Accordingly, "an unqualified right to inspection is required not only by the plain text of the statute, but also by the statute's overall purpose of insuring grand and petit juries selected at random from a fair cross section of the community." *Id*. The Fourth Circuit has rigorously enforced this right. In *United States v. Curry*, 993 F.2d 43 (4th Cir. 1993), the Court agreed with the defendant-appellant that, under *Test* and 28 U.S.C. § 1867, "he had an *unqualified* right to inspect the jury list in order to determine if there was a factual basis for a motion challenging the jury selection procedures." *Id*. at 44 (emphasis in original). Thus, the Court held that the district court's denial of Curry's request for inspection was in error and remanded the case to allow Curry to inspect the requested materials. *Id*.

Because the right of access is unqualified, a defendant need not present an "affidavit establish[ing] a prima facie case of defective jury selection process" before he can obtain jury records. *Gov't of Canal Zone v. Davis*, 592 F.2d 887, 889 (5th Cir. 1979); *see also United States v. Potts*, 538 F. App'x 434, 437 (5th Cir. 2013) (unpublished) ("A district court may not premise the grant or denial of a motion to inspect upon a showing of probable success on the merits of a challenge to the jury selection provisions."); *United States v. Bagcho*, 923 F.3d 1131, 1136 (D.C. Cir. 2019) (explaining there is "no basis to require a defendant to submit a sworn statement, much less to plausibly allege a violation of his right to a jury that represents a fair cross section of the community, when seeking to inspect jury records as an initial step in deciding whether to file a motion under the Act"). Indeed, in *Curry*, the Fourth Circuit expressly rejected the government's argument that the defendant was "required to submit a sworn affidavit showing why the list would be necessary." 993 F.2d at 44. Rather, "[t]o avail himself or herself of the right of access to otherwise unpublic jury selection records, a litigant need only allege that he or she is preparing a motion challenging the jury selection procedures." *United States v. Stanko*, 528 F.3d 581, 587

5

(8th Cir. 2008). "[T]he only limitation authorized by Congress on the disclosure of [jury] information is that the disclosure be at reasonable times." *United States v. Alden*, 776 F.2d 771, 773 (8th Cir. 1985) (emphasis omitted) (citing *Test*, 420 U.S. at 30 n.4).

### III. Argument

Defendants wish to ensure, consistent with the JSSA and the Sixth Amendment, that their grand jury was "selected at random from a fair cross section of the community" and that no potential grand juror was excluded from service "on account of race, color, religion, sex, national origin, or economic status." 28 U.S.C. §§ 1861, 1862; *see also Berghuis v. Smith*, 559 U.S. 314, 319 (2010) ("The Sixth Amendment secures to criminal defendants the right to be tried by an impartial jury drawn from sources reflecting a fair cross section of the community."). To vindicate these statutory and constitutional rights, Defendants must have access to information about how this Court is assembling grand juries in light of disruptions to normal court operations caused by the coronavirus pandemic. Defendants therefore move this Court for an order directing the Clerk to disclose certain information about the jury wheels that was in operation when this case was indicted. Specifically, Defendants request:

1. The Jury Plan for the District of Maryland that was in effect as of: (1) September 18, 2019, when Mr. Ravenell was indicted under the Indictment; and (2) December 17, 2020, when Defendants were indicted under the Superseding Indictment. This Plan is believed to be the "Plan of the United States District Court for the District of Maryland for the Random Selection of Grand and Petit Jurors" available on the Court's website.

2. Any AO-12 form or JS-12 form created that relates to the Master Jury Wheel and the Qualified Jury Wheel that was used to summon grand jurors in this case as required by 28 U.S.C. §1863(a).

3. Any other statistical or demographic analyses produced to ensure the quality and compliance of the Master Jury Wheel and the Qualified Jury Wheel that was used to summon grand jurors in this case with the JSSA, constitutional requirements, and Plan §§ II, III.

4. The date when the Master Jury Wheel that was used to summon grand jurors in this case was refilled as described in Plan § V.

5. The date when the grand jurors in this case were summoned.

6. The number of persons who were summoned from the Qualified Jury Wheel to be considered as grand jurors in this case.

7. A copy of the Master Jury Wheel (in electronic and accessible form), including participant number and demographic data regarding the race, Hispanic ethnicity, age, and gender of people in the wheel; as well as geographic information about general location of wheel members' residences, such as county and zip code (not to include name or street address).

8. A copy of the Qualified Jury Wheel (in electronic and accessible form), including participant number and demographic data regarding the race, Hispanic ethnicity, age, and gender of people in the wheel; as well as geographic information about general location of wheel members' residences, such as county and zip code (not to include name or street address).

