## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | * |
| | * |
| **v.** | * |
| | *    **CRIMINAL NO.  LO-19-0449** |
| **KENNETH WENDELL RAVENELL,** | * |
| **JOSHUA REINHARDT TREEM, and** | *    **FILED UNDER SEAL** |
| **SEAN FRANCIS GORDON** | * |
| | * |
| **Defendants.** | * |
| | ******* |

## UNITED STATES' OMNIBUS RESPONSE TO
## DEFENDANTS' PRETRIAL MOTIONS

The United States of America, by and through its undersigned attorneys, hereby submits

this omnibus response to the following pretrial motions filed by the defendants:

1. Motion and Memorandum to Dismiss Superseding Indictment Based Upon Improper Recordings of Defense Witness Interview and Alternatively to Suppress Recordings (ECF 174)

2. Defendants' Motion and Memorandum to Dismiss Counts Four, Five, Six and Seven Because Defendants Acted Lawfully in the Course of Providing Bona Fide Legal Services (ECF 173)

3. Defendants' Motion and Memorandum of Law to Disclose the Government's Presentation of Law to the Grand Jury (ECF 184)

4. Defendants' Motion and Memorandum to Dismiss Count Seven or Strike Count Four, Paragraphs 106.a. and b. as Surplusage (ECF 183)

5. Defendants' Motion and Memorandum to Dismiss Counts Four and Five for Failure to Allege an Adequate Nexus (ECF 181)

6. Defendants' Motion to Strike Paragraph 1, 13-15 of Count Four as Surplusage, or Alternatively, to Dismiss Count Four as Duplicitous (ECF 182)

7. Defendants' Motion and Memorandum for Severance of Counts Four through Seven (ECF 180)

8. Defendants' Motion for and Memorandum in Support of Disclosure of Juror Lists and Qualification Questionnaires (ECF 187)

9. Defendants' Motion and Memorandum for Entry of Order Pursuant to the Due Process Protections Act and Federal Rule of Criminal Procedure 5(f) (ECF 176)

TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................... 4

II.   DEFENDANTS' MOTION AND MEMORANDUM TO DISMISS SUPERSEDING
INDCTMENT BASED UPON IMPROPER RECORDINGS OF DEFENSE WITNESS
INTERIVEW AND ALTERNATIVELY TO SUPPRESS RECORDING (ECF 174) ................ 4

   A.   The Superseding Indictment Should Not Be Dismissed Because An Accurate Record Was
   Made of Treem and Gordon's Meeting with R.B. ..................................................... 5

      1.   Defendant Ravenell had Full Access to R.B. ..................................................... 5

      2.   Treem Voluntarily Withdrew from Representation of Ravenell .................................... 9

      3.   R.B.'s Interview is Not Privileged Work Product ................................................ 11

      4.   The Government Acted Entirely Properly in Recording the R.B. Interview ................. 14

   B.   Because the Recording the Meeting was Not Improper the Recording Itself Should Not be
   Excluded and the Prosecutors Exposed to it Should Not be Disqualified From the Case ........ 15

III.   DEFENDANTS' MOTION AND MEMORANDUM TO DISMISS COUNTS FOUR,
FIVE, SIX AND SEVEN BECAUSE DEFENDANTS ACTED LAWFULLY IN THE COURSE
OF PROVIDING BONA FIDE LEGAL REPRESSENTATION (ECF 173) .............................. 15

   A.   The Superseding Indictment is Valid on Its Face and Thus the Case Should Proceed to
   Trial ................................................................................................................ 16

      1.   Count Four – the Conspiracy to Obstruct Justice .............................................. 17

      2.   Count Five – Obstruction of an Official Proceeding ............................................ 18

      3.   Count Six – Falsification of Record (The Gordon Affidavit) .................................. 20

      4.   Count Seven – Falsification of Record (Letter to a United States District Court Judge)
         21

   B.   The Defendants' Arguments Fail to Overcome the Facial Validity of the Challenged
   Counts .............................................................................................................. 22

      1.   The Superseding Indictment Alleges that the defendants Did *Not* Engage in Bona Fide
      Legal Services ................................................................................................. 22

      2.   The Defendants Views that the Conduct Alleged in the Superseding Indictment is
      Actually the *Lawful* Provision of Legal Services are Irrelevant at this Stage in the
      Proceeding ..................................................................................................... 27

IV.   DEFENDANTS' MOTION AND MEMORANDUM OF LAW TO DISCLOSE THE
GOVERNMENT'S PRSENTATION OF LAW TO THE GRAND JURY (ECF 184) .............. 35

V.   DEFENDANTS' MOTION AND MEMORANDUM TO DISMISS COUNT SEVEN OR
STRIKE COUNT FOUR, PARAGRAPHS 106.a. AND b. AS SURPLUSAGE (ECF 183) ...... 37

VI.   DEFENDANTS' MOTION AND MEMORANDUM TO DISMISS COUNTS FOUR
AND FIVE FOR FAILURE TO ALLEGE AN ADEQUATE NEXUS (ECF 181) .................... 41

VII.    DEFENDANTS' MOTION TO STRIKE PARAGRAPHS 1, 13-15 OF COUNT FOUR
AS SURPLUSAGE, OR ALTERNATIVELY TO DISMISS COUNT FOUR AS
DUPLICITOUS (ECF 182) ......................................................... 44

    A.   Paragraphs 1 and 13 Through 15 of Count Four Are Not "Surplusage" .......................... 44

    B.   Count Four Is Not Duplicitous.......................................................... 49

VIII.   DEFENDANTS'  MOTION FOR SEVERANCE OF COUNTS FOUR THROUGH
SEVEN (ECF 180)............................................................. 52

    A.   Broad Joinder Is the Rule—Not the Exception................................................. 52

    B.   Obstruction Charges Are Properly Joined With Underlying Crimes................................ 53

    C.   All Counts of the Superseding Indictment Are Properly Joined...................................... 56

    D.   The Same Evidence Would Be Presented in Severed Trials ......................................... 58

    E.   *United States v. Oaks* Is Distinguishable ....................................... 60

    F.   Severance Is Not Justified Under Rule 14 ....................................... 61

IX.    DEFENDANTS' MOTION FOR AND MEMORANDUM IN SUPPORT OF
DISCLOSURE OF JUROR LISTS AND QUALIFICATION QUESTIONNAIRES (ECF 187) 65

X.     DEFENDANTS' MOTION FOR AND MEMORANDUM FOR ENTRY OF ORDER
PURSUANT TO THE DUE PROCESS PROTECTIONS ACT AND FEDERAL RULE OF CRIMINAL
PROCEDURE 5(f) (ECF 176)                                                    67

## I.      INTRODUCTION

Defendants Kenneth Ravenell and Joshua Treem, experienced criminal defense attorneys, abused their positions as lawyers to obstruct justice and enlisted Sean Gordon, an experienced private investigator, to aid them in their efforts.  Ravenell also abused his position as a lawyer to enrich himself by laundering money and providing information and instructions to drug dealers on how to evade law enforcement in order to continue narcotics trafficking.

On September 18, 2019, the Grand Jury charged Ravenell with racketeering conspiracy, money laundering conspiracy and narcotics conspiracy.

On December 17, 2020, the Grand Jury returned a superseding indictment against Ravenell that charged him with racketeering conspiracy, money laundering conspiracy and narcotics conspiracy and added charges against him and Treem and Gordon for obstructing an official proceeding and falsifying records and for conspiring to do the same.

It is the latter charges that are the almost exclusive focus of the defendants' pretrial motions.  The defendants howl that the present prosecution "poses an existential threat to the adversarial system of justice."  ECF 174 at 20.  Rather, it stands for the unremarkable proposition that the law applies to everyone, even lawyers.

## II.     DEFENDANTS' MOTION AND MEMORANDUM TO DISMISS SUPERSEDING INDICTMENT BASED UPON IMPROPER RECORDINGS OF DEFENSE WITNESS INTERVIEW AND ALTERNATIVELY TO SUPPRESS RECORDING (ECF 174)

In their "Motion and Memorandum To Dismiss Superseding Indictment Based Upon Improper Recording of Defense Witness Interview and Alternatively to Suppress Recording" the defendants seek three forms of relief.  ECF 174 at 1.  First, they ask the Court to dismiss the entire superseding indictment accusing the government of "egregious misconduct" by recording Treem

and Gordon's meeting with R.B., which they claim violated the U.S. Constitution.  Second, they

ask the Court "in the alternative" to exclude the video.  Third, they ask the Court to "disqualify the

prosecutors who have had access to the video recording from representing the government in this

case because of their exposure to and use of patently unlawful video surveillance of the defense's

interview of a key witness."  Recording Treem and Gordon's meeting with R.B. was not "egregious

misconduct."  R.B. was a private citizen, not represented by Treem, who was free to report the

contents of his meeting with Treem and Gordon to anyone, including law enforcement.  Given that

fact, he was also free to record it or to consent to the Government recording it.  Therefore, the

defendants' motion is meritless and should be denied.

### A.  The Superseding Indictment Should Not Be Dismissed Because An Accurate Record Was Made of Treem and Gordon's Meeting with R.B.

The federal courts review indictments for constitutional error and prosecutorial

misconduct.  *United States v. Mills*, 995 F.2d 480, 486 (4th Cir. 1993).  Defendants claim that the

recording of the R.B. interview amounted to prosecutorial misconduct because doing so violated:

(1) Ravenell's "Due Process right to equal access to witnesses"; (2) Ravenell's Sixth Amendment

right to counsel of his choice; (3) the attorney work-product doctrine, which would apply to both

Ravenell and Treem.

Even though all three defendants signed this brief, the defendants do not explain how any

right that Gordon held was violated by the recording or how the two constitutional violations they

claim affected any rights enjoyed by Treem.  In any event, the only real complaint all three

defendants share is that they got caught.

### 1.  Defendant Ravenell had Full Access to R.B.

The first basis the defendants offer in support of their motion to dismiss for "egregious

misconduct" is their contention that, "the Government violated the due process right to equal

access to witnesses."  ECF 174 at 10.  Their argument fails because Ravenell had full access to R.B.

As the defendants concede in their motion, R.B. contacted Treem before R.B. began cooperating with the Government.  ECF 174 at 3.  Specifically, as cited in the defendants' motion, on or about April 10, 2017, R.B. left a voicemail on Treem's phone telling Treem, "you need to come see me immediately" and telling Treem that he had "exculpatory" information about Ravenell.  Thus, at the outset it is important to note that the Government did not direct R.B. to contact the defendants.  R.B. was not directed at the defendants or "implanted" in the defense camp.

As important as that fact is, however, an even more important one, and this something the defendants omit from their motion, is that Treem contacted R.B.'s then lawyer, M.L., a dozen times before receiving that voicemail from R.B. in April 2017.

- On December 9, 2016, Treem emailed R.B.'s counsel, M.L., and asked "What's going on with [R.B.]?"

- On September 29, 2016, Treem traveled to and from Greenbelt to meet with M.L. and to obtain the Jencks production from R.B.'s case from him.

- On December 28, 2016, Treem emailed R.B.'s counsel, M.L., and stated "[M.L.] – I have left vm messages.  Can you let me know what's going on, if anything?"

- On January 1, 2017, Treem emailed R.B.'s counsel, M.L., and asked "Can I stop by?" in reference to Treem going to M.L.'s office in Greenbelt.

- On January 6, 2017, Treem emailed M.L., and stated "I know you are busy and I don't want to keep bugging you.  Can you at least tell me if anything has changed since we last spoke?"

- On January 27, 2017, Treem emailed M.L., with the subject line "[R.B.]" and asked, "Anything you can tell me?"

- On February 1, 2017, Treem emailed M.L., with the subject line "[R.B.]" and included only a "?" in the email body. [R.B.'s counsel wrote back to Treem later that day and said "hang tight. I'll get you in there."]

- On February 13, 2017, Treem emailed M.L., with the subject line "U.S. v. [R.B.]" and stated, "Give me a call when you can."

- On February 14, 2017, Treem exchanged emails with M.L. regarding Treem 's request to meet with R.B. M.L. emailed Treem with the subject line "[R.B.]" and stated "Josh – have at him." Treem responded, "Thanks [M.L.]"

- On March 1, 2017, Treem discussed with M.L. obtaining [R.B.'s] discovery materials

- On March 2, 2017, Treem wrote to M.L. and stated "Thank you for agreeing to contact your client, [R.B.], in response to my request to meet with him. I look forward to hearing from you in that regard."

- On March 8, 2017, M.L. emailed Treem the name of R.B.'s new counsel.

After this repeated contact, R.B. reached out to Treem in April 2017. On May 18, 2017, Treem directed that a letter be sent to R.B.'s prison to arrange a meeting between Gordon, Treem and R.B. Treem was evidently interested in meeting with R.B. to determine, in part, if he was cooperating with law enforcement as evidenced by the fact that on August 4, 2017, Treem emailed R.B.'s new counsel, subject line "[R.B.]," and asked "do you know if the feds have reached out to him?"

On August 23, 2017, Treem and Ravenell discussed the need for Treem to meet with Byrd in jail.  Treem emailed Byrd's lawyer and copied Gordon, asking, "[w]ould it be possible to meet with Mr. Byrd on Sunday 9/10 . . . I have copied my investigator [Gordon] on this email."

Treem and Gordon arranged to travel to meet with Byrd on September 9, 2017.  The night before, Ravenell emailed Treem and stated, "Good luck tomorrow."

All of the case law the defendants cite in support of their argument that the Government interfered with Ravenell's right to interview R.B. involve situations where the Government prevented a defendant from interviewing or calling a witness.  That is because, as made clear by one of the cases the defendants themselves offer in support of their position, "To challenge the government's conduct on Sixth Amendment or due process grounds for witness interference, the defendant is required to make a 'clear showing' that the government instructed the witness not to cooperate with the defense."  *United States v. Linder*, No. 12 CR 22, 2013 WL 812382, at *44 (N.D. Ill. Mar. 5, 2013) (citing *United States v. Roach*, 502 F.3d 425, 437 (6th Cir. 2007)).

The defendants cannot make any such showing.   At no time during the extended back-and-forth between Treem and two sets of lawyers for R.B. did the Government interfere with Ravenell's access to R.B.  Specifically, the Government did not instruct R.B. to refuse to meet with Gordon and Treem.  Instead, the Government recorded the meeting.  That is the outrage of which the defendants complain.  That the Government sought to make an accurate record of Treem and Gordon's meeting with a third-party, R.B., whom Treem did not represent and with whom Treem had asked to meet.  Put another way, there is no issue with the defendants' access to R.B. and the case law they cite about the Government interfering with a defendant's access to witnesses is inapposite.  They had full access to R.B.  They met with him for as long as they wanted over a period of two days.  They take issue with the fact that there is an accurate record of what occurred.

But they cite no authority for the proposition that the Government cannot record a meeting between a lawyer and a third-party, whom he does not represent, where that third party has consented to the recording.

But for the recording, the defendants could have claimed that R.B. was lying when R.B. testifies, as he will, that Ravenell knew he was selling drugs and that he was giving Ravenell the proceeds of drug sales to launder and as payment for the other illicit services Ravenell was providing including obstruction of justice. But the recording prevents the defendants from making that argument. And it puts to a lie the letter that Treem wrote to a United States District Court Judge falsely describing the interview with R.B. and the affidavit Ravenell and Treem drafted for Gordon and Gordon signed similarly falsely describing the meeting. The recording is the truth. Defendants never explain, because they cannot, how preserving what actually happened in that meeting could constitute misconduct on the part of the Government.

