**Schulte Roth&Zabel** LLP

901 Fifteenth Street, NW, Suite 800
Washington, DC 20005
202.729.7470
202.730.4520 fax

www.srz.com

Writer's Direct Number
202.729.7476

Writer's Email Address
Pete.White@srz.com

July 12, 2021

**BY E-MAIL AND ECF**

The Honorable Liam O'Grady
United States District Judge for the Eastern
District of Virginia
Albert V. Bryan U.S. Courthouse
401 Courthouse Square
Alexandria, VA 22314

      Re: *United States v. Ravenell, Treem and Gordon*, 19-0449-LO
         Response to the Government's Letter to the Court, Docket 267

Dear Judge O'Grady:

  After stating that "the Government sought to make an accurate record of Treem and Gordon's meeting with a third-party, R.B.," Govt. Omnibus Opp. at 8 (Dkt. No. 215), the Government now claims that the "accurate record" of their key witness who repeatedly and unequivocally stated that Mr. Ravenell is not guilty of the crimes they charged does not constitute exculpatory evidence that they are required to disclose under *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny. The Government admits that the decision not to disclose this powerful, clearly exculpatory evidence was intentional. Govt. Letter (Dkt. No. 276). The Government now claims that they *never* had to disclose a recording of their key witness stating that the defendant was innocent because the defense knew about the interview, even though the defense had no way of knowing that the exculpatory statements were recorded. *Id.*

  To begin with, the Court cannot credit the Government's new claim that it previously reached the conclusion that this plainly exculpatory evidence did not have to be turned over under *Brady*. Govt. Letter at 3 (Dkt. No. 276) ("consistent with the Government's prior conclusion"). If the Government had concluded *previously* that the recording did not have to be turned over under *Brady*, it would have said so in its opposition to the defendants' Due Process Protection Motion (Dkt. No. 176), and in the lengthy bench conference on this issue during the motions hearing on

The Honorable Liam O'Grady
July 12, 2021
Page 2

July 7, 2021. *See* Govt. Omnibus Opp. at 67-69 (Dkt. No. 215). They did not do so in either circumstance because the explanation is not true. The Government's argument that this powerful and clearly exculpatory evidence is not *Brady* is a fabrication conceived last week in a desperate effort to appease the Court's concerns about their clear *Brady* violation. The truth is that the Government knew well that *Brady* required them to turn over the recording to Mr. Ravenell, but they withheld it for over a year for strategic advantage. The Government knows, this Court knows, and everyone else involved in the criminal justice system knows that this is not allowed.

The potential ramifications of the position stated in the Government's letter on the criminal justice system, if endorsed by this Court, would be stunning. This would allow the Government not to disclose a grand jury transcript of a witness supporting an alibi defense if that witness had also spoken with defense counsel. It would allow the Government to suppress any exculpatory statement by a witness, recorded or otherwise, if that witness were also available to the defense. In short, it would allow the Government to withhold exculpatory evidence in every circumstance where the defense had some ability to know about the evidence, even if the form and substance of the exculpatory evidence in the Government's possession is far more detailed, illuminating, persuasive, and irrefutable than the defense could know. That is not United States Department of Justice policy, that is not the practice in these federal courts, and that is not the law. Sanctioning the Government's position would gut the intent and imperative of *Brady* and the constitutional protections it provides for a fair trial.

The cases the Government cites, of course, do not stand for the proposition that the Government does not have to turn over overwhelming evidence of the defendant's innocence because the defendant has notice of a far weaker form of that evidence. These citations are the worst form of legal sophistry, and are beneath the dignity of the United States Department of Justice. What the Government would have the Court believe is that the original indictment against Mr. Ravenell could have gone to trial and, unless the Government called R.B. at that trial, the Government could have forever lawfully suppressed the videotape of that key witness proclaiming Mr. Ravenell's innocence. That is clearly not the law, and the Government knows it. None of the cases cited by the Government here stand for that proposition.

Moreover, the Government's letter makes clear that they have made no effort to understand the full scope and form of the *Brady* issues present here. Everyone agrees that R.B. made exculpatory and conflicting statements during the interview. Whether recorded or not, the Government had an obligation to disclose them. The Government chose not to, for tactical reasons. But that does not close the analysis of what the Government was required to produce here. The *actual recording* of the interview constitutes *Brady* material as well. That recording is *Brady*, not just because it contains R.B.'s exculpatory statements, but also because that recording provides compelling impeachment material. *See United States v. Bagley*, 473 U.S. 667, 676 (1985) ("Impeachment evidence, however, as well as exculpatory evidence, falls within the *Brady* rule . . . . This Court has rejected any such distinction between impeachment evidence and exculpatory evidence.").

Indeed, if Mr. Ravenell's case had proceeded to trial under the original indictment, the recording of R.B. offering exculpatory and conflicting accounts about Mr. Ravenell's involvement with his drug operation would have been material impeachment evidence. An oral and written

The Honorable Liam O'Grady
July 12, 2021
Page 3

account of these statements (which was never provided) would have been a start, but would not have been enough to satisfy the Government's obligation. The recording of R.B. (in his own voice and words) making exculpatory and conflicting statements is itself required to be disclosed under *Brady*. *See, e.g.*, *United States v. Fisher*, No. 03-4808, 109 Fed. Appx. 569, 571, 2004 WL 2165820 at *2 (4th Cir. 2004) (recording of a conversation between the government informant and the defendant setting up a drug transaction was not *Brady* because defendant failed to show how the recording was material to his defense, not because the defendant was a party to the conversation).

