## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | * | |
| | * | |
| **v.** | * | **UNDER SEAL** |
| | * | |
| **KENNETH WENDELL RAVENELL,** | * | |
| **JOSHUA REINHARDT TREEM, and** | * | **CRIMINAL NO.  LO-19-0449** |
| **SEAN FRANCIS GORDON** | * | |
| | * | |
| **Defendants.** | * | |

**\*\*\*\*\*\*\***

## UNITED STATES' OPPOSITION TO
## DEFENDANTS' MOTION FOR AN EVIDENTIARY HEARING

The United States of America, by and through its undersigned attorneys, hereby submits this opposition to the Defendants' Motion for an Evidentiary Hearing.  ECF No. 297.  In their motion, the Defendants ask for an evidentiary hearing to address "*Brady* issues raised by the defendants" (1) "in their pretrial motion," although the Defendants do not identify what motions the Defendants are referring to, and (2) "in the July 1, 2021 letter (ECF No. 277, 278)."  In their Motion they also ask for an evidentiary hearing for a third reason, namely, to "address questions raised by the Court at the July 7, 2021 hearing on the defendants' pretrial motions," although the Defendants do not specify what "questions posed by the Court" they are referring to.

Their motion ignores the obvious fact that if the Court had unanswered factual questions, the Court is certainly capable of ordering an evidentiary hearing without the need for a motion by the Defendants.

In any event, the Defendants' motion is meritless and should be denied.

**A.  None of the Outstanding Pretrial Motions Require an Evidentiary Hearing to Resolve Them.**

As to the first reason for an evidentiary hearing, to address the "*Brady* issues raised by the defendants in their pretrial motion," regardless of which motion they are referring to, an evidentiary hearing is not necessary.  The best evidence that it is not is the fact that a motions hearing was held by the Court on July 7, 2021, and the Defendants did not call a single witness, or attempt to call a single witness.[1]

**B.  The Defendant's Unsolicited Letters to the Court Do Not Give Rise to the Need for an Evidentiary Hearing**

At the end of the motions hearing on July 7, 2021, the Court asked the Government a question about previous filings in the case, at sidebar, which the Government was unable to answer but promised to answer promptly.  The Government did so the very next day in a letter to the Court that was also filed on the docket.  ECF 276.  Then Defendant Ravenell filed two unsolicited letters in response to the Government's letter, ECF Nos. 278 and 279, in which he accused the Government of violating *Brady v. Maryland* and made a series of ad hominem attacks on

---

[1] Below is a procedural history of the Defendants' pretrial motions in this case:
- On March 30, 2021, the Defendants filed ten (10) pretrial motions.  ECF Nos. 173-185. One of those motions, the Defendants' Motion to Submit Unredacted Filings & Exhibits Under Seal Pursuant to the Protective Order, ECF 177, was briefed by both sides on an expedited schedule and denied by the Court on April 20, 2021.  *See* ECF 199 (under seal).
- On May 212, 2021, the Government filed an omnibus opposition to the remaining nine (9) motions.  ECF 215.
- On June 9, 2021, the Defendants filed individual replies to the Government's omnibus opposition to their nine (9) pretrial motions.  ECF Nos. 222-233, 241-242.
- On June 16, 2021, despite the fact that the deadline for pretrial motions had passed, the Defendants filed a Motion to Exclude Privileged Evidence.    ECF No. 245.  The Government opposed that motion on June 28, 2021, ECF No. 254, and the Defendants filed a reply on July 1, 2021, ECF 264.
- Thus, by July 7, 2021, all pretrial motions filed by the Defendants were fully briefed.
- On July 7, 2021, the Court held an approximately five (5) hour hearing on the Defendants pretrial motions.  In the course of that hearing, the Defendants addressed each of their motions.

Government counsel, including that they fabricated the answer they gave to the Court in the Government's letter of July 8, 2021. The *Brady* violation Defendant Ravenell accuses the Government of committing is that when Ravenell was indicted in September 2019 that the Government did not disclose that it had a recording of the interview of R.B. by Ravenell's lawyer, Treem, and the private investigator Treem retained, Gordon, which occurred on September 9-10, 2011 (hereafter the "Towers Jail visit"). Federal Rule of Criminal Procedure 16 requires the disclosure of recorded statements by Defendants. *See* Fed. R. Crim. Proc. 16(a)(1)(B). Ravenell was not recorded during the Towers Jail visit, because he was not present, and for that reason it was not provided to Ravenell when he alone was indicted. Treem and Gordon were and, for that reason, it was disclosed to them, and Ravenell, after all three were indicted and requested discovery in February of this year.

