# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,           )
                                     )
v.                                   )        Case No. 1:19-cr-0449
                                     )        Hon. Liam O'Grady
KENNETH WENDELL RAVENELL,            )
JOSHUA REINHARDT TREEM, and          )        **FILED UNDER SEAL**
SEAN FRANCIS GORDON,                 )
                                     )
            *Defendants.*            )
                                     )

## MEMORANDUM OPINION & ORDER

This matter comes before the Court on the following pretrial motions filed by Defendants

Kenneth Ravenell, Joshua Treem, and Sean Gordon in the above-captioned criminal matter:

| Motion | Docket Entry |
|---|---|
| Motion for Entry of Order Pursuant to the Due Process Protections Act and Federal Rule of Criminal Procedure 5(f) | 176 |
| Motion to Dismiss Counts 4 and 5 for Failure to Allege an Adequate Nexus | 181 |
| Motion to Strike Paragraphs 1, 13-15 of Count 4 as Surplusage, or Alternatively to Dismiss Count 4 as Duplicitous | 182 |
| Motion to Dismiss Count 7 or Strike Count 4, Paragraphs 106(a) and (b) as Surplusage | 183 |
| Motion to Disclose the Government's Presentation of the Law to the Grand Jury | 184 |
| Motion for Disclosure of Juror Lists and Qualification Questionnaires | 187 |
| Joshua Treem's Motion to Exclude Privileged Evidence | 245 |
| Motion for Evidentiary Hearing | 297 |
| Motion for Disclosure of the Government's Presentation of Law to the Grand Jury for Prosecutorial Misconduct | 311 |
| Status of Issues Raised in Defendants' Motion to Compel | 345 |

For the following reasons, Defendants' Motions are **GRANTED IN PART** and **DENIED IN PART**.

## I.   BACKGROUND

For years, the Government investigated Defendant Kenneth Ravenell for his alleged involvement in a wide-ranging RICO, money laundering, and narcotics conspiracy.  During this time, Mr. Ravenell retained Defendants Sean Gordon and Joshua Treem as members of his defense team.  Mr. Gordon worked as a private investigator as early as 2013, *see, e.g., id.* at 20, ¶ 9, while Mr. Treem was retained as defense counsel from 2016 through 2019.  *See id.* at 19, ¶ 7.

## II.   DISCUSSION

### a.   Motion for Entry of Order Pursuant to the Due Process Protections Act and Federal Rule of Criminal Procedure 5(f)

The Parties have fully briefed this Motion, Dkt. 176, and the Court issues a separate order requiring Government compliance with the Act and Rule 5(f). The Motion, Dkt. 176, is **DENIED** in all other respects.

### b.   Motion to Dismiss Counts 4 and 5 for Failure to Allege an Adequate Nexus

In Defendants' Motion and Memorandum to Dismiss Counts Four and Five for Failure to Allege an Adequate Nexus, Dkt. 181, Defendants assert that Count Four (Conspiracy to Commit Offenses Against the United States), and Count Five (Obstructing an Official Proceeding), center on three documents – KWR's Combined Notes, Sean Gordon's declaration, and Joshua Treem's letter to a federal judge concerning extortionate calls by R.B. Dkt. 181 at 1. Defendants argue that both Counts Four and Five allege that obstruction of a foreseeable federal proceeding was merely possible, not natural and probable, as a result of the creation of these documents. *Id.* Defendants assert that "it is simply not possible to construct a chain of 'likely,' or of 'natural and probable' events tying these three documents to a probable obstructive use," *id.* at 11, and further that "[i]nterpreting § 1512(c)(2) to reach documents in a private, indeed, privileged file that was not under subpoena poses tremendous problems of overreach," *id.* at 14.

18 U.S.C. § 1512(c)(2) requires proof that a defendant's conduct will have the natural and probable consequence of obstructing justice. For a defendant to be found guilty under this statute, the Government must prove that there is a nexus between the allegedly obstructive act and the foreseeable federal proceeding. *See generally Arthur Andersen LLP v. United States*, 544 U.S. 696, 708 (finding that 18 U.S.C. § 1512 requires proof that defendant's action 'are likely to affect the judicial proceeding.'); *United States v. Aguilar*, 515 U.S. 593, 600 (1995) (finding that 18 U.S.C. § 1503 requires a "nexus" in time, causation or logic between defendant's allegedly obstructive act and a judicial proceeding).

However, while Defendants are correct that 18 U.S.C. § 1512 requires a nexus between a defendant's conduct and the probable consequence of obstruction of justice, the law does not require that the Grand Jury allege a nexus in a § 1512(c) charge. Rather, the nexus requirement is a question of fact for the trial jury to decide. *See e.g., United States v. Moyer*, 726 F. Supp. 2d 498, 507 (M.D. Pa. 2010) ("While *Aguilar* and *Arthur Andersen* require proof of a nexus in § 1503 and § 1512(b)(2) prosecutions, they do not mandate a nexus allegation in a criminal indictment; it is a factual determination appropriately left to the jury."); *United States v. Meza*, 2017 WL 1371102, at *4 (S.D. Cal. Apr. 7, 2017), *aff'd*, 800 F. App'x 463 (9th Cir. 2020) ("While the Government must ultimately establish the nexus described in *Aguilar* and *Arthur Andersen*, whether an official proceeding was 'foreseeable,' 'in contemplation,' or 'foreseen' is a question of fact for the jury, not the court in a pretrial motion.").

Therefore, because the existence of an adequate nexus is a factual determination for the trial jury, Defendants' Motion and Memorandum to Dismiss Counts Four and Five for Failure to Allege an Adequate Nexus, Dkt. 181, is **DENIED**.

