**Schulte Roth&Zabel** LLP

901 Fifteenth Street, NW, Suite 800
Washington, DC 20005
202.729.7470
202.730.4520 fax

www.srz.com

Writer's Direct Number
202.729.7476

Writer's E-mail Address
Pete.White@srz.com

May 6, 2022

**BY E-MAIL**

The Honorable Liam O'Grady
Judge, U.S. District Court
United States District Court for the District of
Virginia, sitting by designation in the District of
Maryland
401 Courthouse Square
Alexandria, VA 22314

   Re: *United States v. Ravenell* (1:19-cr-00449)

Dear Judge O'Grady:

  We write in anticipation of Kenneth Ravenell's sentencing hearing scheduled for May 27, 2022 (if his motion for new trial is denied), and in opposition to the government's sentencing memorandum submitted on April 29, 2022.  *See* Gov't Sent'g Mem. (Dkt. 552).[1]

  Jury verdicts matter.  Jury verdicts have consequences.  Yet, here, the government would have this Court sentence Mr. Ravenell as if the jury verdict has no bearing on Mr. Ravenell's sentencing exposure and eventual sentence.  In the government's eyes, the jury's verdict acquitting Mr. Ravenell of six of the seven charges against him has no meaning or consequence for sentencing.

  Indeed, the government's sentencing memorandum reflects an alternate universe where no trial took place in which: (1) the jury rejected six of the seven counts charged against Mr. Ravenell (and convicted him on the only charge for which the jury was instructed it could consider conscious avoidance); (2) the jury rejected in total the government's theory that Mr. Ravenell served as the in-house counsel to the Byrd drug trafficking organization; (3) the government's main Byrd-

---

[1]  The exhibits referenced in Mr. Ravenell's Sentencing Memorandum are incorporated by reference into this opposition.  *See* Def. Sent'g Mem. (Dkt. 549).

The Honorable Liam O'Grady
May 6, 2022
Page 2

conspiracy cooperators were exposed as liars; and (4) the jury fully acquitted Mr. Ravenell's two co-defendants. The government's denial of the jury verdict is so complete that their sentencing memorandum *does not even acknowledge* the jury and its verdict, or how the verdict significantly impacts the loss amount and other sentencing factors and, thus, Mr. Ravenell's sentencing exposure.[2]

**I.  The Split Verdict Shows the Jury Wholly Rejected the Byrd DTO-Based Allegations, and Convicted Mr. Ravenell for Limited Conduct Connected to Leonaldo Harris.**

The government presented the jury with two entirely separate drug trafficking organizations and conspiracies: (1) the Byrd DTO, which the government alleged Mr. Ravenell served and furthered as in-house counsel by providing guidance, protection, and money laundering services; and (2) the Harris DTO, which only provided Mr. Ravenell with drug trafficking proceeds in return for legitimate criminal defense legal services. *See, e.g.*, Trial Tr. 108:2-4 (Dec. 22, 2021) (AUSA Hines) (explaining in summation argument that "Leonaldo Harris and Avarietta Bailey were not in Richard Byrd's drug crew. That's an entirely separate crew. No association with Richard Byrd."); Trial Tr. 18:22-25 (Dec. 7, 2021) (AUSA Wise) (explaining in opening argument that "in 2013 another drug dealer, Leonaldo Harris was arrested by federal authorities. He ran a separate drug distribution operation from Byrd. Harris hired Ravenell."); Trial Tr. 120:2-8 (Dec. 8, 2021) (AUSA Wise & Byrd) (Wise: "Who is Leonaldo Harris, Mr. Byrd?" Byrd: "Leonaldo Harris is another guy that had his own marijuana operation." [. . .] Wise: "Was he part of your or the operation you were part of?" Byrd: "No, he was a part of a different operation."); Trial Tr. 170:4-9 (Dec. 16, 2021) (AUSA Hines & Harris) (Hines: "Are you familiar with an individual named Richard Byrd?" Harris: "Yes, I am." [. . .] Hines: "Were you ever part of the same drug organization?" Harris: "No, we never worked together."). The verdict makes it crystal clear which allegations the jury credited, and which allegations it rejected. The only plausible reading of the verdict is that the jury rejected the Byrd DTO-related allegations fully and in total.

