UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| United States of America | * | |
| | * | Case No.: 1:19-cr-00449 |
| v. | * | |
| | * | |
| Kenneth Ravenell | * | |
| | * | |
| Defendant. | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MOTION FOR RECONSIDERATION

Pursuant to Local Rules 207 and 105.10, Kenneth Ravenell, by and through undersigned counsel, respectfully moves this Court to reconsider its Amended Order (hereinafter "Order"), entered May 13, 2022 (Dkt. 559), denying Mr. Ravenell's Motion for a New Trial (Dkt. 542). The Court's Order is premised on significant errors of fact and law regarding the statute of limitations instruction proposed by Defendant, the proper application of the 18 U.S.C. § 1957(f) safe harbor, the evidence presented at trial regarding Mr. Ravenell's alleged knowledge, and the well-established standards set forth under *Yates v. United States*, 354 U.S. 298 (1957). Accordingly, the Court should reconsider its ruling, which conflicts with established Fourth Circuit and Supreme Court precedent and is based on an erroneous recounting of the record.

## LEGAL STANDARD

"A motion for reconsideration is appropriate to correct manifest errors of law or fact." *United States v. One 2003 Mercedes Benz CL500*, No. PWG-11-3571, 2013 WL 5530325, at \*2 (D. Md. Oct. 3, 2013) (citing *Potter v. Potter*, 199 F.R.D. 550, 552 n.1 (D. Md. 2001)) (internal quotation marks omitted); *see also United States v. Dickerson*, 971 F. Supp. 1023, 1024 (E.D. Va. 1997) (applying civil standard to motion for reconsideration in a criminal case "[a]s there is no provision in the Federal Rules of Criminal Procedure governing motions for

reconsideration"); *United States v. Christy*, 739 F.3d 534, 539 (10th Cir. 2014) ("Motions to reconsider are proper in criminal cases even though the Federal Rules of Criminal Procedure do not specifically provide for them . . . [and a] motion to reconsider may be granted when the court has misapprehended the facts, a party's position, or the law.") (internal citations omitted).  Mr. Ravenell respectfully requests the Court reconsider its ruling in light of several manifest errors of law and fact upon which the Court's decision is based.

## ARGUMENT

The interests of justice require Mr. Ravenell be granted a new trial under Federal Rule of Criminal Procedure 33 because the jury instructions contained key prejudicial errors that affected the fundamental fairness and integrity of the trial process.  The Court based its decision denying Mr. Ravenell's motion for new trial on several manifest errors.  First, the Court erroneously found that Mr. Ravenell requested a legally incorrect statute of limitations jury instruction from the Court.  In doing so, the Court disregarded the instruction language actually proposed by the defense in a timely fashion (focusing solely on an earlier proposed instruction).  Second, the Court erroneously concluded that as long as the Court instructed on the elements of the charged money laundering conspiracy, the Court was not required to instruct the jury on the statute of limitations. To the contrary, the law requires courts to instruct on the statute of limitations if the evidence would permit a jury to rationally find the prosecution untimely and the defense requests an instruction.  Third, the Court erroneously decided, as a matter of law, that evidence showed that the money laundering conspiracy continued into the limitations period, after July 2, 2014.  Fourth, the government and the Court erroneously interpreted *United States v. Blair*, 661 F.3d 755 (4th Cir. 2011), and other cases interpreting 18 U.S.C. § 1957(f), which make clear that under these facts, Mr. Ravenell is exempt from prosecution under the statute's safe harbor for his receipt of

Harris's drug proceeds as criminal defense legal fees.  Contrary to the Court's finding here, Leonaldo Harris and Avarietta Bailey both testified that Mr. Ravenell was paid for legal fees with Harris's drug proceeds.  The Court incorrectly concluded that the § 1957(f) safe harbor does not protect attorneys whose clients pay their criminal defense fees with drug proceeds, whether that payment is made directly or through an intermediary acting on their behalf.  Fifth, the Court erroneously determined that knowingly and intentionally attempting to conceal the source of funds from law enforcement supports a conscious avoidance instruction.  Finally, the Court's Order misreads *Yates* and its progeny, which require reversal when the jury might have convicted the defendant on an erroneous legal theory.

## I.    THE COURT'S FAILURE TO INSTRUCT THE JURY ON THE STATUTE OF LIMITATIONS CONSTITUTES REVERSIBLE ERROR.

Whether the alleged money laundering continued into the relevant limitations period is a factual matter to be decided by a properly instructed jury where a substantially correct instruction is requested and the evidence would support a finding of untimeliness.  The Court's determination at trial that this factual issue could be decided post-trial as a matter of law circumvented the jury's authority and constitutes reversible error.  The defense timely[1] proposed an instruction consistent with the Court's procedures that was a substantially correct statement of law (and which did ***not*** include an overt act requirement), as is required.  *See United States v.*

---

[1]    Jury instructions are timely if requested prior to jury deliberations.  *See* Fed. R. Crim. P. 30(d).  A statute of limitations defense is timely so long as it is raised at some point to the district court and not for the first time on appeal.  *See Musacchio v. United States*, 577 U.S. 237, 247 (2016); *see also United States v. Jarvis*, 7 F.3d 404, 409 (4th Cir. 1993) ("such defenses . . . as . . . the statute of limitations . . . must be raised ***at some time*** in the proceedings before the district court on pain of forfeiture") (emphasis added).  Mr. Ravenell raised a statute of limitations defense numerous times to the government and the Court before and during trial, and also presented and elicited evidence directly relevant to this defense at trial.  *See e.g.*, Mem. in Supp. of Mot. for New Trial at 4-5 (describing pre-trial limitations-related discovery requests and two separate mid-trial Rule 29 motions raising limitations defense).

*Pursley*, 22 F.4th 586, 591-92 (5th Cir. 2022); *see also* USG Ex. 3, Def. Revised SOL Jury Instruction (Dkt. 553-3).  Moreover, although the defense offered to correct a minor error in the standard of proof in its proposed instruction (which was the only error it contained), the Court nonetheless refused to instruct the jury on the impermissible bases that the issue was too confusing for the jury and was one that is to be decided by the Court post-trial as a matter of law. *See* Trial Tr. 6:5-13 (Dec. 22, 2021) (J. O'Grady).

