UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| United States of America | * | |
| | * | Case No.: 1:19-cr-00449 |
| v. | * | |
| | * | |
| Kenneth Ravenell | * | |
| | * | |
| Defendant. | * | |
| | * | |

\*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*

**RESPONSE IN OPPOSITION TO THE GOVERNMENT'S FORFEITURE
MOTION AND IN SUPPORT OF REQUEST FOR A HEARING**

The Government has moved for issuance of a Preliminary Order of Forfeiture in the

above-captioned case pursuant to 18 U.S.C. § 982(a)(1) and Rule 32.2(b) of the Federal Rules of

Criminal Procedure (Dkt. 557).  That motion seeks forfeiture of $1,800,000, supposedly

representing money Mr. Ravenell accepted from the Byrd DTO, and authority to seize substitute

asserts.  For the reasons that follow the Government's motion should be denied or a hearing

conducted pursuant to Federal Rule of Criminal Procedure 32.2(b)(1)(B).

**I.      IN THE ABSENCE OF A SPECIAL VERDICT, FORFEITURE OF THE FUNDS
INVOLVED IN BYRD'S DTO MONEY LAUNDERING CONSPIRACY IS
IMPERMISSIBLE.**

As the Court knows, Count Two charged a multi-object conspiracy to violate 18 U.S.C.

§§ 1956 and 1957, involving both the Byrd DTO and the money paid to Mr. Ravenell's law firm

at the time for Leonaldo Harris's legal fees.  Because the jury did not return a special verdict, it

is not possible to determine which conspiratorial object(s) the jury found proven or upon which

theory the jury convicted—the Byrd DTO money, the Harris legal fees, or some combination.

Therefore, under settled law, Mr. Ravenell may be sentenced only upon the least serious theory

of conviction, i.e., the Section 1957/Harris money laundering conspiratorial object and theory of

guilt.  *See United States v. Quicksey*, 525 F.2d 337 (4th Cir. 1975); *see also United States v.*

1

*Rhynes*, 196 F.3d 207, 238 (4th Cir. 1999) (citing *United States v. Barnes*, 158 F.3d 662 (2d Cir.

1998) and *Quicksey* for same), *opinion vacated in part on reh'g en banc*, 218 F.3d 310 (4th Cir.

2000), *and on reh'g in part*, 218 F.3d 310 (4th Cir. 2000); *cf. United States v. Jones*, 17 F. App'x

240, 249 (4th Cir. 2001) (holding that forfeiture order was not in error where it corresponded

with a proper sentence set pursuant to offense level which corresponded with forfeiture amount).

The verdict, therefore, cannot support forfeiture of money involved in Byrd's conspiratorial

object to launder money in violation of 18 U.S.C. §§ 1956 and 1957, and forfeiture of such

money should therefore be denied.

## II.   THE GOVERNMENT IS NOT ENTITLED TO FORFEITURE OF SUBSTITUTE ASSETS.

The Government also seeks permission to seize substitute assets, in anticipation of it not

being able to locate or otherwise seize the direct proceeds of the Byrd money laundering

conspiracy.  Substitution of assets, however, is not permitted in these circumstances.  Pursuant to

18 U.S.C. § 982(b)(2):

> The substitution of assets provisions of subsection 413(p) shall not
> be used to order a defendant to forfeit assets in place of the actual
> property laundered where such defendant acted merely as an
> intermediary who handled but did not retain the property in the
> course of the money laundering offense unless the defendant, in
> committing the offense or offenses giving rise to the forfeiture,
> conducted three or more separate transactions involving a total of
> $100,000 or more in any twelve month period.

