IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| UNITED STATES OF AMERICA ) <br> ) <br> v. ) <br> ) <br> KENNETH W. RAVENELL, ) <br> ) <br> *Defendant.* ) <br> ) | Criminal Action No. 1:19-cr-00449 <br> Hon. Liam O'Grady |

## ORDER

Before the Court is the Presentence Investigation Report for Defendant Kenneth Ravenell, Dkt. 537, as well as Sentencing Memoranda and replies filed by Mr. Ravenell and the United States, Dkt. 549, Dkt. 552, Dkt. 555, and Dkt. 560. The Court has thoroughly reviewed all of these filings, and a hearing on Mr. Ravenell's sentencing is scheduled for Wednesday, June 22, 2022.

The parties agree that Mr. Ravenell has a Criminal History Category of I. Based on the following analysis, the Court finds that Mr. Ravenell has a Total Offense Level of 42.

### A. The Base Offense Level is Properly Calculated as 24.

As correctly stated in the Presentence Investigation Report, the sentencing guideline for a violation of 18 U.S.C. § 1956(h) is U.S.S.G. § 2S1.1. According to this provision, the base offense level is 8, plus the corresponding value of the laundered funds. Here, the value of the laundered funds, namely $1,800,000.00, leads to an increase of 16 levels. Thus, the total base offense level is 24. U.S.S.G. §2S1.1(a)(2)(I).

Mr. Ravenell opposes this base offense level calculation. He first argues that the amount of money in the Byrd escrow ledgers from the Murphy Firm "cannot support a loss amount

calculation under U.S.S.G. § 2S1.1 because the witnesses testified that the legitimate funds were commingled with any drug proceeds *before* they were deposited into the Murphy Firm." Dkt. 549 at 8-9. The Court finds this argument unpersuasive. The case cited by Mr. Ravenell in support of this argument, *United States v. Chao Fan Xu*, 673 F. App'x 616, 619 (9th Cir. 2016) is inapposite. In that case, the Ninth Circuit found that the Government did not show that any of the monetary transactions at issue were accomplished by U.S. persons; the Court further found that, if the $20 million laundered in that case did not constitute a violation of § 1957 because the fraudulent activity that generated the funds occurred outside the United States, then it couldn't be used to calculate the defendant's sentence. Thus, the issue in *Chao Fan Xu* was jurisdictional. The case is not applicable here.

Mr. Ravenell next argues that, at most, the loss calculation should total $59,000, which is 10% of the approximately $590,000 paid to the Murphy Firm by Mr. Richard Byrd. Mr. Ravenell asserts that Mr. Byrd testified at trial that 90% of the funds deposited into LOC Marketing were legitimate. However, Mr. Byrd never said this at trial. *See* Dkt. 560 at 8-9; Trial Transcript Vol. IV at 78:13-79:8; Trial Transcript Vol. V at 22:5-22:6. Rather, Mr. Byrd's testimony at trial was that the amount of legitimate funds that went into LOC Marketing was "event specific" and could not be quantified. Therefore, the co-mingled funds cannot be separated into legitimate and illegitimate ones; rather, the total amount of funds deposited into the Murphy Firm escrow account should be considered the laundered funds.

Here, the Presentence Investigation Report properly calculates the total value of the laundered funds to be $1,800,000.00, which supports a 16-level increase. Therefore, the total base offense level is properly calculated as 24.

### B. Mr. Ravenell Had Knowledge that the Laundered Funds Were Drug Proceeds.

The Presentence Investigation Report finds that, because Mr. Ravenell knew or believed that any of the laundered funds were the proceeds of, or were intended to promote an offense involving the manufacture, importation, or distribution of a controlled substance, the offense level is increased by 6. *See* Dkt. 537 at 11; U.S.S.G. § 2S1.1(b)(1)(i).

Mr. Ravenell opposes this finding, arguing that "[t]he only evidence credited by the jury at trial was that Mr. Ravenell was aware of the illicit source of funds he received for representing Harris in his criminal legal defense." He further argues that any transaction necessary to preserve a person's right to representation under the Sixth Amendment cannot support a money laundering conviction, and therefore this enhancement cannot apply. *See* Dkt. 549 at 11; 18 U.S.C. § 1957(f)(1).