9. Status codes for potential jurors who were selected for qualification but either had their qualification form returned by the postal service, did not respond, or were disqualified, excused, or exempted from the Qualified Jury Wheel. The data should be in electronic and accessible form that includes participant number, whether the form was returned undeliverable, whether the form was not returned, reason for disqualification, race, gender, Hispanic ethnicity, year of birth, zip code, and county.

10. The participant number only (and not the name or address) for persons who were selected as potential grand jurors in this case.

11. The sources of data (in electronic form) for the Master Jury Wheel used to summon grand jurors in this case as described in the Plan § V. The data should include race, gender, Hispanic ethnicity, year of birth, zip code, and county but not any personal information or information that could be used to identify any individual, such as name or address. This source is believed to be the certified lists of registered voters.

12. The juror qualification and/or summons forms for persons who were summoned to potentially become grand jurors in this case. This includes any special or supplemental questionnaires sent to prospective jurors that ask about preexisting medical conditions, possible exposure to the coronavirus, responsibility to care for family members or others who are at risk of contracting COVID-19, and any other questions designed to gauge whether, in light of the coronavirus pandemic, prospective jurors will be able to serve.

13. The disposition of each summoned potential grand juror in this case as to excusal, exemption, deferment, disqualification, or selection.

14. Any additional information pertaining to special procedures used by the Court to select, screen, or excuse prospective grand jurors as a result of or in relation to the COVID-19 pandemic.

15. The attendance record and reason for absence by date for each grand juror (not to include the grand juror's name or street address).

16. Any questionnaires completed by grand jurors concerning COVID-19 (not to include the grand juror's name or street address).

To be clear, Defendants are seeking information pertaining to the grand juries that were sitting on September 18, 2019, when the government obtained the original Indictment, **and** on December 17, 2020, when the government obtained the Superseding Indictment. The requested information falls squarely within the JSSA's description of "records or papers used by the jury commission or clerk in connection with the jury selection process." § 1867(f). As explained above, the Supreme Court has held defendants have an "unqualified right" to inspect such documents. *Test*, 420 U.S. at 30; *see also United States v. Gray*, 47 F.3d 1359, 1367 (4th Cir. 1995) (noting that jurors completed "juror qualification form[s]" and "jury qualification card[s]," and "this information was available to [the defendant] and his counsel prior to voir dire" under the JSSA).

**IV.   Conclusion**

Defendants respectfully request that this Court direct the Clerk of Court to provide them with the grand jury records described above.

April 2, 2021                              Respectfully submitted,

                                                            KENNETH RAVENELL

*/s/ Pete White*
_____
Peter H. White (D.C. Bar: 468746) (VA Bar: 32310)
Aislinn Affinito (D.C. Bar: 1033700) (CA Bar: 300265)
McKenzie Haynes (N.Y. bar: 5683859)
Schulte Roth & Zabel
901 Fifteenth Street, NW, Suite 800
Washington, DC 20005
pete.white@srz.com
aislinn.affinito@srz.com
mckenzie.haynes@srz.com


*/s/ Lucius T. Outlaw*
_____
Lucius T. Outlaw III (#20677)
Outlaw PLLC
1351 Juniper St. NW
Washington, DC 20012
(202) 997-3452
loutlaw3@outlawpllc.com


JOSHUA R. TREEM

*/s/ Robert Trout*
_____
Robert P. Trout, Bar No. 01669
Schertler Onorato Mead & Sears, LLP
901 New York Ave., N.W., Suite 500
Washington, D.C. 20001
Tel.: (202) 675-4410
Facsimile: (202) 628-4177
rtrout@schertlerlaw.com

Daniel Goldstein, Bar No. 01036
131 Rte 9A
Spofford, NH 03462
Telephone: (410) 218-8537
dan@gold-Rstein.com

SEAN F. GORDON

*/s/ Geremy Kamens*
_____
Geremy C. Kamens
Admitted Pro Hac Vice
Office of the Federal Public Defender
1650 King St., Suite 500
Alexandria, Virginia 22314
Telephone: 703-600-0800
Facsimile: 703-600-0880
Geremy_Kamens@fd.org

*/s/ Rebecca LeGrand*
_____
Rebecca S. LeGrand
Bar No. 18351
LeGrand Law PLLC
1100 H St. NW, Suite 1220
Washington, DC 20005
Telephone: 202-587-5725
Facsimile: 202-795-2838
rebecca@legrandpllc.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 2nd day of April, 2021, I caused a copy of Defendant's Reply in Support of his Motion to Suppress to be served upon counsel for the United States of America via ECF and email.

*/s/ Aislinn Affinito*

_____

Aislinn Affinito
*Attorney for Kenneth Ravenell*