### 2.  Treem Voluntarily Withdrew from Representation of Ravenell

The second variety of "egregious misconduct" the defendants allege is that "the government used its impermissible pre-indictment recording of R.B.'s witness interview to initiate a criminal obstruction investigation that necessarily resulted in the denial of the right to counsel of choice."  ECF 174 at 12. This argument appears to only apply to Ravenell. In any event, it fails.

On January 11, 2019, the Government wrote Treem to inform him that "there are multiple nonwaivable conflicts of interest that prevent you from continuing to represent Kenneth Ravenell in connection with the ongoing grand jury investigation," including the fact that Treem himself was the subject of a grand jury investigation. The Government's notice ended with the following: "Please advise us promptly if you do not intend to withdraw from your representation of Mr. Ravenell." Treem never did. Instead he voluntarily withdrew from his representation of Ravenell.

The Sixth Amendment provides a right to the "Assistance of Counsel" in "all criminal prosecutions." *See Powell v. Alabama*, 287 U.S. 45, 59 (1932); U.S. CONST. amend. VI. ("in all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."). Defendants who do not require appointed attorneys have an additional right to choose their attorneys. *United States v. Gonzalez-Lopez*, 548 U.S. 140, 148-49 (2006); *Wheat v. United States*, 486 U.S. 153, 159 (1988); *cf. Powell*, 287 U.S. at 53 ("It is hardly necessary to say that, the right to counsel being conceded, a defendant should be afforded a fair opportunity to secure counsel of his own choice.").

This right to counsel includes the correlative right to legal representation that is "free from conflicts of interest." *Wood v. Georgia*, 450 U.S. 261, 271 (1981); *see Glasser v. United States*, 315 U.S. 60, 70 (1942) ("[T]he '[a]ssistance of [c]ounsel' guaranteed by the Sixth Amendment contemplates that such assistance be untrammeled and unimpaired by a court order requiring that one lawyer shall simultaneously represent conflicting interests."). "[C]ounsel owes the client a duty of loyalty, a duty to avoid conflicts of interest," which is "perhaps the most basic of counsel's duties." *Strickland v. Washington*, 466 U.S. 668, 688, 692 (1984). Relatedly, a defendant is not entitled to counsel of his choice if that counsel is encumbered by a potential conflict of interest which would undermine a defendant's constitutional rights. *Wheat*, 486 U.S. at 159-60.

Trial courts have "an independent duty to ensure that criminal defendants receive a trial that is fair and does not contravene the Sixth Amendment." *Wheat*, 486 U.S. at161. Indeed, it is the trial court's "obligation to foresee problems over representation" that result from conflicts of interest under the rules of professional misconduct. *United States v. Howard*, 115 F.3d 1151, 1155 (4th Cir. 1997); *Wheat*, 486 U.S. at 158-59 (same). "To meet [its] obligation, a court that learns of a possible conflict 'must investigate the facts and details of the attorney's interests to determine

whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all.'" *United States v. Brodnik*, 710 F.Supp.2d 526, 561 (S.D. W.Va. 2010); *United States v. Rogers*, 209 F.3d 139, 143 (2d Cir. 2000) (quoting *United States v. Levy*, 25 F.3d 146, 153 (2d Cir. 1994)).

Treem chose to voluntarily withdraw from his representation of Ravenell after receiving the Government's letter of January 11, 2019.  The Government never moved to disqualify him.  If Treem had believed that the grand jury investigation had "no pre-existing justification" as he now claims, he should have notified the Government that he did not intend to withdraw and the parties would have litigated the matter before this Court.  He did not and by doing so effectively waived the argument he makes now.

The defendants also argue, that the "government's misconduct did not merely deprive a defendant of the funds to hire counsel of his choice …" but fail to explain what they mean.  The Government assumes this is an error.

### 3.  R.B.'s Interview is Not Privileged Work Product

Defendants next argue that Treem and Gordon's interview "constituted privileged work product" and the "crime fraud exception to the work product doctrine is inapplicable."  ECF 174 at 14.

Their argument ignores the fact that this Court has found the opposite.  In an Order dated January 24, 2020, the Court found that the crime fraud exception applied to, among other hard copy documents, the Gordon Affidavit, the KWR's Combined Notes and Treem's handwritten notes of the interview with R.B.  The Court made its ruling after the Special Master issued a Report and Recommendation concluding the crime fraud exception applied to these and other documents. The Court also ruled after Ravenell objected to the Special Master's Report and Recommendation

11

not once but twice, as the procedures adopted by the Court for the Special Master allowed for.  As

the Court explained in its Order:

> The work product doctrine is distinct [from the attorney-client privilege] and "protects the work of the attorney done in preparation for litigation." *Id; see also In re Allen*, 106 F.3d 582, 607 (4th Cir. 1997) ("To qualify for protection under the work product doctrine, a lawyer must create the document in anticipation of litigation.").  The doctrine "is premised on the idea that '[n]ot even the most liberal of discovery theories can justify unwarranted inquiries [sic] into the files and the mental impressions of an attorney.'" *In re Grand Jury Proceeding #5 Empanelled Jan. 28, 2004*, 401 F.3d 247, 250 (4th Cir. 2005) (alteration in original) (quoting *Hickman v. Taylor*, 329 U.S. 495, 510 (1947)).  "Fact work product" consists of documents prepared by an attorney that do not contain the attorney's mental impressions, conclusions or opinions.  *In re Doe*, 662 F.2d 1072, 1076 n.2 (4th Cir. 1981).  "Opinion work product," on the other hand, "does contain the fruit of an attorney's mental processes."  *In re Grand Jury Proceedings #5 Empanelled Jan. 28, 2004*, 401 F.3d at 250.  Fact work product "is discoverable 'upon a showing of both a substantial need and an inability to secure the substantial equivalent of the materials by alternative means without undue hardship,'" while "*opinion* work product 'enjoys a nearly absolutely immunity and can be discovered only in very rare and extraordinary circumstances.'" *In re Allen*, 106 F.3d at 607 (quoting *In re Grand Jury Proceedings, Thursday Special Grand Jury Sept. Term, 1991*, 33 F.3d at 348).  "Because the work product privilege protects not just the attorney-client relationship but the interests of attorneys to their own work product, the attorney, as well as the client, hold the privilege." *In re Grand Jury Proceedings #5 Empanelled Jan. 28, 2004, 401 F.3d at 250* (internal citation omitted).
>
> Both the attorney-client privilege and work product privilege may be lost "when a client gives information to an attorney for the purpose of committing or furthering a crime or fraud." *Id*. at 251 (citing *In re Grand Jury Subpoena*, 884 F.2d 124, 127 (4th Cir. 1989)); *see also In re Grand Jury Proceedings, Thursday Special Grand Jury Sept. Term, 1991*, 33 F.3d at 348 ("We have recognized the crime fraud-exception in the context of attorney-client privilege and in the context of the work product doctrine.").
>
> The party invoking the crime-fraud exception must make a prima facie showing which demonstrate "(1) the client was engaged in or planning a criminal or fraudulent scheme when he sought he advice of counsel to further the scheme, and (2) the documents containing the privileged materials bear a close relationship to the client's existing or future scheme to commit a crime or fraud." *In re Grand Jury Proceedings #5 Empanelled Jan. 28, 2004, 401 F.3d at 251* (citing *Chaudhry v. Gallerizzo*, 174 F.3d 394, 403 (4th Cir. 1999)).  The first prong requires only showing "evidence that, if believed by a trier of fact, would establish the elements of some violation that was ongoing or about to be committed," and the second prong

12

requires only "a close relationship between the attorney-client communications and the possible criminal or fraudulent activity." *Id.*

> To apply to the attorney-client privilege, the communication must only further or be intended by the client to further illegality, and "the attorney need not be aware of the illegality involved." *Id.* For the exception to apply to the work product privilege, "a prima facie case of crime or fraud must also be made out against the attorney," because both the attorney and the client hold the privilege. *Id.* at 252.

>> Thus, while the attorney-client privilege may be vitiated without showing that the attorney knew of the fraud or crime, those seeking to overcome the opinion work product privilege must make a prima facie showing that the "attorney in question was aware of or a knowing participating in the criminal conduct."

> *Id.* (quoting *In re Grand Jury Proceedings*, 33 F.3d at 349).

Order of January 24, 2020 at 2-4. The Court applied the law thus summarized, and concluded the following:

- The affidavit that Ravenell and Treem drafted for Gordon, and that Gordon signed, which falsely described what occurred during the meeting between Treem and Gordon and R.B. was not work product and that the Government had made a *prima facie* showing that it fell within the crime-fraud exception. Order of January 24, 2020 at 5 [referring to Category 2 documents].

- The "KWR's Combined Notes," with Treem's handwriting on it that was signed by R.B. were not work product and that the Government had made a *prima facie* showing that it fell within the crime-fraud exception. Order of January 24, 2020 at 5-6 [referring to Category 3 documents].

- Treem's own handwritten notes from the interview with R.B. fell within the crime fraud exception because the Government "show[ed] sufficient proof as to both prongs of the exception, *as well as the required attorney awareness or knowledge.* Order of January 24,

2020 at 6 [referring to Category 4 and 5 documents] (emphasis added).   These notes included the following notations: "KWR [Ravenell] knows all about drug dealing, LOC and laundering.  [R.B.] delivered millions in cash, so did [J.C.]" and "JRT – different from yesterday," which Treem underlined notation four times, Count One ¶ 64, and  the notation "saying [] different from yesterday," id. at ¶ 70.  These notations are clear evidence of the falsity of the letter Ravenell and Treem later drafted to a United States District Court Judge purporting to describe the R.B. interview and are evidence of the falsehoods in the affidavit they drafted for Gordon, which Gordon signed.

Thus, the Court found that the Government had made a *prima facie* showing that Ravenell "was engaged in or planning a criminal or fraudulent scheme when he sought the advice of" Treem "to further the scheme," and (2) "the documents containing the privileged materials," the Gordon Affidavit, the KWR's Combined Notes and Treem's own handwritten notes of the interview, among others, "bear a close relationship to the client's existing or future scheme to commit a crime or fraud."  Further, the Court found that the Government made *a prima facie* showing that Treem was "aware of or a knowing participant in the criminal conduct."

If all three of these documents, including Treem's own notes of the encounter are discoverable, then a recording of the interview is either not work product or falls within the crime fraud exception.

### 4.  The Government Acted Entirely Properly in Recording the R.B. Interview

The defendants end their motion with a series of hyperbolic statements claiming, among other things, that the fact that the R.B. interview was recorded "pose an existential threat to the adversarial system of justice."  ECF 174 at 20.  It does not.  The recording is evidence of Ravenell, Treem and Gordon's guilt.  It demonstrates the falsity of the letter that Ravenell and Treem sent

14

to a United States District Court Judge and the falsity of the affidavit they drafted and Gordon signed.  R.B. was an individual whom Treem sought out and did not represent.  R.B. was free to report what was discussed during the meeting to his own lawyer, to law enforcement or to anyone else.  He was also free to record it as Arizona, where the recording occurred, is a one-party consent state, AZ Rev Stat § 13-3005, § 13-3012 (definition & penalty), § 12-731 (civil damages), or to consent to the Government recording it.

Treem obviously wanted to keep the discussion confidential, as evidenced by the fact that he told R.B. that Treem was going to lie to R.B.'s lawyer about what they had discussed. Superseding Indictment, Count IV ¶ 69 (TREEM: "But in terms of what we said here yesterday and today I'm not telling him anything.").  But there is no authority for the defendants' proposition that Treem could gag R.B. for the rest of R.B.'s life concerning the contents of their conversation. Therefore, there is no basis to dismiss the Superseding Indictment based on the fact that R.B. consented to law enforcement recording the interview or to exclude the recording itself.

### B. Because the Recording of the Meeting was Not Improper, the Recording Itself Should Not be Excluded and the Prosecutors Exposed to it Should Not be Disqualified From the Case

The only basis for the defendants' claim that the recording of the R.B. interview should be excluded and the prosecutors who have seen it should be disqualified is their claim that the Government engaged in misconduct by recording the meeting.  Since it did not, these two alternative forms of relief should be denied.

### III. DEFENDANTS' MOTION AND MEMORANDUM TO DISMISS COUNTS FOUR, FIVE, SIX AND SEVEN BECAUSE DEFENDANTS ACTED LAWFULLY IN THE COURSE OF PROVIDING BONA FIDE LEGAL REPRESSENTATION (ECF 173)

The defendants have moved the Court to dismiss Counts Four, Five, Six and Seven arguing that the "defendants acted lawfully in the course of providing bona fide legal representation."  ECF

173.  While that may be the argument the defendants offer at trial, it is not a basis to dismiss the Superseding Indictment prior to trial.  Indeed, because these counts are valid on their face, the case should proceed to trial and the defendants' motion should be denied.

**A.  The Superseding Indictment is Valid on Its Face and Thus the Case Should Proceed to Trial**

"An indictment constituted by a legal and unbiased grand jury, . . . if valid on its face, is enough to call for trial on the merits."  *Costello v. United States*, 350 U.S 359, 363 (1956).  "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished.'"  *Hamling v. United States*, 418 U.S. 87, 100 (1974).[1]

Echoing these long-established and basic principles, the Fourth Circuit explained most recently in *United States v. Burks*,

> Federal Rule of Criminal Procedure 12(b)(3) allows a defendant to move before trial to dismiss the indictment for failure to state an offense. To overcome such a motion, the indictment must include every essential element of the offense.  *See United States v. Perry*, 757 F.3d 166, 171 (4th Cir. 2014). In general, it is "sufficient that an indictment set forth the offense in the words of the statute itself." *Id.* (internal quotation marks omitted).

746 F. App'x 191, 198 (4th Cir. 2018) (quoting *United States v. Wills*, 346 F.3d 476, 488-89 (4th Cir. 2003)).

"When the words of a statute are used to describe the offense generally, they 'must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged.'" *United*

---

[1] The Supreme Court in *Hamling* went on to conclude that the various component parts of the constitutional definition of obscenity need not be alleged in the indictment in order to establish its sufficiency.  *Id*. at 118.

*States v. Kingrea*, 573 F.3d 186, 191 (4th Cir. 2009) (quoting *United States v. Brandon*, 298 F.3d 307, 310 (4th Cir. 2002)). *See also* Fed. R. Crim. P. 7(c)(1) ("The indictment ... must be a plain, concise, and definite written statement of the essential facts constituting the offense charged ...").

The four counts in the indictment that the defendants move to dismiss all include the language of the statutes they charge, all their essential elements and a more than sufficient statement of facts to "inform the accused of the specific offense."  For that reason, the Superseding Indictment is "valid on its face" and "call[s] for trial on the charges on the merits."

### 1.  Count Four – the Conspiracy to Obstruct Justice

Count Four charges the defendant with conspiracy, in violation of 18 U.S.C. § 371.

Title 18, United States Code, Section 371, provides: "If two or more persons conspire … to commit any offense against the United States … , and one or more of such persons do any act to effect the object of the conspiracy, each [is guilty of an offense against the United States]."  Addressing the elements of conspiracy, the Fourth Circuit in *United States v. McNeal*, held:

> To prove a § 371 conspiracy, the government must show "an agreement to commit an offense, willing participation by the defendant, and an overt act in furtherance of the conspiracy." *United States v. Tucker,* 376 F.3d 236, 238 (4th Cir.2004). The prosecutors must also show that the accused possessed "at least the degree of criminal intent necessary for the substantive offense itself." *Ingram v. United States,* 360 U.S. 672, 678, 79 S.Ct. 1314, 3 L.Ed.2d 1503 (1959).