To state the glaringly obvious, Mr. Ravenell did not know that the exculpatory and conflicting statements were recorded, and he had no ability to access that recording through any level of diligence. This is clear because he tried *multiple* times without success to obtain this type of evidence from the Government. When he was the sole defendant, Mr. Ravenell sent two discovery letters containing requests that indisputably reach the interview recording. Ex. 1, Def. Nov. 5, 2019 Discovery Letter, Req. No. 9 (requesting "exculpatory information and/or testimony regarding the charges and allegations against Mr. Ravenell"); Ex. 2, Def. Nov. 19, 2019 Discovery Letter, Req. No. 3 ("From the investigation and prosecution of Mr. Ravenell in this case, please promptly produce all statements, memorialized witness interviews, and/or grand jury testimony of any witness, subject, or target where the witness/subject/target: . . . provided exculpatory information about Mr. Ravenell."). Despite this Court ordering that the Government turn over all exculpatory evidence promptly, the Government chose not to produce the recording or even a summary of the exculpatory statements. Without the recording, Mr. Ravenell had no access to the details of the exculpatory and conflicting statements made by R.B, and could not have obtained those details through any level of effort. The Government had exclusive access to that exculpatory information and intentionally chose to suppress it for tactical advantage. That is precisely what is forbidden by Department of Justice policy and the express law of all federal courts.

This leads to another fatal flaw of the Government's recently contrived "it's not *Brady*" explanation. According to the Government, the recording is not *Brady* because the defense was aware that R.B. made exculpatory and conflicting statements during the interview. This reasoning falls far short of what the law and the ethics rules require. The Government is not relieved of its *Brady* obligation, nor is it saved from not timely complying with that obligation, because a defendant has an awareness and/or a taste of the exculpatory and impeachment evidence. Indeed, for the Government to be saved from a finding of a *Brady* violation they must make a sufficient showing that *Mr. Ravenell* (not Mr. Treem) had or could have obtained *all* of the exculpatory and conflicting statements that R.B. provided during the interview. The Fourth Circuit made this clear in *United States v. Kelly*, 35 F.3d 929 (4th Cir. 1994). In *Kelly*, at issue was a search warrant affidavit containing incriminating information about the Government's key witness against the defendant that was not produced prior to the trial that resulted in Kelly's conviction. On appeal, the Government argued that its failure to produce the affidavit was not a *Brady* violation because "it disclosed much of the information contained in the search warrant affidavit" in a pretrial letter it sent the defense and "Kelly [the defendant] was already aware of some of the remaining information." *Id.* at 937.

The Honorable Liam O'Grady
July 12, 2021
Page 4

The Fourth Circuit found this explanation did not save the Government from a *Brady* violation. In comparing the search warrant affidavit with the Government's letter to the defense, the appellate court said it was "compel[led] . . . to conclude that the letter does not begin to set forth adequately all of the information contained in the affidavit that could have been used to impeach" the Government's key witness. *Id.* at 937. Moreover, while Kelly was aware of some of the information contained in the affidavit, the appellate court explained that did not mitigate the *Brady* violation, because Kelly was not aware of all that the Government had. *Id.* For these reasons, the Fourth Circuit found that the Government had committed a *Brady* violation in not producing the affidavit. *Id.*

*Kelly* is dispositive of the issue before the Court here. While Mr. Ravenell may have received *some* of the exculpatory and conflicting information R.B. provided during the interview, although arguable, he did not and could not have received "all of the information [from the meeting with R.B.] that could have been used to impeach" R.B. *Id.* As the Court and the Government have seen, Mr. Treem's notes are no substitute for the video and audio recording of the interview that the Government had. Just as Kelly did not know that the Government was aware of the key witness's criminal conduct reflected in the affidavit, absent the recording, Mr. Ravenell did not know that the Government had detailed knowledge of R.B.'s exculpatory and conflicting statements while he was awaiting trial. As the Fourth Circuit found in *Kelly*, a finding of a *Brady* violation is warranted here.

In the end, the inescapable conclusion is that the Government suppressed exculpatory evidence as to Mr. Ravenell despite numerous specific discovery requests and an Order issued by this Court, and despite the fact that the Court had set trial dates for December 2019 and April 2020. That evidence was not disclosed until February 2021 despite the obvious obligation to turn it over earlier. *See* U.S. Dep't of Justice, Justice Manual § 9-5.001(2020).

Because the Government lawyers handling this case do not understand their obligation to disclose exculpatory evidence, it is incumbent upon this Court to ensure that these obligations are followed. Furthermore, we request disclosure of all records of any preparation or other sessions with R.B., ***and a full evidentiary hearing*** with testimony from all the individuals in law enforcement who were involved in his cooperation to ensure that the defense had the access to exculpatory information that the law requires.

The Honorable Liam O'Grady
July 12, 2021
Page 5

                        Sincerely,

                        /s/ *Peter H. White*
                        Peter H. White
                        Aislinn Affinito
                        McKenzie Haynes

                        Schulte Roth & Zabel LLP
                        *Attorneys for Kenneth Ravenell*


                        /s/ *Lucius T. Outlaw*
                        Lucius T. Outlaw

                        Outlaw PLLC
                        *Attorney for Kenneth Ravenell*


cc:    AUSA Leo Wise
        AUSA Matthew Maddox