In the Government's letter to the Court, the Government explained that it did not produce the Towers Jail visit recording to Defendant Ravenell when he was charged in the original indictment in this case because it was not *Brady* material. ECF 276 at 1. It was not *Brady* material because it was information known to Defendant Ravenell, and the Fourth Circuit, and other courts, have held without exception that *Brady* and its progeny do not require the Government to produce information that the Defendant already has. *Id*. at 2-3.[2] And that was undoubtedly the case here

---

[2] Below is what the Government wrote in its letter dated July 8, 2021, ECF 276, explaining its reasoning:

The Government has reviewed the sealed pleadings it has filed in this case and did not make an *ex parte* filing to the Court related to the video recording of Defendants Treem and Gordon's meeting with R.B. on September 9-10, 2017, when the original indictment in this case was returned against Defendant Ravenell.

The Government did not do so because the video recording did not constitute discovery that the Government was obligated to provide to the Defendant pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny. That is because, as the Fourth Circuit has held, "[I]nformation

actually known by the defendant falls outside the ambit of the *Brady* rule." *United States v. Roane,* 378 F.3d 382, 402 (4th Cir. 2004); *Fullwood v. Lee*, 290 F.3d 663, 686 (4th Cir. 2002) ("Certainly, then, information that is not merely available to the defendant but is actually known by the defendant would fall outside of the *Brady* rule."). The logic of the Fourth Circuit's conclusion is grounded in the *Brady* decision itself. In *Brady*, the Supreme Court held that "*suppression* by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87 (emphasis added). As the Fourth Circuit and numerous other courts have held, and as summarized in the *Benchbook for U.S. District Court Judges*, "Information will not be considered 'suppressed' for *Brady* purposes if the defendant already knew about it or could have obtained it with reasonable effort." *Benchbook for U.S. District Court Judges,* §5.06 (6th ed. 2013); *see, e.g., United States v. Catone*, 769 F.3d 866, 871–72 (4th Cir. 2014) ("[T]o establish a *Brady* violation, the exculpatory material must be known to the government but not to the defendant."); *Barnes v. Thompson*, 58 F.3d 971, 975–76 (4th Cir. 1995); *Stockton v. Murray*, 41 F.3d 920, 927 (4th Cir. 1994)); *Dudley v. City of Kinston*, No. 4:18-CV-00072-D, 2021 WL 1222798, at *6 (E.D.N.C. Mar. 31, 2021) ("Courts have noted that even when an officer does not turn evidence over to the prosecutor 'suppression does not occur when a criminal defendant is already aware of the exculpatory information.") (*citing Burgess v. Baltimore Police Dep't*, 300 F. Supp. 3d 696, 704 (D. Md. 2018)); *Parker v. Allen*, 565 F.3d 1258, 1277 (11th Cir. 2009) ("there is no suppression if the defendant knew of the information or had equal access to obtaining it"); *United States v. Quintanilla*, 193 F.3d 1139, 1149 (10th Cir. 1999) ("a defendant's independent awareness of the exculpatory evidence is critical in determining whether a *Brady* violation has occurred. If a defendant already has a particular piece of evidence, the prosecution's disclosure of that evidence is considered cumulative, rendering the suppressed evidence immaterial."); *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998) (no *Brady* violation where information is available to the defense "because in such cases there is really nothing for the government to disclose.").

All three defendants unquestionably "already knew" that R.B. had made the statements that they describe as *Brady* information when Treem and Gordon interviewed R.B. on September 9, 2017. They knew this because Treem and Gordon conducted the interview themselves and reported its contents to Ravenell, whom they represented at that time. Ravenell's knowledge of R.B.'s statements is reflected in the letter that Treem sent a U.S. District Judge which described the fact that R.B. had made, in Ravenell's view, exculpatory statements ("However, Mr. Ravenell believes that a record needs to be made of these events regardless of the consequences, should be charged and should [R.B.] appear as a government witness.") and in the affidavit that he and Ravenell drafted for Sean Gordon describing the meeting with R.B. on September 9-10, 2021. This was not the case where the Government conducted an interview and obtained information. It was the Defendants' own interview. Therefore, the Government was not obligated to disclose the fact that R.B. had made these statements pursuant to *Brady* to Defendant Ravenell after the return of the original indictment because he already knew that R.B. had made those statements.