### c. Motion to Strike Paragraphs 1, 13-15 of Count 4 as Surplusage, or Alternatively to Dismiss Count 4 as Duplicitous

In Defendants' Motion to Strike Paragraphs 1, 13-15 of Count Four as Surplusage, or Alternatively to Dismiss Count Four as Duplicitous, Dkt. 182, Defendants assert that Count Four of the Superseding Indictment "combines two unconnected and unrelated conspiracies in one count." Dkt. 182 at 2.

In their argument to strike these paragraphs as surplusage, Defendants assert that the allegations incorporated by reference from Count One involve a distinct alleged scheme that is factually and temporally separate from the acts that make up the remainder of Count Four. Namely, the allegations in Count Four "involve a meeting with R.B. over two days in September 2017, during Mr. Treem's representation of Mr. Ravenell"; yet the allegations in Count One took place in 2013 and 2014, years before Mr. Treem began representing Ravenell. *Id.* Defendants further argue that Federal Rule of Criminal Procedure 7(d) authorizes the Court "to strike surplusage from the indictment" where the allegations are irrelevant to the charge and are confusing and prejudicial. *See* Fed. R. Crim. P. 7(d); *U.S. v. Williams*, 445 F.3d 724, 733 (4th Cir. 2006). Defendants assert that the allegations at issue here incorporate material from Count One that would only serve to mislead, confuse, and waste the time of the jury. Dkt. 182 at 5.

In the alternative, Defendants argue that Count Four should be dismissed as duplicitous. They assert that Count Four improperly combines two distinct conspiracies: "one alleged to arise from the RICO and money laundering allegations set forth in Count One, and one alleged to arise from the interview of R.B. three years after the conclusion of the RICO and money laundering conspiracies – in a single count." Dkt. 182 at 6.

4

The Government opposes this Motion, arguing that Paragraphs 1 and 13-15 of Count Four are not "surplusage," and do not render Count Four duplicitous. Dkt. 214 at 44. The Government is correct in its argument.

First, these paragraphs are not "surplusage," and will not be struck as such. A defendant's motion to strike "surplusage" from the indictment "should be granted only if it is clear that the allegations are not relevant to the charge and are inflammatory and prejudicial." *United States v. Williams*, 445 F.3d 724, 733 (4th Cir. 2006) (internal citations omitted). The aforementioned paragraphs of Count Four that reference Count One are not surplusage, as they are neither irrelevant nor prejudicial. Count One charges the racketeering conspiracy that Ravenell conducted through the Law Firm, and included Gordon, from 2009 through 2014, for the benefit of Ravenell and R.B., among others. By contrast, Count Four charges a separate conspiracy to obstruct justice that included Ravenell, Gordon, and was later joined by Treem. These conspiracies overlap in that Ravenell and Gordon engaged in the same kind of obstructive conduct to benefit R.B. that they later used to benefit Ravenell but, nevertheless, these conspiracies are distinct.

Paragraph 1 is relevant as it details the subject matter of the federal investigations and the official proceedings that the Defendants conspired to obstruct. Paragraphs 13-15 are relevant because they contain their own substantive allegations describing acts taken by Ravenell and Gordon in furtherance of the obstruction conspiracy charged in Count Four. What's more, these paragraphs are not prejudicial, as there is no allegation that all three Defendants were members of the conspiracy during the entire time period that it existed – nor is it required that all three Defendants be members for the entire life of the conspiracy in order for it to constitute a single conspiracy.

Second, Count Four is not duplicitous, and will not be dismissed as such. An indictment is duplicitous only if it "charges two offenses in one count, creating the risk that a jury divided on two different offenses could nonetheless convict for the improperly fused double count." *United States v. Robinson*, 855 F.3d 265, 269 (4th Cir. 2017). "An indictment is not duplicitous if it includes in one count multiple ways of committing a single offense." *Id.* at 270. *See also United States v. Burfoot*, 899 F.3d 326, 337 (4th Cir. 2018). Count Four charges a single conspiracy to obstruct justice. All of the overt acts described in Count Four were undertaken for the same objective – described in Paragraph 8: "to create false records and documents with the intent to impede, obstruct or influence investigations within the jurisdiction of the U.S. Department of Justice and to obstruct, influence and impede official proceedings, including grand jury investigations and federal criminal cases in United States District Court in Baltimore, Maryland, in order to protect members of the conspiracy." The overt acts charged in this conspiracy are united by their common objective, the methods, means, results and products of the same nature, and a common set of participants. Moreover, whether the evidence in support of Count Four demonstrates a single conspiracy or multiple conspiracies is a question of fact for the jury to decide.

Therefore, Defendants' Motion to Strike Paragraphs 1, 13-15 of Count Four as Surplusage, or Alternatively to Dismiss Count Four as Duplicitous, Dkt. 182, is **DENIED**.

### d. Motion to Dismiss Count 7 or Strike Count 4, Paragraphs 106(a) and (b) as Surplusage

In Defendants' Motion to Dismiss Count Seven or Strike Count Four, Paragraphs 106(a) and 106(b) as Surplusage, Dkt. 183, Defendants assert that they "had absolutely no duty to disclose R.B.'s inculpatory statements on September 10. Rather, Treem had a duty not to disclose potentially adverse facts." Dkt. 183 at 2. Defendants therefore argue that this alleged failure to

disclose is not a crime, and that Count 7 must be dismissed. In the alternative, Defendants argue that paragraphs 106(a) and 106(b) of Count Four, incorporated by reference into Count Seven, must be struck as surplusage.

Specifically, in their argument, the Defendants note that omission can only be the basis for a criminal defense when there is a duty to disclose. *See Chiarella v. United States*, 445 U.S. 222, 228 (1980). Defendants go a step further to argue that Treem was compelled to advise the United States District Court Judge of the existence of a crime that could undermine judicial proceedings. Defendants note that ABA Rules of Professional Responsibility 3.3-12 requires a lawyer to take reasonable remedial measures when the lawyer "knows that a person . . . is engaging or has engaged in criminal or fraudulent conduct related to the proceeding." Defendants go further still to argue that, in charging Ravenell for his failure to disclose potentially inculpatory information in Count Seven, "the Government ignores Ravenell's Fifth Amendment privilege not to say anything as to his own conduct in the context of a letter reporting potential wrongdoing by another." Dkt. 183 at 5-6.