There is absolutely no other way to read the jury's verdict. The Byrd DTO was the sole foundation of the narcotics conspiracy count (Count 3). If the jury had believed the testimony of Byrd and his cohorts that Mr. Ravenell laundered drug proceeds for the Byrd DTO, they would have necessarily also found that Mr. Ravenell was a Byrd DTO co-conspirator and convicted him of Count 3. That is the only sensible outcome of a rational jury. Simply put, if the jury believed Byrd, Mr. Ravenell could not have laundered drug proceeds for the Byrd DTO without simultaneously being a co-conspirator in the Byrd DTO's drug trafficking. There is no way around this logic and self-evident reality.

On the other hand, there were no allegations, much less proof at trial, that Mr. Ravenell provided in-house counsel or "consigliere" services to the Harris DTO in return for the drug proceeds he received from Harris via Bailey. Therefore, rationally, the money laundering

---

[2]  As discussed in detail in our sentencing memorandum, the Court may consider acquitted conduct only if proven by a preponderance of the evidence, and those considerations must still be tethered to facts and reality—something the government's sentencing memorandum clearly is not.

The Honorable Liam O'Grady
May 6, 2022
Page 3

conviction (Count 2) is necessarily confined to the Harris DTO money laundering allegation. The split verdict cannot be reconciled otherwise.

The Court should respect and value the jury's verdict, particularly the acquittals, by rejecting and disregarding the government's self-serving recounting of the "facts" of this case, which include unproven and disproven allegations, proffered evidence that was rejected by the jury, and inexcusable errors totally unsupported by any interpretation of the trial record.[3] The government's recitation of allegations also fails to account for the significant gaps and conflicts in evidence that were presented at trial and which, as detailed in our sentencing memorandum, *must* be considered by this Court at sentencing. *See United States v. Willis*, 14 F.4th 170, 189 (2d Cir. 2021) (citing *Doe v. Menefee*, 391 F.3d 147, 164 (2d Cir. 2004)). Where the totality of evidence presented at trial renders testimony or evidence implausible, the Court may not consider it for purposes of sentencing. *See id*.

None of the information asserted in the government's factual summary was proven at trial by a preponderance of the evidence (or any standard). Indeed, the government lost six counts as a result of being utterly unable to prove any of the Byrd DTO-related allegations it now asserts as the basis for its sentencing recommendation. More egregiously, the government also now attempts to rely upon allegations that were *disproven* by its own witnesses and evidence at trial. The jury

---

[3]  The errors in the government's recitation of supposed "facts" are pervasive and demonstrate a complete disrespect for the jury's verdict, the evidence actually presented at trial, and the government's obligation to convey facts accurately to this Court. The government believes its recitation of facts—proven false at trial—are nonetheless reality based simply on what it wishes had been proven. To provide just a couple of examples:
(1) The government falsely states that "Harris paid Ravenell more than $350,000 in drug proceeds through an associate of Harris's, Avarietta Bailey" (Gov't Sent'g Mem. at 15), despite Bailey herself *testifying* that she only paid Mr. Ravenell "somewhere between $175,000 and $200,000." *See* Exh. 2 (Gov't Trial Exh. 92a) (identifying approximately $187,000 in payments to the Murphy Firm); Trial Tr. 270:8-13 (Dec. 16, 2021) (Bailey & White) (White: "I think you said that you paid somewhere between $175,000 and $200,000 for this representation on direct examination, correct?" Bailey: "Correct." White: "So it wasn't 300 or $350,000, right?" Bailey: "No."). It is clear from Harris's and Bailey's testimony that any additional money Harris alleges he provided to Bailey for Mr. Ravenell was either not actually ever provided, or was stolen/withheld by Bailey for herself, as she expressly testified she did *not* provide $350,000 to Mr. Ravenell. *Compare* Trial Tr. 270:8-13 (Dec. 16, 2021) (Bailey & White), *with* Trial Tr. 184:21-25, Dec. 16, 2021 (Harris & AUSA Hines). What is also clear is that Bailey did not provide $350,000 to Mr. Ravenell, and the government is aware that its recitation of facts is inaccurate.
(2) The government falsely states that "[t]he evidence at trial showed that the Defendant laundered Byrd's funds during an extended period of time, namely, from 2009 until 2014," and cites to several exhibits (Murphy Firm ledgers)—*none* of which show any conduct whatsoever beginning in 2009. Gov't Sent'g Mem. at 19. Indeed, every exhibit cited by the government shows that Mr. Ravenell's representation of Byrd began in 2011.