> A.    **The Government Was Required to Prove and the Jury Was Required to Find that the Alleged Money Laundering Conspiracy "Continued Into" the Applicable Limitations Period.**

The Court committed reversible error by failing to instruct the jury on the applicable statute of limitations.  The Court's Order neglects to address the fundamental, indisputable error at trial in failing to give a statute of limitations instruction when requested:  to sustain a conviction, the government was required to prove and the jury was required to find that the alleged money laundering conspiracy "continued into" the limitations period.  *See United States v. Fishman*, 645 F.3d 1175, 1191 (10th Cir. 2011); *United States v. Green*, 599 F.3d 360, 372 (4th Cir. 2010); *see also United States v. Campbell*, 347 F. App'x 923, 927 (4th Cir. 2009) ("the statute of limitations is satisfied if the government '***alleges*** and ***proves*** that the conspiracy continued into the limitations period'") (quoting *United States v. Seher*, 562 F.3d 1344, 1364 (11th Cir. 2009)) (emphasis added).  The jury here was not allowed to make that determination. The law is well-settled.  Whenever a conspiracy charge relies on acts both within and beyond the limitations period, the jury ***must*** be instructed to determine whether the statute of limitations is satisfied.  *United States v. Head*, 641 F.2d 174, 177-79 (4th Cir. 1981) (reversing conviction where statute of limitations instruction was not given, explaining "[w]e simply have no way of knowing whether [defendant] was convicted for an offense barred by limitations.  We decline to engage in speculation of this sort in determining guilt in a criminal case."); *see also Pursley*, 22

F.4th at 592-93 (vacating conviction because, among other things, "[defendant] was entitled . . . to a jury instruction on the statute of limitations defense").  The well-settled case law makes clear that it is not enough, as the Court suggests, to simply instruct on the elements of the charged crimes.  *See* Order at 5.  Instructing on the elements of the charged crimes is separate from, and no substitute for, a statute of limitations instruction.

The Court held that *Head* is inapposite because it involved a conspiracy statute requiring proof of an overt act unlike the charged conspiracy in this case.  That is a distinction without a difference, however, because the government is obligated to prove a conspiracy is timely regardless of whether the conspiracy includes an overt act requirement.  The overt act versus non-overt act requirement bears only on ***how*** the government can prove compliance with the limitations requirement—whether through overt acts within the limitations period or, as here, by proving that an alleged conspiracy "continued into the limitations period."  *See, e.g.*, *United States v. Portsmouth Paving Corp*., 694 F.2d 312, 324 (4th Cir. 1982) (holding government was required to "prove beyond a reasonable doubt" that a non-overt act conspiracy "continued into the . . . limitations period," and explaining that "evidence of that continuation may relate to something other than an overt act"); *Green*, 599 F.3d at 372 (explaining that while proof of an overt act is not required for a money laundering conspiracy, "proof of overt acts can be useful for . . . showing that a conspiracy begun more than five years before the return of an indictment continued into a period within the statute of limitations").

The Fourth Circuit has held that, where an indictment rests in large part on acts occurring outside the limitations period, "there can be no doubt" that a defendant is entitled to an instruction requiring the jury to find that the conspiracy continued within the limitations period before it can find the defendant guilty.  *See Head*, 641 F.2d at 177; *see also generally* Second

5

Superseding Indictment (Dkt. 281).

The burden falls on the government to prove beyond a reasonable doubt that the alleged conduct continued into the applicable limitations period. *See Portsmouth Paving Corp.*, 694 F.2d at 324 ("the Government must prove beyond a reasonable doubt that the offending agreement continued into the five-year limitations period"); *see also Fishman*, 645 F.3d at 1191-93; *United States v. Sampson*, 898 F.3d 270, 276 (2d Cir. 2018); *United States v. Ciavarella*, No. 3:09-CR-272, 2018 WL 317974, at *8 (M.D. Pa. Jan. 8, 2018), *aff'd*, 765 F. App'x 855 (3d Cir. 2019) ("To find [the defendant] guilty of . . . money laundering conspiracy in the face of an appropriate statute of limitations instruction, the jury would have to find that the . . . conspirac[y] continued into the limitations period.").

The Court's error here was in failing to give *any* statute of limitations instruction when that factual issue was clearly posed by the evidence at trial.  Contrary to the Court's ruling, this issue could not be decided as a matter of law, and limitations determinations are not too confusing for the jury.  Because the Court, over the defense's objection, did not allow the jury to determine whether the government proved the charged conspiracy continued into the limitations period, Mr. Ravenell's conviction must be reversed.  There is no way for the Court to conclude now—beyond a reasonable doubt—that the jury's verdict would have been the same had a statute of limitations instruction been given.  *See Neder v. United States*, 527 U.S. 1, 18 (1999).

**B.      Mr. Ravenell Requested a Substantially Correct Limitations Instruction and Offered to Correct Any Error to the Proffered Instruction, Which the Court Improperly Denied.**

Critically, the Court's decision denying Mr. Ravenell's motion for a new trial completely ignores the revised (and substantially correct) instruction proposed by Mr. Ravenell on December 22, 2021.  The Court invited the defense to submit this revised instruction, which did *not* include any overt act requirement.  *See* Trial Tr. 64:16-23 (Dec. 21, 2021) (J. O'Grady) ("If

6

you want to propose something I'll certainly consider it, but I'm not sure that the statute of limitations is an issue that needs to be identified specifically . . . .  I'm going to eliminate this, but if you want to keep working on something, please go ahead and do that."); USG Ex. 3, Def. Revised SOL Jury Instruction (Dkt. 553-3) ("There is a limit on how much time the government has to obtain an indictment.  For you to find the defendant guilty of conspiracy as to Count Two, the government must prove by a preponderance of the evidence that the alleged conspiracy continued after July 2, 2014."); Trial Tr. 4:12-6:13 (Dec. 22, 2021) (J. O'Grady, White, Affinito, AUSA Wise) (discussing revised language for statute of limitations instruction).  The final proposed limitations instruction contained the language that is relevant for purposes of Mr. Ravenell's Motion for New Trial, and is not addressed in the Court's ruling.