Here, the money allegedly subject to forfeiture was not paid to Mr. Ravenell but rather to

the Murphy Firm, and, with respect to funds paid the firm for legal fees, Mr. Ravenell was

entitled to only a very small percentage of said fees, generally 10%.  Furthermore, it was the

Murphy Firm, rather than Mr. Ravenell, that "conducted" the various transactions from which

the funds in question were derived.  Mr. Ravenell "acted merely as an intermediary who handled

but did not retain the property in the course of the money laundering offense," and he did not

"conduct[] three or more separate transactions involving a total of $100,000 or more in any twelve month period." *See* 18 U.S.C. § 982(b)(2).  Mr. Ravenell did not have authority to "conduct" any transactions himself at the Murphy Firm; all such transactions were conducted by the firm's accounting personnel.  *See, e.g.*, Trial Tr. 282:7-10, Dec. 13, 2021 (Mangus & AUSA Wise) (Mangus tracked monies through client accounts); Trial Tr. 67:12-16, Dec. 14, 2021 (Mangus & White) (White: "On wire transactions, did you have the authority to approve wire transactions or did that have to go through Beth [Wybolt]?"  Mangus: "I could set them up and [Wybolt] could approve them and then vice versa.").  The Government, therefore, is not entitled to forfeit from Mr. Ravenell substitute assets.

## III.    THE COURT MUST CONDUCT A HEARING PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 32.2(B)(1)(B).

Should the court deny one or both arguments made above, Mr. Ravenell respectfully requests that the court adjourn sentencing and schedule a hearing pursuant to Federal Rule of Criminal Procedure 32.2(b)(1)(B), which provides in relevant part:  "If the forfeiture is contested, on either party's request ***the court must conduct*** a hearing after the verdict or finding of guilty."  Fed. R. Crim. P. 32.2(b)(1)(B) (emphasis added).  The purpose of the hearing will be, *inter alia*, to demonstrate that Mr. Ravenell did not receive the funds sought for forfeiture and is not otherwise liable, under the applicable statutes, for forfeiture of these funds.

In addition to other evidence, the defense intends to call James Bowie, who stated during Government interviews that Mr. Ravenell told Byrd upon his arrest in 2011 that he would not accept cash and would only accept money from reputable sources, that Bowie went to the owner of LOC and asked him to loan Byrd money, and that Bowie then used LOC and Byrd's promotion business to design a money laundering scheme designed to fool others.  Bowie also told the Government of Byrd's efforts to hide information from Mr. Ravenell, including

3

information about LOC business losses and law enforcement's investigation of Byrd's DTO. This and other evidence will be directly relevant to whether Mr. Ravenell is legally required to forfeit the subject funds.

\*       \*       \*

For all the foregoing reasons the Court should deny the Government's forfeiture motion or adjourn sentencing and schedule a hearing thereon.

May 25, 2022

Respectfully submitted,

SCHULTE ROTH & ZABEL LLP

*/s/ Aislinn Affinito*
_____
Peter H. White (D.C. Bar: 468746) (VA Bar: 32310)
Aislinn Affinito (D.C. Bar: 1033700) (CA Bar: 300265)
McKenzie Haynes (N.Y. bar: 5683859)
Schulte Roth & Zabel
901 Fifteenth Street, NW, Suite 800
Washington, DC 20005
pete.white@srz.com
aislinn.affinito@srz.com
mckenzie.haynes@srz.com
*Attorneys for Kenneth Ravenell*

Outlaw PLLC

*/s/ Lucius Outlaw*
_____
Lucius T. Outlaw III (#20677)
Outlaw PLLC
1351 Juniper St. NW
Washington, DC 20012
(202) 997-3452
loutlaw3@outlawpllc.com
*Attorney for Kenneth Ravenell*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 25th day of May, 2022, I caused a copy of Defendant's

Response in Opposition to the Government's Forfeiture Motion and in Support of Request

for a Hearing, to be served upon counsel for the United States of America via ECF and by

email, and true and correct copies of the filing are available to all parties through ECF or

Pacer.


*/s/ Aislinn Affinito*

_____

Aislinn Affinito
*Attorney for Kenneth Ravenell*