In its prior Order denying Mr. Ravenell's Motion for a New Trial, this Court rejected this very argument. This Court has already found that the Safe Harbor provision cited by Mr. Ravenell, 18 U.S.C. § 1957(f)(1), is inapplicable to this case. *See* Dkt. 559 at 8. Again, because the funds provided to Mr. Ravenell by Ms. Bailey were drug proceeds, and because she was not in an attorney-client relationship with him, the Safe Harbor provision is inapplicable.

Furthermore, the Court resoundingly rejects Mr. Ravenell's argument that the only evidence credited by the jury at trial relates to Mr. Ravenell's transactions with Mr. Harris. Mr. Ravenell ignores the fact that there were multiple different kinds of evidence offered in support of the money laundering conspiracy; indeed, the majority of the witnesses who testified during the trial related to money laundering, and there were thousands of pages of documents that corroborated these witnesses. Just because the jury *could* have convicted Mr. Ravenell on the basis of testimony of Mr. Harris and Ms. Bailey alone, does not mean that they did, nor that they

3

had to. Indeed, there are a myriad of bases upon which the jury could have convicted Mr. Ravenell of the money laundering conspiracy. *See* Dkt. 560 at 1 to 5. In all, although we may speculate, we do not in fact know why the jury acquitted Mr. Ravenell of certain charges; and, the fact that the jury acquitted Mr. Ravenell of certain charges does not in any way illuminate why the jury convicted Mr. Ravenell of the money laundering conspiracy charge. Mr. Ravenell's arguments on this point are mere speculation.

Therefore, the Court finds that this 6-level enhancement due to the fact that Mr. Ravenell knew or believed that any of the laundered funds were the proceeds of, or were intended to promote an offense involving the manufacture, importation, or distribution of a controlled substance, is proper.

### C. Mr. Ravenell Regularly Engaged in Laundering Funds During an Extended Period of Time.

The Presentence Investigation Report finds that, because U.S.S.G. § 2S1.1(a)(2) applies, and because Mr. Ravenell regularly engaged in laundering funds during an extended period of time (namely, from 2009 to 2014) from multiple sources and generated a substantial amount of revenue in return for laundering funds, the offense level is increased by 4. *See* Dkt. 537 at 11; U.S.S.G. § 2S1.1(b)(2)(C) and Application Note 4.

Mr. Ravenell opposes this enhancement, arguing that there is no proof that he regularly engaged in laundering funds. He again argues that the jury convicted him based solely on the funds that he received from Ms. Bailey for Mr. Harris's criminal defense legal fees. For the reasons discussed in the preceding section, the Court finds this argument unavailing.

Therefore, the Court finds that the 4-level enhancement because Mr. Ravenell regularly engaged in laundering funds during an extended period of time from multiple sources and generated a substantial amount of revenue in return for laundering funds, is appropriate.

### D.  The Offense Involved Sophisticated Laundering.

The Presentence Investigation Report next finds that the offense involved sophisticated laundering because the laundering involved "two or more levels (i.e., layering) of transactions, transportation, transfers, or transmissions involving criminally derived funds that were intended to appear legitimate," and "offshore financial accounts." *See* Dkt. 537 at 11; U.S.S.G. § 2S1.1(b)(3) and Application Note 5. Therefore, the offense level is increased by 2.

Mr. Ravenell opposes this enhancement. He focuses only on the Okullo transaction and argues that "Byrd, whose testimony was rejected by the jury, was the only witness to testify to Mr. Ravenell's knowledge of and involvement in this transaction, which allegedly involved an unrelated third party and an offshore Jamaican account." He further claims that "[t]he government presented no additional evidence at trial that Mr. Ravenell was involved in or aware of any of the supposed 'layering' transactions." Dkt. 549 at 14.