818 F.3d 141, 149 (4th Cir. 2016).

Under the heading "The Charge," Count Four alleges the following:

Beginning no later than May 5, 2013, and continuing through at least December 11, 2018, in the District of Maryland and elsewhere, the defendants,

**KENNETH WENDELL RAVENELL,**
**JOSHUA REINHARDT TREEM, and**
**SEAN FRANCIS GORDON,**

17

did unlawfully, voluntarily, intentionally and knowingly conspire, combine, confederate, and agree with each other, and others known and unknown to the Grand Jury, to commit offenses against the United States, that is, to:

a.      knowingly conceal, cover up, falsify and make false entries in a record and document with the intent to impede, obstruct and influence the investigation and proper administration of a matter within the jurisdiction of a department or agency of the United States and in contemplation of such a matter, namely criminal investigations conducted by the United States Department of Justice into R.B. and **RAVENELL**, in violation of 18 U.S.C. § 1519; and

b.      corruptly obstruct, influence, or impede any official proceeding, and attempt to do so, namely a federal grand jury investigation and criminal prosecution of R.B. and a federal grand jury investigation and a foreseeable criminal prosecution of **RAVENELL,** in violation of 18 U.S.C. § 1512(c)(2).

Count IV ¶ 9.

Count Four is valid on its face.  Count Four includes the language of 18 U.S.C. § 371 and its elements.  It also contains the language of 18 U.S.C. § 1519 and 1512(c)(2), the two federal statutes that the defendants are charged with conspiring to violate, and their elements.  *See Kingrea*, 573 F.3d at 191 (conspiracy charge that failed to include elements of predicate offenses fails to state an offense against the United States).  Count Four also alleges an "object" of the conspiracy and "manner and means" that further reflect all of the elements of conspiracy and the two predicate offenses charged.  As described in detail below at Subpart B, the Government also treated the safe harbor provision contained in 18 U.S.C. § 1515(c) as an element and made specific allegations that the defendants conduct was not the performance of "bona fide legal representation."   The Superseding Indictment then alleges 95 overt acts.  *See* Count Four ¶¶ 13-108.  Those overt acts, along with the "object" of the conspiracy and the "manner and means" provide the defendants with ample facts to be put on notice of the offense charged.

### 2.   Count Five – Obstruction of an Official Proceeding

Count Five charges all three defendants with obstruction of an official proceeding, in violation of 18 U.S.C. §§ 1512(c)(2) and 2.  Title 18, United States Code, Section 1512(c)(2) provides: "Whoever … obstructs, influences, or impedes any official proceeding, or attempts to do so, shall be [guilty of a crime]."  Addressing the elements of 18 U.S.C. § 1512(c)(2), the Fourth Circuit has held that the Government must prove that a defendant: (1) "corruptly" attempted to (2) "obstruct[ ], influence[ ], or impede[ ]" (3) "an official proceeding."  *United States v. Young*, 916 F.3d 368, 384 (4th Cir.), *cert. denied*, 140 S. Ct. 113, 205 L. Ed. 2d 33 (2019).

Count Five alleges the following:

> Beginning no later than September 9, 2017, and continuing through at least December 11, 2018, in the District of Maryland and elsewhere, the defendants,

> **KENNETH WENDELL RAVENELL,**
> **JOSHUA REINHARDT TREEM, and**
> **SEAN FRANCIS GORDON,**

> did corruptly attempt to obstruct and impede a federal grand jury investigation of **RAVENELL,** an official proceeding, and a foreseeable criminal prosecution of **RAVENELL** in the United States District Court for the District of Maryland, by creating false and fictitious records of **TREEM's** and **GORDON's** meeting with, R.B.  These documents, a set of false exculpatory statements titled "KWR's Combined Notes," which **TREEM** and **GORDON** encouraged R.B. to sign, a false affidavit dated September 14, 2017, signed by **GORDON,** and a letter to a United States District Court Judge in the District of Maryland dated February 8, 2018, signed by **TREEM,** were all fraudulently prepared to be used to undermine and impeach R.B.'s credibility if he were to be called in an official proceeding to give testimony against **RAVENELL,** and to provide false evidence of a prior consistent statement by **GORDON** and **TREEM** in the event either one of them were to be called to testify in an official proceeding.

Count V ¶ 2.

Count Five is valid on its face. Count Five includes the statutory language from 18 U.S.C. § 1512(c)(2) and all the elements of the offense, including allegations that address the safe harbor provision pursuant to 18 U.S.C. § 1515(c).  It also specifically incorporates the facts alleged in Count Four and makes specific factual allegations in the Count itself.  In particular, it alleges that

the "official proceeding" that was the object of the obstructive conduct as a "federal grand jury investigation of **RAVENELL,** an official proceeding, and a foreseeable criminal prosecution of **RAVENELL** in the United States District Court for the District of Maryland."

### 3.  Count Six – Falsification of Record (The Gordon Affidavit)

Count Six charges all three defendants with falsification of a record, in violation of 18 U.S.C. § 1519, for, specifically, the affidavit that Ravenell and Treem drafted for Gordon and that Gordon signed that falsely described the meeting with R.B.  Title 18, United States Code Section 1519 provides:

> Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States or any case filed under title 11, or in relation to or contemplation of any such matter or case, shall be [guilty of a crime].

Addressing the elements of a charge brought under 18 U.S.C. § 1519, the Fourth Circuit held in *United States v. Hassler,*

> To obtain a conviction under § 1519, the Government is required to prove beyond a reasonable doubt that: (1) the defendant made a false entry in a record, document, or tangible object; (2) the defendant did so knowingly; and (3) the defendant intended to impede, obstruct, or influence the investigation or proper administration of [a matter within the jurisdiction of any department or agency of the United States].

992 F.3d 243, 246–47 (4th Cir. 2021).

Count Six alleges the following:

> Beginning no later than September 9, 2017, and continuing through at least September 14, 2017, in the District of Maryland and elsewhere, the defendants,

**KENNETH WENDELL RAVENELL,
JOSHUA REINHARDT TREEM, and
SEAN FRANCIS GORDON,**

did knowingly conceal, cover up, falsify and make false entries in an affidavit signed by **GORDON** on September 14, 2017, a record and document, with the intent to impede, obstruct and influence the investigation and proper administration of a federal criminal investigation of **RAVENELL**, a matter that the defendants knew was within the jurisdiction of the United States Department of Justice, a department and agency of the United States, and in contemplation of a federal criminal prosecution of **RAVENELL**, a matter the defendants knew was within the jurisdiction of the United States Department of Justice, a department and agency of the United States.

Count VI ¶ 2.

Count Six is valid on its face. Count Six includes the statutory language from 18 U.S.C. § 1519 and all the elements of the offense, including allegations that address the safe harbor provision contained in 18 U.S.C. § 1515(c). It also specifically incorporates the facts alleged in Count Four and makes specific factual allegations in the Count itself.

### 4. Count Seven – Falsification of Record (Letter to a United States District Court Judge)

Count Seven charges Ravenell and Treem with falsification of a record, in violation of 18 U.S.C. § 1519, specifically, for the false letter they submitted to a United States District Court Judge. Count Seven alleges:

Between at the latest September 9, 2017, and continuing through at least February 8, 2018, in the District of Maryland and elsewhere, the defendants,

**KENNETH WENDELL RAVENELL, and
JOSHUA REINHARDT TREEM**

did knowingly conceal, cover up, falsify and make false entries in a letter to a United States District Court Judge dated February 8, 2018, and signed by **TREEM**, a record and document, with the intent to impede, obstruct and influence the investigation and proper administration of a federal criminal investigation of **RAVENELL**, a matter that the defendants knew was within the jurisdiction of the United States Department of Justice, a department and agency of the United States, and in contemplation of a federal criminal prosecution of **RAVENELL**, a matter the defendants knew was within the jurisdiction of the United States Department of Justice, a department and agency of the United States.

21

Count VII ¶ 2.

Count Seven is valid on its face. Count Seven includes the statutory language from 18 U.S.C. § 1519 and all the elements of the offense, including allegations that address the safe harbor provision contained in 18 U.S.C. § 1515(c). It also specifically incorporates the facts alleged in Count Four and makes specific factual allegations in the Count itself.

**B. <u>The Defendants' Arguments Fail to Overcome the Facial Validity of the Challenged Counts</u>**

In an attempt to overcome the facial validity of the challenged counts, the defendants make two contradictory and unpersuasive arguments.

> First, the conduct described in the indictment constitutes the lawful provision of legal services and thus is not prohibited pursuant to 18 U.S.C. § 1515(c). Second, the indictment fails to allege that the defendants were not acting in accordance with the lawful provision of legal services as required to allege obstruction offenses against a lawyer and those acting at their direction.

ECF 183 at 12. The two arguments are contradictory because the first one, where the defendants argue that the conduct alleged amounts to "lawful legal services," is an acknowledgment that the Superseding Indictment contains exactly what their second argument claims it lacks—allegations that the defendants did *not* provide bona fide legal services.

**1. The Superseding Indictment Alleges that the Defendants Did *Not* Engage in Bona Fide Legal Services**

Addressing their second argument first, the Superseding Indictment does, in fact, allege that the defendants were not engaged in the course of providing "lawful, bona fide legal representation services." 18 U.S.C. § 1515(c). Courts must construe the indictment in a "practical" rather than "purely technical" manner, "[a]pplying a liberal standard in support of sufficiency." *United States v. Matzkin*, 14 F.3d 1014, 1019–20 (4th Cir. 1994) (citations omitted).

The Superseding Indictment, in plain and unambiguous terms, alleges conduct that it is, on its face, *not* providing "lawful, bona fide legal representation services."

The "Object of the Conspiracy" to obstruct justice and create false documents charged in Count Four alleges that:

> It was the object of the conspiracy to create *false* records and documents *with the intent to impede, obstruct or influence* investigations within the jurisdiction of the U.S. Department of Justice and to *obstruct, influence and impede* official proceedings, including grand jury investigations and federal criminal cases in United States District Court in Baltimore, Maryland*, in order to protect members of the conspiracy*.

Court IV ¶ 8 (emphasis added).  Creating "false" records and documents with the "intent to impede, obstruct or influence" investigations and official proceedings "in order to protect members of the conspiracy," is not, by its plain terms and applying the common meaning of those words, the provision of "lawful, bona fide legal representation services."

"The Manner and Means" of the conspiracy to obstruct justice and create false documents charged in Count Four alleges that:

> **10. RAVENELL** obtained access to incarcerated individuals, whom he did not represent, and dispatched private investigators, including **GORDON**, to interview incarcerated individuals and civilian witnesses,  so that **RAVENELL** and others at his direction could attempt to improperly influence their testimony, attempt to cause them to execute false affidavits and witness statements which **RAVENELL** knew to be false, and attempt to cause witnesses to withhold testimony from official proceedings, namely, a federal grand jury investigation of R.B. and later criminal case against R.B. in the District of Maryland.

> **11. TREEM** and **GORDON**, at **RAVENELL's** direction, met with R.B., who they knew was a potential witness in a federal criminal investigation by the U.S. Department of Justice and a federal grand jury sitting in Baltimore of **RAVENELL** and a foreseeable criminal prosecution of **RAVENELL** in the United States District Court for the District of Maryland, and presented R.B. with a document, prepared by **RAVENELL**, containing false statements exculpating **RAVENELL**.  Despite the fact that R.B. told **TREEM** and **GORDON** that these statements were false, **TREEM** and **GORDON** urged R.B. to sign the document, which he did.

**12.  RAVENELL, TREEM** and **GORDON** prepared false documents, including an affidavit on behalf of **GORDON** that referenced, as an exhibit, the document containing false exculpatory statements that **TREEM** and **GORDON** had urged R.B. to sign, and a letter to a United States District Court Judge on behalf of **TREEM**, relating to their interview of R.B.  These documents were fraudulently prepared to undermine and impeach R.B.'s credibility in the event he were called by the Government to testify in a criminal trial of **RAVENELL** and to provide false evidence of a prior consistent statement by **GORDON** or **TREEM** in the event either one were to be questioned as part of an investigation being conducted by the U.S. Department of Justice of **RAVENELL** or called to testify in an official proceeding, including before the grand jury investigating **RAVENELL** or a trial of **RAVENELL** if he were indicted by a federal grand jury.

Count IV ¶¶ 10-12.  The conduct, alleged in the Superseding Indictment and quoted above, attempting to "improperly" influence witnesses' testimony, causing witnesses to execute "false" affidavits, attempting to cause witnesses to "withhold" testimony from official proceedings, presenting R.B. with a document that contained "false" statements, urging R.B. to sign that same document even after R.B. told Treem and Gordon the statements were false, preparing "false" documents, including an affidavit on behalf of Gordon and a letter to a United States District Court Judge that were "fraudulently" prepared to impeach R.B.'s credibility and provide "false" evidence of a prior consistent statement by Gordon or Treem, is all conduct by its plain terms and applying the common meaning of those words, that does not constitute the provision of "lawful, bona fide legal representation services."

Count Four also contains 95 overt acts that make clear that the Grand Jury was presented with overwhelming evidence that the "KWR's Combined Notes," the Gordon Affidavit and the letter to a United States District Court Judge were false and were fraudulently prepared.  Dozens of overt acts contain direct quotes from the recording of the R.B. interview which show that the Gordon Affidavit and the letter to a United States District Court Judge contain false statements.  And the overt acts, as described in detail below, specifically identify the false statements that the

Gordon Affidavit and the letter to a United States District Court Judge contain when compared to the recording of the R.B. interview.

In Count Five, the Superseding Indictment alleges that the defendants:

> did corruptly attempt to obstruct and impede a federal grand jury investigation of RAVENELL, an official proceeding, and a foreseeable criminal prosecution of RAVENELL in the United States District Court for the District of Maryland, **by creating false and fictitious records** of TREEM's and GORDON's meeting with, R.B. These documents, a set of **false** exculpatory statements titled "KWR's Combined Notes," which TREEM and GORDON encouraged R.B. to sign, a false affidavit dated September 14, 2017, signed by GORDON, and a letter to a United States District Court Judge in the District of Maryland dated February 8, 2018, signed by TREEM, were all **fraudulently prepared** to be used to undermine and impeach R.B.'s credibility if he were to be called in an official proceeding to give testimony against RAVENELL, and to provide **false** evidence of a prior consistent statement by GORDON and TREEM in the event either one of them were to be called to testify in an official proceeding.

Count V ¶ 2 (emphasis added). Creating "false and fictitious" records of Treem's and Gordon's meeting with R.B. that were "fraudulently" prepared to be used to undermine and impeach R.B.'s credibility, and to provide "false" evidence of a prior consistent statement by Gordon and Treem, is all conduct by its plain terms and applying the common meaning of those words, that does not constitute the provision of "lawful, bona fide legal representation services."

In Count Six, the Superseding Indictment alleges that the defendants:

> did knowingly conceal, cover up, falsify and make false entries in an affidavit signed by **GORDON** on September 14, 2017, a record and document, with the intent to impede, obstruct and influence the investigation and proper administration of a federal criminal investigation of **RAVENELL** …

Count VI ¶ 2. "Falsify[ing]" and making "false" entries in an affidavit with the intent to "impede, obstruct and influence" an investigation is all conduct by its plain terms and applying the common meaning of those words, that does not constitute the provision of "lawful, bona fide legal representation services."

In Count Seven, the Superseding Indictment alleges that Ravenell and Treem:

did knowingly conceal, cover up, falsify and make false entries in a letter to a United States District Court Judge dated February 8, 2018, and signed by **TREEM**, a record and document, with the intent to impede, obstruct and influence the investigation and proper administration of a federal criminal investigation of **RAVENELL** …

Count VII ¶ 2.  Making "false entries in a letter to a United States District Court Judge" with the "intent to impede, obstruct and influence the investigation and proper investigation of a federal criminal investigation of Ravenell," is all conduct by its plain terms and applying the common meaning of those words, that does not constitute the provision of "lawful, bona fide legal representation services."