The Defendants did not know that their meeting with R.B., and therefore the information R.B. provided to them, was also recorded, but that does not change the analysis. *Brady* speaks to *information*, not the format in which it is captured. *United States v. Higgs*, 663 F.3d 726, 871 (4th

because the recording was of an interview conducted by Defendant Ravenell's own counsel at the time. *Id*. at 2.  Put another way, the *Brady* violation that Defendant Ravenell accuses the Government of committing is not disclosing to him the contents of an interview his own lawyer conducted.  And Defendant Ravenell's argument ignores the fact that in any event the recording was disclosed to him in February of this year, nine months before trial.

In his two letters to the Court, ECF 278 and 279, Defendant Ravenell rejected the clear authority cited by the Government in its letter establishing that the Government has no obligation to turn over information that is already in the possession of the defense.  But those are arguments. There is no need for an *evidentiary* hearing to determine whose view of the law is the correct one.

In his second letter, ECF 279, Defendant Ravenell argues that because, in his view, the Government committed a *Brady* violation, the Court should hold an evidentiary hearing, "with testimony from all the individuals in law enforcement who were/are involved in R.B.'s

---

Cir. 2011) (No *Brady* violation exists when the evidence is "available to the defense from other sources" or through a "diligent investigation by the defense."); *United States v. Zichittello*, 208 F.3d 72, 103 (2d Cir. 2000) ("Even if evidence is material and exculpatory, it 'is not "suppressed"' by the government within the meaning of *Brady* 'if the defendant either knew, or should have known, of the *essential facts* permitting him to take advantage of any exculpatory evidence.'") (citations omitted) (emphasis added); *Rector v. Johnson*, 120 F.3d 551, 558–59 (5th Cir. 1997) (same); *United States v. Clark*, 928 F.2d 733, 738 (6th Cir. 1991) ("No *Brady* violation exists where a defendant 'knew or should have known the *essential facts* permitting him to take advantage of any exculpatory information,' . . . or where the evidence is available to defendant from another source.") (citations omitted) (emphasis added).

Following the return of the superseding indictment on December 17, 2021, Defendant Ravenell made a discovery demand on January 28, 2021, and, in response, the Government disclosed the recording of the meeting on September 9-10, 2017, to Ravenell under a cover letter dated February 2, 2021.  The Government disclosed the video to Treem and Gordon under cover letters dated February 10, 2021.  The Government notes that in both the Treem and Gordon cover letters the video is identified under the heading, "Statements of Defendants (Rule 16(a)(1)(B)); Document and Objects (Rule 16(a)(1)(e))."  The video was disclosed pursuant to Rule 16 to all Defendants and not pursuant to *Brady* consistent with the Government's prior conclusion.

cooperation, particularly the recorded jail meeting." ECF 278 at 2. Defendant Ravenell never explains, however, why an evidentiary hearing is necessary to address facts that occurred in August and September 2017, when the *Brady* violation he alleges occurred was in 2019 and 2020. And he cannot. There is no logic to holding an evidentiary hearing concerning the Towers Jail visit, an event that occurred in 2017, to address Defendant Ravenell's meritless accusation that the Government committed a *Brady* violation in 2019 and 2020.

Finally, the unsolicited letters Defendant Ravenell wrote make a series of baseless and unprofessional accusations against undersigned counsel. But those do not merit an evidentiary hearing. For example, Defendant Ravenell claims, "The Government's argument that this powerful and clearly exculpatory evidence [referring to the recording of Ravenell's own lawyer's interview of R.B.] is not *Brady* is a fabrication conceived last week in a desperate effort to appease the Court's concerns about their clear *Brady* violation." ECF 278 at 2. Defendant Ravenell never explains how he knows the Government's letter of July 8, 2021, is a "fabrication," and a "desperate effort to appease the Court's concerns." And the reason he doesn't is because he is the one who is inventing things. And the Defendants should not be given an evidentiary hearing to explore their own fabrications. Defendant Ravenell's letter, like the Defendants' pretrial motions are long on outrage and short on facts and law.