These arguments are misplaced and unavailing. First and foremost, as the Government notes in its Opposition, Dkt. 214, while Defendants have moved to dismiss Count Seven or strike paragraphs 106(a) and (b) of Count Four because they did not have a duty to disclose R.B.'s inculpatory statements, the Superseding Indictment alleges not that the letter Defendants sent a United States District Court Judge contained omissions – but rather than it contained affirmative *misstatements*. Indeed, the Government alleges that "Ravenell and Treem did not just omit what happened on the second day" but rather that "they made up a version of events on the second day that never occurred." Dkt. 214 at 39. Therefore, Defendants' argument that they were under no duty to disclose is misplaced.

Moreover, Defendants' arguments that they were "compelled to advise the Court" and, further, that Ravenell had a Fifth Amendment privilege not to disclose any adverse statements made by R.B. are unavailing. Again, the Superseding Indictment charges that the supposed "crime" that the Defendants advised the Court of was a fabrication. Similarly, the Fifth Amendment protects a Defendant's right to remain silent – not to make affirmative false statements.

For the foregoing reasons, Defendants' Motion to Dismiss Count Seven or Strike Count Four, Paragraphs 106(a) and 106(b) as Surplusage, Dkt. 183, is **DENIED**.

### e.   Motion to Disclose the Government's Presentation of the Law to the Grand Jury

This matter comes before the Court on Defendants' Motion to Disclose the Government's Presentation of the Law to the Grand Jury. Dkt. 184. The Defendants have moved for disclosure of the Government's presentation of the law to the Grand Jury as the indictment did not allege that the conduct was not the lawful provision of bona fide legal services as required by 18 U.S.C. § 1515(c). Following this motion being filed, on September 17, 2021, the Government sought and received a Second Superseding Indictment, Dkt. 281, from the Grand Jury which cured this perceived inadequacy. Therefore, the Motion, Dkt. 184, is **DENIED** as moot.

### f.   Motion for Disclosure of Juror Lists and Qualification Questionnaires

Defendants request certain information about the jury lists for the Grand Juries sitting when Mr. Ravenell and then all Defendants were indicted on September 18, 2019, December 17, 2020, and July 21, 2021, pursuant to the Juror Selection and Service Act of 1968 ("JSSA"). Dkt. 187. The Government does not oppose the Motion with the exception of identifying a concern (Request #16) that the "COVID" Questionnaire answers by the Grand Jurors provides unnecessary information, may be used to identify individual jurors, or may provide information beyond that permitted by the JSSA. The Court has reviewed the returned COVID Questionnaire.

The Court **GRANTS IN PART** and **DENIES IN PART** the Defendants' Motion for Disclosure of Juror Lists and Qualification Questionnaires. Dkt. 187. The Court, by separate order, shall produce the items in the Clerks Office's possession in response to Categories 1-15 shortly. The Court will also produce a redacted version of Category #16 documents, the jurors' answers to the questionnaires, without personal identifying information shortly.

g. <u>**Joshua Treem's Motion to Exclude Privileged Evidence**</u>

This matter comes before the Court on the Defendant, Joshua R. Treem's Motion to exclude evidence produced during a recorded interview with a third-party, as well as from a search of Treem's law firm. Dkt. 245. For the reasons stated below, the Motion to Exclude, Dkt. 245, is **DENIED**.

The Government has filed a multiple count indictment against Maryland lawyer Treem and two of his alleged Co-Conspirators, Ravenell and Gordon. The indictment alleges that the three men carried out a conspiracy to create false records and obstruct a criminal investigation into Ravenell's alleged ties to a money-laundering scheme and narcotics sales. Dkt. 281 at 20. The Government charges that the conspirators attempted to meet with potential witnesses and influence their testimony, or secure false affidavits that could be later used to undermine the witnesses' credibility. Dkt. 281 at 21-22.

The indictment specifically alleges that Ravenell directed Gordon to twice visit a potential witness in Texas to attempt to get the witness to affirm a false statement. Dkt. 281 at 13-14. The indictment recounts that the conspirators again attempted to criminally influence a different witness in Phoenix, Arizona. *Id.* at 23. Treem and Gordon travelled to the Towers Jail where they met with R.B., who they believed might testify against Ravenell. *Id.* Unbeknownst to the two men, the meeting was recorded on video. Dkt. 245-1 at 8. Treem brought a document to the meeting titled "KWR combined notes" that contained multiple false statements that could be used to

undermine R.B.'s credibility at a future trial if R.B. affirmed the document. Dkt. 254 at 2. The Government asserts that Ravenell authored the "KWR combined notes" based on a *Jencks* production that was obtained from R.B.'s lawyer. *Id.* Treem was recorded taking handwritten notes while meeting with R.B. Dkt. 281 at 44.

On February 9, 2019, Treem made an ex-parte communication to a Maryland District Judge who Treem believed would be overseeing Ravenell's criminal trial. *Id.* at 42. The letter made several statements that misrepresented the meeting between Gordon, Treem, and R.B. *Id.* The Government asserts that this act was part of a scheme to obstruct justice through the creation of false records. *Id.* at 46. Based on this understanding, the Government obtained a search warrant for materials it alleges were integral to the conspiracy. *See* Dkt. 245-1. The Government executed the search warrant and seized several items. Dkt. 254 at 4. Among the various materials seized were the "KWR combined notes," Treem's handwritten notes, and a declaration of Sean Gordon that discussed the September 9th meeting with R.B. Dkt. 245 at 1. Treem has now moved to exclude the evidence from trial based on the attorney-client privilege.