resoundingly rejected the allegations asserted by the government here (that the government merely wishes had been proven), and the Court should as well.

### II.     The Guidelines Do Not Support the Range Calculated by the Government.

For the same reasons stated in Mr. Ravenell's Sentencing Memorandum with respect to the Guidelines recommendation in the Presentence Investigation Report ("PSR," Dkt. 537), the government's asserted Guidelines range also is unsupported by the law and the facts.  *See* Def. Sent'g Mem.  Mr. Ravenell will not reiterate those same points here and instead respectfully refers the Court to his prior submission (and any others incorporated therein by reference).

### III.    Mr. Ravenell's Law-Abiding Life and Accomplishments Are Mitigating, Not Aggravating, Factors.

The government argues that Mr. Ravenell's "background, education, and professional success" are aggravating § 3553(a) factors because Mr. Ravenell "didn't need to commit crimes to enrich himself."  Gov't Sent'g Mem. at 27.  The government's argument is a blatant attempt to weaponize Mr. Ravenell's distinguished career and impressive life story against him for sentencing.  It is an attempt this Court needs to not only reject, but do so soundly.

It is ridiculous to suggest that Mr. Ravenell is deserving of *more* punishment than he would otherwise receive because, absent the criminal conduct as found by the jury, he overcame the shackles of poverty to build a successful and virtuous life of service to his family, his community, and his profession.  Such an approach eviscerates the purpose and intent of § 3553(a)'s history and circumstances of the defendant factor.

Indeed, under the government's approach, no defendant's pre-conviction life would *ever* warrant sentencing mitigation.  If a defendant's pre-conviction life entailed prior criminal, antisocial, societal-harming conduct – a harsher sentence.  If a defendant's pre-conviction life was free of criminal, antisocial, societal-harming conduct (as is the case here) – a harsher sentence.  Through the government's lens of the history and characteristics factor, the defendant always loses and is never deserving of sentencing mitigation.  This "heads we win, tails you lose" approach is antithetical to the Court's § 3553(a)'s obligation to "impose a sentence sufficient, but not greater than necessary" to meet the purposes of sentencing.  *See* 18 U.S.C. § 3553(a).

### IV.    Fine and Forfeiture

Mr. Ravenell will address the government's forfeiture request when the government provides the required forfeiture notice detailing the amount of forfeiture sought, and the bases for it.

As a preliminary matter, any fine must be capped at $250,000, which is the maximum fine for a violation of 18 U.S.C. § 1957 by an individual.  *See* 18 U.S.C. § 3571(b).  Per the correct Guidelines calculation (*see* Def. Sent'g Mem.), the fine range corresponding with Mr. Ravenell's offense level under the Guidelines is $7,500 to $75,000.  *See* U.S.S.G § 5E1.2(c)(3).  As previously explained in Mr. Ravenell's PSR objections, the facts outlined in the PSR itself make clear that

The Honorable Liam O'Grady
May 6, 2022
Page 5

Mr. Ravenell is unable to pay any fine, notwithstanding the probation officer's counterintuitive conclusion otherwise. Mr. Ravenell has a negative net worth, and is therefore in debt. *See* PSR ¶ 78 (Dkt. 537). His assets are outstripped by his liabilities, leaving no ability to pay a fine without accumulating additional debt.

                                            Sincerely,

                                            */s/ Peter White*

                                            _____
                                            Peter H. White