This revised instruction proposed by the defense was "substantially correct" as the case law requires.  *See Pursley*, 22 F.4th at 591-92; *see also Head*, 641 F.2d at 177-79 (noting and rejecting government's argument "that [defendant] failed to request a proper instruction and that any prejudice to [defendant] is too remote to warrant reversal").  The crux of the defense's proposed instruction was that the government must prove that an alleged money laundering conspiracy "continued into" the statute of limitations period (which is a correct statement of law), not the burden of proof by which it had to be demonstrated.[2]

Moreover, in direct response to the government arguing that this lower burden of proof was not supported by the case law, the defense *offered to correct it*, explaining to the Court that "[f]ixing the preponderance [of evidence standard], obviously that's very easy, that's easy to explain."  *See* Trial Tr. 6:3-4 (Dec. 22, 2021) (White).  The defense thereby proposed modifying

---

[2]   In any event, the proposed burden of proof in the revised instruction would have been *easier* for the government to satisfy, thereby *benefiting* the government.

the instruction to "fix" the burden of proof issue to assert not merely the "substantially correct" statement of law it had initially proposed, but a ***completely correct*** statement of law. *See id.*; *see also Pursley*, 22 F.4th at 592 (noting that defense counsel "offered to modify the instruction" after the government argued it was not "substantially correct").

Notwithstanding this offer—which put before the Court a legally correct statute of limitations instruction—the Court noted the defense's exception and adopted the government's position, ruling that the statute of limitations issue "would quite clearly confuse the jury" and that it was "an issue that can be dealt with as a matter of law, I believe, post-verdict, if necessary." *See* Trial Tr. 6:5-13 (Dec. 22, 2021) (J. O'Grady); *see also* Trial Tr. 5:11-20 (Dec. 22, 2021) (AUSA Wise) (arguing that introducing statute of limitations concepts would "risk confusing the jury" and that "none of that [statute of limitations issues] is anything the jury determines"). The Court refused any version of the requested instruction not because it viewed the instruction as "legally incorrect," but because the Court agreed with the government's incorrect view that the statute of limitations was both too confusing and not a matter for the jury to decide. These positions are clearly wrong as a matter of law, and the government does not attempt to defend either of them anywhere in its brief.

"[T]he complexity of issues involved does not justify denying a defendant a requested instruction." *Pursley*, 22 F.4th at 592. Indeed, the *Pursley* court expressly rejected the same position adopted by the Court and the government here: that "the issue was 'highly complex' and 'was opening a can of worms awfully, awfully late' [and] that it was 'an unnecessary request' that was 'preserved for appeal.'" *See id.* Further, as courts universally make clear, determining whether the government has established the alleged offense conduct within the statute of limitations ***is*** a factual issue that the jury must decide. *See, e.g., Fowler v. Land Mgmt.*

8

*Groupe, Inc.*, 978 F.2d 158, 162 (4th Cir. 1992) ("issues of fact bearing on the application of a statute of limitations are submitted, as are other issues of fact, for determination by the jury"). The jury alone decides factual issues—including whether the purpose of an alleged conspiracy was completed (such that the conspiracy terminated) before the limitations period. *See, e.g.*, *Fowler*, 978 F.2d at 162. Here, the jury was deprived of that opportunity because the Court mistakenly viewed the statute of limitations issue "as a matter of law." *See* Trial Tr. 6:5-13 (Dec. 22, 2021) (J. O'Grady).

> **C.    The Court's Error in Failing to Instruct the Jury on the Statute of Limitations Was Not Harmless.**

The Court's focus on single versus multiple conspiracies is irrelevant to the issue of whether the jury had to be instructed on the applicable limitations period here. The government charged one multi-object conspiracy here, and no one requested a multiple conspiracies instruction. As the government explicitly argued, the evidence here offered multiple ways to prove this single conspiracy charge. Whatever theory or theories the jury credited, the jury needed to be instructed that they had to find that the conspiracy continued into the relevant limitations period. Given the multiple theories in support of this single count and the failure to instruct the jury on this issue, the Court cannot be confident beyond a reasonable doubt that the jury's finding would have been the same if they had been instructed on the relevant limitations period. Failing to instruct on limitations can only be deemed harmless if the court can conclude ***beyond a reasonable doubt*** that the verdict would have been the same without the error, and the record does not contain ***any*** evidence that "could" lead a jury to rationally reach a contrary finding. *United States v. White*, 810 F.3d 212, 221 (4th Cir. 2016) (citing *Neder*, 527 U.S. at 17 and *United States v. Ramos-Cruz*, 667 F.3d 487, 496 (4th Cir. 2012)). Notably, the record need not establish that the jury necessarily ***would*** have reached a contrary finding, only that it ***could***

have.  *See id*.

The government agrees that the conspiracy they charged could be proven in multiple ways—including, for example, "on the basis of Harris and Bailey alone."  *See* Trial Tr. 81:9-16 (Dec. 23, 2021) (AUSA Wise).  If the jury could have convicted Mr. Ravenell based on a theory that, if properly instruction, it may have found untimely, the Court's failure to give a statute of limitations instruction cannot be deemed harmless.  Here, there is a wide range of evidence introduced at trial from which the jury could have (if instructed) rationally concluded that the charged conspiracy did not continue into the limitations period—regardless of whether it viewed the conspiracy as one involving Byrd, Harris, or both.  As such, it is impossible to conclude beyond a reasonable doubt that the jury would have convicted Mr. Ravenell had a limitations instruction been given.  *See White*, 810 F.3d at 221; *Neder*, 527 U.S. at 18; *Head*, 641 F.2d at 179; *Yates v. United States*, 354 U.S. 298, 311-12 (1957).

There are two, independent ways for a limitations period to be relevant to a conspiracy charge.  One occurs when there is evidence that a defendant has withdrawn from the alleged conspiracy outside of the limitations period.  The defense has never argued that occurred here.  The other, which is what the defendant has consistently argued here, occurs when the central purpose of the charged conspiracy has been accomplished outside of the limitations periods.  *See United States v. United Med. & Surgical Supply Corp.*, 989 F.2d 1390, 1399 (4th Cir. 1993) ("A conspiracy ends when its central purpose has been accomplished.") (internal citation and quotation marks omitted).  The government was required to prove the conspiracy "continued into" the limitations period—*i.e.*, that the conspiracy had not yet **terminated**.  *See, e.g.*, *United States v. Wilkins*, 354 F. App'x 748, 756 n.10 (4th Cir. 2009) (for drug conspiracy that did not require an overt act, "the dispositive consideration for [defendant's] limitations claim is whether

he withdrew from the conspiracy *or* the conspiracy ended outside the five-year limitations

period") (emphasis added); *Campbell*, 347 F. App'x at 927 (explaining that a conspiracy

continues only so "long as its purposes have been neither abandoned nor accomplished, ***and*** no

affirmative showing has been made that it has been terminated") (emphasis added); *United States*

*v. Curry*, 977 F.2d 1042, 1058 (7th Cir. 1992) (in non-overt act conspiracy, "[t]he government is

not required to prove any overt acts . . . within the limitations period; instead, the government is

required to prove that the conspiracy existed into the limitations period ***and*** that the defendants

did not withdraw before that period") (emphasis added).