The Court finds this argument unconvincing. First, Defendant's claim that the evidence did not establish his "knowledge of and involvement in this transaction" with Mr. Okullo is directly contradicted by an email from Mr. Ravenell himself, which was entered into evidence at trial, and in which he personally approved receiving funds from Mr. Okullo. Gov. Exhibit 100. Second, and importantly, the evidence presented at trial established that Mr. Ravenell and his conspirators used more than two levels of layering in multiple transactions. For instance, the evidence presented at trial showed that Mr. Byrd gave drug proceeds, in cash, to:

- various individuals associated with LOC Marketing who then deposited those monies into bank accounts associated with LOC Marketing from which they were then wired to the Murphy Firm, *see, e.g.*, Trial Transcript Vol. III at 135:19–137:19; thus, there were at

least two layers between the drug proceeds—the individuals to whom Mr. Byrd gave the cash and the LOC marketing accounts—and the Murphy Firm escrow account;

- Andrea King Chang, who then transferred the funds to her business account before wiring them to the Murphy Firm, which meant that these funds were layered through two levels, *id.* at 166:3- 14; and

- David Levine, a lawyer in Houston, who then transferred the money to two corporate entities he controlled, Ares Industrial and Repo Productions, before ultimately wiring it to the Murphy Firm, which is another example of layering through two levels, *id.* at 153:5–154:14.

In all, the evidence presented at trial clearly established that Mr. Ravenell and his conspirators repeatedly used more than two levels of layering, and that Mr. Ravenell was aware of these transactions. Therefore, the Court finds that the 2-level enhancement is appropriate.

### E. Mr. Ravenell Had an Aggravating Role as an Organizer or Leader of a Criminal Activity.

The Presentence Investigation Report next finds that "the defendant exercised management over the property, assets or activities of a criminal organization, specifically, the laundering proceeds for a drug trafficking organization, beginning in 2011 and continuing until 2014. The defendant was an organizer or leader of a criminal activity, the money laundering conspiracy, and was otherwise extensive; therefore, 4-levels are added." Dkt. 537 at 11; U.S.S.G. § 3B1.1(a) and Application Notes 2 and 4.

Mr. Ravenell argues that this enhancement should not be applied. He cites to Application Note 4, and to *United States v. Sayles*, 296 F.3d 219, 224 (4th Cir. 2002), which lay out seven factors used to determine a defendant's leadership or organizational role in the alleged criminal conduct. The factors the Court should consider include:

6

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1, cmt. n.4; *see also Sayles*, 296 F.3d at 224 (4th Cir. 2002). Mr. Ravenell argues that none of these factors applies to his case. He argues, in essence, that Mr. Byrd was the leader of the drug trafficking organization, and that Mr. Ravenell did not exercise any decision-making authority in either the Byrd or Harris drug trafficking organizations. *See* Dkt. 549 at 15.

The Court finds this argument unavailing, as it confuses leadership of the Byrd and Harris drug trafficking organizations, with leadership of the money laundering conspiracy. Application Note 4 recognizes that "[t]here can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy." U.S.S.G. § 3B1.1, cmt. n.4. While Mr. Byrd may have been the leader or organizer of the drug trafficking organization, the evidence presented at trial clearly proved that Mr. Ravenell had a leadership role in the money laundering conspiracy. Mr. Byrd acted on Mr. Ravenell's advice to launder proceeds from the drug trafficking operation, including thorough LOC Marketing. Further, from 2011 to 2014, Mr. Ravenell himself laundered Mr. Byrd's drug proceeds through the Murphy Firm attorney trust account. *See* Dkt. 552 at 21-22. The evidence presented at trial clearly shows that Mr. Ravenell exercised total control over whether funds were accepted into and then wired out of the Murphy Firm. Mr. Byrd did not exercise this same control.

Therefore, the Court finds that this 4-level enhancement is appropriate.

F. **Mr. Ravenell Abused a Position of Trust.**

The Presentence Investigation Report next finds that:

> The defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the

> offense. The defendant used his specialized skill as an attorney at his law firm, where he was able to move the drug trafficking money through the firm's attorney trust account at his own discretion and without having to obtain permission from any other member of the firm. The defendant's status as an attorney and a partner at the firm is a specialized skill that is ordinarily subject to significantly less supervision; therefore, increase by two levels.

Dkt. 537 at 11; U.S.S.G § 3B1.3 and Application Notes 1 and 4.

Mr. Ravenell argues that this enhancement should not apply because first, he was not subject to less supervision at the Murphy Firm, as there were multiple people who oversaw the transfer of funds at the firm; and second, because he did not utilize any special skill as an attorney to help facilitate any money laundering. Dkt. 549 at 18.