Finally, defendants argue that

Proof beyond a reasonable doubt that the defendants were not "providing … lawful, bona fide, legal representation services in connection with or anticipation of an official proceeding" is therefore central to the "very illegality" of the charged obstruction offenses, because neither 18 U.S.C. § 1512(c)(2) nor 18 U.S.C. § 1519 "prohibit or punish" such conduct. 18 U.S.C. § 1515(c).

ECF 173 at 29.  Whether or not the Government has proven the offenses beyond a reasonable doubt is precisely what a trial jury will determine.  That question cannot be answered prior to trial, as the defendants incorrectly urge the Court to do.

If the defendants are arguing, and this is not clear from their filing, that the charging language in Counts Four through Seven must include the specific phrase that the defendants were not acting to provide "lawful, bona fide, legal representation services in connection with or anticipation of an official proceeding," they are mistaken.  The case they cite in support of this argument, if that is their argument, *United States v. Jackson*, makes clear that the Government need not include that specific statement, or any other one, in an indictment.  As the court in *Jackson* explained:

[T]he sufficiency of an indictment should be determined by practical, as distinguished from purely technical, considerations. Does it, under all of the

26

> circumstances of the case, tell the defendant all that he needs to show for his defense, and does it so specify that with which he is charged that he will be in no danger of being a second time put in jeopardy? If so, it should be held good.

926 F.Supp.2d 691, 716-717 (E.D.N.C. 2013) (citing *United States v. Matzkin*, 14 F.3d 1014, 1019 (4th Cir. 1994)). The Fourth Circuit has also held that while the language of the statute itself may be used to make out a facially valid charge, there is no requirement that the statutory language be used. *United States v. Mathis*, 932 F.3d 242, 257 (4th Cir. 2019); *United States v. Williams*, 152 F.3d 294, 299 (4th Cir. 1998). The language cited above from the Superseding Indictment makes clear that the alleged conduct was not the provision of "bona fide legal services."

### 2. The Defendants' Views that the Conduct Alleged in the Superseding Indictment is Actually the *Lawful* Provision of Legal Services are Irrelevant at this Stage in the Proceeding

The defendants' first argument is a factual one. They believe that the "conduct" described in the Superseding Indictment "constitutes the lawful provision of legal services." *See* 18 U.S.C. § 1515(c). However, the defendants' opinion that their conduct was "the lawful provision of legal services" is irrelevant at this stage of the proceedings and cannot form the basis of a motion to dismiss. "The Supreme Court has clearly indicated its unwillingness to second guess the decision of a grand jury to formally accuse an individual brought before it based upon some incriminating evidence." *United States v. Willock*, 682 F. Supp. 2d 512, 520 (D. Md. 2010), *aff'd in part sub nom. United States v. Thomas*, 490 F. App'x 514 (4th Cir. 2012) (quoting *Mills*, 995 F.2d at 487). The defendants ignore that precedent.

As quoted above, the Superseding Indictment alleges that Ravenell, Treem and Gordon engaged in various forms of obstruction of justice that were not the provision of bona fide legal services. In ruling on a defendant's motions to dismiss the indictment, the Court must accept all factual allegations in the indictment as true. *United States v. Daley*, 378 F. Supp. 3d 539, 545

(W.D. Va. 2019), *aff'd sub nom. United States v. Miselis*, 972 F.3d 518 (4th Cir. 2020). *See Boyce*

*Motor Lines v. United States*, 342 U.S. 337, 343 n.16, 72 S.Ct. 329, 96 L.Ed. 367 (1952).

The defendants offer a counter-narrative to the one laid out in the Superseding Indictment.

It will presumably be their defense at trial. But their version of events cannot be used offensively,

at this stage, to knock out the charges returned by the Grand Jury. The defendants' position is that:

> The government's claim that documentation of R.B.'s exculpatory statements on
> September 9, 2017, constitutes obstruction of justice is false because it is "a basic
> rule of evidence [] that prior inconsistent statements may be used to impeach the
> credibility of a witness."

ECF 174 at 17.

First, it is not "the government's claim." The Grand Jury found probable cause to believe

that the defendants' conduct, as described in detail in the challenged counts, was obstruction of

justice. And the Grand Jury's conclusion at this stage controls.

Second, the defendants' assertion that the factual allegations in the challenged counts are

"false" is evidence that they are asking the Court to credit the defendants' version of events, rather

than the Superseding Indictment returned by the Grand Jury. In so doing, the defendants again

ignore "[t]he longstanding rule of law that courts may not 'look behind' grand jury indictments if

'returned by a legally constituted and unbiased grand jury ...'" *Mills*, 995 F.2d at 487 (quoting

*Costello*, 350 U.S. at 363).

Continuing with this approach, the defendants argue "*however* the statements presented by

Mr. Treem and Mr. Gordon (and which R.B. agreed were true on September 9, 2017) *are*

*characterized*, the presentation of such statements by defense counsel does not constitute

obstruction of justice." ECF 173 at 17-18 (emphasis added). What this argument fails to

appreciate is that how those statements are characterized in the Superseding Indictment is

controlling at this stage of the proceeding. And they are characterized as false and fraudulent and done for the purpose of obstructing justice.

Addressing some of the specific allegations contained in the Superseding Indictment, defendants offer the following opinions:

> KWR's Combined Notes, the declaration by Sean Gordon, and the letter to a U.S. District Judge reflect that R.B. made exculpatory statements as to Mr. Ravenell, and specifically that R.B. denied on September 9, 2017, that Mr. Ravenell knowingly laundered R.B.'s drug proceeds. If R.B. testified to the contrary at a trial, the fact that R.B. made inconsistent statements on September 9, 2017, would be *admissible to impeach R.B* with evidence of his prior inconsistent statements. In other words, the government has prosecuted two experienced attorneys and an experienced defense investigator on the grounds that they created documents which establish that R.B. made exculpatory statements about Mr. Ravenell, which the indictment establishes R.B. actually made on September 9, 2017.

ECF 173 at 19.

The defendants' argument ignores the allegations in the Superseding Indictment. The Superseding Indictment alleges that the declaration by Sean Gordon and the letter to a United States District Court Judge were false not because they memorialized the fact that R.B. made exculpatory statements on the first day of the interview, but because they made various false statements about the first and second days of the interview. Specifically, as to the Gordon Affidavit, the Superseding Indictment alleges that:

> 83. On September 14, 2017, **GORDON** arrived at **TREEM's** law firm at approximately 10:10 a.m. to execute the affidavit. The affidavit contained nine numbered paragraphs. The first five (5) paragraphs asserted the following;

>> I, Sean Gordon, hereby declare and affirm under penalties of perjury:
>> 1. I am over the age of eighteen (18) and am competent to testify to the facts and matters contained in this Affidavit, and do so with personal knowledge.
>> 2. On September 9, 2017, I accompanied Joshua R. Treem, attorney for Kenneth W. Ravenell, to interview [R.B.] at Towers Jail in Phoenix, Arizona on September 9, 2017 and September 10, 2017.

3. It was my understanding that [R.B.] had previously consented to the meeting and had directed his attorney, [R.B.'s Attorney 2], to advise Joshua R. Treem.

4. At some point prior to the interview, Mr. Treem had received a document entitled "KWR's Combined Notes" which were handwritten notes of Mr. Ravenell which for clarity and understanding had been typed by Mr. Treem's assistant.

5. On September 9, 2017, we met with [R.B.] at Towers Jail beginning at 10:30 a.m. local time. During the course of the interview, [R.B.] was given the document attached as Exhibit 1 to review.

84. In paragraph number six (6) **TREEM** wrote and **GORDON** affirmed the following false statement:

6. [R.B.] read each of the entries, numbered 1-53, out loud and acknowledged the truthfulness and accuracy of each one separately and individually.

In truth and fact, R.B. did not read "each of the entries, numbered 1-53, out loud" and "acknowledge[] the truthfulness and accuracy of each one separately and individually." R.B. never read or acknowledged the truthfulness of the following entries:

23. He did not pay me to report law enforcement activities to him. He simply paid me to represent him.
24. I did not bring him a list of people who owed him drug money from Castle
25. He never asked me to get a list of people who owed him drug money from Castle.
26. He knew that I would never agree to get a list of people who owed him drug money from Castle or anyone else.

85. In paragraph number seven (7), **TREEM** wrote and **GORDON** affirmed the following false statement:

7. At no time did [R.B.] express any hesitancy, disapproval, or disagreement with the statements or make any changes.

In truth and fact, R.B. did express "hesitancy, disapproval [and] disagreement" with the statements contained in the KWR's Combined Notes. As described in detail in paragraphs 59-80 of this Count.

86. In paragraph eight (8), **TREEM** wrote and **GORDON** affirmed the following false statement:

> 8. The [check] markings on the Exhibit were made by Mr. Treem subsequent to [R.B.] acknowledging the accuracy of the entries, to record that [R.B.] had read all the entries. All of the other handwriting was made by Mr. Treem prior to [R.B.] reading and acknowledging the accuracy of entries 1 through 53.

In truth and fact, R.B. acknowledged the accuracy of only some of the entries on the first day of the interview as described in paragraphs 37 and 84 of this Count but denied their accuracy on the second day of the interview as described in detail in paragraphs 59-80 of this Count.

87.     In paragraph nine (9), **TREEM** wrote and **GORDON** affirmed the following false statement:

> 9. We met with [R.B.] again on September 10, 2017. During our visit we asked him to review Exhibit 1 and, if he had no changes to make, to sign and date the statement, which he did in my presence.

In truth and fact, neither **TREEM** nor **GORDON** asked R.B. "to review Exhibit 1," which was the KWR's Combined Notes, and, "if he had no changes to make, to sign and date the statement." Further, R.B. told both **TREEM** and **GORDON** that the statements in the KWR's Combined Notes were untrue during an extended conversation that occurred before R.B. signed the document, as described in detail in paragraphs 59-80 of this Count.

Count IV ¶¶ 83-87.

As to the false letter to a U.S. District Court Judge, the Superseding Indictment

alleges the following:

101.     In the fourth paragraph of the letter, in reference to the meeting **TREEM** and **GORDON** had with R.B. on September 9, 2017**, TREEM** made the following false statement:

> We presented [R.B.] with a document we had prepared with a number of statements, and asked [R.B.] to review and to acknowledge the accuracy or inaccuracy of each. He indicated he wanted to consider the request overnight.

In truth and fact, [R.B.] did not ask to review the document overnight, as **TREEM** knew from the notes he took during the first day of the interview. **TREEM** started to question R.B. about the statements in the KWR's Combined Notes approximately 10 minutes into their meeting and **TREEM**, **GORDON** and R.B.

31

proceeded to have a lengthy discussion about the KWR's Combined Notes. As summarized above, in truth and fact:

        a.    **TREEM** asked R.B. if, after R.B.'s arrest in 2011, **RAVENELL** knew that R.B. was still selling narcotics;

        b.    R.B. told **TREEM** and **GORDON** that **RAVENELL** attended events R.B. sponsored;

        c.    **TREEM** told R.B. that the Government's theory of prosecution of **RAVENELL** was that **RAVENELL** knew R.B. was paying him with narcotics money and using LOC Marketing to launder narcotics money;

        d.    R.B. told **TREEM** that R.B. knew that **RAVENELL** wanted R.B. to adopt the exculpatory statements contained in the KWR's Combined Notes and that R.B. was willing to do that;

        e.    Ultimately, R.B. read out loud many but not all of the 53 items on the KWR's Combined Notes and adopted some of them, almost always, with a single word like "correct" or "yes or "no";

        f.    As R.B. was reading through the items, **TREEM** stopped him to ask follow-up questions on at least three occasions.

106.    In the fifth paragraph**, TREEM** then falsely stated:

> The following day when we returned to continue our visit, [R.B.] stated that the statements were accurate. He acknowledged the accuracy of the individual statements and signed the document.

In truth and fact, on the second day of the interview, R.B. did not state that "the statements were accurate" and did not "acknowledge the accuracy of the statements."

        a.    As quoted above, R.B. told **TREEM** and **GORDON** that **RAVENELL** knew R.B. was selling narcotics and paying **RAVENELL** with narcotics proceeds.

        b.    As summarized above, **TREEM's** own handwritten notes from the interview reflect that **TREEM** recognized what R.B. was saying on the second day of the interview contradicted what he had said on the first day.

        c.    **TREEM** himself acknowledged that R.B. would be "lying" if **TREEM** called him as a witness in a trial of **RAVENELL** and asked him to make the statements contained in the KWR's Combined Notes.

107.    In that same paragraph, **TREEM** also falsely stated,

> [R.B.] then began to complain about not having access to money that he claimed was owed to him that he wanted for his family. [R.B.] asserted that some was being held by [Attorney 1 and Attorney 2], and some was an interest in a business venture. He wanted **[RAVENELL]** to get the money for him. At that point, concerned that these statements sounded extortionate, we reminded [R.B.] that we represented **[RAVENELL]** and if he had any complaints about money, he believed he was owed, he would need to raise those with his counsel, not us. We ended the meeting and returned to Baltimore later that day.

In truth and fact, **TREEM** and **GORDON** discussed R.B.'s investment in the MGM Casino at length on the first day of the interview. Far from treating R.B.'s statements about the investment and the remaining money in his escrow account as extortionate, **TREEM** and **GORDON** actively engaged in a discussion about these topics with R.B., including, but not limited to, the following:

a.    **TREEM** asked R.B. to outline the specifics of his investment;

b.    **TREEM** promised to ask The Law Firm's lawyer about money left in R.B.'s escrow account at The Law Firm when **TREEM** saw her the following week;

c.    **TREEM** questioned R.B. at length about a power of attorney R.B. said he signed giving **RAVENELL** control over R.B.'s investments and told R.B. he was going to help R.B. revoke or change the power of attorney to remove **RAVENELL** from it;

d.    **TREEM** promised to think about potential lawyers that R.B. could hire to sue The Law Firm; and

e.    **TREEM** promised to go to journalists he knew in an effort to embarrass Attorney 1 and Attorney 2.

Count IV ¶¶ 101, 106-107. Thus, none of the allegations concerning the two false documents prepared by the defendants, the Gordon Affidavit and the letter to a United States District Court Judge, are that they "created documents which establish that R.B.

made exculpatory statements about Mr. Ravenell, which the indictment establishes R.B. actually made on September 9, 2017."

The defendants next argue that the failure to document R.B.'s adverse statements on September 10, 2017, is not obstruction of justice. ECF 173 at 21. They first assert that "Any claim that the defendants' failure to include adverse statements made by R.B. in Mr. Gordon's declaration or in Mr. Treem's letter to a district judge is patently absurd given the absence of any corresponding obligation imposed on the government." ECF 173 at 21. This sentence appears to be missing a key clause because the defendants don't identify what claim is "patently absurd." Regardless, what is "patently absurd" is the defendants' contention that they had not only the right, but the obligation, to lie to a federal judge and to fabricate evidence.

The defendants concede, as they must, that "[t]o be sure, defense counsel cannot introduce testimony under oath from a defendant or a witness that the lawyer knows is false." ECF 173 at 15 (citing *Nix v. Whiteside*, 475 U.S. 157, 173 (1986)). Yet, that is precisely what the Gordon Affidavit does—claim that Gordon would testify, under oath, to a false version of what happened during the meeting with R.B., as alleged in the Superseding Indictment.