Similarly, Defendant Ravenell's claim that "The truth is that the Government knew well that *Brady* required them to turn over the recording to Mr. Ravenell, but they withheld it for over a year for strategic advantage," begs the question, how does Defendant Ravenell know what the Government knew? *Id*. And, again, the short answer is that he doesn't and the Defendants are not entitled to an evidentiary hearing to explore what they don't know.

The last, and perhaps most ridiculous claim Defendant Ravenell makes is that "The Government knows, this Court knows, and *everyone else involved in the criminal justice system knows* that this is not allowed." *Id.* (emphasis added). How does Defendant Ravenell know what "everyone else involved in the criminal justice system knows"? Again, the answer is that he doesn't. And an evidentiary hearing will not reveal what "everyone else involved in the criminal justice system knows."

In sum, there are no facts in dispute as to whether or not the Government made an ex parte filing to the Court concerning the Towers Jail visit when Ravenell was indicted in 2019. Therefore an evidentiary hearing is not warranted. And the Government didn't because the law is clear that a recording of an interview made by the Defendant's own lawyer was not covered by *Brady*. *United States v. Roane*, 378 F.3d 382, 402 (4th Cir. 2004); *Fullwood v. Lee*, 290 F.3d 663, 686 (4th Cir. 2002) ("Certainly, then, information that is not merely available to the defendant but is actually known by the defendant would fall outside of the *Brady* rule.").

**C. There are No Unresolved Factual Questions About Whether R.B. Consented to Record Treem and Gordon, Because He Unequivocally Did, and No Unresolved Factual Questions about R.B.'s Cooperation Agreement, Because He Didn't Have One.**

In their Motion for An Evidentiary Hearing, the Defendants offer a third argument for why they believe one is needed. Like their other two, it is unpersuasive. Specifically, the Defendants write in their motion,

> … *if* there is an unresolved factual question relating to R.B.'s 'consent' for the videotape, or whether it was the government or R.B. who was making determinations about the parameters for the videotape, those questions can only be answered by a full evidentiary hearing, including the testimony of R.B., his attorney, and all the government prosecutors or agents who were involved in the decision to videotape, as well as its execution.

Mot. at 5 (emphasis added).

There is no unresolved factual question relating to R.B.'s "consent" for making the videotape.  As the recording itself makes clear, and as reflected in the transcript, both of which all the defendants have, R.B. consented to making the recording.  Below is the relevant section of the transcript from September 9, 2021:

```
1            AGENT HANEY:  This is Special Agent
2  Nicholas Haney.  Today's date is September 9th, 2017.  The
3  time is 10:57 a.m., approximately.  I am with Richard Byrd.
4  He is consenting to be recorded in a meeting with
5  Joshua Treem.  Do I have your consent?
6         MR. BYRD:  Um-hum.
7         AGENT HANEY:  I need a verbal.
8         MR. BYRD:  Yes, yes.
9         AGENT HANEY:  Okay.
```

Transcript of September 9, 2017, Recording at 2:1-9 (Exhibit 1).

And R.B. consented to the second day of recording, September 10, 2017, as well, as reflected in the recording and transcript, both of which the Defendants possess:


[this space intentionally left blank]

```
1              DETECTIVE HANEY:   Today is Sunday,

2   September 10th, 2017.   The approximate time is 9:12 a.m.

3   We're at the Towers Jail in Phoenix, Arizona.   Cooperating

4   witness Richard Byrd will be meeting with Joshua Treem and

5   Sean Gordon and related to Case No. 1000266582.

6              And the CW, do you consent to this recording?

7              MR. BYRD:   Absolutely.   All right.   All I know is

8   I don't smell nothing fried in this room at all, Brian.

9   Man, you can't even answer me with a straight face.   I just

.0  remembered -- good morning, gentlemen.
```

Transcript of September 10, 2017, Recording at 2:1-10 (Exhibit 2).

The Defendants assert that, "it is undisputed that it was the government, not R.B., that made the decision to video tape the interview." Mot. at 2. That is not true, as the above quoted section of the transcript makes clear. If R.B. had said no, there would have been no recording of the interview, as the Government would have had no legal authority to record the interview. It was R.B.'s decision to do so, not the Government's. And, as a practical matter, the recording was made by the Defendant himself. The recording device used was a pair of eyeglasses that R.B. wore. When the interview first began on September 9, 2017, they were in his pocket. He put them on at approximately the eleventh minute of the interview, at which point what R.B. was seeing became visible. Below is an image from approximately the time R.B. put on the eyeglasses that recorded the interview. KWR's Combined Notes are on the right and Treem's notepad is on the left.