### i. The Government has demonstrated that the crime-fraud exception should apply.

The privilege between an attorney and his client has been recognized as essential under federal law. *United States v. Zolin*, 491 U.S. 554, 562 (1989) ("We have recognized the attorney-client privilege under federal law as the oldest of the privileges for confidential communications known to the common law.") (internal quotations omitted) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). However, the privilege is not absolute. Federal law recognizes that the privilege cannot be used to aid in the commission of a crime or fraud. *See id.* at 562, 575 (holding that *in camera* review could be used to determine if the crime-fraud exception would apply to materials that were claimed to be privileged); *see also In re Grand Jury Subpoena (Under Seal)*,

884 F.2d 124, 127 (4th Cir. 1989). For the Government to assert that the crime-fraud exception applies to the evidence in question, it is required to make a *prima facie* showing that the evidence falls within the exception. *United States v. Under Seal (In re Grand Jury Proceedings #5)*, 401 F.3d 247, 251 (4th Cir. 2005) ("In satisfying this prima facie standard, proof either by a preponderance or beyond a reasonable doubt of the crime or fraud is not required.") (citing *Union Camp Corp. v. Lewis*, 385 F.2d 143, 145 (4th Cir. 1967)).

To make a *prima facie* showing that the crime-fraud exception applies to the materials in question, the Government must show: "(1) the client was engaged in or planning a criminal or fraudulent scheme when he sought the advice of counsel to further the scheme, and (2) the documents containing the privileged materials bear a close relationship to the client's existing or future scheme to commit a crime or fraud." *Id.* (citing *Chaudhry v. Gallerizzo*, 174 F.3d 394, 403 (4th Cir. 1999)). The first prong is met if the evidence shows a crime or fraud was "ongoing or about to be committed." *Id.* (citations omitted). The second prong is met when the privileged information has a "close relationship" with the fraudulent or criminal activity. *Id.* (citing *Chaudhry*, 174 F.3d at 403). The Court finds based on the evidence that the Government has demonstrated a *prima facie* case that the crime-fraud exception applies to the attorney-client privilege asserted for the evidence in question.

### ii. The crime-fraud exception applies to opinion work product.

Treem argues that the video tape of the interview between himself, Gordon, and R.B. reflects the opinion work product of an attorney. Dkt. 274 at 1. Treem cites to *In re Grand Jury Subpoena* for the proposition that opinion work product "enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances." 870 F.3d 312, 316 (4th Cir. 2017) (quoting *In re John Doe*, 662 F.2d 1073, 1080 (4th Cir. 1981)). However, the crime-fraud

exception can still apply to an attorney's opinion work product. *Id.* For the exception to apply in this case, the Government must demonstrate "attorney knowledge of or participation in the client's crime or fraud." *Id.* at 319 (finding that the crime-fraud exception was correctly applied by the district court after "the United States provided ample evidence that the Defendant likely engaged in perjury or production of a fraudulent document" and the privileged information sought bore a close relationship to the fraud in question) (citations omitted).

The Government has provided ample evidence that Treem had knowledge of the crime he perpetuated during the meeting. The search warrant for Treem's law firm extensively details the fraudulent document written and sent by Treem to the Maryland District Judge. Dkt. 245-1 at 19. Treem attended the video taped meeting with Gordon, the same individual who had furthered the conspiracy on another occassion by trying to obtain false statements from a witness in Texas. Dkt. 281 at 22 ("On August 5, 2013 **Ravenell** and **Gordon** traveled to a detention center where [the witness] was being held to attempt to meet with [the witness]…" to improperly influence the witness) (emphasis in original)). The evidence also indicates that the meeting bore a close resemblance to the supposed *modus operandi* of the conspiracy. Namely, it was an attempt to elicit false statements from a potential witness to be used to impeach that witness at trial. *See* Dkt. 281 at 20. There is sufficient evidence to satisfy both prongs of the requirement for the crime-fraud exception to apply to the recordings of the meeting between Treem and R.B. in Arizona.

### iii. *State v. Martinez* does not apply to the current case.

Treem cites to the New Jersey decision in *State v. Martinez* to argue that recording an interview between a defense attorney and a potential witness is a violation of the attorney-client privilege. 220 A.3d 498, 520 (N.J. App. Div. 2019). *Martinez* is not binding precedent and is factually distinct from this case. In *Martinez*, the Government acted on false information that a

defense attorney might attempt to bribe a confidential informant during an interview. *Id* at 501. The prosecutor was investigating potential witness tampering within his jurisdiction. *Id*. The *Martinez* court remanded so that the New Jersey County Court could determine if the underlying narcotics trial had been unfairly prejudiced by the recording of the interview. *Id.* at 528-529.

In contrast, in the present case, there was illegal activity uncovered in the recording. Dkt. 254 at 14 (the Government argues Treem understood the statements presented to R.B. to affirm were false). In contrast to *Martinez*, Treem is no longer representing Ravenell, and Treem was informed by the Government that there were believed to be multiple nonwaivable conflicts of interest in the representation of Ravenell long before a trial would begin. Dkt. 245-1 at 21. Furthermore, the *Martinez* court explicitly recognizes that "...in authorized instances, relevance-based Government surveillance of attorney interviews of witnesses is permissible..." 220 A.3d at 529-30. *Martinez* does not stand for the proposition of absolute prohibition on recording attorney interviews, and is also factually distinct from the current case.

### iv. The crime-fraud exception applies to the "KWR combined notes" and to Treem's handwritten notes.

The Government argues that it has shown that Treem and Ravenell planned and were engaged in a criminal and fraudulent scheme, and that the September 2017 meeting with R.B. in Arizona has a close relationship to that scheme. Dkt. 254 at 15. Phone records of Treem and Ravenell are consistent with the two acting in concert prior to the 2017 meeting. Dkt. 245-1 at 26. The content of the "KWR combined notes" and Treem's handwritten notes are reflected in the fraudulent letter sent to the Maryland District Court Judge. *Id.* at 27. The Court finds that the evidence supports the Government's theory that the criminal conspiracy was carried out using the substance of both the "KWR combined notes" and Treem's handwritten notes. Moreover, unprivileged information indicates that Ravenell gave the "KWR Combined Notes" to Treem and

Gordon for the purpose of committing or furthering a crime or fraud. Dkt. 228 at 12-15. The evidence shows that Treem had knowledge and an intent to carry out a criminal act. The Government has therefore made a *prima facie* showing that the crime-fraud exception should apply to any privilege asserted for the documents in question.