    Mr. Ravenell and the government introduced extensive evidence from which a jury could

rationally have concluded that the charged conspiracy had terminated prior to the limitations

period, which is sufficient to establish reversible error. *See White*, 810 F.3d at 221. The jury

could rationally have made this finding, regardless of how it interpreted the charged

conspiracy—whether by focusing on Byrd and/or Harris, and whether by focusing on violations

of § 1956 or § 1957. This evidence included, among other things: (1) Byrd's arrest on April 29,

2014, which ended any conspiracy to launder money for the Byrd DTO;[3] (2) Byrd's testimony

that he ceased all illegal activity after that date, which is outside the limitations period;[4] (3) the

Murphy Firm ledger for Byrd, demonstrating that all payments ceased by January 6, 2014, more

than six months prior to the relevant limitations period, and the last relevant transaction occurred

on February 26, 2014, more than four months prior to the relevant limitations period;[5] (4) the

only payment from the Byrd ledgers after the relevant limitations date was a ***court-required***

---

[3]   *See* Mem. in Supp. of Mot. for New Trial at 10-11; *see also United States v. Dunn*, 775 F.2d 604, 607 (5th Cir. 1985); *United States v. Lopez*, 153 F.3d 723 (4th Cir. 1998).
[4]   *See* Mem. in Supp. of Mot. for New Trial at 3, 11; *see also* Trial Tr. 74:1-3 (Dec. 10, 2021) (Byrd).
[5]   *See* Mem. in Supp. of Mot. for New Trial at 3, 11; USG Trial Exh. 14 (Exh. A).

payment, which are not evidence of a continuation of a conspiracy;[6] (5) the Murphy Firm ledger

for Harris, which demonstrated all payments ceased on April 25, 2014 (*i.e.*, prior to July 2,

2014);[7] and (6) that neither Harris or Bailey testified that any payment was due or contemplated

after that last payment.[8]

Based on this evidence, a jury could rationally have concluded that the government failed

to establish that the conspiracy they found proven continued within the limitations periods. *See*

*White*, 810 F.3d at 221.  And because the jury was not instructed to make any factual finding that

the statute of limitations requirement was satisfied, there is no way for the Court now to

conclude beyond a reasonable doubt that the verdict would have been the same had an

instruction been given. *See Neder*, 527 U.S. at 18.  The evidence the Court and government cite

now to suggest the government somehow proved (despite the jury never making such a finding)

that the alleged conspiracy continued within the limitations period are contested factual issues

the jury was deprived of evaluating and deciding here.  *See* Order at 5-6; Gov't Resp. to Mot. for

New Trial.  There is no way to determine that the jury would have found that any of this

evidence cited by the Court and the government proved beyond a reasonable doubt that the

alleged conspiracy continued within the limitations period.

The government's witnesses presented conflicting and contradictory testimony (and Byrd

admitted to committing perjury for the express purpose of manipulating the courts into serving

---

[6]      *See* Mem. in Supp. of Mot. for New Trial at 3, 11 n.5; *see also* USG Trial Exh. 14 at 4
(Exh. A).  Notably, this $750 payment also falls below the $10,000 threshold under § 1957, so is
potentially excludable on that basis as well (although it is impossible to know now what legal
theory the jury might have credited this payment under, if at all).

[7]      *See* Mem. in Supp. of Mot. for New Trial at 3; USG Trial Exh. 92a (Exh. B).

[8]      *See generally* Trial Tr. at 167:12-230:20 (Dec. 16, 2021) (Harris, AUSA Hines, &
White); Trial Tr. at 232:10-287:21 (Dec. 16, 2021) (Bailey, AUSA Hines, & White); Trial Tr. at
3:13-38:3 (Dec. 17, 2021) (Bailey, White, & AUSA Hines).

his interest in being released from prison). *See, e.g.*, Def. Sentencing Mem. at 4-7 (Dkt. 549) (discussing lack of credibility of government's proffered witnesses). It is for the jury, not the Court or the government, to weigh the credibility of those witnesses when deciding whether the government proved beyond a reasonable doubt that the alleged conspiracy continued within the limitations period. There is considerable evidence from which the jury may have determined the charged conspiratorial objects were not proven or the related conduct terminated prior to the limitations period, which requires reversal. *See White*, 810 F.3d at 221; *Neder*, 527 U.S. at 18.

Given the government's failure to seek a special verdict, there is no way to know beyond a reasonable doubt what evidence the jury convicted on, whether the facts it considered continued within the relevant limitations period, or whether it would have found beyond a reasonable doubt that any alleged conspiracy continued within the limitations period. In such circumstances, the Court ***must*** vacate the defendant's conviction. *See, e.g.*, *Head*, 641 F.2d at 179 (vacating conviction, explaining "[w]e simply have no way of knowing whether [the defendant] was convicted for an offense barred by limitations. We decline to engage in speculation of this sort in determining guilt in a criminal case."); *Yates*, 354 U.S. at 303-12 (reversing conviction where jury returned general verdict and one theory of prosecution was barred by statute of limitations), *overruled in part on unrelated grounds by Burks v. United States*, 437 U.S. 1 (1978).

The Court falls victim to the same flawed analysis contained in the government's briefing here—ruling that because ***some*** evidence was presented of a continuing conspiracy, the jury necessarily ***must have*** credited and convicted on it. *See* Order at 5-6. This is not the law. *See, e.g.*, *White*, 810 F.3d at 221; *Neder*, 527 U.S. at 18; *Ramos-Cruz*, 667 F.3d at 496. Indeed, it is reflective of the gravity of the error committed here—usurping the jury's prerogative to

13

determine factual issues.  The Court unilaterally concluded post-trial that "the evidence presented at trial showed that the money laundering conspiracy continued past July 2, 2014" (Order at 6), but this factual determination is not one for the Court to make and is not one the jury was ever given the opportunity to make.  Accordingly, Mr. Ravenell's conviction must be reversed due to this fatal instructional error.