The Court finds these arguments without merit. First, an abuse of a position of trust enhancement is appropriate if the defendant abused a position of public trust in order to conceal the offense. *United States v. Agyekum*, 846 F.3d 744, 753 (4th Cir. 2017). By using the Murphy Firm's attorney escrow account as a mechanism to launder drug proceeds, Mr. Ravenell abused the public trust afforded to lawyers and professionals and officers of the court. Indeed, the "'central purpose' of the enhancement 'is to penalize[] defendants who take advantage of a position that provides them with the freedom to commit a difficult-to-detect wrong." *Id.* While there may indeed be other employees at the Murphy Firm, as an attorney, Mr. Ravenell had significant professional discretion. Indeed, attorneys are "subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature." *See* U.S.S.G. § 3B1.3 cmt. n.1. While Ms. Heather Mangus, a former accountant manager for the Murphy Firm, may have tracked money across client accounts, she did so at Mr. Ravenell's direction. *See* Dkt. 560 at 13-14; Trial Transcript Vol. VI 287:1-288:7. Had he not been a partner at the Murphy Firm, Mr. Ravenell would not have been able to launder Mr. Byrd's money through the firm's attorney trust account. *See* Dkt. 552 at 23-24.

8

The Court also rejects Mr. Ravenell's contention that he did not utilize any special skill as an attorney to help facilitate any money laundering. Mr. Ravenell's role in the Overtown Reborn transaction exemplifies how he played a central role in laundering Mr. Byrd's drug proceeds. *See* Dkt. 552 at 10-11. In that matter, Mr. Ravenell was actively using the Murphy Firm's escrow account to promote Mr. Byrd's criminal conduct, and Mr. Ravenell advised Mr. Byrd on how to wash and layer his drug proceeds to avoid detection by law enforcement. This is a far cry from the case cited by Mr. Ravenell, *United States v. Weisberg*, 297 F. App'x 513 (6th Cir. 2008), in which the Court found that the defendant attorney was merely holding money in his escrow account. The Sixth Circuit explained that the "special skill" enhancement requires legal knowledge "beyond simply having access to an IOLTA account." *Id.* at 516. Here, Mr. Ravenell indeed demonstrated and used significant legal knowledge in support of money laundering.

Therefore, the Court finds that this 2-level enhancement is appropriate.

G. **The Court Declines to Apply the Obstruction of Justice Enhancement.**

Finally, the Presentence Investigation Report finds that:

> The defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and the obstructive conduct related to the defendant's offense of conviction and any relevant conduct; or a closely related offense. The defendant created false records for LOC Marketing in an attempt to conceal drug proceed transactions. After LOC Marketing received a federal grand jury subpoena in 2014, the defendant continued to obstruct justice by hiring other attorneys and an accountant in an attempt to legitimize the activities by tying cash drug deposits to events; therefore, two levels are added.

*See* Dkt. 537 at 12; U.S.S.G. § 3C1.1. Mr. Ravenell argues that this 2-level obstruction of justice enhancement should not apply. The Court agrees.

9

The Court acknowledges that the evidence presented at trial showed that Mr. Ravenell created false and fictitious accounting and other business records for LOC Marketing. The Court further acknowledges that the conduct described in Paragraph 47 of the Presentence Investigation Report, *see* Dkt. 537 at 12, was not the same conduct that was alleged in Count Four, the obstruction count, of the Second Superseding Indictment.

Nevertheless, the Court acknowledges that the jury acquitted Mr. Ravenell on the related obstruction charges. As such, the Court finds that it is inappropriate to add the obstruction of justice enhancement here, and declines to do so.

## IV. CONCLUSION

Based on the foregoing analysis, the Court finds Mr. Ravenell has a base offense level of 24, and a total of 18-levels of enhancement, for a Total Offense Level of 42. The parties agree that Mr. Ravenell has a Criminal History Category of I.

Based upon a Criminal History Category of I and a Total Offense Level of 42, the guideline range is 360 months to life imprisonment. However, the statutorily authorized maximum sentence of 20 years is less than the minimum of the applicable guideline range; therefore, the guideline term of imprisonment is 240 months. USSG §5G1.1(a)

Mr. Ravenell will be sentenced on Wednesday, June 22, 2022.

It is **SO ORDERED**.

June 21, 2022
Alexandria, Virginia

Liam O'Grady
United States District Judge