The basis for the defendants' contention that defense lawyers can lie to federal judges and draft false witness affidavits is their argument that they have "no *obligation* to document adverse information obtained in a witness interview." ECF 173 at 21 (emphasis added). This argument is a straw man. The Superseding Indictment does not allege that the defendants were *obligated* to report that R.B. had told them that Ravenell was involved in criminal conduct. The Superseding Indictment does not charge them with misprision of felony, in violation of 18 U.S.C. § 4. What it does charge them with is writing an unsolicited letter to a United States District Judge that was false and an affidavit for Gordon that was false. They were under no obligation to report to anyone

that R.B. told them that Ravenell knew all about R.B's criminal conduct and participated in it and received proceeds from it.  But they chose to fabricate evidence about their meeting with R.B.  The Superseding Indictment alleges that is when they broke the law.  The defendants will obviously vigorously defend against those charges at trial.  But they are not entitled to have the obstruction counts in the Superseding Indictment dismissed because they contend they did nothing wrong.  Every defendant could have the charges against them thrown out on that basis.

## IV.  DEFENDANTS' MOTION AND MEMORANDUM OF LAW TO DISCLOSE THE GOVERNMENT'S PRESENTATION OF LAW TO THE GRAND JURY (ECF 184)

The defendants have moved for disclosure of the government's presentation of law to the grand jury. ECF 184.  The sole basis for the defendants' motion is their argument that the Superseding Indictment did *not* allege that the charged conduct was "not the lawful provision of bona fide legal services" in accordance with 18 U.S.C. § 1515(c) and that omission, "provides grounds for requiring the government to disclose its instructions to the grand jury on the pertinent law." ECF 184 at 1.  The defendants' motion is based on a faulty premise.  As described above, the Superseding Indictment included multiple allegations that the charged conduct was "not the lawful provision of bona fide legal services."  *See* Part III.B.1.  For that reason, their motion is meritless and should be denied.

Rule 6(e)(3)(E)(ii) provides that, "[t]he court may authorize disclosure—at a time, in a manner, and subject to any other conditions that it directs—of a grand-jury matter . . . (ii) at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury."  This provision is not an invitation to engage in a fishing expedition to search for grand jury wrongdoing and abuse when there are no grounds to believe that any wrongdoing or abuse has occurred.  *United States v. Loc Tien Nguyen*, 314

F.Supp.2d 612, 616 (E.D.Va. 2004). This is precisely what the defendants seek, a fishing expedition, born out of the hope that the Government made some mistake that it can seize upon. The defendants have not and cannot put forward any factual basis to suggest that any wrongdoing or abuse has occurred. "Because grand jury proceedings are entitled to a strong presumption of regularity, a defendant seeking disclosure of grand jury information under Rule 6(e)(3)(E)(ii) bears the heavy burden of establishing that 'particularized and factually based grounds exist to support the proposition that irregularities in the grand jury proceedings may create a basis for dismissal of the indictment.'" *Id*. (citing *Hamling v. United States*, 418 U.S. 87, 139 n. 23 (1974)). "Thus, courts should not reveal the secrecy of grand jury proceedings unless there is a "'strong showing of particularized need.'" *United States v. Johnson*, 2013 WL 3880148, at *1 (D.S.C. Jul. 26, 2013) (quoting *United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 443, (1983)); *see also Dennis v. United States*, 384 U.S. 855, 870, 86 (1966). "Generally, this requires the moving party to show that without access to the materials, the 'defense would be greatly prejudiced' or 'an injustice would be done.'" *United States v. Eury*, No. 1:20CR38-1, 2021 WL 276227, at *12 (M.D.N.C. Jan. 27, 2021) (citing *United States v. Procter & Gamble Co.,* 356 U.S. 677, 682 (1958)).

The defendants have failed to meet their burden. Indeed, their only argument for particularized need is based on a mistaken reading of the Superseding Indictment, as explained above. Thus, they have no "particularized need" for the grand jury transcripts they request.

The defendants cite *United States v. Stevens* in support of their position. ECF 184 at 1. However, a review of the district court's memorandum opinion in the *Stevens* case reveals that the district court did not base its decision on the particularized showings advanced by Stevens, namely, that the grand jury may have received an erroneous legal instruction on the advice of counsel defense. *United States v. Stevens*, 771 F.Supp.2d 556, 564 (D.Md. 2011). Thus, the decision in

Stevens does not support the defendants' arguments.  The government, in responding to Stevens' motion for disclosure of the legal instructions given to the grand jury, apparently filed with the district court, under seal for the court's *in camera* review, a redacted grand jury transcript that revealed that a grand juror had asked a question about the advice of counsel defense.  *Id*.  The Government's redacted transcript did not include the Government's answer to the grand juror's question.  *Id*.  The district court then ordered the Government to disclose the answer the prosecutor had given to the grand juror's question and the district court then disclosed a brief excerpt from the grand jury transcripts to Stevens to allow for further briefing on whether the grand jury was properly instructed on the advice of counsel defense.  *Id*.  The court's order makes no reference to the arguments set forth in Stevens' briefs and does not indicate whether a particularized showing would have been made absent the Government's admission of the fact that a grand juror specifically raised a question about the advice of counsel defense.   Thus, *Stevens* does not address the issue before this Court, namely, whether the defendants have met their burden of showing particularized need for disclosure.

In any event, the defendants in this case have not.

## V.     DEFENDANTS' MOTION AND MEMORANDUM TO DISMISS COUNT SEVEN OR STRIKE COUNT FOUR, PARAGRAPHS 106.a. AND b. AS SURPLUSAGE (ECF 183)

The defendants have moved to dismiss Count Seven or strike paragraphs 106(a) and (b) of Count Four because they did not have a duty to disclose R.B.'s inculpatory statements.  ECF 183. Their argument is misplaced because the Superseding Indictment alleges that the letter they sent a United States District Court Judge contained affirmative misstatements, not omissions. For that reason, their motion is meritless and should be denied.

Count Seven charges Ravenell and Treem with falsification of record, in violation of 18 U.S.C. § 1519, for the false letter they sent to a United States District Court Judge.  That letter is described in detail, including the false statements it contains, in overt acts 89-107 of Count Four. The following is Count Seven in full:

## COUNT SEVEN
### (Falsification of Record)

The Grand Jury for the District of Maryland further charges that:

1.      Paragraphs 16-80 and 89-108 of Count Four are hereby realleged and incorporated by reference herein as though fully set forth in this Count of the Superseding Indictment.

2.      Between at the latest September 9, 2017, and continuing through at least February 8, 2018, in the District of Maryland and elsewhere, the defendants,

**KENNETH WENDELL RAVENELL, and
JOSHUA REINHARDT TREEM**

did knowingly conceal, cover up, falsify and make false entries in a letter to a United States District Court Judge dated February 8, 2018, and signed by **TREEM**, a record and document, with the intent to impede, obstruct and influence the investigation and proper administration of a federal criminal investigation of **RAVENELL**, a matter that the defendants knew was within the jurisdiction of the United States Department of Justice, a department and agency of the United States, and in contemplation of a federal criminal prosecution of **RAVENELL**, a matter the defendants knew was within the jurisdiction of the United States Department of Justice, a department and agency of the United States.

18 U.S.C. § 1519
18 U.S.C. § 2

Paragraph 106, which is an overt act in Count Four, alleges the following:

106. In the fifth paragraph**, TREEM** then falsely stated:

> The following day when we returned to continue our visit, [R.B.] stated that the statements were accurate.  He acknowledged the accuracy of the individual statements and signed the document.

In truth and fact, on the second day of the interview, R.B. did not state that "the statements were accurate" and did not "acknowledge the accuracy of the statements."

      a.  As quoted above, R.B. told **TREEM** and **GORDON** that **RAVENELL** knew R.B. was selling narcotics and paying **RAVENELL** with narcotics proceeds.

      b.  As summarized above, **TREEM's** own handwritten notes from the interview reflect that **TREEM** recognized what R.B. was saying on the second day of the interview contradicted what he had said on the first day.

      c.  **TREEM** himself acknowledged that R.B. would be "lying" if **TREEM** called him as a witness in a trial of **RAVENELL** and asked him to make the statements contained in the KWR's Combined Notes.

The defendants have only moved to strike 106(a) and (b) but not subparagraph (c).

The defendants argue that Count Seven should be dismissed or 106(a) and (b) stricken because, they assert, the defendants did not have a "duty to disclose." ECF 183 at 2. But the Superseding Indictment does not allege that the defendants failed to disclose something. The Superseding Indictment alleges that they made affirmative false statements, including those alleged in Paragraph 106. As described in Count Four and in Paragraph 106, Ravenell and Treem told a United States District Court Judge that on the second day of their interview with R.B., "[R.B.] stated that the statements [in the KWR's Combined Notes] were accurate. He acknowledged the accuracy of the individual statements and signed the document." That is not true, as the video recording of Treem and Gordon's meeting with R.B. shows. On the second day of their meeting, R.B. did not state that "the statements were accurate" and did not "acknowledge the accuracy of the statements." Instead as alleged, "R.B. told **TREEM** and **GORDON** that **RAVENELL** knew R.B. was selling narcotics and paying **RAVENELL** with narcotics proceeds."

Defendants next argue that Treem "had a duty not to disclose information he believed potentially adverse to his client." ECF 183 at 4. That argument, again, misses the point. Treem is charged with making affirmative misstatements. Ravenell and Treem did not just omit what

happened on the second day, they made up a version of events on the second day that never occurred.

Defendants' final argument has two parts. First, that Treem was "compelled to advise the Court of the existence of a crime that could undermine judicial proceedings," and at the same time, Ravenell enjoyed a Fifth Amendment privilege not to disclose any adverse statements made by R.B. ECF 183 at 5.

The "crime" that Ravenell and Treem claim they felt "compelled" to report is presumably their false assertion that R.B. was trying to extort them. The Superseding Indictment alleges that this supposed "crime" was a fabrication of Ravenell and Treem. The Superseding Indictment alleges as following:

> 106. In that same paragraph [in the letter to the United States District Court Judge], **TREEM** also falsely stated,
>
>> [R.B.] then began to complain about not having access to money that he claimed was owed to him that he wanted for his family. [R.B.] asserted that some was being held by [Attorney 1 and Attorney 2], and some was an interest in a business venture. He wanted **[RAVENELL]** to get the money for him. At that point, concerned that these statements sounded extortionate, we reminded [R.B.] that we represented **[RAVENELL]** and if he had any complaints about money he believed he was owed, he would need to raise those with his counsel, not us. We ended the meeting and returned to Baltimore later that day.
>
> In truth and fact, **TREEM** and **GORDON** discussed R.B.'s investment in the MGM Casino at length on the first day of the interview. Far from treating R.B.'s statements about the investment and the remaining money in his escrow account as extortionate, **TREEM** and **GORDON** actively engaged in a discussion about these topics with R.B., including, but not limited to, the following:
>
>> a. **TREEM** asked R.B. to outline the specifics of his investment;

b.   **TREEM** promised to ask The Law Firm's lawyer about money left in R.B.'s escrow account at The Law Firm when **TREEM** saw her the following week;

c.   **TREEM** questioned R.B. at length about a power of attorney R.B. said he signed giving **RAVENELL** control over R.B.'s investments and told R.B. he was going to help R.B. revoke or change the power of attorney to remove **RAVENELL** from it;

d.   **TREEM** promised to think about potential lawyers that R.B. could hire to sue The Law Firm; and

e.   **TREEM** promised to go to journalists he knew in an effort to embarrass Attorney 1 and Attorney 2.

Count IV ¶ 107.  The Superseding Indictment also alleges the following:

Approximately ten months later, on December 11, 2018, **TREEM** called the attorney of record for R.B. at that time and left a voicemail.  In the voicemail, **TREEM** said he was looking to find R.B. because "[**TREEM**] wanted to try to reach out to [R.B.]."  **TREEM** further stated he was calling to ask for the attorney's permission to meet with R.B.  These attempts to meet with R.B. further indicate that **TREEM** did not believe R.B. was trying to extort **RAVENELL**.

Count IV ¶ 108.

Further, the Fifth Amendment does not authorize Ravenell, or Treem on his behalf, to lie to a United States District Court Judge.  The Fifth Amendment is the right to remain silent. Ravenell and Treem chose to make affirmative false statements, as alleged in the Superseding Indictment.

## VI.   DEFENDANTS' MOTION AND MEMORANDUM TO DISMISS COUNTS FOUR AND FIVE FOR FAILURE TO ALLEGE AN ADEQUATE NEXUS (ECF 181)

The defendants have moved to dismiss counts Four and Five of the Superseding Indictment "for failure to allege an adequate nexus."  ECF 181.  However, the law does not require the Grand Jury to allege a nexus or any particular kind of nexus in a § 1512(c) charge.  The nexus requirement

is a question of fact for the trial jury to decide.  For that reason, their motion is meritless and should be denied.

While the defendants ask the Court to dismiss Count Four they present only a partial argument as to why that is warranted.  First, their argument ignores the fact that Count Four charges a dual object conspiracy to commit violations of both 18 U.S.C. §§ 1512(c) *and 1519*.  Their "nexus" arguments apply only to the former.  So, even if the Court were to find their arguments persuasive, and they are not, Count Four would survive.  Second, their arguments only address one aspect of the § 1512(c) conspiracy charged in Count Four.  The "Means and Methods of the Conspiracy" contain three distinct sub-parts:

10.    **RAVENELL** obtained access to incarcerated individuals, whom he did not represent, and dispatched private investigators, including **GORDON**, to interview incarcerated individuals and civilian witnesses,  so that **RAVENELL** and others at his direction could attempt to improperly influence their testimony, attempt to cause them to execute false affidavits and witness statements which **RAVENELL** knew to be false, and attempt to cause witnesses to withhold testimony from official proceedings, namely, a federal grand jury investigation of **R.B.** and later criminal case against R.B. in the District of Maryland.

11.    **TREEM** and **GORDON**, at **RAVENELL**'s direction, met with R.B., who they knew was a potential witness in a federal criminal investigation by the U.S. Department of Justice and a federal grand jury sitting in Baltimore of **RAVENELL** and a foreseeable criminal prosecution of **RAVENELL** in the United States District Court for the District of Maryland, and presented R.B. with a document, prepared by **RAVENELL**, containing false statements exculpating **RAVENELL**.  Despite the fact that R.B. told **TREEM** and **GORDON** that these statements were false, **TREEM** and **GORDON** urged R.B. to sign the document, which he did.

12.    **RAVENELL**, **TREEM** and **GORDON** prepared false documents, including an affidavit on behalf of **GORDON** that referenced, as an exhibit, the document containing false exculpatory statements that **TREEM** and **GORDON** had urged R.B. to sign, and a letter to a United States District Court Judge on behalf of **TREEM**, relating to their interview of R.B.  These documents were fraudulently prepared to undermine and impeach R.B.'s credibility in the event he were called by the Government to testify in a criminal trial of **RAVENELL** and to provide false evidence of a prior consistent statement by **GORDON** or **TREEM** in the event either one were to be questioned as part of an investigation being conducted by the U.S. Department of Justice of **RAVENELL** or called to testify in an official

proceeding, including before the grand jury investigating **RAVENELL** or a trial of **RAVENELL** if he were indicted by a federal grand jury.

Count IV ¶¶ 10-12.  All of the defendants' arguments focus only on the second and third "Means and Methods of the Conspiracy."  Thus, even if the Court were to find the defendants' arguments persuasive, which they are not, the 1512(c)(2) conspiracy charge against Ravenell and Gordon would survive.