In sum, the Government asked R.B. to record the interview.  R.B. agreed to do so.  Those are the facts that are not in dispute.  There is no need to hold an evidentiary hearing to determine whether he consented.  The video recording of the interview itself shows that he did.

Defendants next argue for an evidentiary hearing in order to address what R.B.'s cooperation agreement contained.  The Defendants incorrectly assert, "But as of mid-August 2017, R.B. had reached an agreement with the government to cooperate to help it with its investigation." Mot. at 3.  They are incorrect.  In a footnote, the Defendants double-down on their inaccurate assertion:

> In keeping with the government's parsimonious view of its *Brady* obligations, it has not provided the defendants with a copy of R.B.'s cooperation agreement. If that cooperation agreement contains the sort of standard language employed by the U.S. Attorney's office in other cases, it requires R.B. to comply with any and all reasonable instructions from the government, including acting in an undercover capacity and allowing authorities to monitor and record conversations with persons who are believed to be engaged in criminal conduct. If R.B. wanted the benefits of his cooperation agreement, he had no choice but to agree to the government's decision to record the interview.

Mot. at 3, FN 2.  First, the Government does not take a parsimonious view of its *Brady* obligations and never has.  Second, in the District of Maryland, cooperation agreements are contained in sealed supplement to plea agreement.  R.B. signed a plea agreement and pled guilty on November 2, 2016, without agreeing to cooperate.  The plea agreement was pursuant to Federal Rules of Criminal Procedure 11(c)(1)(C) and included an agreed upon sentence of 26 years.  On February 9, 2017, Judge Bennett sentenced R.B. to 26 years in prison.  The Towers Jail visit obviously took place more than seven months later.  And these facts are all known to the Defendants because it was addressed at the motions hearing on July 7, 2021:

[this space intentionally left blank]

3        MR. WISE:  I was listening to the consent

4 issue, and I think I heard Mr. White say it wasn't

5 R.B.'s decision to record, it was the government's

6 decision to record.  Factually, that's not true.  R.B.

7 was asked if he would record, and he agreed to record

8 on advice of counsel.

9        He was not and has never been under a

0 cooperation agreement.  He pled guilty without a

1 cooperation agreement.  He was sentenced, and only

2 after that did he decide to begin cooperating.  So

3 there was -- it was always his choice.  He was advised

4 by counsel at the time to take it, I assume, and he

5 did.  And so it's not -- it is his choice.  That's, I

6 think, where their argument really falls apart.

7        THE COURT:  So if I hear you correctly

Transcript of Motions Hearing, July 7, 2021, at 19:3-16.

In sum, an evidentiary hearing is not necessary to explore a cooperation agreement that doesn't exist.

The Defendants clearly want an opportunity to question, essentially depose, R.B. and the law enforcement agents and prosecutors who were formerly involved in this case.  That much is clear from their motion.  The problem is that there is no legal basis for such an exercise.  The Defendants have tried to shoe-horn their demands into the *Brady* rule, but it's a round peg in a square hole.  The Defendants are charged with lying to a federal judge, preparing and executing a phony affidavit and tricking R.B. into signing a "witness statement" that he clearly said was all lies.

Whatever law enforcement agents or prosecutors formerly assigned to his case said to R.B. is irrelevant to the question of whether Treem and Ravenell's letter to a U.S. District Court Judge misrepresented what happened on September 9-10, 2017, whether the affidavit that Ravenell and Treem drafted for Gordon, and Gordon signed, misrepresented what happened on September 9-10, 2017, and whether Treem and Gordon tricked R.B. into signing KWR's Combined Notes after R.B. told them the statements in KWR's Combined Notes weren't true.

Respectfully submitted,

Jonathan F. Lenzner
Acting United States Attorney

By: _____ /s/ _____
Leo J. Wise
Matthew J. Maddox
Assistant United States Attorneys

Derek E. Hines
Special Assistant United States Attorney

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was served on counsel of record via CM/ECF.

_____ /s/ _____
Leo J. Wise
Assistant United States Attorney