### v. The Gordon affidavit is admissible.

The Court finds that the Gordon affidavit is not work product and is therefore not privileged. *See Diaz v. Devlin*, 327 F.R.D. 26, 30 (D. Mass. 2018) ("That attorney prepared affidavits comprised of factual statements are not protected by the work product doctrine appears to be the majority view."). Even if the Gordon affidavit was work product, it would still be admissible under the crime-fraud exception for the same reasons the exception applies to the "KWR combined notes" and Treem's handwritten notes. The Gordon affidavit appears to mirror the pattern of behavior that the Government alleges is the method of operation of the criminal conspiracy.

The Court finds that even if the privilege asserted for the documents and recordings in question is valid, the Government has proffered more than the required evidence to prove a *prima facie* case for the crime-fraud exception to apply. Therefore, Defendant Treem's Motion to Exclude, Dkt. 245, is **DENIED**.

### h. Motion for Evidentiary Hearing

This matter comes before the Court on the Defendants' Motion for an Evidentiary Hearing. Dkt. 297. The Defendants argue for reasons described below that there is potential exculpatory evidence that must be delved into during a full evidentiary hearing. For the reasons stated below, the Motion for an Evidentiary Hearing, Dkt. 297, is **DENIED**.

As discussed previously, the Government has filed a multiple count indictment against the Co-Defendants, Ravenell, Treem, and Gordon, Dkt. 281 at 19, believing that the conspirators

attempted to influence a witness, R.B., in Phoenix, Arizona on September 9th and 10th of 2017. *Id.* at 23. Treem (working as Ravenell's attorney) and Gordon travelled to the Towers Jail where they met with R.B., an individual who they believed might testify against Ravenell. *Id.* Unbeknownst to the two men, the meeting was recorded on video by R.B. with a hidden camera. Dkt. 245-1 at 8. Treem brought a document to the meeting titled "KWR combined notes" that contained multiple statements for R.B. to affirm that would possibly exculpate Ravenell in earlier charges. Dkt. 254 at 2.

The Defendants now argue that the Government has not disclosed evidence in violation of the requirements of *Brady v. Maryland.* 373 U.S. 83, 87 (1963). Specifically, Defendants argue that the tape of the interview was not produced to Defendants timely when the case neared the first trial date, even though the trial was continued. The Defendants assert that it is necessary to question R.B., R.B.'s attorney, and "any Government officials who had involvement in any communications between the Government and R.B. or his attorney" at a full evidentiary hearing to determine the circumstances behind the supposed *Brady* violation. Dkt. 297 at 1.

In *Brady*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment..." 371 U.S. 83, 87. The disclosure of potentially exculpatory *Brady* materials are necessary to avoid an unfair trial. *Id.* The Court has explained that *Brady* implicitly requires disclosure only of evidence that is material to the proceeding. *United States v. Bagley*, 473 U.S. 667, 675 (1985) (citing *United States v. Agurs*, 427 U.S. 97, 104 (1976). However, "the prosecutor is not required to deliver his entire file to defense counsel" but rather must only make disclosures to ensure the Defendant has a fair trial. *Id.*

### i. The Defendants have not shown that their Due Process rights were violated under *Brady*.

The Government argues that there was no violation of the Defendants' due process rights because the substantive facts of the September 2017 interview were already known to the Defendant well before his first trial date. Dkt. 299 at 3. The Court agrees with the Government's argument. The Fourth Circuit has made it clear that "information actually known by the Defendant falls outside the ambit of the *Brady* rule." *Fullwood v. Lee*, 290 F.3d 663, 686 (4th Cir. 2002). When that information is held by a source that a reasonable defendant would have looked at, the exculpatory information does not imply there was a violation of *Brady. See United States v. Roane*, 378 F.3d 382, 402 (4th Cir. 2004); *United States v. Wilson*, 901 F.2d 378, 381 (4th Cir. 1990).

All the substantive facts that are shown in the recorded interview were known by the Defendants Treem and Gordon. It is reasonable to expect that Defendant Ravenell was apprised of all the substantive facts that were discussed in the interview because Treem was Ravenell's lawyer at the time the interview was conducted.

It does not affect the Court's determination that the recording of the September 2017 interview was not disclosed immediately at the time the first indictment was unsealed against Ravenell. District courts have found that a timely disclosure of *Brady* materials is necessary to allow a "fair opportunity to effectively utilize such information in preparing for trial." *United States v. Perry*, 2014 U.S. Dist. LEXIS 112277, at *13 (E.D. Va. August 2, 2014); *ref, United States v. O'Hara*, 301 F.3d 563, 569 (7th Cir. 2002) ("Delayed disclosure of evidence does not in and of itself constitute a *Brady* violation.") (citations omitted). In the present case, the information was disclosed in February 2021, Dkt. 299 at 5, nine months prior to their trial. *Id.* The Defendants' right to a fair trial has not been prejudiced in a way that would invoke a violation of *Brady*.

### ii. There is not a Constitutional entitlement to discovery in a criminal case.

The Defendants have argued that an evidentiary hearing is also necessary to resolve factual questions relating to the extent and manner of the Government's influence over R.B. Dkt. 297 at 5. The Defendants believe that R.B. may have been directed by the Government agents who helped set up the recording of the September 2017 interview. *Id.*; Dkt. 302 at 4; Dkt. 304 at 4. The Defendants argue that the Government must be concealing evidence that could be used for impeachment.[1] Dkt. 304 at 3.