## II.    THE COURT'S FAILURE TO INSTRUCT ON THE § 1957 SAFE HARBOR CONSTITUTES PLAIN ERROR BY ALLOWING THE JURY TO CONVICT ON LAWFUL CONDUCT.

The Court erred in failing to instruct the jury on the definition of "monetary transaction" under 18 U.S.C. § 1957, as this definition provides the foundation necessary for determining whether an element of a money laundering conspiracy—an agreement to violate § 1957—occurred.  Mr. Ravenell was alleged to have accepted drug proceeds that belonged to Harris for Harris's criminal defense.  This conduct falls squarely within the safe harbor.  The instruction provided to the jury failed to explain that no conspiracy could be found in the absence of Mr. Ravenell's agreement (an element of any 18 U.S.C. § 1956(h) money laundering conspiracy) to engage in a "monetary transaction" which, by definition, excluded the receipt of unlawful proceeds for criminal defense legal fees.

### A.    This Instructional Error Prevented the Jury from Determining Whether an Element of the Alleged Conspiracy Was Proven Beyond a Reasonable Doubt.

The Court is required to instruct the jury on the elements of a crime.  *United States v. Hutchison*, 338 F.2d 991 (4th Cir. 1964).  One of the elements of money laundering conspiracy under 18 U.S.C. § 1956(h) is "the existence of an agreement between two or more persons to commit one or more of the substantive money laundering offenses proscribed under 18 U.S.C § 1956(a) or § 1957." *Green*, 599 F.3d at 371.  The charged offense incorporates two additional statutes and requires the jury to find an agreement to commit an offense proscribed under at least

14

one of them.  The jury, of course, can make no such finding unless it knows what conduct is proscribed by § 1956(a) and § 1957.  Importantly here, the very foundation of "an agreement between two or more persons to commit" an offense under § 1957 is an agreement to "engage in a monetary transaction," as that term is defined in § 1957.  *See* 18 U.S.C. § 1957(a).  At the very least, the Court was required to instruct the jury on what constitutes a "monetary transaction" under § 1957 in order to find whether an agreement to engage in one had even occurred.  An instruction on § 1956(h) would be incomprehensible to a jury otherwise (as it apparently was here, given the jury's likely conviction of Mr. Ravenell for wholly lawful conduct).

Moreover, failing to instruct on what constitutes the monetary transaction under § 1957 in which a defendant must have "agreed" to engage would read out the § 1957(f)(1) safe harbor from money laundering conspiracy offenses entirely.  ***Every*** payment of criminal defense legal fees necessarily requires an agreement between an attorney and a client to provide money.  Unless a jury is instructed on the definition of a "monetary transaction" under § 1957(f), it will necessarily find an agreement to commit an offense under § 1957 ***whenever*** a client uses his unlawful proceeds to pay for his/her criminal defense—even though this conduct does not violate that statute.  The Court, therefore, must instruct on what conduct establishes an agreement to commit an offense proscribed under § 1957.  Failure to instruct the jury on the definition of "monetary transaction" was plain error, as this element provides the foundation for determining whether an agreement to violate § 1957 occurred.

While the jury need not be instructed as to ***all*** elements of an underlying money laundering offense (because the defendant need not have actually engaged in the prohibited transaction), it must be instructed on what the defendant ***agreed*** to engage in that would have been prohibited—here, that Mr. Ravenell ***agreed***, at the very least, to engage in a monetary

15

transaction under § 1957.  Nothing in any of the cases cited by the Court (or the government in its briefing) negates the government's burden to prove that Mr. Ravenell entered into an agreement to commit an offense under § 1956(a) and § 1957, nor do they negate this Court's obligation to instruct the jury sufficiently that it could make such a finding.[9]

### B.      Mr. Ravenell's Alleged Conduct Fell Within the Safe Harbor.

As § 1957 and the Fourth Circuit make clear, the conduct Mr. Ravenell was accused of—accepting "more than $10,000 in drug proceeds" from Harris for criminal defense fees—is not criminal.  *See* 18 U.S.C. § 1957(f); *United States v. Blair*, 661 F.3d 755, 770-71 (4th Cir. 2011). The Court significantly misreads *Blair*, which emphatically rejected any suggestion that an attorney who accepts unlawful proceeds for criminal defense fees falls outside of the safe harbor.

*Blair* involved an attorney-defendant who was merely monitoring the legal services provided to a criminal defendant by two other attorneys—a stark contrast to Mr. Ravenell, who the government admits (and all evidence supports) was compensated solely for providing criminal defense legal services to Harris.  *See* 661 F.3d at 771-72, n.3.  The Fourth Circuit said the defendant in *Blair* did not qualify for the safe harbor because he "used someone else's unlawful drug proceeds to pay for counsel for others . . . [a]nd . . . took a cut of that money for himself."  *Id*. at 771.  In a situation that does not mirror Mr. Ravenell's representation of Harris

---

[9]      In fact, in *Hagen v. United States*, the court specifically considered whether there was a reasonable probability that the jury's verdict "would have been not guilty had the court included an instruction specifically identifying [the omitted element of the conspiratorial object]." , No. 3:08-CR-93-WEB-2, 2014 WL 3895062, at *6 (W.D.N.C. Aug. 8, 2014).  Ultimately, the *Hagen* court decided that there was not, but the situation here is starkly different.  The government presented evidence and expressly invited the jury to convict  Mr. Ravenell if it found he entered into an agreement for Harris to provide him with criminal defense legal fees derived from drug proceeds, creating a reasonable possibility that the jury's verdict would have been not guilty had they been properly instructed on the § 1957 conspiratorial object of a § 1956(h) conspiracy.  *See, e.g.*, Trial Tr. 171:15-172:25, 176:3-8 (Dec. 16, 2021) (Harris); Trial Tr. 240:9-20 (Dec. 16, 2021) (Bailey).

16

at all, the defendant in *Blair* used Drug Dealer A's drug proceeds to pay for the legal

representations of Drug Dealer B and Drug Dealer C, who were represented by two *other*

attorneys.[10]  *See id*. at 761.