Turning to the substance of their argument, "[w]hile *Aguilar* and *Arthur Andersen* require proof of a nexus in § 1503 and § 1512(b)(2) [and § 1512(c)(2)] prosecutions, they do not mandate a nexus allegation in a criminal indictment; it is a factual determination appropriately left to the jury." *United States v. Moyer*, 726 F. Supp. 498, 507 (M.D. Pa. 2010); *United States v. Meza*, 2017 WL 1371102, at *4 (S.D. Cal. Apr. 7, 2017), *aff'd*, 800 F. App'x 463 (9th Cir. 2020) ("While the Government must ultimately establish the nexus described in *Aguilar* and *Arthur Andersen*, whether an official proceeding was 'foreseeable,' 'in contemplation,' or 'foreseen' is a question of fact for the jury, not the court in a pretrial motion."); *United States v. Triumph Capital Group, Inc.*, 260 F.Supp.2d 470, 475 (D.Conn. 2003) ("the nexus requirement must only be proved at trial"); *United States v. Black*, 469 F.Supp.2d 513, 543 (N.D.Ill. 2006) (finding that the nexus requirement of § 1512(b)(2) need not be alleged in the indictment but is a factual question for the jury); *United States v. Ring*, 628 F.Supp.2d 195, 223–24 (D.D.C. 2009) (holding that the nexus requirement of § 1512(c)(2), like that of §§ 1503 and 1512(b)(2), is a jury question and need not be alleged in the indictment); *United States v. Potts*, Crim. No. 07–85, 2007 WL 2219392, at *3–4 (D.Minn.2007); *see also United States v. Gabriel*, 920 F.Supp. 498, 501 (S.D.N.Y.1996) (noting that *Aguilar* does not require that a nexus be pleaded in the indictment).

The various arguments the defendants make, about the meaning of the word "if" and the phrase "in the event of" and the evidence of the defendants' corrupt intent are all factual

43

questions.  The Government presumes these will be their defense.  None of them, however,

demonstrate the Government will not be able to carry its burden at trial.

In sum, the question of whether an adequate nexus exists is a question of fact that only a

jury can decide.  For that reason, the defendants' motion should be denied.

### VII.   DEFENDANTS' MOTION TO STRIKE PARAGRAPHS 1, 13-15 OF COUNT FOUR AS SURPLUSAGE, OR ALTERNATIVELY TO DISMISS COUNT FOUR AS DUPLICITOUS (ECF 182)

Defendants argue that Count Four combines "two unconnected and unrelated conspiracies

in one count," and on that basis seek to dismiss the Count entirely or strike out the allegations that

relate to the obstructive conduct Ravenell and Gordon engaged in before Treem and Gordon's

meeting with R.B. in September 2017.   ECF 182 at 2-3.  The defendants' motion to strike should

be denied  because  the  paragraphs  are  not  "surplusage"  and  they  do  not  render  Count  Four

duplicitous.  Count One charges the racketeering conspiracy that Ravenell conducted through the

Law Firm, and included Gordon, from 2009 through 2014, for the benefit of Ravenell and R.B.

among others.  Count Four charges a separate conspiracy to obstruct justice that included Ravenell,

Gordon and R.B., that was later joined by Treem.  The two conspiracies overlap in that Ravenell

and Gordon engaged in the same obstructive conduct to benefit R.B. that they later engaged in to

benefit Ravenell when Ravenell himself was under investigation.

### A.   Paragraphs 1 and 13 Through 15 of Count Four Are Not "Surplusage"

Rule 7(d) of the Federal Rules of Criminal Procedure states that "[u]pon the defendant's

motion, the court may strike surplusage from the indictment or information."  Such a motion

"should be granted only if it is clear that the allegations are not relevant to the charge and are

inflammatory and prejudicial."  *United States v. Williams*, 445 F.3d 724, 733 (4th Cir. 2006)

(citation omitted). "The purpose of Rule 7(d) is to protect a defendant against prejudicial allegations that are neither relevant nor material to the charges made in an indictment, or not essential to the charge, or unnecessary, or inflammatory." *Id.* (quoting *United States v. Poore*, 594 F.2d 39, 41 (4th Cir. 1979)). Striking material from the indictment is only justified if the material is both irrelevant on one hand and inflammatory and prejudicial on the other. *See United States v. Hedgepeth*, 434 F.3d 609, 612 (3d Cir. 2006) (citing *Poore*, 594 F.2d at 41, and other cases).

Paragraphs 1, 13, 14, and 15 of Count Four are highly relevant and indeed essential to the conspiracy offense charged in that count and are neither inflammatory nor unfairly prejudicial. Count Four charges that, between May 5, 2013, and December 11, 2018, each of the defendants and other persons conspired to commit an offense under 18 U.S.C. § 371—that is, to create false records and to obstruct federal investigations and official proceedings in violation of 18 U.S.C. §§ 1519 and 1512(c)(2), in order to protect members of the conspiracy. Count IV ¶¶ 8-9. The official proceedings included "grand jury investigations and federal criminal cases in United States District Court in Baltimore, Maryland[.]" Count IV ¶ 8. Among these grand jury investigations and federal criminal cases, Count Four makes specific reference to a federal investigation and prosecution of R.B. (¶ 10), as well as a federal criminal investigation and prosecution of defendant Ravenell (¶¶ 11-12).

The paragraphs of Count One that are incorporated by Paragraph 1 of Count Four detail the subject matter of the federal investigations and official proceedings the defendants conspired to obstruct, as charged in Count Four. Specifically, the paragraphs incorporated in Paragraph 1 detail criminal conspiracies in which defendant Ravenell, R.B., and others participated, which were the subjects of the federal investigations of R.B. and Ravenell, the prosecution of R.B., and the instant prosecution of Ravenell. Some of the incorporated paragraphs refer specifically to and

describe the law enforcement investigations and criminal prosecutions the defendants conspired to obstruct, as charged in Count Four.  For example, Paragraphs 3.b, 15.a, 16, 17, 21, 24, and 30 through 35 of Count One all specifically describe criminal investigations and/or prosecutions Ravenell and others conspired to obstruct, and all of these paragraphs are properly incorporated into Paragraph 1 of Count Four.  There can be no question that the paragraphs incorporated in Paragraph 1 are highly relevant to the conspiracy charged in Count Four.  Paragraph 1 is not "surplusage" subject to being stricken under Rule 7(b).

Paragraphs 13 through 15 of Count Four contain their own substantive allegations describing acts taken by Ravenell and Gordon in furtherance of the obstruction conspiracy charged in Count Four and to achieve its objects and purposes.  They also incorporate Paragraphs 30 through 35 of Count One as overt acts in furtherance of the obstruction conspiracy charged in Count Four.  Specifically, as alleged in Paragraph 13 of Count Four, Ravenell "caused the creation of a false witness interview report of J.G. to protect R.B., as described in paragraphs 30-33 of Count One."  As alleged in Paragraph 14 of Count Four, Ravenell and Gordon "traveled to a detention center where D.W. was being held to attempt to meet with D.W. as described in paragraph 34 of Count One."  And, as alleged in Paragraph 15 of Count Four, Ravenell sent Gordon "to visit D.W. at a prison facility near Houston, Texas, as described in paragraph 35 of Count One."  In each of these foregoing paragraphs of Count Four, reference is made to additional detail about these overt acts contained in particular paragraphs of Count One.  Paragraph 35 of Count One, for instance, describes how defendant Gordon asked D.W. to make a false written statement exculpating R.B.  These factual details from Count One are relevant to the specific overt acts described in Paragraphs 13 through 15 of Count Four, which were taken in furtherance of the

46

obstruction conspiracy charged in Count Four.  None of the foregoing information is "surplusage"; it is essential to Count Four.

As charged in Count Four, the obstruction conspiracy began "no later than May 5, 2013" (Count IV ¶ 9), the date listed on the false memorandum addressed to Ravenell that falsely documented a private investigator's interview of J.G. and maintained by Ravenell at The Law Firm, as detailed in Paragraph 33 of Count One.  This memorandum and related testimony will serve as evidence of the obstruction conspiracy charged in Count Four between defendant Ravenell and others, and evidence that this conspiracy indeed began in May 2013 as charged.  The relevance of this evidence, and the paragraphs of the Superseding Indictment that describe it (including Paragraph 13 of Count Four), is beyond question.

Paragraphs 14 and 15 of Count Four, as well as Paragraphs 34 and 35 of Count One, show that the obstruction conspiracy continued through 2013 and 2014 and are essential to demonstrating the continuation of the conspiracy beyond May 2013.  In addition, Count Four charges that  Gordon was a member of the obstruction conspiracy, and the facts described in Paragraphs 14 and 15 of Count Four, as well as Paragraphs 34 and 35 of Count One, serve has evidence of his membership of the conspiracy with Ravenell in August 2013 and May 2014.  All of this information is highly relevant and, in fact, critical to Count Four, and none of it is "surplusage" under Rule 7(b).

The information contained in Paragraphs 1, 13, 14, and 15 of Count Four are clearly relevant to the conspiracy charge in that count, and the defendants' motion to strike these paragraphs must be denied for this reason alone.  An additional reason to deny the motion is that the content of these paragraphs is neither unfairly prejudicial to the defendants nor inflammatory.  Specifically, Paragraphs 13 through 15 describe Ravenell and Gordon fabricating and procuring

false witness statements, and attempting to do so, which is precisely the same conduct described in Paragraphs 16 through 108, now involving Treem.  Paragraphs 13 through 15 accurately state the involvement of Ravenell and Gordon in the conspiracy in 2013 and 2014, without suggesting that Treem was a member of the conspiracy during that time.

In casting Paragraphs 13 through 15 of Count Four as surplusage, the defendants treat that the obstruction conspiracy as concerning only the meeting between Treem and Gordon and R.B. in September 2017 and conduct that occurred after that meeting.  *See, e.g.*, ECF 182 at 8 (stating that obstruction conspiracy charged in Count Four "stems from" the witness interview in September 2017).  That is clearly not the case.  Count Four alleges that the obstruction conspiracy began no later than May 2013 and continued through December 2018, and that each of the defendants "and others known and unknown to the Grand Jury" were members of the conspiracy.  Count IV ¶ 9.  There is no allegation that all three defendants were members of the conspiracy during the entire time period that it existed, nor is it required that all three defendants be members for the entire life of the conspiracy in order for it to constitute a singular conspiracy.

The defendants argue that Paragraphs 30 through 35 of Count One do not describe illegal conduct by Gordon and do not allege that defendant Gordon "knowingly attempted to obtain a false statement from D.W., or anyone else."  ECF 182 at 4.  This is no basis for striking incorporation of these paragraphs into the Count Four as overt acts.  The defendants fail to cite any authority for the proposition that descriptions of overt acts in furtherance of a conspiracy must include allegations about the actor's state of mind or even that an overt act must, by itself, be an unlawful act.

It is clear that Paragraphs 1 and 13 through 15 fit within the object of the conspiracy described in Paragraph 8, the time period of the conspiracy charged in Paragraph 9, and the manner

and means of the conspiracy outlined in Paragraphs 10 through 12, and that these overt acts are essential to the charge in Paragraph 9.  They are not surplusage to be stricken, and the defendants' motion to strike should be denied.

### B.  Count Four Is Not Duplicitous

The defendants request the dismissal of Count Four in its entirety as "duplicitous" if the Court declines to strike Paragraphs 1 and 13 through 15 from Count Four (as it must decline to do, for the reasons explained above).  This request is as misplaced as the defendants' motion to strike.

First, it is beyond dispute that the allegation of multiple acts in a single count charging conspiracy "is not duplicitous, for '[t]he conspiracy is the crime, and that is one, however diverse its objects.'"  *Braverman v. United States*, 317 U.S. 49, 54 (1942) (citations omitted).  An indictment is duplicitous only if it "charges two offenses in one count, creating the risk that a jury divided on two different offenses could nonetheless convict for the improperly fused double count." *United States v. Robinson*, 855 F.3d 265, 269 (4th Cir. 2017).  "An indictment is not duplicitous if it includes in one count multiple ways of committing a single offense." *Id.* at 270. Additionally, multiple acts may be "charged in a single count if those acts could be characterized as part of a single, continuing scheme."  *United States v. Burfoot*, 899 F.3d 326, 337 (4th Cir. 2018) (citation omitted).  Furthermore, a conspiracy encompassing multiple acts may be charged in a single count as long as it charges a single conspiracy.  *Braverman*, 317 U.S. at 54.

"[A] single conspiracy exists when the conspiracy had the same objective, it had the same goal, the same nature, the same geographic spread, the same results, and the same product." *United States v. Jeffers*, 570 F.3d 557, 567 (4th Cir. 2009). "Whether there is a single conspiracy or multiple conspiracies depends upon the overlap of key actors, methods, and goals." *United States v. Leavis*, 853 F.2d 215, 218 (4th Cir. 1988).  "[T]he question whether the evidence shows a single or multiple conspiracies is for the jury. If the jury is properly instructed, the finding of a single

conspiracy must stand unless the evidence, taken in the light most favorable to the government, would not allow a reasonable jury so to find." *United States v. Urbanik*, 801 F.2d 692, 695–96 (4th Cir. 1986), *quoted in United States v. Patel*, 720 F. App'x 698, 700 (4th Cir. 2018).

Notably, "even if a count is duplicitous, it is not to be dismissed unless it causes prejudice to the defendant." *Burfoot*, 899 F.3d at 337 (internal quotation marks and citation omitted).

Count Four charges a single conspiracy to obstruct justice. All of the overt acts described in Count Four, including Paragraphs 13 through 15, were undertaken for a common objective and goal, which is clearly described in Paragraph 8: "to create false records and documents with the intent to impede, obstruct or influence investigations within the jurisdiction of the U.S. Department of Justice and to obstruct, influence and impede official proceedings, including grand jury investigations and federal criminal cases in United States District Court in Baltimore, Maryland, in order to protect members of the conspiracy." This common objective unites all of the overt acts described in Count Four, including Paragraphs 13 through 15. Specifically, Paragraphs 13 through 15 describe Ravenell and Gordon both seeking to create false records of witness statements in 2013 and 2014 in order to protect R.B., who was at that time a member of the obstruction conspiracy charged in Count Four.

The overt acts described in Count Four are also united by methods, means, results, and products of the same nature. In summary, the common methods and means, as described in Paragraphs 10 through 12, involve visits by a private investigator, either accompanied by or sent by an attorney, to incarcerated individuals who are witnesses to criminal activity committed by the attorneys' clients in order to procure false written statements from the witnesses and to falsely document these meetings, all in an effort to protect the attorneys' clients. Paragraphs 13 through 15 of Count Four, together with the incorporated Paragraphs 30 through 35 of Count One, describe

how Ravenell and Gordon employed these methods to protect R.B.  Paragraphs 16 through 108 of Count Four, describe how Treem and Gordon employed these methods to protect Ravenell.  The results and products of these obstructive efforts were the same: false written witness statements and false reports and affidavits purporting to document witness statements.

Furthermore, the methods, means, and overt acts described in Count Four are also united by a common set of participants in the conspiracy.  Ravenell, Gordon, R.B., and others were all members of the conspiracy in 2013 and 2014.  Defendant Treem later joined the conspiracy and was a member in 2017, while defendants Ravenell and Gordon were still members.

The common actors, methods, and means, and the results and products of a common nature, all demonstrate that the overt acts alleged in Count Four were all in furtherance of a single conspiracy.  *See Leavis*, 853 F.2d at 218; *Jeffers*, 570 F.3d at 567.  Count Four is clearly non-duplicitous.

Even if Count Four was duplicitous, which it is not, that would not be grounds for dismissal.  First, Count Four does not unfairly prejudice any of the defendants, and the defendants have made no showing of unfair prejudice.  *See Burfoot*, 899 F.3d at 337 ("even if a count is duplicitous, it is not to be dismissed unless it causes prejudice to the defendant").  Second, the question of whether the evidence in support of Count Four demonstrates a single conspiracy or multiple conspiracies is a question of fact for the jury to decide.  *See Urbanik*, 801 F.2d at 695–96 (4th Cir. 1986); *Patel*, 720 F. App'x at 700.  If necessary and appropriate, the jury may be given an instruction on multiple conspiracies that would require them to consider whether the conspiracy charged in Count Four existed and whether each defendant was a member before returning guilty verdicts on Count Four.  *See* 1 Leonard B. Sand *et al., Modern Federal Jury Instructions: Criminal*, Instr. 19-5 (Bender 2020).