It has long been recognized that evidence that could impeach a witness is material evidence that must be disclosed under *Brady. See United States v. Bagley*, 473 U.S. 667, 676 (1985). To demonstrate that evidence needs to be disclosed, a defendant must demonstrate a "reasonable probability" that the disclosure would affect the outcome of the proceeding. *See United States v. Caro*, 597 F.3d 608, 619 (4th Cir. 2010); *ref, Bagley*, 473 U.S. at 682. However, to demonstrate that this "reasonable probability" exists, the defendant cannot rely on mere speculation. *Id.*; *ref, United States v. Agurs*, 427 U.S. 97, 109-10 (1976) ("The mere possibility that an item of undisclosed information might have helped the defense or might have affected the outcome of the trial does not establish 'materiality' in the constitutional sense.") The Defendants in the current case have based their arguments on supposition and assumptions. The Defendants have not relied on any factual evidence or legal principle that shows that an evidentiary hearing would be useful or necessary.

---

[1] The Defendants argue that "[a]ll statements made by the Government and its agents that could be interpreted as either pressure or inducement to provide inculpatory statements about Mr. Ravenell should be disclosed." Dkt. 302 at 4. The Defendants also argue: "If [R.B.'s] statements to Messrs. Treem and Gordon on September 9 or 10, 2017 conflict with the statements and information he provided about Mr. Ravenell to the Government ... that conflict transforms the recordings into *Brady* for a separate and independent basis." Dkt. 304 at 3 (citations omitted).

In their reply, the Defendants state that "a hearing is necessary for the defense to obtain discovery of *Brady* material." Dkt. 302 at 3 (cleaned up). The Supreme Court has stated that "there is no constitutional right to discovery in a criminal case, and *Brady* did not create one." *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977); *see also Caro*, 597 at 619 ("We have often noted that *Brady* requests cannot be used as discovery devices"); *United States v. Paulino*, 1996 U.S. App. LEXIS 30032 at *4 (4th Cir. November 20, 1996) ("Mere speculation that *Brady* material exists does not justify fishing expeditions in Government files"); *United States v. Crowell*, 586 F.2d 1020, 1029 (4th Cir. 1978) ("We hold that *Brady* does not apply in such cases in the absence of some demonstration that the material sought would be exculpatory..."). The Defendants' request for an evidentiary hearing asks the Court to grant it extensive discovery that is not required by *Brady* based solely on speculation.

### iii. There was no search of Treem nor Gordon.

The Defendants have also stated that there is a need for an evidentiary hearing to resolve the scope of the Government's involvement in video recording the September 2017 interview. Dkt. 206 at 3-4. The Defendants appear to argue that R.B. was a Government agent that obtained privileged information; therefore, an evidentiary hearing is necessary to determine if R.B. consented to making the recording and if R.B. was acting at the Government's direction.[2] *Id.* The Government argues there is no unresolved material fact, and points to evidence that shows R.B. did consent to the interview, R.B. voluntarily agreed to record the interview, and there is no formalized agreement between R.B. and the Government. Dkt. 299 at 10-12.

---

[2] The Defendants reference *United States v. Jarret.* 338 F.3d 339, 344 (4th Cir. 2003). This case discusses when a search by a non-government actor constitutes a search by the Government. The Defendants have not argued that the interview was an unlawful search and it is unclear how this case is applicable to the matter presented to the Court. An interview is not considered a search that infringes a Defendant's Fourth Amendment rights when it is reasonable. *See Wyman v. James*, 400 U.S. 309, 318 (1971).

The Defendants argue that *Boone v. Paderick* applies to the current case. *See Boone v. Paderick*, 541 F.2d 447, 451 (4th Cir. 1976) (Holding that a prosecutor concealing a police officer's promise of leniency to a witness was a denial of due process.) However, in the present case the Defendants are aware – before their trial – that R.B. is cooperating with the Government. Furthermore, there does not appear to be any real dispute that R.B. is voluntarily cooperating with the Government.[3] The Defendants continue to insinuate that the Government should be presumed to have influenced R.B. based on mere speculation.[4]  This speculation is neither persuasive nor plausible enough to find this presumption.  An evidentiary hearing is not legally warranted to allow the Defendants to explore these theories before trial.

The Defendants have not demonstrated a factual or legal basis that an evidentiary hearing is necessary to protect their due process rights. There is no plausible allegation made that there is a violation of the *Brady* doctrine. The Motion for an Evidentiary Hearing, Dkt. 297, is **DENIED**.

---

[3] The Defendants argue that there must be statements made or notes memorializing the Government's meeting with R.B., because R.B. met with Government agents without the Defense counsel present. Dkt. 304 at 2. The Defendants' argument appears to imply that R.B. was somehow induced to make false statements based on supposition (i.e. there was a meeting therefore there is exculpatory evidence). Like the prosecutors in *Paulino*, the Government has asserted there is no exculpatory or impeachment evidence. 1996 U.S. App. LEXIS 30032 at *3.  It seems unreasonable to interpret *Brady* to require that the Government prove a negative. In other words, the Government does not have to demonstrate that a material fact does not exist based on the claims of the Defendants.

[4] "Indeed, at the pretrial motions hearing in this case, the Government conceded that it told R.B. – presumably after R.B. provided statements exonerating Mr. Ravenell of all criminal liability—that he should 'tell the truth.' All statements made by the Government and its agents that could be interpreted as either pressure or inducement to provide inculpatory statements about Mr. Ravenell should be disclosed." Dkt. 302 at 4 (citations omitted).

i. **Motion for Disclosure of the Government's Presentation of Law to the Grand Jury for Prosecutorial Misconduct**

Defendants have stated in this Motion, Dkt. 311, that there was prosecutorial misconduct in the Grand Jury proceedings that requires either a disclosure of those Grand Jury proceedings under Federal Rule of Criminal Procedure 6(e) or a dismissal of the indictment.