While the defendant *in that specific situation* did not fall within the safe harbor, the

Fourth Circuit expressly rejected the contention that an actual attorney hired with drug proceeds

to provide criminal defense services, such as Mr. Ravenell, would fall outside the statute's safe

harbor protections.  Indeed, prescient and leery of potential future attempts to exclude conduct

like Mr. Ravenell's, the Fourth Circuit clearly stated that it "*ha[s] never suggested that the*

*attorneys hired . . . should come in for sanction*."  *Blair*, 661 F.3d at 773 (emphasis added); *see*

*also United States v. Velez*, 586 F.3d 875, 877 (11th Cir. 2009) ("the plain meaning of the

exemption set forth in § 1957(f)(1), when considered in its context, is that transactions involving

criminally derived proceeds are exempt from the prohibitions of § 1957(a) when they are for the

purpose of securing legal representation to which an accused is entitled under the Sixth

Amendment.").

That is to say, even where the attorneys providing the legal services in *Blair* were paid

with drug proceeds that belonged to *someone other than their clients*, the Fourth Circuit

explained that it was *not* suggesting that those attorneys were criminally liable under § 1957

(only that the defendant, who transmitted the money but was *not* providing legal services, could

---

[10]     The defendant in *Blair* "ostensibly" served as co-counsel for one of the drug dealer
clients, but did *not* provide any legal services for the other.  *See* 661 F.3d at. 761-63.  Moreover,
the Fourth Circuit apparently discounted the defense services Blair was supposedly providing as
co-counsel for the one drug dealer client, noting that Blair took $10,000 "he claim[ed] was his
fee for being co-counsel" but was not licensed the in relevant jurisdiction and only obtained a pro
hac vice admission on the basis of a fraudulent application.  *See id*. at 772 n.3.  The court
concluded Blair "placed himself in a position to monitor the government's investigation into the
drug proceeds he was dispersing" and took the $10,000 merely "as a fee for doing so."  *Id*.

be prosecuted). *See Blair*, 661 F.3d at 773. In so holding, the Fourth Circuit rejected one of the bases relied upon by the Court here—that an attorney providing criminal defense services may be prosecuted under § 1957 for accepting unlawful proceeds on behalf of a client where those unlawful proceeds belong to someone other than the client himself (a factual determination that, in any event, is not supported by the record here because the drug proceeds used to pay Mr. Ravenell were Harris's money).

Equally without merit is the Court's conclusion that Harris was not permitted to use his drug proceeds to pay for his own criminal defense merely because he was incarcerated and had to have Bailey and others transmit those funds to Mr. Ravenell. *See* Order at 8-9 ("Bailey was not in an attorney-client relationship with Ravenell, and therefore had no Sixth Amendment rights that put Ravenell's receipt of the drug proceeds from her within the safe harbor."). As an initial matter, there is no authority (under *Blair* or any other case) to support the contention that a defendant is required to ***personally*** deliver fees to his attorney for the attorney to be entitled to the safe harbor, nor would any such authority make sense. As one court explained: "[a] reasonable reading of the statute [§ 1957] could usually limit the scope of the exemption to transactions between a criminal defendant and his or her attorney, ***or someone acting on their behalf***." *United States v. Velez*, 05-20770-CR, 2008 WL 5381394, at *3 n.6, *4 (S.D. Fla. Dec. 22, 2008), *aff'd*, 586 F.3d 875 (11th Cir. 2009) (emphasis added) (holding that § 1957(f) exempted from prosecution certain third parties who handle tainted funds used to pay for criminal defense services, including the attorney investigating the source of funds and through whose trust account all funds were wired, a certified public account, and an attorney associated with the criminal defense team). Interpreting the safe harbor to exclude fees delivered by a third party would categorically exclude from protection attorneys who receive criminal defense fees

derived from drug proceeds from incarcerated defendants who necessarily must pay their legal fees through someone acting on their behalf because they lack direct access to their own funds.

Even if Harris did not have a right to use someone else's drug proceeds (a conclusion disputed by the Fourth Circuit's analysis in *Blair*), he certainly had a right to use his own drug proceeds to pay for his criminal legal defense, which is exactly what he testified to doing. The Court misreads the record (which is misrepresented in the government's briefing) to the extent its finding that "none of those funds came from Leonaldo Harris" suggests the money was Bailey's rather than Harris's proceeds ***delivered*** by Bailey. *See* Order at 8. Harris explicitly testified that the money he paid Mr. Ravenell was drug money that was "owed to" Harris, and was therefore all ***Harris's*** money. *See, e.g.*, Trial Tr. 178:17-180:4 (Dec. 16, 2021) (AUSA Hines & Harris) (Hines: "Is that drug monies that were owed to you?" Harris: "Yes, it was. [. . .] Harris (cont.): "[Bailey] just tell me different amounts that she paid [Mr. Ravenell]." Hines: "Did she say where those amounts had come from?" Harris: "Yes, from the drug proceeds.").

Bailey similarly testified that none of the money she paid to Mr. Ravenell belonged to her—all of it belonged to Harris and was merely ***collected*** by Bailey on his behalf and delivered to Mr. Ravenell. *See, e.g.*, Trial Tr. 236:7-12 (Dec. 16, 2021) (AUSA Hines & Bailey) (Bailey explaining that Harris had her "recoup" funds from people "that owed [Harris] money"), 243:1-2 (Bailey: "Those were monies that I collected on the streets for Leo."), 246:18-20 (Bailey explaining she collected $8,000 in cash "[f]rom the streets where I picked them up from different clients of Leo."), 254:17-18 ("The cash came from the clients in the streets for Mr. Leonaldo Harris.").

The safe harbor protects transactions of exactly this kind—a client's payment of money derived from specified unlawful activity to an attorney for criminal defense services in exercise

19

of that client's Sixth Amendment rights.  *See* 18 U.S.C. § 1957(f)(1); *see also* Trial Tr. 171:15-172:25, 176:3-8 (Dec. 16, 2021) (Harris) (testifying that payments were for Harris's criminal defense legal fees); Trial Tr. 240:9-20 (Dec. 16, 2021) (Bailey) (same).  In denying the motion for new trial, this Court seems to disagree with this statement of the law.  This Court stated that "[i]n *Blair,* as here, the funds at issue were drug proceeds which, the Court noted, legally belonged to the United States."  Order at 8.  This Court further noted that, "[s]pecifically, Harris testified that, '[a]ll the monies paid by Ms. Bailey came from drug proceeds.'"  *Id*.  This Court's ruling seems to suggest that Mr. Ravenell did not fall within the safe harbor merely because Harris's money was drug proceeds.  This is inconsistent with the plain language of the statute, and neither the Fourth Circuit in *Blair* nor any other court has ever held this to be the law.  Another court previously addressed this argument head on.  In *Velez*, the government made this same argument and the appellate court rejected it, explaining:

> accepting [the government's] interpretation of § 1957(f)(1) would read all meaning out of the exemption.  Section 1957 criminalizes only transactions involving criminally derived proceeds.  It would therefore make little sense—and would be entirely superfluous—to read § 1957(f)(1) as an exemption from criminal penalties for *non-tainted* proceeds spent on legal representation, as those funds can always be used for any legal purpose.  We do not believe Congress intended such an absurd result, which nullifies the provision and divorces it from its statutory context, thereby violating basic canons of statutory construction.