For the foregoing reasons, the Court should deny the defendants' Motion to Strike Paragraphs 1, 13-15 of Count Four as Surplusage, or Alternatively to Dismiss Count Four as Duplicitous.

## VIII.   DEFENDANTS' MOTION FOR SEVERANCE OF COUNTS FOUR THROUGH SEVEN (ECF 180)

Counts Four through Seven of the Superseding Indictment are properly joined with Counts One through Three and should not be severed.  All seven counts in the Superseding Indictment charge a web of criminal conduct with Ravenell at its center.  The first three counts charge criminal conduct that Ravenell engaged in to benefit R.B., and Ravenell himself.  Counts Four through Seven charge obstruction of justice that Ravenell engaged in, first, with Gordon, to protect R.B. and later, with Gordon and Treem, to protect himself.

### A.  <u>**Broad Joinder Is the Rule—Not the Exception**</u>

Rule 8(a) of the Federal Rules of Criminal Procedure "'permits very broad joinder' of 'related counts in the same trial[]'" in order "[t]o promote judicial efficiency[.]"  *United States v. Blair*, 661 F.3d 755, 768 (4th Cir. 2011) (quoting *United States v. Cardwell*, 433 F.3d 378, 385 (4th Cir. 2005)).  The rule provides that a defendant may be charged in a single indictment with multiple offenses in separate counts if the offenses "[1] are of the same or similar character, or [2] are based on the same act or transaction, or [3] are connected with or constitute parts of a common scheme or plan."  Fed. R. Crim. P. 8(a).  The second and third prongs are interpreted "flexibly," requiring only "a 'logical relationship' between offenses charged in the indictment."  *Blair*, 661 F.3d at 769 (quoting *Cardwell*, 433 F.3d at 385).  "Joined offenses have a logical relationship to one another for Rule 8(a) purposes, 'when consideration of discrete counts against the defendant paints an incomplete picture of the defendant's criminal enterprise.'"  *United States v. McLaurin*, 764 F.3d 372, 385 (4th Cir. 2014) (quoting *Cardwell*, 433 F.3d at 385).

Simply put, "joinder is the 'rule rather than the exception.'" *United States v. Mir*, 525 F.3d 351, 357 (4th Cir. 2008) (quoting *United States v. Acker*, 52 F.3d 509, 514 (4th Cir. 1995)).  There is "a strong interest in favor of joinder of offenses," *United States v. Stokes*, 211 F.3d 1039, 1042 (7th Cir. 2000), and joinder under Rule 8 does not impose an onerous set of requirements, *United States v. Mackins*, 315 F.3d 399, 412 (4th Cir. 2003).

Broad joinder under Rule 8(a) promotes judicial efficiency by avoiding "needless duplication of judicial proceedings, . . . particularly where evidence of one charge would be admissible to prove another charge[.]"  *United States v. Branch*, 537 F.3d 328, 341 (4th Cir. 2008) (citations omitted).  Indeed, "the prospect of duplicating witness testimony, impaneling additional jurors, and wasting limited judicial resources suggests that related offenses should be tried in a single proceeding."  *Blair*, 661 F.3d at 768-69 (citation omitted).  *See also United States v. Turoff*, 853 F.2d 1037, 1042 (2d Cir. 1988) (Rule 8 "reflects a policy determination that gains in trial efficiency outweigh the recognized prejudice that accrues to the accused"); *United States v. Werner*, 620 F.2d 922, 928 (2d Cir. 1980) (noting "the important policy behind this branch of Rule 8(a) and other provisions of Rule 8, namely, that of trial convenience and economy of judicial and prosecutorial resources, considerations of particular weight," and rejecting motion for severance where granting it would have required two witnesses to testify at both resulting trials).  Thus, joinder between two charges is particularly appropriate where evidence of one charge is admissible to prove the other.  *United States v. Branch*, 537 F.3d 328, 341 (4th Cir. 2008).

### B.  Obstruction Charges Are Properly Joined With Underlying Crimes

Charges involving obstruction of justice or concealment of criminal activity are properly joined with charges for the underlying criminal conduct.  Courts in the Fourth Circuit have "routinely" held that "charges premised on a defendant's alleged attempts to conceal his conduct

are properly joined with substantive charges arising from that conduct." *United States v. Lockhart*, No. 4:17-CR-02-1, 2017 WL 3471430, at *3 (E.D. Va. Aug. 11, 2017) (citing cases).

In *United States v. Carmichael*, for example, two defendants were charged with a conspiracy to pay for votes in a local election and several substantive charges for vote buying, and each defendant was also charged with obstruction of justice for urging witnesses to give false testimony. 685 F.2d 903, 905-06 (4th Cir. 1982). On appeal, the defendants challenged the district court's denial of their motion to sever the obstruction of justice charges. *Id.* at 909. The Fourth Circuit affirmed, agreeing that the charged acts of obstruction "were part of the same series of acts or transactions" as the vote buying conspiracy. *Id.* at 910. The court noted that "the obstruction of justice charges related to actions by Carmichael and Flowers to conceal the actions for which they were charged under conspiracy and substantive counts." *Id.* The court noted further that

> evidence of the conspiracy and actual vote buying would have been admissible against each defendant in separate trials for obstruction of justice to prove motive. Likewise, evidence supporting the obstruction of justice count against each defendant would be admissible against each defendant in a separate trial on conspiracy and the substantive counts to show criminal intent.

*Id.* (citing *United States v. Seidel*, 620 F.2d 1006, 1012 (4th Cir. 1980).

In a similar case, the Fourth Circuit upheld joinder in a superseding indictment of a witness tampering charge with several immigration fraud charges. *United States v. Mir,* 525 F.3d 351, 357 (4th Cir. 2008). The original indictment charged only conspiracy to commit labor certification fraud and several substantive counts of labor certification fraud. *Id.* at 353. Witness tampering by one of the defendants was revealed upon further investigation. *Id.* at 353-54. On appeal of the district court's denial of the defendant's motion to sever the witness tampering charge, the Fourth Circuit found no abuse of discretion and that severance "would have made little sense." *Id.* at 357.

>Mir's witness tampering was designed to obstruct the government's investigation of the labor certification fraud counts by attempting to persuade witnesses to lie before the grand jury and flee the jurisdiction before testifying. Had the charges been severed, the government would have had to introduce evidence pertaining to the labor certification fraud for the second jury to make sense of the witness tampering charge. Trying the witness tampering charge separately would have led to significant inconvenience for the government and its witnesses, and required a needless duplication of judicial effort in light of the legal, factual, and logistical relationship between the charges.

*Id.*

Courts in the Fourth Circuit have similarly ruled in numerous cases that obstruction charges are properly joined with charges for the underlying crimes because all of these charges arise from the same series of events, are logically related, and are "based on the same act or transaction" or "connected with or constitute parts of a common scheme or plan" under Fed. R. Crim. P. 8(a). *See United States v. Hornsby,* 666 F.3d 296, 309 (4th Cir. 2012) (witness tampering and fraud counts properly joined because they "related to the same series of events"—that is, the substantive fraud and "subsequent investigations"); *United States v. Cohen*, Crim. No. WDQ-14-0310, 2015 WL 2261661, at *26–28 (D. Md. May 7, 2015) (charges are "properly joined" where obstruction counts charge defendant with threatening and attempting to kill "witnesses to the underlying fraud charges" and obstructing grand juries impaneled in the case); *United States v. Poulin*, 671 F. Supp. 2d 822, 828 (E.D. Va. 2009) (finding joinder proper based upon a "logical relationship" between obstruction count and other offenses charged in indictment "because it is difficult, if not impossible, to discuss the alleged agency obstruction without also discussing the alleged fraudulent billing practices"); *United States v. Milan*, No. 1:09CR228, 2009 WL 3448432, at *1 (E.D. Va. Oct. 23, 2009) (joinder is proper under Rule 8(a) where "fraud and obstruction of justice counts are logically related, and indeed, inextricably bound up together").   Courts outside the Fourth

Circuit have also found joinder proper between obstruction charges and the underlying crimes. *See, e.g.*, *United States v. Shorter,* 54 F.3d 1248, 1258 (7th Cir. 1995); *United States v. Winn,* 948 F.2d 145, 160–61 (5th Cir. 1991); *United States v. Potamitis,* 739 F.2d 784, 791 (2d Cir. 1984).

### C.  **All Counts of the Superseding Indictment Are Properly Joined**

Here, joinder of Counts One through Three with Counts Four through Seven of the Superseding Indictment is proper under Rule 8(a) because all of these counts share a strong "logical relationship," are "based on the same act or transaction," and are "connected with or constitute parts of a common scheme or plan."  Fed. R. Crim. P. 8(a); *Blair*, 661 F.3d at 769; *Cardwell*, 433 F.3d at 385.  Count One charges that, beginning in August 2009, Ravenell abused his position as a lawyer and member of The Law Firm and conspired with several other persons to engage in a pattern of racketeering activity that included witness tampering, money laundering, and narcotics trafficking, until Ravenell separated from The Law Firm in September 2014.  Count I, ¶¶ 7-8.  Counts Two and Three charge Ravenell with participation in directly related money laundering and narcotics conspiracies that continued until August 2017.

In addition to money laundering and narcotics trafficking, another integral part of the racketeering activity charged in Count One is Ravenell's obstruction of official proceedings to protect co-conspirators, who were clients of Ravenell.  Count I ¶ 16.  The obstructive conduct included gaining access to incarcerated persons and civilian witnesses, both personally and through private investigators (such as Gordon), in an effort to improperly influence their testimony, cause them to execute false written statements, and cause them to withhold testimony from official proceedings.  Count I ¶¶ 30-35.  This same conduct is charged as overt acts by Ravenell and Gordon in furtherance of the obstruction conspiracy charged in Count Four.  *See* Count IV ¶¶ 13-

15.  In this way, Count Four is as strongly related to Count One as Counts Two and Three are related to Count One.

Furthermore, Count Four charges that Treem conspired with Ravenell and Gordon to obstruct justice in the same manner as Ravenell and for the same purpose.  Count IV ¶¶ 8-12. Specifically, all three defendants gained access to incarcerated persons in order to elicit false statements and falsely documents witness statements in order to protect client co-conspirators. Ravenell and Gordon engaged in these obstructive acts to protect R.B. in 2013 and 2014 (*see* Count IV ¶¶ 10, 13-15), and Treem and Gordon did the same in order to protect Ravenell in 2017 and 2018 (*see* Count IV, ¶¶ 11-12, 16-108).  The federal investigations and official proceedings that the defendants conspired to obstruct in Count Four include precisely the investigation and proceedings related to crimes committed by Ravenell and charged in Counts One through Three. And there is no dispute that Counts Five through Seven are each substantive counts directly related to Count Four.

The defendants argue incorrectly that a lack of temporal overlap between Counts One through Three and Counts Four through Seven justifies severance.  Count Four charges a conspiracy to obstruct justice that occurred and continued between May 2013 and December 2018, overlapping with the RICO conspiracy charged in Count One by well over a year, and overlapping with the money laundering and narcotics conspiracies charged in Counts Two and Three respectively by more than four years.  There is no dispute that substantive counts of obstruction charged in Counts Five through Seven are inextricably tied to the obstruction conspiracy charged in Count Four.  Furthermore, there is only a negligible gap of less than one month between the conspiracies charged in Counts Two and Three (ending in August 2017) and the substantive obstruction charges in Counts Five through Seven (beginning in September 2017).  In short, there

is no temporal gap to speak of between the two sets of counts the defendants seek to sever in this case.[2]

The close logical connection between all counts of the Superseding Indictment is beyond doubt.  Therefore, the broad joinder called for under Rule 8(a) is proper as to all charges.

**D.  <u>The Same Evidence Would Be Presented in Severed Trials</u>**

Moreover, practically all of the evidence showing Ravenell's criminal behavior in connection with conspiracies charged in Counts One through Three would be admissible in a separate trial on Counts Four through Seven.  Some of this evidence would serve as direct proof of overt acts taken in furtherance of the conspiracies charged in both Counts One and Four.  *See* Count I ¶¶ 30-35; Count IV ¶¶ 13-15.  As explained above, Paragraphs 30 through 35 of Count One and Paragraphs 13 through 15 of Count Four describe practically the same overt acts in furtherance of the separate conspiracies charged in those two counts.

But even beyond this set of overt acts that Counts One and Four share, evidence of Ravenell's broader involvement in the conspiracies charged in Counts One through Three would be admissible in a separate trial against all three defendants on Counts Four through Seven.  For instance, Counts Four and Five allege that the document titled "KWR Combined Notes" contained a series of false exculpatory statements about Ravenell, and that Treem and Gordon presented this document to R.B. and had him sign it.  The statements in the document falsely denied Ravenell's involvement in the racketeering, money laundering, and drug trafficking activity in Counts One

---

[2] Even if there was such a temporal gap, such a gap in time would be insufficient to show misjoinder of counts.  *See, e.g.*, *United States v. Robaina*, 39 F.3d 858, 861 (4th Cir. 1994) (A time gap of as much as two years between charges is not a sufficient basis to find misjoinder); *Werner*, 620 F.2d at 927 (Joinder of two charges relating to separate thefts that occurred 26 months apart was proper where both thefts involved the defendant's abuse of his position as a cargo handler for Lufthansa Airlines).

through Three.  Therefore, evidence that would be presented at a trial on Counts One through Three would also be necessary to prove that "KWR's Combined Notes" was false, as alleged in Counts Four and Five.

Evidence in support of Counts One through Three would also be admissible on Counts Four through Seven to show the defendants' motive and intent to protect Ravenell from prosecution for crimes including those charged in Counts One through Three.  *See Carmichael*, 685 F.2d at 910 ("evidence of the conspiracy and actual vote buying would have been admissible against each defendant in separate trials for obstruction of justice to prove motive"); *Mir*, 525 F.3d at 357 ("Had the charges been severed, the government would have had to introduce evidence pertaining to the labor certification fraud for the second jury to make sense of the witness tampering charge."); *Lockhart*, 2017 WL 3471430, at *4 ("evidence of the robbery would be admissible in an obstruction trial to show motive, intent, plan, knowledge, or the absence of mistake").

Conversely, evidence of obstruction admitted in a trial on Counts Four through Seven would also be admissible against Ravenell in a separate trial on Counts One through Three to show criminal intent and consciousness of guilt.  *See Carmichael*, 685 F.2d at 910 ("evidence supporting the obstruction of justice count against each defendant would be admissible against each defendant in a separate trial on conspiracy and the substantive counts to show criminal intent"); *Lockhart*, 2017 WL 3471430, at *4 ("evidence of obstruction would be admissible in a robbery trial to show consciousness of guilt or lack of mistake") (citing *United States v. D'Anjou*, 16 F.3d 604, 609 (4th Cir. 1994)).

Given the substantial overlap in evidence between the two separate trials if this case were severed, to impose severance of this case would be grossly inefficient and only serve to waste

valuable court and government time and resources in direct opposition to the purpose and intent of broad joinder under Rule 8(a).