As previously noted, Defendant Ravenell is charged in a multiple count Second Superseding Indictment that charges that Ravenell was part of a conspiracy to distribute narcotics, launder the proceeds of narcotics sales, and to obstruct justice. *See* Dkt. 281. Ravenell now alleges that when the Government secured the indictment, the "Government knowingly presented and relied on material false testimony to the grand jury." Dkt. 311 at 1.

The proceedings in front of a grand jury are presumed to be secret. *See* Fed. R. Crim. P. 6(e)(2)(B). The court may allow disclosure of the grand jury proceedings "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(ii). To show that this exception applies, a defendant must show that there are "particularized and factually based grounds" that would warrant dismissal of the indictment. *See United States v. Loc Tien Nguyen*, 314 F. Supp. 2d 612, 617 (E.D. Va. 2004) ("The desire to investigate whether any grand jury impropriety has occurred is insufficient to rebut the strong presumption of regularity in grand jury proceedings.").

An indictment should be dismissed when actual prejudice to the Defendant is established. *United States v. Feurtado*, 192 F.3d 420, 424 (4th Cir. 1999) (citing *Bank of Nova Scotia v. United States*, 487 U.S. 250 (1988)). To establish that the Defendant was prejudiced by the proceedings of a grand jury, that Defendant must show the decision to indict was "substantially influenced" or that there is "grave doubt" that the decision to indict was substantially influenced. *Id.*

Ravenell argues that there are three showings of prosecutorial misconduct that demonstrate the particularized and factual grounds that may require a dismissal of the indictment: (1) the Government attorneys have been accused of prosecutorial misconduct before; (2) the Government elicited false testimony from a cooperating witness, K.R.; (3) and the Government elicited false testimony from another cooperating witness, J.B. Dkt. 311 at 6, 11, 16.

### i. The Oral Argument

Ravenell asserts that the Government has suborned false testimony in a prior grand jury proceeding. Dkt. 311 at 15-16. The Government vehemently denies this accusation.[5] Dkt. 326 at 6-9. Ravenell believes that the evidence for this prior misconduct is a brief exchange from a Fourth Circuit oral argument. *See United States v. Paylor*, No. 19-7861 (4th Cir. Dec. 17, 2019). In the oral argument, Judge Thacker asked the Government, "so then the Government did suborn perjury in the grand jury?" *Id.* Oral Argument at 17:50-17:55.

The oral argument is not a factual finding by the Fourth Circuit. The Fourth Circuit has not yet published a decision on the case as of the time of this Order. This is not evidence showing that irregularities occurred before the Grand Jury, nor evidence that is "factually based or particularized." *See Loc Tien Nguyen*, 314 F. Supp. 2d 616, 617. This is not evidence that persuades the Court to grant a remedy.

### ii. There has been no showing that the Government elicited false testimony from K.R.

Ravenell points to two exchanges of the Government questioning of a witness, K.R., in front of the Grand Jury for the first indictment of Ravenell. Dkt. 311 at 8. Ravenell argues that

---

[5] In its response, the Government explains the facts of the Grand Jury proceedings in question. The Government asserts that witnesses told the Grand Jury that they plead guilty to crimes they did not commit to avoid jail time. This testimony clearly conflicts with the factual statements in their guilty pleas. The Fourth Circuit is now considering the *habeas* petition of one of these witnesses. Dkt. 326 at 7.

these questions are improper because they rely on information that the prosecution knows is false. Dkt. 311. Ravenell argues that K.R. testified that Ravenell was at a 2013 meeting in Houston, Texas. Dkt. 311 at 7. Ravenell further argues that the Government knows this is false testimony because the meeting was recorded by a cooperating witness, and the audio transcript of the meeting does not show Ravenell speaking.[6] *Id.* at 8. Ravenell argues that this prejudices the trial because the transcript of the meeting reveals individuals discussing a "sourcing issue." *Id.* at 8. Ravenell goes on to argue that K.R. told the Grand Jury that she heard about the "sourcing issue" from "Ken and Ed." The Government then allegedly elicited false testimony by asking the clarifying question, "Ken Ravenell and Ed Leyden?" *Id.* The Defense believes the Government knew this was a false statement because Ravenell could not have told K.R. about the sourcing issue *at the meeting* where he was not present. *Id.*

Looking at the transcript, it appears the question was "Who called it a sourcing issue?" as opposed to "who called it a sourcing issue at the meeting?" *See* Dkt. 311-20 at 34. The transcript does not clearly demonstrate that this was an inconsistent or untruthful statement. It also appears from the record that K.R. had multiple interactions with Ravenell. *See Id.* The Government argues that it did not ask if Ravenell was physically present when he told her about the "sourcing issue." Dkt. 326 at 4. This single interaction does not demonstrate that the Government elicited false testimony in the Grand Jury proceedings.

Ravenell also argues that he has been prejudiced because the discussion of a "sourcing issue" presented to the Grand Jury was a discussion of legitimate business concerns. Dkt. 311 at 9. Ravenell bases this on one statement from the recorded conversation in Houston: "We have to

---

[6] The transcript of the meeting does show that an "unidentified male" makes several comments throughout the meeting, and a man name "Ken" is referred to by individuals in the transcript. *See* Dkt. 311-20 at 28, 79, 100, 144, 149, 152.

be able to show sourcing from legitimate places, which we know to be the case." Dkt. 311-20 at 20. This assertion that this was a conversation about innocent activity seems to be contradicted by other statements made during the conversation.[7] The Government has also pointed to other evidence that suggests the discussion was about hiding proceeds from narcotic sales, such as financial records and other witness testimony. Dkt. 326 at 4. Money laundering is also one of the charges against Ravenell in the Second Superseding Indictment. *See* Dkt. 281. There is no evidence that the Government elicited false or inconsistent statements about the "sourcing issue" in front of the Grand Jury.