*United States v. Velez*, 586 F.3d 875, 879 (11th Cir. 2009).

Mr. Ravenell's possible conviction for conduct that falls squarely within the safe harbor—and which is therefore lawful as a matter of statute and express legislative intent—is the result of the Court's failure to instruct on the safe harbor provision.  This failure has affected Mr. Ravenell's substantial rights, undermines confidence in the verdict, and seriously affects the fairness, integrity, or public reputation of judicial proceedings, thereby necessitating reversal.  *See United States v. Lockhart*, 947 F.3d 187, 192-93 (4th Cir. 2020); *United States v. Olano*, 507

20

U.S. 725, 1779 (1993).

### III.   THE EVIDENCE PRESENTED AT TRIAL DID NOT SUPPORT A CONSCIOUS AVOIDANCE INSTRUCTION, AND ACCORDINGLY, THE COURT ERRED IN GIVING ONE.

The Court improperly issued a conscious avoidance instruction despite a lack of any evidentiary basis in the record to support one.  Here, the government presented evidence that Mr. Ravenell had actual knowledge of the unlawful source of the funds he received, and took steps to conceal this from law enforcement.

A conscious avoidance instruction "is not allowed when the evidence shows that the defendant either had actual knowledge of the fact in question or no knowledge of that fact, and there is no evidence that the defendant was deliberately ignorant of the fact."  *United States v. Ebert*, 178 F.3d 1287, *11 (4th Cir. 1999), *opinion amended on denial of reh'g*, 188 F.3d 504 (4th Cir. 1999).  Courts may only provide an instruction that is supported by the evidence.  *See, e.g.*, *United States v. Schnabel*, 939 F.2d 197, 203-04 (4th Cir. 1991); *United States v. Dove*, No. 2:07CR00015, 2008 WL 3979467, at *2 (W.D. Va. Aug. 25, 2008) (explaining that "[w]here supported by the evidence, it is proper to give a willful blindness instruction").

At trial, the government presented evidence of Mr. Ravenell directing clients to conceal *from law enforcement* the unlawful source of the funds he received.  The government and the Court now posit that this demonstrates that Mr. Ravenell attempted to conceal *from himself* the source of the funds he received.  This interpretation of the evidence is untenable.

At trial Byrd, Harris, and Bailey (among others) testified that Mr. Ravenell knew that he was receiving drug proceeds; no one testified that Mr. Ravenell consciously avoided learning of the funds' unlawful source.  *See* Mem. in Supp. of Mot. for New Trial at 26-27 (Dkt. 542.1). Evidence that Mr. Ravenell was attempting "to conceal the source" of drug proceeds is not evidence of conscious avoidance; it is evidence of Mr. Ravenell's actual knowledge of the

unlawful source of the funds and deliberate steps taken to conceal that wrongdoing.

"When a district court errs in giving a willful blindness instruction, [the reviewing court] must assess whether such error is harmless." *United States v. Lighty*, 616 F.3d 321, 378-79 (4th Cir. 2010). The reviewing court also "must attempt to ascertain what evidence the jury necessarily credited in order to convict the defendant under the instructions given." *Bereano v. United States*, 706 F.3d 568, 577-78 (4th Cir. 2013). Notwithstanding the government's attempts to establish Mr. Ravenell's actual knowledge at trial—and the evidence it presented that exclusively supported only that theory—the jury clearly did not credit this evidence. The jury's six acquittals, including the government's preposterous charge that Mr. Ravenell was involved in a narcotics conspiracy—and its conviction on the only charge where a conscious avoidance instruction was given—are clear evidence of its rejection of the government's cooperating and immunized witnesses' testimonies that Mr. Ravenell acted with actual knowledge.

## IV. THE GOVERNMENT PROFFERED LEGALLY IMPROPER THEORIES FOR CONVICTION, MANDATING REVERSAL UNDER *YATES* AND IN THE INTERESTS OF JUSTICE.

These fundamental errors create the possibility that Mr. Ravenell was convicted under a legally infirm theory of guilt—a money laundering conspiracy that was either untimely or protected from prosecution by statute. This cannot withstand the inquiry mandated by *Yates*. 354 U.S. 298 (1957). When there is a possibility that a jury may have convicted a defendant on a legally infirm theory, the Court must vacate the conviction, subject only to a finding of harmless error beyond a reasonable doubt. *See Yates*, 354 U.S. at 312 ("the proper rule to be applied is that which requires a verdict to be set aside in cases where the verdict is supportable on one ground, but not on another, and it is impossible to tell which ground the jury selected"); *United States v. Jefferson*, 674 F.3d 332, 360 (4th Cir. 2012), *as amended* (Mar. 29, 2012).

As both Harris and Bailey testified, the money used to pay Harris's criminal defense fees

belonged to Harris.  *See* Trial Tr. 178:17-180:4 (Dec. 16, 2021) (AUSA Hines & Harris); Trial Tr. 236:7-12, 243:1-2, 246:18-20, 254:17-18 (Dec. 16, 2021) (AUSA Hines & Bailey).  All of those payments were solely for Harris's criminal defense legal fees.  *See* Trial Tr. 171:15-172:25, 176:3-8 (Dec. 16, 2021) (Harris); Trial Tr. 240:9-20 (Dec. 16, 2021) (Bailey).  "[T]ransactions involving criminally derived proceeds are exempt from the prohibitions of § 1957(a) when they are for the purpose of securing legal representation to which an accused is entitled under the Sixth Amendment."  *Velez*, 586 F.3d at 877; *see also Blair*, 661 F.3d at 773.  The transactions covered by the safe harbor include "transactions between a criminal defendant and his or her attorney, or someone acting on their behalf," such as Bailey.  *See Velez*, 2008 WL 5381394, at *3 n.6.  All of the payments for Harris's criminal legal defense therefore fell squarely within the § 1957(f)(1) safe harbor and are exempt from prosecution.  Mr. Ravenell could not have agreed with Harris to commit an offense under § 1957 because the transactions at issue are statutorily exempt from prosecution under the foundational definition of "monetary transaction."  *See* 18 U.S.C. § 1957(f).