### E. *United States v. Oaks* **Is Distinguishable**

The case relied upon by the defense, *United States v. Oaks*, is readily distinguishable from the instant case and similar ones like *Carmichael* and *Mir*.  285 F.Supp.3d 876 (D. Md. 2018). The district court in *Oaks* ordered severance of a count for obstruction of justice that was unrelated to the other charges in the superseding indictment.  Oaks was originally charged in a nine-count indictment for offenses related to corrupt use of his office as a state senator, which included several counts of wire fraud and Travel Act violations.  *Oaks*, 285 F.Supp.3d at 877.  These charges were based upon Oaks' acceptance of bribes from a confidential source of the FBI posing as a businessman.  *Id.*  A count for obstruction of justice was added after Oaks agreed to cooperate with law enforcement and provided information about a person from whom he had accepted bribes. Oaks obstructed justice by warning the person that he was under investigation.  *Id.*

The investigation Oaks obstructed was not the investigation of the other crimes charged in his indictment, which were all based on Oaks' acceptance of bribes from an FBI confidential source.  Instead, Oaks obstructed the investigation of another person.  The court found Oaks' scheme to commit bribery and his scheme to obstruct justice to be "two distinct efforts that lack a shared objective" and "do not share a 'common scheme or plan.'"  *Id.* at 880-81.  The only connection the court found between the two schemes was Oaks himself, which was insufficient to support joinder.  *Id.* at 880.

In the instant case, however, the federal investigations and official proceedings that Ravenell, Treem, and Gordon conspired to obstruct, as charged in Count Four, included precisely the investigation of criminal conduct charged in Counts One through Three.  Indeed, the overt acts

described in Paragraphs 16 through 108 of Count Four and each of the substantive obstruction crimes charged in Counts Five through Seven were committed by the defendants to obstruct the federal investigation of Ravenell for crimes charged in Counts One through Three and the instant prosecution, and to protect Ravenell from this investigation and prosecution. There was no similar connection between the witness tampering charge at issue in *Oaks* and the other crimes charged in the *Oaks* indictment, which all related to a bribery scheme that was not the subject of the investigation that *Oaks* obstructed. The justification for severance present in *Oaks* is absent in the instant case.

### F.   <u>Severance Is Not Justified Under Rule 14</u>

In cases where joinder under Rule 8(a) is proper, "the defendant's only recourse is to convince the court that the charges should be severed under Rule 14 – a difficult task." *Blair*, 661 F.3d at 770. Rule 14(a) provides that the district court "may order separate trials of counts" "[i]f the joinder of offenses . . . in an indictment . . . or a consolidation for trial appears to prejudice a defendant or the government[.]" Fed. R. Crim. P. 14(a). The Fourth Circuit has repeatedly characterized those situations in which a discretionary severance is appropriate under Fed. R. Crim. P. 14 as "rare." *Hornsby*, 666 F.3d at 308-09; *Cardwell*, 433 F.3d at 387.

The party requesting severance under Rule 14 "bears the burden of demonstrating 'a *strong* showing of prejudice[.]'" *Branch*, 537 F.3d at 341 (quoting *United States v. Goldman*, 750 F.2d 1221, 1225 (4th Cir.1984)) (emphasis added). It is not sufficient for a defendant to show that a separate trial might offer him or her a better chance of acquittal, or to show that joinder will make the defense's task more difficult. *Goldman*, 750 F.2d at 1225 (4th Cir. 1984); *see also Zafiro v. United States*, 506 U.S. 534, 540 (1993) (""[I]t is well settled that defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials.").

Courts have recognized that the inherent prejudice of a joint trial is insufficient to justify severance under Rule 14 and the judicial inefficiency, inconvenience, and expense wrought by severance. *See United States v. Santoni,* 585 F.2d 667, 674 (4th Cir. 1978) ("The trial court must weigh the inconvenience and expense to the government and witnesses of separate trials against the prejudice to the defendants inherent in a joint trial . . . ."); *United States v. Simmons*, 163 F. Supp.3d 317, 322 (E.D. Va. 2016) ("Severance is appropriate only if the risk of actual prejudice outweighs the interest in [the] efficient administration [of] justice.").

"[A] district court should grant a severance under Rule 14 *only* if there is a serious risk that a joint trial would . . . prevent the jury from making a reliable judgment about guilt or innocence." *Hornsby*, 666 F.3d at 309 (4th Cir. 2012) (quoting *Zafiro*, 506 U.S. at 539). The party seeking severance must make "a strong showing" of such a serious risk. *Branch*, 537 F.3d at 341.

Here, the defendants have failed to meet their "burden of demonstrating a strong showing of prejudice" that would result from a single trial on all counts, *Branch*, 537 F.3d at 341, fail to demonstrate "a serious risk that a joint trial would . . . prevent the jury from making a reliable judgment about guilt or innocence[,]" *Hornsby*, 666 F.3d at 309. The defendants cite three "sources of prejudice" in support of their request for severance:

> (1) the jury may confuse and cumulate the evidence, and convict the defendant of one or both crimes when it would not convict him of either if it could keep the evidence properly segregated;
> (2) the defendant may be confounded in presenting defenses, as where he desires to assert his privilege against self-incrimination with respect to one crime but not the other; or
> (3) the jury may conclude that the defendant is guilty of one crime and then find him guilty of the other because of his criminal disposition.

ECF 180 at 10. The defendants fail to make the "strong showing" of any of these forms of prejudice required to justify severance under Rule 14.

First, any prejudice based on the notion that the jury may unfairly confuse or cumulate the evidence cannot justify prejudice in a case where, if severed, the same evidence would be presented in both trials. *See United States v. Jamar*, 561 F. 2d 1103, 1106-07 (4th Cir. 1977) (noting that "if the evidence of all the joined crimes would be mutually admissible for legitimate purposes in separate trials for each offense (assuming no joinder), the possibilities of prejudice from the fact of joinder no longer present themselves so forcefully"); *Milan*, No. 1:09CR228, 2009 WL 3448432, at *1 (E.D. Va. Oct. 23, 2009) ("defendant will suffer no unfair prejudice from the joinder of these counts because evidence relating to the obstruction of justice count is relevant and would be presented in a trial on the fraudulent acts, and evidence relating to the fraudulent acts is relevant and would be presented in a trial for obstruction of justice"). As explained above, if Counts One through Three were severed from Counts Four through Seven, the same evidence would be admissible and presented at both trials. Therefore, conducting a joint trial as opposed to multiple severed trials, at which the same evidence would be presented, could not possibly prejudice the defendants. Even if "every bit of evidence that was admissible in the defendants' joint trial might not be admissible against each of them in separate trials of the obstruction charges," there is "no particular danger that the jury would cumulate such evidence" against any of the defendants. *Carmichael*, 685 F.2d at 910.

Second, courts have regarded the risk of prejudice arising from the possibility that jury may find guilt based on criminal disposition as "standard fare," "garden variety," and insufficient by itself to warrant severance. *Lockhart*, No. 4:17-CR-02-1, 2017 WL 3471430, at *4 (E.D. Va. Aug. 11, 2017) (quoting *United States v. Boulanger*, 444 F.3d 76, 88 (1st Cir. 2006)). Indeed, such a risk exists "whenever counts involving discrete incidents are linked in a single indictment" and, without more, cannot justify severance under Rule 14. *Id.*

Courts are well equipped to mitigate the commonplace risks of prejudice raised by the defendants through curative jury instructions. The extreme and disruptive measure of severing counts is not necessary to prevent improper cumulation of evidence or confusion by the jury or to prevent the jury from finding guilt based on criminal disposition. Courts routinely instruct juries in multiple-count and multiple-defendant cases that they must consider each count separately as to each defendant charged in that count and that their decision as to one count should not affect their verdict as to any other offense charged. *See, e.g.*, 1 Leonard B. Sand *et al., Modern Jury Instructions: Criminal*, Instr. 3-6 (Matthew Bender 2002) ("Each count charges the defendant with a different crime. You must consider each count separately and return a separate verdict of guilty or not guilty for each. Whether you find the defendant guilty or not guilty as to one offense should not affect your verdict as to any other offense charged."). Juries are presumed to follow the instructions they are given by the Court, including cautionary instructions, *Zafiro*, 506 U.S. at 540-41, and courts have repeatedly recognized that jury instructions are an effective means of dealing with any risk that a jury may improperly cumulate the evidence from different charges. *Mir*, 525 F.3d at 357-58; *Mackins*, 315 F.3d at 415 (finding harmless error in misjoinder of offenses in part because jury properly instructed to keep evidence of offenses separate); *United States v. LaRouche*, 896 F.2d 815, 830-31 (4th Cir. 1990) ("[C]urative instructions given to the jury by the district court go a long way in eliminating any prejudice resulting from the spillover effects of joinder"); *United States v. Porter*, 821 F.2d 968, 972 (4th Cir. 1987) (No prejudice exists where "the jury could make individual guilt determinations by following the court's cautionary instructions").

The defendants have not offered any reason as to why a curative instruction would not substantially mitigate any possible spillover of prejudicial evidence resulting from the joinder. *See Blair*, 661 F.3d at 769-70 (citing cases); *see also United States v. Ince*, 21 F.3d 576, 584 (4th Cir.

1994) ("[W]e recognize the presumption of cure by a court's instruction. . ."); *Cardwell*, 433 F.3d at 388 (jury charge "neutralized the possibility that the jury would hold the defendant's felony status against him when considering his guilt on other charges").

Finally, severance based on the notion that the defendants will be confounded in presenting defenses to the charges at a joint trial requires a far greater showing than simply citing this as a risk. To justify severance on this ground, the defendants must show "a stark contrast presented by the defenses that the jury is presented with the proposition that to believe the core of one defense it must disbelieve the core of the other[.]" *United States v. Najjar,* 300 F.3d 466, 474 (4th Cir. 2002). The defendants have failed to make any specific showing (let alone the "strong showing" required by Rule 14) that they would be confounded in presenting defenses at a joint trial. Not one of the defendants has, for instance, proffered any "desire[] to assert his privilege against self-incrimination with respect to one crime but not the other." Severance would therefore be improper on this basis. *See Poulin*, 671 F. Supp. 2d at 829 (denying severance where "Defendant has failed to make any specific showing demonstrating the importance of testifying on one count while also refraining from testifying on another count.") (citing *Goldman,* 750 F.2d at 1225).

Thus, the defendants fail to show that the counts of the Superseding Indictment are misjoined under Rule 8(a) or that severance is warranted by prejudice under Rule 14. Their motion for severance should be denied.

## IX.   DEFENDANTS' MOTION FOR AND MEMORANDUM IN SUPPORT OF DISCLOSURE OF JUROR LISTS AND QUALIFICATION QUESTIONNAIRES (ECF 187)

The defendants seek a catalog of information regarding "the grand juries that were sitting on September 18, 2019, when the government obtained the original Indictment, and on December 17, 2020, when the government obtained the Superseding Indictment." ECF 187 at 9. Some of

the information requested by the defendants is appropriately provided under the governing law. However, other items of information requested are not necessary for evaluation of the methodology and process for the selection of grand juries, and should therefore not be provided to the defendants.

The Jury Selection and Service Act protects a litigant's right to "grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes." The defendants have a right to review the "jury lists" and other papers and records "as necessary" to determine whether there are grounds for a motion under 18 U.S.C. § 1867(a). It is here that the Government recommends caution. The defendants, in their motion, seem to acknowledge the sensitivity of personal information regarding jurors—including the possibility of identifying jurors through combining information—and therefore specifically excludes from the information sought the names and addresses of jurors. *See* ECF 187 at 7.

Considering governing law and the interest in protecting grand jury secrecy, the Government responds to the individual requests for information listed on pages 6 through 9 of the defendants' motion (ECF 187) as follows:

1.- 15.  The Government does not oppose the defendants' requests for the information listed in items # 1 through 15 except insofar as any of the requested information was supplied by individual grand jurors or prospective jurors, or any of the requested information could be used to identify or locate any individual grand jurors or prospective jurors.

16.  The Government opposes disclosure of the information requested in item #16 because it appears to request information supplied by individual grand jurors, which could possibly be used to identify or locate the persons supplying this information. Moreover, information provided by

individual grand jurors or prospective jurors appears to have no bearing on whether the grand juries were selected from "a fair cross section of the community."

Having neither seen the questionnaires that may have gone to sitting grand jurors, nor having seen the responses, the Government is not in a position to analyze exactly how data could be combined to potentially expose the identity of grand jurors. That said, any potential exposure of the identity of sitting grand jurors is a threat to grand jury secrecy. To the degree that the defendants are able to complete an analysis by looking at questions posed to grand jurors rather than answers, such a procedure would balance the privacy and security of the grand jury with the defendants' right to review records "as necessary" related to the grand jury.

For the foregoing reasons, the Government requests that the Court deny the defendants' request for grand jury information to the extent that 1) the information is unnecessary to analyze whether a "fair cross section" of the relevant community was used in grand jury selection; 2) the information can be used to identify individual sitting grand jurors; and 3) the information was provided by individual grand jurors or prospective grand jurors. Specifically, the Government requests that the Court deny the defendants' request for information listed as item #16 in their motion (ECF 187 at 9).

## X.  DEFENDANTS' MOTION FOR AND MEMORANDUM FOR ENTRY OF ORDER PURSUANT TO THE DUE PROCESS PROTECTIONS ACT AND FEDERAL RULE OF CRIMINAL PROCEDURE 5(f) (ECF 176)

In a motion couched as a request pursuant to the Due Process Protection Act ("DPPA"), the defendants request that the Court enter an Order adopting their expansive view of what constitutes information subject to disclosure under *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny.  ECF 176.  The Government opposes this motion.

First, the defendants' proposed Order exceeds the requirements of the DPPA, *Brady*, and its progeny—listing items that clearly are not *Brady* material.  In this way, the defendants seek to expand the Government's discovery obligations beyond the requirements of the Constitution and indeed beyond reason.  For instance, in item #6, on page 2 of the defendants' proposed Order, the Defendants propose that the Court order disclosure of "[a]ll information regarding communications between the government and R.B. or his attorney including but not limited to communications with R.B. or his attorney regarding the interview of R.B. on September 9 and 10, 2017, any subsequent contact initiated by R.B. to any of the defendants in this case, or any communications following the discovery by the government of the letter to the federal judge referenced in the indictment."  *Brady* requires the disclosure of "evidence favorable to an accused . . . where the evidence is material either to guilty or to punishment."  373 U.S. at 87.  Disclosure of "*[a]ll information* regarding communications between the government and R.B. or his attorney" is not part of the Government's obligation under *Brady* and is certainly not required under the DPPA.

The DPPA does not expand or in any way amend the Government's *Brady* obligations or any other constitutional, statutory, or rule-based discovery obligations. The DPPA only amended Fed. R. Crim. P. 5 to require that the Court issue "an oral and written order to prosecution and defense counsel that confirms the disclosure obligation of the prosecutor under *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny, and the possible consequences of violating such order under applicable law." Fed. R. Crim. P. 5(f)(1).  Under Rule 5(f)(1), the required order shall issue "on the first scheduled court date when both prosecutor and defense counsel are present[.]"

As amended, Rule 5(f)(2) directs the creation of "a model order for the purpose of paragraph (1) that the court may use as it determines is appropriate."  The Government has attached

to this memorandum the standard Order Pursuant to Rule 5(f) that has been in use by District Judges and Magistrate Judges in the District of Maryland since October 2020, when DPPA was signed into law.  This standard Order satisfies the requirements of Rule 5(f) without grossly expanding the Government's obligations beyond the requirements of *Brady* and its progeny like the Defendants' proposed Order.

For these reasons, the Court should deny the Defendants' motion pursuant to the DPPA and, after providing the oral advisement required by Rule 5(f)(1) at the next scheduled court date, enter the standard Order Pursuant to Rule 5(f) of this District, which is attached to this memorandum.

Respectfully submitted,

Jonathan F. Lenzner
Acting United States Attorney

By: _____/s/_____
Leo J. Wise
Matthew J. Maddox
Assistant United States Attorneys
36 South Charles Street
Fourth Floor
Baltimore, Maryland 21201

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was served on counsel of record via electronic mail.

_____/s/_____
Leo J. Wise
Assistant United States Attorney