Ravenell argues that K.R. also gave false testimony when she affirmed that a drug dealer told her to contact Ravenell if she was stopped by the police while carrying drug money. Dkt. 311 at 10. Ravenell argues this assertion is in contrast with her previous proffer to the Government, where she said she was never given specific instructions on what to say if confronted by law enforcement about the bag of drug money she was transporting. Dkt. 311-2 at 6. The Government argues that K.R. had not been given specific instructions on that occasion, but in general had been given instructions about what to do if confronted by law enforcement.  Dkt. 326 at 4. The Government's position appears to be in line with the rest of K.R.'s Grand Jury testimony, namely her agreeing that when someone had a legal issue associated with a specific drug dealer, then they should contact Ravenell. Dkt. 311-6 at 25.

None of K.R.'s Grand Jury testimony gives any indication that a false statement was purposefully elicited or that a false statement was made. Nothing that Ravenell argues shows there is any prosecutorial misconduct regarding K.R.'s Grand Jury testimony.

---

[7] "Call it what it is, the sale of drugs." Dkt. 311-20 at 2. "Oh, you took the money out of the bank and you give it back to [a drug dealer]" Dkt. 311-20 at 58. "A kickback" Dkt. 311-20 at 58. "This [is] Breaking Bad." Dkt. 311-20 at 138.

### iii. There has been no showing that the Government elicited false statements from J.B.

Ravenell argues that the Government has prejudiced him by eliciting false testimony from a second witness, J.B. Dkt. 311 at 11. Ravenell characterizes prior proffers by J.B. as stating that he had no direct conversation with Ravenell about drug money. Dkt. 311 at 12. Ravenell believes that this means the statement made in the Grand Jury that "he knew the money deposited into LOC marketing was drug money" was false. *Id.* It is unclear how these are inconsistent statements. Ravenell also argues that a statement made in front of a Grand Jury was not made in a prior proffer, and so it must be false. *Id.* at 13. This does not logically indicate that the statement is false, and it does not indicate that the prosecutor was eliciting false testimony.

There are no facts here that would warrant invading the "long-established policy that maintains the secrecy of grand jury proceedings in the federal courts." *Dennis v. United States*, 384 U.S. 855, 869 (1966) (quoting *United States v. Procter & Gamble Co.*, 356 U.S. 677, 681 (1958)). None of the factual evidence Ravenell points to demonstrates the "particularized need" to disclose the Grand Jury testimony or to dismiss the indictment. See *Dennis*, 384 U.S. 855, 870. There is no evidence of prosecutorial misconduct. There is no evidence that false testimony was elicited in the Grand Jury. There is no evidence the Grand Jury relied on any false testimony when it issued an indictment. Therefore, Ravenell has not demonstrated any prejudice that would warrant a remedy from the Court. The Motion, Dkt. 311, is **DENIED.**

### j. Status of Issues Raised in Defendants' Motion to Compel

The Defendants sent a letter to the Court on October 4th, titled "Status of Discovery Issues Addressed in Motion to Compel." Dkt. 345. The Government responded to this letter on October 5th, Dkt. 347, and asserted that "[t]he only unresolved issue that can be discerned from the October 4th Letter is that the Government has declined to take on the impracticable task of converting

hundreds of Category 3 jail calls to which the defense has long had access." Dkt. 347 at 5. The Court has reviewed these assertions and finds that the Government has complied with its obligations for the jail call tapes.

Defendants cite two cases in support of their position that the Government should convert the jail call tapes: *United States v. Meredith*, 2015 WL 5570033 (W.D. Ky. Sept. 22, 2015) and *United States v. O'Keefe*, 537 F. Supp. 2d 14 (D.D.C. 2008). The Government is correct that these two cases support the Government's position – rather than the Defense's position.

In *United States v. Meredith*, the Court *denied* Defendant's motion to compel production of electronically stored information to a usable format. *United States v. Meredith*, 2015 WL 5570033, at *1 (W.D. Ky. Sept. 22, 2015). The Court noted that all files provided to the Defendant were searchable using common applications also used by the Government for its own purposes, *id.* at *2, and held that "[t]he Government is under no obligation to provide discovery that is searchable by a particular application *or in a specific fashion favored by a party*," *id.* (emphasis added).

In *United States v. O'Keefe*, the Court turned to the Federal Rules of Civil Procedure for guidance, and noted that Federal Rule of Civil Procedure 34(b) demands that a party must produce documents "in the form in which they are ordinarily maintained or must organize and label them to correspond with the categories of the request for production." *United States v. O'Keefe*, 537 F. Supp. 2d 14, 19 (D.D.C. 2008). The Court noted that the Advisory Committee "intended that there would be equality between the parties in their ability to search the documents." *Id.* In that case, the Court found that the documents were *not* produced in the manner in which they were originally obtained, as Federal Rule of Civil Procedure 34(b) requires, because the documents were removed from their original containers and their labeled file folders. *Id.* at 19-20.

In this case, the Government contends that "the Government produced the Category 3 jail calls to the defense the way they were produced to the Government…" Dkt. 347 at 5. As such, *O'Keefe* is distinguishable and does not serve the Defendants. Moreover, because *Meredith* instructs that "[t]he Government is under no obligation to provide discovery that is searchable by a particular application *or in a specific fashion favored by a party*," *United States v. Meredith*, 2015 WL 5570033, at \*2 (W.D. Ky. Sept. 22, 2015) (emphasis added), this case also does not serve Defendants.

The Court finds that the Government has complied with its obligations for the jail call tapes.

### III. CONCLUSION

Based on the foregoing analysis, Defendants' motions are **GRANTED IN PART** and **DENIED IN PART**.

It is **SO ORDERED.**

October 22, 2021
Alexandria, Virginia

Liam O'Grady
United States District Judge