Similarly, because the Court declined to instruct the jury on the statute of limitations, it must vacate Mr. Ravenell's conviction as it has "no way of knowing whether [Mr. Ravenell] was convicted for an offense barred by limitations."  *Head*, 641 F.2d at 179.  The jury was never asked to make this factual determination, and there is sufficient evidence in the record—based on the entire universe of evidence presented, involving Byrd, Harris, and anyone else—from which a jury ***could*** have rationally concluded the charged conspiracy terminated prior to the limitations period.  *See White*, 810 F.3d at 221 (citing *Neder*, 527 U.S. at 18); *see also* discussion *supra* at 11-12. Whether the jury would have found that the charged conspiracy terminated prior to the limitations period is unknown, and the parties and Court are simply left to wonder in the absence of a proper jury instruction.

Since the jury issued only a general verdict, there is no way to know whether the jury convicted Mr. Ravenell on these legally infirm theories, and his conviction must be vacated. *See, e.g.*, *Yates*, 354 U.S. at 312; *Head*, 641 F.2d at 177-79 (reversing conviction for failure to instruct on statute of limitations where government charged a single conspiracy supported by three unlawful objects, two of which rested in large part on acts occurring outside of limitations period); *United States v. Pitt*, 482 F. App'x 787, 793 (4th Cir. 2012) (vacating convictions for mail fraud where the court improperly instructed the jury that mail fraud could be proven by "honest services" or "deprivation of property" theories, but did not limit honest services theory to bribery or kickback schemes as required by Supreme Court precedent). The crux of a *Yates*-type analysis is whether the charged conduct could have been proven in multiple ways—at least one of which is legally untenable—and there is no way to determine what theory of guilt served as the jury's basis for conviction.

As the Court acknowledges, the defendant in *Yates*—like Mr. Ravenell—was charged with a single conspiracy supported by multiple possible conspiratorial objects. *See Yates*, 354 U.S. at 311-12 (describing single charged conspiracy supported by two conspiratorial objects, and noting that it was not clear the jury had to "find an agreement extending to both"); *see also* Second Superseding Indictment at Count Two (one charge of money laundering conspiracy supported by three possible conspiratorial objects: promotion (§ 1956(a)(1)(A)(i)); concealment (§ l956(a)(l)(B)(i)); and engaging in a monetary transaction of over $10,000 in criminally derived property (§ 1957(a))); *see also Jefferson*, 674 F.3d at 361 ("when a general verdict on a single criminal charge rests on alternative theories, one valid and the other invalid, the verdict must be set aside if it is 'impossible to tell which ground the jury selected'"). Like the defendant in *Yates*, Mr. Ravenell also must be granted a new trial.

Here, the government's charged conspiracy, like in *Yates*, rested on multiple, alternative theories of guilt. The government charged three theories of money laundering as objects of a single conspiracy count: promotion, concealment, and engaging in a monetary transaction of over $10,000 in criminally derived property. *See* Second Superseding Indictment at Count Two. The government also expressly argued at trial that Mr. Ravenell could be convicted "on the basis of Harris and Bailey alone." *See* Trial Tr. 81:9-16 (Dec. 23, 2021) (AUSA Wise). Absent a special verdict, there is no way of knowing post-trial which conspiratorial object, theory, or set of facts the jury based its verdict on. *See Yates*, 354 U.S. at 311-12.

The jury could have convicted on the charged money laundering conspiracy on an improper basis—a Byrd and/or Harris conspiracy that terminated prior to the limitations period (depending on what facts it credited), or on a conspiratorial object (such as a § 1957 conspiracy involving only Harris and Bailey) which is lawful. Such an error is harmless only "[i]f that evidence is such that the jury ***must*** have convicted the defendant on the legally adequate ground in addition to or instead of the legally inadequate ground." *Bereano v. United States*, 706 F.3d 568, 578 (4th Cir. 2013) (emphasis added) (citing *United States v. Hastings*, 134 F.3d 235, 241-42 (4th Cir. 1998)). There is no way to know what evidence or theory of guilt the jury credited in the absence of a special verdict, and thus the error cannot be found harmless. Vacating Mr. Ravenell's conviction also serves the interests of justice, which includes ensuring he was not convicted for conduct that is permissible as a matter of law or conduct that fell outside the applicable limitations periods and is therefore not prosecutable. *See* Fed. R. Crim. P. 33(a).

## CONCLUSION

For the foregoing reasons, Mr. Ravenell respectfully requests the Court reconsider its decision regarding his motion for a new trial pursuant to Fed. R. Crim. P. 33.

May 25, 2022

Respectfully submitted,

SCHULTE ROTH & ZABEL LLP

*/s/ Aislinn Affinito*

_____
Peter H. White (D.C. Bar: 468746) (VA Bar: 32310)
Aislinn Affinito (D.C. Bar: 1033700) (CA Bar: 300265)
McKenzie Haynes (N.Y. bar: 5683859)
Schulte Roth & Zabel
901 Fifteenth Street, NW, Suite 800
Washington, DC 20005
pete.white@srz.com
aislinn.affinito@srz.com
mckenzie.haynes@srz.com
*Attorneys for Kenneth Ravenell*


Outlaw PLLC

*/s/ Lucius Outlaw*

_____
Lucius T. Outlaw III (#20677)
Outlaw PLLC
1351 Juniper St. NW
Washington, DC 20012
(202) 997-3452
loutlaw3@outlawpllc.com
*Attorney for Kenneth Ravenell*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 25th day of May, 2022, I caused a copy of Defendant's

Motion for Reconsideration, to be served upon counsel for the United States of America via

ECF and by email, and true and correct copies of the filing are available to all parties through

ECF or Pacer.

*/s/ Aislinn Affinito*

_____

Aislinn Affinito
*Attorney for Kenneth Ravenell*

27